No. 23-2835

# In the United States Court of Appeals for the Ninth Circuit

CHARLES BOYD OLSON and JANINE OLSON,
*Plaintiffs-Appellants,*

v.

UNISON AGREEMENT CORPORATION,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Washington (Seattle)
Case No. 2:22-cv-01859-RAJ (Hon. Richard A. Jones)

## PLAINTIFFS-APPELLANTS' EXCERPTS OF RECORD: VOLUME 1

BETH E. TERRELL
BLYTHE H. CHANDLER
ELIZABETH A. ADAMS
TERRELL MARSHALL
LAW GROUP PLLC
936 N 34th Street
Suite 300
Seattle, WA 98103
(206) 319-5450
*bterrell@terrellmarshall.com*

MATTHEW W.H. WESSLER
THOMAS SCOTT-RAILTON
GUPTA WESSLER LLP
2001 K Street NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*matt@guptawessler.com*

JOSEPH W. MOORE
UMAR IBRAHIM GEBRIL
CASCADE LAW PLLC
2707 Colby Avenue
Suite 1420
Everett, WA 98201
(425) 998-8999
*joseph@cascade.law*

February 26, 2024                    *Counsel for Plaintiffs-Appellants*

# INDEX

| VOLUME I | | | |
|---|---|---|---|
| **Dkt.** | **Date** | **Document** | **Page** |
| 40 | August 30, 2023 | Order Granting Motion to Dismiss | ER-3 |
| 33 | February 24, 2023 | Defendant's Reply in Support of Motion to Dismiss | ER-8 |
| 32 | February 23, 2023 | Declaration of Charles Boyd Olson | ER-25 |
| 31 | February 21, 2023 | Plaintiffs' Response to Motion to Dismiss | ER-29 |
| 24 | February 13, 2023 | Declaration of Charles Boyd Olson | ER-57 |
| 19 | January 30, 2023 | Declaration of Theodor Haugen in Support of Defendant's Motion to Dismiss | ER-76 |
| 19-2 | January 30, 2023 | Exhibits 2-1 to 2-5 to Declaration of Theodor Haugen | ER-79 |
| 19-4 | January 30, 2023 | Exhibit 4 to Declaration of Theodor Haugen: March 25, 2019 Offer | ER-163 |
| 17 | January 30, 2023 | Defendant's Motion to Dismiss | ER-183 |
| 1-1 | December 30, 2022 | Class Action Complaint | ER-213 |
| 46 | October 16, 2023 | Notice of Appeal | ER-234 |
| | | District Court Docket | ER-238 |

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES BOYD OLSON, *et al*.,

        Plaintiffs,

    v.

UNISON AGREEMENT
CORPORATION,

        Defendant.

Case No.  2:22-cv-01859-RAJ

**ORDER GRANTING MOTION
TO DISMISS**

## I.   INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss.  Dkt. # 17. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary.  For the reasons below, the motion is **GRANTED**.

## II.   BACKGROUND

In December 2022, this matter was removed from King County Superior Court.

Dkt. # 1.  According to the complaint, Plaintiffs entered into a "HomeOwner Agreement" ("Agreement") with Defendant Unison Agreement Corporation ("Unison"). Under the Agreement, Plaintiffs received a monetary payment from Defendant and Defendant received an option to acquire equity in Plaintiffs' homes.  Dkt. # 1-1, ¶ 1.1.

In the case of Plaintiffs Charles Boyd and Maggie Olsen, they received a Unison flyer that promised that the Olsons could "access the equity locked in [their] home" by entering into an agreement with Unison that would include "no monthly payments and no interest." They decided to apply for a HomeOwner Agreement to obtain cash to cover their credit card debt and daily living expenses. Dkt. # 1-1, ¶ 4.39. The parties agreed to the Agreement in March 2019. Dkt. # 1-1, ¶ 4.40. Under the Agreement, the Original Agreed Value of the Olson Property in March 2019 was $370,000. Unison made an investment payment of $64,750 for an option to purchase a 70% ownership interest in the Property. Dkt. # 1-1, ¶ 4.40.  Unison recorded a deed of trust on the Olson Property in King County securing the Olsons' performance of their obligations under the HomeOwner Agreement. Dkt. # 1-1, ¶ 4.42. The deed of trust granted Unison the right to foreclose and sell the Olson Property in the event of default by the Olsons. *Id.* On May 16, 2019, the deed of trust on the Olson Property was assigned by Unison to Odin New Horizon Real Estate Fund LP. *Id.*

Plaintiffs bring multiple violations of the Washington Consumer Protection Act relating to the HomeOwner Agreement.

### III.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim.  The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The plaintiff must

point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In deciding a Rule 12(b)(6) motion, courts generally look only to the face of the complaint and the documents attached thereto. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Here, the Court will consider the HomeOwner Agreement as it is referenced throughout the complaint.

## IV. DISCUSSION

In order to state a claim for relief under the CPA, a plaintiff must allege facts sufficient to meet each of the following elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co*., 105 Wash.2d 778, 780, 719 P.2d 531 (1986); *Panag v. Farmers Ins. Co. of Wash*., 166 Wash.2d 27, 204 P.3d 885, 889 (2009). The Olsons' CPA claims fail for several reasons.

First, while the Olsons refer to Unison's HomeOwner Agreement as a "reverse mortgage loan," the HomeOwner Agreement itself make clear that it is not a loan. Rather than being a loan, the HomeOwner Agreement is an option contract. Unison paid the Olsons' valuable consideration ($64,750) to secure an option to participate in the appreciation of Olsen's property. Dkt. # 1-1, ¶ 4.40. Unison is not obliged to exercise its option (if, for example, home prices decrease). Courts have found similar agreements are not loans. *See, e.g.*, *Foster v. Equitykey Real Est. Invs. L.P.*, 2017 WL 1862527, at *3-*5 (N.D. Cal. May 9, 2017) (holding that co-investment options contracts almost identical to the one at issue here are not loans). The Olsens' claim under the CPA for failure to comply with the Consumer Loan Act fails since the HomeOwner Agreement is not a

loan.

Second, the Court agrees with Unison that the Complaint fails to adequately allege any deceptive or unfair acts. In particular, the Olsens claim that Unison "engaged in deceptive acts or practices by selling its HomeOwner Agreement to the Homeowners … in a manner that purposely misrepresents the nature of the product" and "attempts to avoid reverse mortgage laws." Dkt. # 1-1, ¶¶ 7.3, 8.3. There are no facts supporting these assertions – such as required monthly payments required by the HomeOwner Agreement or other fraudulent statements. Furthermore, allegations of deceptive conduct appear to be belied by the plain text of the HomeOwner Agreement and accompanying documents, which encourage potential customers to seek counsel on the financial product. Specifically, one of the documents signed and acknowledged by the Olsens states in bold and underlined text: "**If you have not already discussed the Unison HomeOwner Agreement with your own advisors (legal, financial, estate planning, tax) and family members, we strongly urge you to do so before proceeding any further.**" Dkt. # 19-3. Accordingly, based on the allegations within the Complaint, the Court finds that Plaintiffs have not stated a claim for relief under the CPA for a deceptive or unfair act.

Finally, with respect to Plaintiff's claim for injunctive relief, this claim fails because it is not a cause of action. *See, e.g.*, *Frias v. Patenaude & Felix, A.P.C.*, No. 20-805, 2021 WL 1192421, at * 7 (W.D. Wash. Mar. 30, 2021) (dismissing "Count 7" seeking to "enjoin" defendant under the CPA because "an injunction is a remedy and not a cause of action"). Plaintiffs also seek a declaration of rights under the HomeOwner Agreement regarding attorneys' fees. Because the Complaint does not allege facts plausibly alleging an existing controversy on the issue, the Court grants the motion on this claim.

## V.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Unison's Motion to Dismiss without prejudice.  Dkt. # 17. Plaintiffs have 21 days from this Order to file an Amended

Complaint. Having granted Unison's motion to dismiss, the Court **DENIES** the motion to stay discovery as moot. Dkt. # 20.

     DATED this 30th day of August, 2023.

The Honorable Richard A. Jones
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CHARLES BOYD OLSON, JANINE
OLSON, and MAGGIE COLIN, individually
and on behalf of all others similarly situated,

        Plaintiffs,

    v.

UNISON AGREEMENT CORPORATION,

        Defendant.

NO. 2:22-cv-01859-RSM

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S
CLAIMS IN THE EVENT THE MOTION
TO COMPEL COLIN TO ARBITRATION
IS DENIED

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................. 3

I.     Plaintiffs Fail to Show the Option Is a "Loan" .................................................. 3

II.    Plaintiffs' Equitable Recharacterization Theory Does Not Apply. .................................... 6

III.   The First CPA Claim Depends Upon an Inapplicable Statute ............................................ 9

IV.   The Second and Third Claims Do Not State a Claim or Satisfy Rule 9(b). .................... 10

V.    Plaintiffs Agree the Fourth and Fifth Claims Should Be Dismissed ............................... 13

CONCLUSION ........................................................................................................... 13

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -i

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

**ER-9**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bain v. Metro. Mortg. Grp., Inc.*,
    175 Wn.2d 83 (2012) ....................................................................................................8

*Carr v. Ashcraft*,
    94 Wn. App. 1014 (1999) (unpublished) ....................................................................5

*Carter v. Ethicon Inc.*,
    No. 20-5672, 2021 WL 1893749 (W.D. Wash. May 11, 2021) ...........................12

*Crowley v. Byrne*,
    71 Wash. 444 (1912) ...................................................................................................4

*Dries v. Sprinklr, Inc.*,
    No. 20-47, 2020 WL 6119423 (W.D. Wash. Oct. 16, 2020) ...............................5

*Foster v. EquityKey Real Est. Invs. L.P.*,
    No. 17-00067, 2017 WL 1862527 (N.D. Cal. May 9, 2017) ..............................4, 6

*Goldwater Bank, N.A.* v. *Elizarov*,
    No. 21-616, 2022 WL 18231680 (C.D. Cal. Dec. 12, 2022) .................................4

*Gray v. Amazon.com, Inc.*,
    No. 22-800, 2023 WL 1068513 (W.D. Wash. Jan. 27, 2023) ............................12

*Hernandez v. Carpenter*,
    147 Wn. App. 1018 (2008) (unpublished) .................................................................6

*Hoover v. Bouffleur*,
    74 Wash. 382 (1913) ...................................................................................................6

*Kingston v. Int'l Bus. Machs. Corp.*,
    No. 19-1488, 2021 WL 779117 (W.D. Wash. Mar. 1, 2021) ...................................5

*Krefting v. Johnson*,
    127 Wn. App. 1053 (2005) (unpublished) .................................................................5

*Levy v. Butler*,
    93 Wn. App. 1001 (1998) (unpublished) ....................................................................6

*Nemykina v. Old Navy, LLC*,
    461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020)....................................................12

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -ii

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Ozone Int'l, LLC v. Wheatsheaf Grp. Ltd.*,
  No. 19-1108, 2021 WL 2569960 (W.D. Wash. June 23, 2021) ................................5

*Panag v. Farmers Ins. Co. of Wash.*,
  166 Wn.2d 27 (2009). ...........................................................................................8

*Phillips v. Blaser*,
  13 Wn.2d 439 (1942) ............................................................................................6

*REX - Real Est. Exch. Inc. v. Zillow Inc.*,
  No. 21-312, 2021 WL 3930694 (W.D. Wash. Sept. 2, 2021)..............................12

*Rojas v. Gen. Mills, Inc.*,
  No. 12-5099, 2013 WL 5568389 (C.D. Cal. Oct. 9, 2013)................................12

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................11

**Statutes**

15 U.S.C. § 1681b ......................................................................................................6

RCW 31.04.505(5) .....................................................................................................9

RCW 61.12.020 ..........................................................................................................8

RCW 61.24.005(2) ......................................................................................................8

RCW 61.24.020 ..........................................................................................................5

**Other Authorities**

12 C.F.R. pt. 1026, Supp. I, pt. 1, Comment 2(a)(14)(1)(viii) ...................................9

14 CFR 1.1 ................................................................................................................10

*Californi*a, California State Treasurer's Office (June 2022), *available at*
  https://www.treasurer.ca.gov/publications/ca-dream-for-all-report.pdf ...................9

WAC 208-620-510(6) ...............................................................................................9

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -iii

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-11

This dispute arises from "Homeowner Option Agreements" made in 2019 between UAC and Plaintiffs under which a homeowner grants UAC an option to purchase an agreed-upon undivided percentage interest in the property in the future at an agreed price (the "Option" or "Options"). Dkt. No. 1-1 ("Compl.") ¶¶ 4.40, 4.50–4.52; Ex. 1-1 §§ 2.1, 3.1; Ex. 2-1 §§ 1(a), 1(c).[1] The homeowner receives the benefit of an immediate cash payment and UAC shares in the risks and rewards of appreciation or depreciation of the property. Plaintiffs do not deny that the economic outcome depends upon the housing market and the decision of the homeowner on when to sell. Plaintiffs nonetheless seek to vitiate their pending options by equitably recharacterizing the Options as a loan.

In its opening brief, UAC explained that the entire Complaint fails to state a claim under Rule 12(b)(6) and that the Second and Third Claims also do not meet Rule 9(b) pleading requirements. Dkt. No. 17 ("Br."). Plaintiffs' Opposition (Dkt. No. 31, "Opp.") does not persuasively respond.

*First*, the Option is plainly an option to purchase an undivided interest in real property, and is not credit or a loan, as shown by: (i) the terms of the Option as compared to authority explaining key option terms; (ii) illustrative examples of how the Option would perform in certain markets, which show a risk of loss inconsistent with the absolute payment obligations of a loan; (iii) key differences between the Option and what is considered a loan or credit under the law; and (iv) the only directly applicable case law, which holds that an option to purchase real property is not considered a loan. Br. at 12–15. Plaintiffs do not squarely address these arguments and note only that the cases that reject their position do not specifically discuss the CPA and one plaintiff was a

---

[1] Unless otherwise indicated, cited exhibits are attached to the Declaration of Theodor Haugen submitted with UAC's motion (Dkt. No. 19).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED -1

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

"licensed real estate broker." Instead, Plaintiffs offer bald assertions that an element of the Option is like a loan or not like an option – often doing so in the face of contrary authority. In short, Plaintiffs do not and cannot show that the Option *does not* have the characteristics of an option and *does* have the characteristics of a loan.

*Second*, the "equitable reverse mortgage loan" concept upon which the Complaint relies is inapplicable to the facts alleged and the only Washington decisions to apply the concept are distinguishable. Plaintiffs fail to explain why those cases, which arise from facts bearing no similarity to those alleged by Plaintiffs, should be applied here. The Complaint should be dismissed because it relies entirely upon an unsupported and inapplicable legal theory.

*Third*, the First Claim, predicated on an alleged violation of the Consumer Loan Act, fails under the bedrock principle that the plain language of a statute must be applied. The Opposition does not dispute that the plain language of the Consumer Loan Act does not apply, and the First Claim should thus be dismissed.

*Fourth*, Rule 9(b) applies to the Second and Third Claims which are based upon the "marketing and selling" of the Option, and the only statements in the Complaint satisfying Rule 9(b) cannot be the basis of a claim because they are accurate. Plaintiffs attempt to save the claims by arguing Rule 9(b) does not apply. The Ninth Circuit has rejected Plaintiffs' argument and the cases applying Rule 9(b) to similar claims are legion. The Second and Third claims should be dismissed under both Rules 12(b)(6) and 9(b).

*Finally*, Plaintiffs concede the Fourth and Fifth Claims should be dismissed.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED -2

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-13

## **ARGUMENT**

### I.      **Plaintiffs Fail to Show the Option Is a "Loan"**

UAC's opening brief squarely addressed Plaintiffs' fundamental allegation that there is something unfair and deceptive occurring because the Option is not really an option and is instead a loan. UAC walked through the terms of the Option to show how the Option operates (Br. at 7–10) and illustratively applied those terms to the past history of the Seattle area housing market to show that the Option performs like an option and not like credit or a loan (*id*. at 10–11).[2] Plaintiffs criticize these illustrative examples as hypotheticals, but then prove UAC's point that the outcome is market driven by offering their own hypothetical of what had the "potential" to occur if the Olsons had sold their home at the price estimated by the Redfin website as of February 15, 2023. Opp. at 9 & n.3.

Notably, Plaintiffs ignore what the Redfin website shows about *Colin's* home—that a sale at the Redfin estimate as of the date of this brief would result in UAC taking a $9,031 loss.[3] The differing outcomes for UAC vis-à-vis the Plaintiffs' properties assuming a sale today at Redfin estimates underscores a key point: the Option functions like an option, as traditionally understood both economically and in case law, with uncertainty of outcome and risk of loss based upon the specific market for an individual property.

---

[2] Plaintiffs note that lenders can lose money on loans, but that is only where the borrower breaches their obligation of repayment. Opp. at 1. An optionee can lose money based upon market performance without a breach.

[3] *See* Morrison Declaration, Ex. A (https://www.redfin.com/WA/Seattle/900-Aurora-Ave-N-98109/unit-206/home/146979899, showing $543,739 estimate on February 24, 2023). If Colin sold her condo for $543,739 and UAC exercised its option, UAC would receive $230,980.33 (42.48% of $543,739) and would have made payments to Colin of $240,012 ($60,000 Initial Payment + $180,012 Balance Payment). *See* Ex. 1-1 §§ 2, 3. Colin, in turn, would receive a total of $552,770.67 ($240,012 from UAC and $312,758.67 in sale proceeds)—$9,031.67 *more* than if she had not entered into the HomeOwner Agreement with UAC. In short, Redfin confirms that the value of the Option is market and timing-driven.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -3

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

**ER-14**

UAC further showed how the Option's terms and economics were consistent with the general and Washington definitions of options (Br. at 12–13), how they were inconsistent with federal and Washington law addressing loans (*id.* at 13–15), how both federal law and Washington law acknowledge that options and loans are separate concepts (*id.* at 13–15), and how Courts have uniformly held that the UAC Option and a similar option were options and not loans (*id.* at 14–15).

In response, Plaintiffs offer no authority holding an option is really a loan. Opp. at 8–12. Indeed, Plaintiffs admit the cases UAC cited address UAC's Option or an option "that does appear to be similar to Unison's" and hold the option was not credit or a loan. *Id.* at 11; *see Goldwater Bank, N.A.* v. *Elizarov*, No. 21-616, 2022 WL 18231680 (C.D. Cal. Dec. 12, 2022); *Foster v. EquityKey Real Est. Invs. L.P.*, No. 17-00067, 2017 WL 1862527, at *4 (N.D. Cal. May 9, 2017). Without addressing the reasoning of the cases, Plaintiffs simply assert that *Goldwater* is inapplicable because the homeowner was a "licensed real estate broker" who must have understood the option and that *Foster* addresses TILA and California statutes and not the CPA. Opp. at 11. Plaintiffs provide no explanation of why those differences mean the option in those cases was not "credit" but the Option here is. As UAC previously explained, the reasoning of *Goldwater* and *Foster* is directly in point. Br. at 14–15.

Plaintiffs also do not dispute that the key terms of an option are present. They instead comment that: (i) the Option varies from a model form because it is for an undivided percentage interest rather than a 100% interest and held open for a longer time under a longer document; and (ii) a Deed of Trust supports Plaintiffs' ancillary obligations. Opp. at 10, 12. In reality, options can be granted to purchase partial undivided interests. *See, e.g.*, *Crowley v. Byrne*, 71 Wash. 444, 445–46 (1912) (holding option to purchase a 50% undivided interest would be "regard[ed] . . . as a pure

---

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED -4

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

option"); *Krefting v. Johnso*n, 127 Wn. App. 1053 (2005) (addressing option to purchase 50%

undivided interest in real property) (unpublished); *Carr v. Ashcraft*, 94 Wn. App. 1014 (1999)

(same) (unpublished). Further, nothing in the law sets the length of an option period or provides a

basis to cavil about the length of documents. Plaintiffs' second argument also fails. A Deed of

Trust merely "secure[s] the performance of an obligation," RCW 61.24.020, and here secures

performance of Plaintiffs' obligations for items like reimbursement for any Protective Advances

UAC may extend to protect the property if Plaintiffs fail to do so. *See* Ex. 1-3 § 2(b) & Ex. 2-3 §

2(b) (listing the secured "Obligations"). The Deed of Trust explicitly does *not* secure repayment

of the initial payment that Plaintiffs seek to recharacterize as the principal balance of a loan. Ex.

1-3 § 2(f) ("Grantor shall not be obligated to repay any part of the Initial Payment . . . and therefore,

such item shall not be included within the [secured] Obligations"); Ex. 2-3 § 2(f) (same). In sum,

Plaintiffs have not shown that characteristics of an option are lacking.

Similarly, Plaintiffs do not articulate the key elements of a loan or provide authority on

what constitutes a loan. Instead, they simply and baldly assert that "Unison ma[de] the

[transaction] look like a mortgage loan, including by charging transaction fees . . . referring to the

Agreement 'closing' . . . assessing [Plaintiffs'] creditworthiness . . . and securing [Plaintiffs']

obligations under the HomeOwner Agreement with a recorded deed of trust." Opp. at 9. Obviously,

fees are charged in all kinds of transactions, and the term "closing" applies to transactions generally

and not just mortgage loans. *See, e.g.*, *Ozone Int'l, LLC v. Wheatsheaf Grp. Ltd.*, No. 19-1108,

2021 WL 2569960, at *4 (W.D. Wash. June 23, 2021) (addressing the defined term "Closing" in

an asset purchase agreement); *Kingston v. Int'l Bus. Machs. Corp.*, No. 19-1488, 2021 WL 779117,

at *4 (W.D. Wash. Mar. 1, 2021) ("closing" of software sales); *Dries v. Sprinklr, Inc*., No. 20-47,

2020 WL 6119423, at *7 (W.D. Wash. Oct. 16, 2020) ("closing" of sales of products and services).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -5

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Moreover, credit reports can be reviewed for numerous purposes and are not limited to loans. *See generally* 15 U.S.C. § 1681b (listing permissible purposes for obtaining a credit report).[4] Finally, as noted above, the initial payment that Plaintiffs want recharacterized as the loan's principal amount is not secured by a Deed of Trust as Plaintiffs imply. *See* Ex. 1-3 § 2(f); Ex. 2-3 § 2(f). There was also a Deed of Trust in *Foster*, and that did not render the option a loan. *See* 2017 WL 1862527, at *1, 9.

Because Plaintiffs have not shown that the Option is actually "credit" or a "loan," the Complaint should be dismissed in its entirety.

## II. Plaintiffs' Equitable Recharacterization Theory Does Not Apply.

The Complaint begins with a discussion of Washington lending law (¶¶ 4.1–4.14), followed by allegations purportedly supporting the theory that the Option should be deemed an "equitable reverse mortgage loan" (*id.* ¶¶ 4.15–4.28), and finally provides allegations about Plaintiffs' transactions assuming they are a "loan" in sections titled "[Colin/Olsons] borrowed money from Unison" (*id.* ¶¶ 4.29–4.43, 4.44–4.58). In short, the Complaint is entirely dependent upon equitably recasting the facts to create a case about loans.

UAC previously explained that Plaintiffs' equitable recharacterization theory does not apply to the facts alleged and addressed Plaintiffs' supporting cases, two unpublished and two others over 80 years old. *See Phillips v. Blaser*, 13 Wn.2d 439 (1942); *Hoover v. Bouffleur*, 74 Wash. 382 (1913); *Hernandez v. Carpenter*, 147 Wn. App. 1018 (2008) (unpublished); *Levy v. Butler*, 93 Wn. App. 1001 (1998) (unpublished). In each of those cases, the defendants created unusual and below-market sale-repurchase transactions to substitute for the loan that the plaintiffs

---

[4] The HomeOwner Agreement is not intended for distressed properties and a credit report shows whether any existing third-party mortgage loan is in default.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED -6

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-17

requested. Those courts held that there was not a true sale because there was "clear and convincing evidence" that the intention of the parties was not for the property to be transferred to a new owner in fact, but for the "seller" to quickly repurchase the property after the sale and never be physically dispossessed. Thus, the transaction as a whole was not a sale in substance and the deed of sale was recharacterized as an equitable mortgage providing a lien against the property in the amount of the sale price. Moreover, Plaintiffs' cases featured transactions designed, on their face, in abusive fashion to prey upon the property owner's inability to repurchase their properties even at a below-market price and, thus, obtain ownership of the properties for a pittance. No such inequitable structure or impact arise in UAC's agreement with Plaintiffs. As UAC explained in its Opening Brief, the Option here is not part of a sale-repurchase transaction intended by the parties to function as the equivalent of a loan. Br. at 15–19.

Plaintiffs do not explain how the parties' intent or the Option structure here were similar to the intent of the parties or transaction structure in Plaintiffs' cases. Instead, Plaintiffs attempt to show that the economics of the Option and the economics of the sale transaction in the cases are somehow similar. This is complicated by the fact that Plaintiffs have not sold their homes so the only thing that has occurred at this point is Plaintiffs' receipt of a payment several years ago (*i.e.*, the Options have neither been exercised nor expired). As such, there are no completed economics to which to compare anything, and Plaintiffs' "percentages" are irrelevant to both the actual Option economics (previously described at Br. 9–11 & nn. 5–9) and a sale-repurchase transaction like those in the equitable recharacterization cases.[5] Plaintiffs' fuzzy math offers no support for the

---

[5] Plaintiffs inexplicably take the amount of the initial payment, subtract a transaction fee and any payments Plaintiffs made with the proceeds of the initial payment to Plaintiffs' existing lenders (as though Plaintiffs did not receive the benefit of those funds) and then compare that number against the appraised value at origination to derive a percentage.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -7

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

expansion of the equitable recharacterization concept outside the context of the quick round-trip and below-market sale and repurchase transactions of distressed property at issue in *Phillips*, *Hoover*, *Hernandez*, and *Levy*.

Plaintiffs also attempt an argument based upon "contract[ing] around statutory requirements, particularly Deed of Trust Act requirements" (Opp. at 13), but the sole case cited that actually addresses a Deed of Trust only interprets the interplay between two statutory provisions. *Bain* addressed a certified question as to whether a noteholder had to foreclose in its own name or could do so in the name of the Mortgage Electronic Registration System ("MERS"). *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 91 (2012). The Court held that MERS did not fall within the plain language of the Deed of Trust Act, RCW 61.24.005(2), which required foreclosure by "the holder of the instrument or document evidencing the obligations secured by the deed of trust," and rejected the argument that RCW 61.12.020 allowed the parties to agree that MERS would be deemed the holder for foreclosure purposes. *Bain*, 175 Wn.2d at 98, 104–05. Here, no foreclosure is alleged, it is undisputed that UAC is owed the obligations to which the Deed of Trust refers, and anything regarding contracting in *Bain* is limited to the two statutory provisions at issue. Thus, why the case is cited is unclear. Even more confusing is Plaintiffs' citation to *Panag v. Farmers Ins. Co. of Wash.*, which addresses a CPA claim regarding a collection notice that was allegedly deceptive because it used the term "subrogation claim" which an ordinary consumer "likely would interpret . . . as representing a liquidated debt that the recipient is bound to pay rather than a potential tort claim that is subject to dispute." 166 Wn.2d 27, 50 (2009). The case appears to be cited only for a quote taken out of context.

---

This irrelevant percentage is then compared against the percentage of the sale price against the value of the property in the equitable recharacterization cases. The two percentages have nothing in common.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -8

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Finally, if Plaintiffs are attempting to imply there is something inherently wrong with an option or sharing in appreciation, that implication is unwarranted. Options have been in existence for a very long time (as Plaintiffs' own cases show), options can be used to purchase less than a 100% undivided interest, *supra* pp. 4–5, and Plaintiffs have cited no authority suggesting there is anything inequitable or abusive about options. The concept of sharing in the appreciation of real property also is not new. The Official Commentary to Reg. Z explains that "credit" does not include (and TILA does not cover) transactions where a party extends capital as to which it risks loss, and the example it uses is a type of home equity arrangement that involves sharing "in any gain or loss of property value." 12 C.F.R. Pt. 1026, Supp. I, Part 1, cmt. 2(a)(14)(1)(viii). Washington law also prescribes certain disclosure requirements where shared appreciation is coupled with a loan, *see* WAC 208-620-510(6) (listing disclosure requirements the UAC Option would meet if it were a loan), confirming that sharing appreciation is not inherently unfair or deceptive. *See also California Dream For All: A Proposed Shared Appreciation Loan Investment Fund For The State of Californi*a, California State Treasurer's Office (June 2022), *available at* https://www.treasurer.ca.gov/publications/ca-dream-for-all-report.pdf (concluding loans with a shared appreciation component are good for consumers and proposing that California create a fund to facilitate such loans).

## III.    The First CPA Claim Depends Upon an Inapplicable Statute

UAC previously explained that the First Claim violates the bedrock principle of statutory interpretation that a statute only applies where the facts fall within its plain language. Plaintiffs do not address this argument. On the other hand, Plaintiffs impliedly admit the Option does not meet the definition of a "reverse mortgage loan," which is limited to "credit obligation[s]" (RCW 31.04.505(5)). *See* Opp. at 12 (arguing "*nearly* all" the elements of the definition are met)

---

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -9

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

(emphasis added); *id.* (arguing the Option "should be treated as" a reverse mortgage loan). Plaintiffs cite no authority to extend the Consumer Loan Act beyond its plain language because all authority applies the scope of a statute as it is stated in its text. *See* Br. at 19–20 (collecting cases).

Under Plaintiffs' theory of statutory interpretation a bird should be subject to Federal Aviation Administration regulation because it almost meets the definition of an "Airplane" as it is "heavier than air [and] is supported in flight by the dynamic reaction of air against its wings." *See* 14 CFR 1.1. Pointing out that a bird is not "engine-driven" as required by the definition of "Airplane" is, under Plaintiffs' theory, irrelevant because "nearly all" the other requirements are met. *See id.* The theory is nonsense. Facts are either within a definition or they are not. Here, they admittedly are not within the definition of "credit" and, thus, "reverse mortgage loan," and that ends the inquiry.  The Consumer Loan Act does not apply, and the First Claim fails.

**IV.  The Second and Third Claims Do Not State a Claim or Satisfy Rule 9(b).**

The Second and Third Claims are based upon allegations of "purpose[ful]" acts in "marketing and selling" the Option, *i.e.*, that UAC "purposely misrepresents the nature of the product" and "purposely attempts to avoid" lending laws. Compl. ¶¶ 4.24, 7.2-3, 8.2-3. UAC explained Rule 9(b) applies to such claims, identified the only allegations made with specificity, and showed why Plaintiffs' claims should be dismissed under Rules 12(b)(6) and 9(b). Br. at 21–22.

Only marketing statements that were relied upon by the plaintiff can form the basis of unfair and deceptive CPA claims, and the only specific statements alleged in the Complaint are undisputedly accurate: (i) a flyer stating an agreement with UAC could allow Plaintiffs to "access the equity locked in [their] home" and would include "no monthly payments and no interest" and (ii) an email stating UAC was "excited to partner with" Plaintiffs. Compl. ¶¶ 4.38, 4.48. The

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED -10

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Opposition does not mention these allegations. It instead relies upon unpled facts, including additional statements that the Option does not have interest charges or monthly payments and is not a loan. Opp. 18–19.[6]  Again, it is undisputed that the Option does not have interest charges or monthly payments, and the argument that these statements are misleading because they "create the impression that homeowners are receiving a product dissimilar to a mortgage loan" fails because the Option is dissimilar to mortgage loan as previously explained. *Supra* pp. 3–6; Br. at 7–15. Thus, the only statements alleged with the requisite particularity do not state a claim and the Second and Third Claims should be dismissed pursuant to Rule 12(b)(6).

Plaintiffs argue Rule 9(b) does not apply because the elements of a CPA claim do not require unfair or deceptive conduct to be knowing or intentional as required by fraud. Opp. at 16–17. But the Ninth Circuit has rejected that argument:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). The purpose of Rule 9(b) is to safeguard a defendant's reputation and goodwill from improvident charges of wrongdoing "regardless of the cause of action in which they appear, and [such claims] are therefore properly subject to Rule 9(b) in every case." *Id.* at 1104.

---

[6] The Opposition identifies the following statements from the flyer: (i) the Option includes "no monthly payments and no interest"; and (ii) "[u]nlike a home equity loan or home equity lines of credit, you'll pay no interest with Unison." Opp. at 19.  It also identifies from "offer documents" given to Colin the statement "Unison Investment Payment is not a loan that you have to pay back, nor do you ever pay interest on this amount." Ex. 3.  These statements are consistent with the terms of the Option.  See Br. at 7-11 (explaining the Option terms and economics).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -11

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

This District uniformly applies Rule 9(b) to CPA claims premised on allegations regarding marketing and selling consistent with the Ninth Circuit's guidance. *See, e.g.*, *Gray v. Amazon.com, Inc.*, No. 22-800, 2023 WL 1068513, at *6 (W.D. Wash. Jan. 27, 2023) ("theory that Amazon 'misleadingly represented' and 'created a false impression,' through its policies' disclosures and public statements to the press [about a product] . . . 'depend[s] upon a 'unified course of fraudulent conduct'" so Rule 9(b) applies); *REX - Real Est. Exch. Inc. v. Zillow Inc*., No. 21-312, 2021 WL 3930694, at *7 (W.D. Wash. Sept. 2, 2021); *Carter v. Ethicon Inc.*, No. 20-5672, 2021 WL 1893749, at *2 (W.D. Wash. May 11, 2021). Indeed, the only case Plaintiffs cite addressing "marketing materials and documents" also squarely holds that Rule 9(b) applies. Opp. at 16, citing *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058-59 (W.D. Wash. 2020) (holding that allegations of advertising items at a "discount" when many of the items were rarely if ever offered at a higher original price were allegations of a "'unified course of fraudulent conduct,' and therefore are subject to Rule 9(b)"); *see also Rojas v. Gen. Mills, Inc.*, No. 12-5099, 2013 WL 5568389, at *6–7 (C.D. Cal. Oct. 9, 2013) (holding Rule 9(b) applied to allegations about the "net impression" from marketing and dismissing claims).

The Complaint repeatedly alleges both purposeful bad intent and a unified course of fraudulent conduct in "marketing and selling." *E.g.*, Compl. ¶ 7.3 (alleging "unfair acts or practices by marketing and selling . . . in a manner that purposely attempts to avoid reverse mortgage lending laws"); *id.* ¶ 8.3 (alleging UAC "purposely misrepresents the nature of the" HomeOwner Agreement); *id.* ¶¶ 1.2, 4.17, 4.24 (alleging UAC "purposely" or "deliberately" structured the Option to wrongly avoid "regulatory schemes"). Thus, Rule 9(b) plainly applies.[7]

---

[7] Plaintiff implicitly acknowledges this by using the Opposition to raise additional unpled allegations and asking the Court for leave to amend the Complaint. *See* Opp. at 3–7, 21.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED -12

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

**V.     Plaintiffs Agree the Fourth and Fifth Claims Should Be Dismissed**

"Plaintiffs do not oppose dismissal of their Fourth Claim," or "the dismissal of the Fifth Claim without prejudice." Opp. at 20. They should be dismissed.

## CONCLUSION

UAC respectfully requests dismissal of the Complaint in its entirety.

I certify that this memorandum contains 4,160 words, in compliance with the Local Civil Rules.

DATED this 24th day of February, 2023.

By  s/ Michael Rosenberger
Michael Rosenberger, WSBA #17730
Katherine S. Wan, WSBA #58647
GORDON TILDEN THOMAS & CORDELL LLP
600 University Street, Suite 2915
Seattle, Washington 98101
206.467.6477
mrosenberger@gordontilden.com
kwan@gordontilden.com

Brent Caslin, WSBA #36145
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
213.239.5100
bcaslin@jenner.com

Attorneys for Defendant
Unison Agreement Corp.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS
IN THE EVENT THE MOTION TO COMPEL COLIN TO
ARBITRATION IS DENIED -13

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-24

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

CHARLES BOYD OLSON, JANINE OLSON, and MAGGIE COLIN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UNISON AGREEMENT CORPORATION, a foreign corporation,

Defendant.

Case No. 2:22-cv-01859-RSM

**DECLARATION OF CHARLES BOYD OLSON**

I, Charles Boyd Olson, declare as follows:

1.      I am over the age of eighteen and competent to testify. I am the Plaintiff in this case. This declaration is based on my personal knowledge.

2.      Attached as __Exhibit 1__ is a true and correct copy of a mailer I received from Unison in 2019. following:

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

//

//

DECLARATION OF CHARLES BOYD OLSON
Case No. 2:22-cv-01859-RSM
Page 1 of 2

CASCADE LAW PLLC
2707 Colby Avenue, Suite 1420
Everett, WA 98201
P: (425) 998-8999 / info@cascade.law

ER-25

DocuSign Envelope ID: 12105B00-B905-40FF-A26F-4808349FA480

1   DATED at Everett, Washington on _____2/17/2023_____.

2

3                              *Charles Boyd Olson*
                               —D1FCFCFC888E4C2...
4                              Charles Boyd Olson
                               Plaintiff
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF CHARLES BOYD OLSON              **CASCADE LAW PLLC**
Case No. 2:22-cv-01859-RSM                      2707 Colby Avenue, Suite 1420
Page 2 of 2                                      Everett, WA 98201
                                                 P: (425) 998-8999 / info@cascade.law

                                                              **ER-26**

Exhibit 1

DocuSign Envelope ID: 12105B00-B900-4DFE-A287-48A68469AEB0

Case: 23-2835, 02/27/2024, DktEntry: 13.1, Page 28 of 243

Case 2:22-cv-01859-RAJ   Document 32   Filed 02/21/23   Page 4 of 4

San Francisco, CA 94108

1-415-960-3083

**YOU COULD RECEIVE**

PAY TO THE
ORDER OF:   Charles Olson

**$79,850.00**

**Seventy-Nine Thousand Eight Hundred Fifty and ⁰⁰/₁₀₀**   DOLLARS

PAY TO THE ORDER OF:          P01/40/1741/3

Charles Olson
3718 S. 256th Ct.
Kent, WA  98032-9726

YOU'RE PRE-APPROVED

*Kari McCormick*

Kari McCormick, Customer Success Manager

Offer Code: 111902

Learn more at Unison.com

⑈54689⑈ 27 05619⑈ 47732⑈006

---

Dear Charles Olson,

**Great news! You're pre-approved to access the equity locked in your home.**[1]

With Unison, you can receive $79,850 and use that money for any purpose you choose — **with no monthly payments and no interest**. Yes, you read that correctly. It's almost too good to be true.

**This offer is possible because Unison invests in your home — with you**. We pay you a percent of your home's current value. You make no payments to us until you sell. If the value of your home increases from its current value, when you sell, Unison will share in a portion of the increase and make a profit. If the value decreases, we incur a loss.[2] It's that simple.

**It's quick and easy.** Unison can provide the funds you need without the burden of additional debt. Contact us today!

Sincerely,

*Kari McCormick*

Kari McCormick,
Customer Success Manager
Unison

**NO INTEREST CHARGES**

Unlike a home equity loan or home equity lines of credit, you'll pay no interest with Unison.

**NO MONTHLY PAYMENTS**

Use the money now, for up to 30 years, and pay nothing until you decide to sell.

**NO ADDED DEBT**

By partnering with Unison you do not take on any additional debt.

As featured in:

**Bloomberg**   **Forbes**

abc   **USA TODAY.**

**YAHOO!** FINANCE   **MarketWatch**

**Los Angeles Times**   **CBS** 

**The New York Times**

ER-28

THE HONORABLE RICARDO S. MARTINEZ

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8   CHARLES BOYD OLSON, JANINE OLSON, and
    MAGGIE COLIN,

9                              Plaintiffs,          NO. 2:22-cv-01859-RSM

10          v.                                      **PLAINTIFFS' RESPONSE TO**
                                                    **DEFENDANT'S MOTION TO DISMISS THE**
11  UNISON AGREEMENT CORPORATION, a                 **OLSONS' CLAIMS AND COLIN'S CLAIMS**
    foregin corporation,                            **IN THE EVENT THE MOTION TO COMPEL**
12                                                  **COLIN TO ARBITRATION IS DENIED**

13                             Defendant.           **FEBRUARY 24, 2023**

14                                                  **ORAL ARGUMENT REQUESTED**
15
16
17
18
19
20
21
22
23
24
25
26
27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-29**

1

## TABLE OF CONTENTS

2
Page

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND........................................................................ 3

        A.      The Olsons entered into a HomeOwner Agreement with Unison ................... 3

        B.      Ms. Colin entered into a HomeOwner Agreement with Unison ...................... 4

        C.      Scores, if not hundreds, of other Washingtonians have entered into
                HomeOwner Agreements with Unison............................................................. 5

        D.      The terms of Unison's HomeOwner Agreement are nearly identical
                to the terms of a reverse mortgage................................................................ 5

        E.      Unison's marketing and acceptance documents contain misleading
                and deceptive information ................................................................................ 7

III.    ARGUMENT AND AUTHORITY ................................................................ 7

        A.      Unison's predatory financial product, whether it is an "option" or not,
                is unfair and its marketing practices are deceptive ......................................... 8

        B.      Unison's HomeOwner Agreement is a reverse mortgage that fails to
                comply with the Consumer Loan Act............................................................. 12

                1.      Washington's Deeds of Trust Act supports Plaintiffs'
                        equitable mortgage theory ................................................................... 12

                2.      Washington cases support Plaintiffs' equitable reverse
                        mortgage theory................................................................................... 13

        C.      Plaintiffs' Second Claim adequately pleads unfair conduct in violation
                of the CPA....................................................................................................... 16

        D.      Plaintiffs' Third Claim adequately pleads deceptive conduct in
                violation of the CPA........................................................................................ 17

        E.      Plaintiffs do not oppose dismissal of their Fourth Claim ................................ 20

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - i
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-30

F.    Plaintiffs' Fifth Claim became moot only after Unison waived the
      ability to enforce its impermissible fee-shifting provision ............................ 20

IV.   CONCLUSION ............................................................................................. 21

V.    LCR 7(E)(3) CERTIFICATION ..................................................................... 21

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - ii
Case No. 2:22-cv-01859-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-31

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 7

*Baker v. Riverside Cnty. Office of Educ.*,
584 F.3d 821 (9th Cir. 2009) ................................................................. 8

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ................................................................. 7

*Benanav v. Healthy Paws Pet Ins.*,
2021 WL 4319447 (W.D. Wash. Sept. 23, 2021) ....................................... 19

*Dvornekovic v. Looney*,
2013 WL 6571935 (W.D. Wash. Dec. 13, 2013), ...................................... 17

*Foster v. EquityKey Real Estate Invs., L.P.*,
2017 WL 1862527 (C.D. Cal. May 9, 2017) ............................................. 11

*Goldwater Bank, N.A. v. Elizarov*,
No. 21-00616 (C.D. Cal. Dec. 12, 2022) .................................................. 11

*Grigsby v. Valve Corp.*,
2013 WL 12310666 (W.D. Wash. Mar. 18, 2013); ..................................... 16

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................... 16

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ................................................................. 8

*Kreidler v. Pixler*,
2006 WL 3539005 (W.D. Wash. Dec. 7, 2006) .......................................... 16

*Nemykina v. Old Navy, LLC*,
461 F. Supp. 3d 1054 (W.D. Wash. 2020) ............................................... 16

*Shilling v. JPMorgan Chase & Co.*,
2017 WL 1479369 (W.D. Wash. Apr. 25, 2017) ..................................... 8, 9

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - iii
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

ER-32

*Street v. Amazon.com Servs., LLC*,
    2022 WL 834018 (W.D. Wash. Mar. 21, 2022) .................................................... 16, 17

*Vechirko v. Recontrust Co.*,
    2011 WL 3501724 (W.D. Wash. Aug. 10, 2011) .......................................................... 17

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003). ................................................................................... 16

**STATE CASES**

*Bain v. Metro. Mortg. Grp., Inc.*,
    175 Wash.2d 83, 285 P.3d 34 (2012)..................................................................... 2, 8

*Deegan v. Windermere Real Estate/Center-Isle, Inc.*,
    197 Wash. App 875, 391 P.3d 582 (2017) ................................................................... 2

*Gandee v. LDL Freedom Enters., Inc.*,
    176 Wn.2d 598, 293 P.3d 1197 (2013) ...................................................................... 20

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash.2d 778, 719 P.2d 531 (1986)) ............................................................2, 8, 17

*Hernandez v. Carpenter*,
    147 Wash. App. 1018 (2008) ...................................................................................... 15

*Hockley v. Hargitt*,
    82 Wash.2d 337, 510 P.2d 1123 (1973)..................................................................... 20

*Hoover v. Bouffleur*,
    74 Wash. 382, 133 P.3d 602 (1913)..................................................................1, 2, 15

*Kendrick v. Davis*,
    75 Wash.2d 456, 452 P.2d 222 (1969)....................................................................... 13

*Klem v. Wash. Mut. Bank*,
    176 Wash.2d 771, 295 P.3d 1179 (2013)................................................................. 2, 9

*Levy v. Butler*,
    93 Wash. App. 1001 (1998) ........................................................................................ 15

*Magney v. Lincoln Mut. Sav. Bank*,
    34 Wash. App. 45, 659 P.2d 537 (1983) ...................................................................... 8

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - iv
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-33**

*Mellon v. Reg'l Tr. Servs. Corp.*,
      182 Wash. App. 476, 334 P.3d 1120 (2014) ................................................. 2

*Morrill v. Title Guar. & Surety Co.*,
      94 Wash. 258, 162 P. 360 (1917) ............................................................... 12

*Panag v. Farmers Ins. Co. of Wash.*,
      166 Wash.2d 27, 204 P.3d 885 (2009) ............................................11, 14, 18

*Phillips v. Blaser*,
      13 Wash.2d 439, 125 P.2d 291 (1941) .................................................. 14, 15

*Rustad Heating & Plumbing Co. v. Waldt*,
      91 Wash.2d 372, 588 P.2d 1153 (1979) ..................................................... 12

*State v. CLA Estate Servs.*,
      23 Wash. App. 2d 279, 515 P.3d 1012 (2022) ........................................... 18

*State v. Kaiser*,
      161 Wash. App. 705, 254 P.3d 850 (2011) ............................................ 9, 18

*State v. Ralph Williams' NW Chrysler Plymouth, Inc.*,
      87 Wash.2d 298, 553 P.2d 423 (1976) ......................................................... 9

*Turner v. Gunderson*,
      60 Wash. App. 696, 807 P.2d 370 (1991) .................................................. 10

*Whitworth v. Entai Lumber Co.*,
      36 Wash.2d 767, 220 P.2d 328 (1950) ....................................................... 10

*Young v. Toyota Motor Sales, U.S.A.*,
      196 Wash.2d 310, 472 P.3d 990 (2020) ................................................ 15, 16

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ........................................................................................ 16

Fed. R. Civ. P. 12(b)(6) ................................................................................... 7

**STATE RULES**

Rule 9(b) .................................................................................................. 16, 19

Rule 12(b)(6) .................................................................................................. 7

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - v
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-34**

**STATE REGULATIONS**

Wash. Rev. Code § 19.86.090 ................................................................................. 15

Wash. Rev. Code § 31.04.208 ................................................................................. 12

Wash. Rev. Code § 31.04.505 ............................................................................. 6, 12

Wash. Rev. Code § 61.020 *et seq* ......................................................................... 13

Wash. Rev. Code § 61.24.005(3) ........................................................................... 13

**OTHER AUTHORITIES**

Wash. Practice, Contract Law & Practice § 19:42 ................................................. 10

18 Wash. Prac., Real Estate § 20.1 ....................................................................... 13

18 Wash. Prac., Real Estate § 20.2 ....................................................................... 12

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## I.     INTRODUCTION

Unison makes money by skimming the home equity that is many middle and low-income Americans' most valuable asset. Its product looks to a reasonable consumer like a reverse mortgage. But Unison claims it is exempt from all regulation of reverse mortgages and consumer loans because it styles its HomeOwner Agreement as an option contract. At the same time, Unison claims it can enforce the obligations created by its HomeOwner Agreement using the non-judicial foreclosure powers under Washington's Deeds of Trust Act, Wash. Rev. Code § 61.24. Unison identifies no authority suggesting that an option contract to buy property may be secured by a deed of trust giving the purported buyer (or optionee) the power to direct a trustee sale to enforce its interests. Unison's motion to dismiss Plaintiffs' Consumer Protection Act claims should be denied.

Many of the "facts" presented in Unison's motion come not from the Complaint or any documents reasonably incorporated into it. Instead, they are Unison's presentation of a counterfactual world in which it made a deal with Charles Boyd Olson and Janine Olson in 2007 before the Great Recession and ended up with its financial product in a loss position as a result. There are several problems with Unison's narrative. Unison didn't register to do business in the state of Washington until January 2014,[1] so it could not have loaned the Olsons or any other Washington homeowner money in 2007. And the fact that a financial institution may lose money on a real estate transaction does not mean its product is not a loan. Losses on mortgage loans are why Washington Mutual Bank is no longer around. What matters at the pleading stage are the <u>facts</u> alleged in Plaintiffs' complaint—not Unison's hypotheticals. And those facts show that Unison's HomeOwner Agreement is an unfair and deceptive product.

Unison's legal arguments fare no better. Washington courts have a long history of using equitable principles to reform unfair transactions relating to property, especially people's homes. In *Hoover v. Bouffleur*, the Washington Supreme Court unwound an unfair transaction

---

[1] *See* Washington Secretary of State business registration information for "Unison Agreement Corp." available at https://ccfs.sos.wa.gov under "Corporation Search."

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 1
Case No. 2:22-cv-01859-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

despite the defendant having carefully refrained from "the use of the words 'loan' and 'mortgage.'" 74 Wash. 382, 385, 133 P.3d 602, 603 (1913). The court treated a sale with an option to repurchase as a mortgage because looking at all the circumstances the court had "no doubt that the transaction was conceived and carried out with purpose to evade the law designed to prevent the taking of usury." *Id.* Those principles apply with equal force here and support Plaintiffs' theory that Unison's HomeOwner Agreement is an equitable reverse mortgage.

Plaintiffs' equitable reverse mortgage theory does require extending existing case law to the facts here, but reaching unfair or deceptive conduct that is cleverly designed to avoid regulation is among the Washington Consumer Protection Act's central purposes. Unison asks the Court to dismiss Plaintiffs' claims under the CPA but manages to cite only one Washington appellate decision on the statute—the Washington Supreme Court's *Hangman Ridge* decision establishing the elements of the claim. Unison fails to address the decades of subsequent authority allowing homeowners to bring CPA claims against corporations that skirt Washington's mortgage and lending laws for their own gain. *See, e.g., Klem v. Wash. Mut. Bank*, 176 Wash.2d 771, 295 P.3d 1179 (2013) (holding it is unfair or deceptive for a trustee to fail to delay a trustee sale in certain circumstances); *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wash.2d 83, 285 P.3d 34 (2012) (holding it is unfair or deceptive to list the Mortgage Electronic Registration System (MERS) as the beneficiary of a deed of trust when it does not hold the promissory note secured); *Mellon v. Reg'l Tr. Servs. Corp.*, 182 Wash. App. 476, 334 P.3d 1120 (2014) (reversing dismissal of CPA claim based on mortgage lenders' alleged bad faith proposal of an unreasonable forbearance agreement); *see also Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 197 Wash. App 875, 391 P.3d 582 (2017) (reversing dismissal of Whidbey Island homeowner claims based on realtors' failure to disclose noise caused by navy jets). Plaintiffs adequately allege unfair or deceptive conduct. Thus, Unison's motion to dismiss should be denied.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 2
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-37

## II.     FACTUAL BACKGROUND

**A.     The Olsons entered into a HomeOwner Agreement with Unison.**

Plaintiff Charles Boyd Olson purchased the property located at 3718 S 256th Ct, Kent, WA 98302 (the "Olson Property") in 1986 and has lived there since his purchase. Complaint ¶ 4.30. In 1990, he married Plaintiff Janine Olson, and she and her five children moved into the Olson Property. *Id.* ¶ 4.31. Charles Boyd Olson, Janine Olson, and their 40-year-old disabled son continue to reside at the Olson Property. *Id.* ¶ 4.33.

In 2019, the Olsons faced financial difficulty arising in part from Ms. Olson being cut off from L&I payments and from the costs of caring for their disabled son and some of their grandchildren. *Id.* ¶ 4.36. Most of their wealth was tied up in their home, and they feared they would not be able to pay their bills. *Id.* ¶ 4.37. Around this time, the Olsons received a flyer in the mail from Unison. *Id.* ¶ 4.38; *see also* Declaration of Charles Boyd Olson ("Boyd Olson Decl."), ¶ 2 & Ex. 1. The flyer promised that the Olsons could "access the equity locked in [their] home" by entering into an agreement with Unison that would include "no monthly payments and no interest." Complaint ¶ 4.38; Boyd Olson Decl., Ex. 1. After calling to inquire about Unison's product, the Olsons applied for and ultimately signed Unison's HomeOwner Agreement. Complaint ¶¶ 4.39-4.40. The agreement provided that Unison would make an "investment payment" of $64,750 for an option to purchase a 70% ownership interest in the Olson Property, which was originally valued at $370,000. *Id.* ¶ 4.40. Unison charged the Olsons $2,525 in "transaction fees." *Id.* ¶ 4.41. Unison recorded a deed of trust securing the Olsons' performance of their obligations under the HomeOwner Agreement. *Id.* ¶ 4.42.

In 2021, the Olsons began exploring the possibility of selling the Olson Property and using the proceeds to make a down payment on another home. *Id.* ¶ 4.43. However, when they began calculating the amount they would receive from such sale, they discovered that after accounting for the costs associated with preparing and listing the property for sale, the amount remaining on their first mortgage, and the amount Unison would be entitled to under the HomeOwner Agreement, they would receive almost nothing and would have no down payment

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 3
Case No. 2:22-cv-01859-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  for another home. *Id.* Essentially, the HomeOwner Agreement ate up all of the equity they had

2  built in their home over 36 years of ownership, and the Olsons are stuck living there.

3  **B.      Ms. Colin entered into a HomeOwner Agreement with Unison.**

4          Plaintiff Maggie Colin is an 85-year-old retired dialysis nurse who rented her residence

5  for all of her working life. *Id.* ¶ 4.44. When she retired at the age of 74, she was finally able to

6  purchase a home for the first time. *Id.* In December 2011, Ms. Colin purchased the property

7  located at 900 Aurora Ave N Apt 206, Seattle, WA 98109 (the "Condominium"). *Id.* ¶ 4.45. She

8  has lived there ever since.

9          In 2019, Ms. Colin faced financial difficulty because she needed dental implants that

10  cost approximately $60,000 and did not have sufficient cash on hand to cover them. *Id.* ¶ 4.47.

11  Around this time, Ms. Colin received a flyer in the mail from Unison. *Id.* ¶ 4.48. The flyer

12  promised that Ms. Colin could "access the equity locked in [her] home" by entering into an

13  agreement with Unison that would include "no monthly payments and no interest." *Id.* Ms.

14  Colin applied for and ultimately signed a HomeOwner Agreement with Unison. *Id.* ¶¶ 4.49-4.50.

15  The agreement provided that Unison would make an "investment payment" of $60,000 for an

16  option to purchase a 42.48% ownership interest in the Condominium, which was originally

17  valued at $565,000. *Id.* ¶¶ 4.51-4.52. Unison charged Ms. Colin $2,340 in "transaction fees." *Id.*

18  ¶ 4.53. Unison recorded a deed of trust securing Ms. Colin's performance of her obligations

19  under the HomeOwner Agreement. *Id.* ¶ 4.54.

20          After entering into the HomeOwner Agreement, Ms. Colin attempted to refinance the

21  Condominium. *Id.* ¶ 4.56. When she reached out to a bank to inquire, however, she was told

22  that because the Condominium was subject to the HomeOwner Agreement, the bank was

23  unwilling to offer her refinancing. *Id.* She then asked Unison about how she could terminate her

24  HomeOwner Agreement. *Id.* ¶ 4.57. Unison told Ms. Colin that she would owe hundreds of

25  thousands of dollars to terminate her agreement. *Id.*

26

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 4
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-39**

**C.     Scores, if not hundreds, of other Washingtonians have entered into HomeOwner Agreements with Unison.**

The Olsons and Ms. Colin are not alone. A non-exhaustive search of public records in a few Washington counties identified at least 87 homes in Washington that have deeds of trust recorded in favor of Unison. *Id.* ¶ 5.3. And the HomeOwner Agreement is a form agreement. *Id.* ¶ 5.5. Although the specifics of the encumbered property, the original property value, the loan amount, and the percentage interest Unison retains an "option" to purchase vary by agreement, the remainder of the terms are substantially identical in all HomeOwner Agreements. Plaintiffs allege that the terms of these form agreements are unfair and deceptive, and that they should be treated as reverse mortgages because that is functionally what they are. As a result, Plaintiffs bring this as a class action on behalf of all persons who have entered into a HomeOwner Agreement with Unison on a property located in Washington. *Id.* ¶ 5.1.

**D.     The terms of Unison's HomeOwner Agreement are nearly identical to the terms of a reverse mortgage.**

The Olsons and Ms. Colin each signed before a notary five documents, which "together" are their HomeOwner Agreements with Unison. Haugen Decl., ¶¶ 8, 14 (describing five documents signed "together" as the HomeOwner Agreements). Plaintiffs allege that the HomeOwner Agreement is functionally a reverse mortgage under Washington law, but is deliberately structured to avoid the rules and regulations surrounding reverse mortgage lending.

Under the Consumer Loan Act, a "Reverse Mortgage Loan" is defined as "a nonrecourse consumer credit obligation in which:"

> (a) A mortgage, deed of trust, or equivalent consensual security interest securing one or more advances is created in the borrower's dwelling;
>
> (b) Any principal, interest, or shared appreciation or equity is due and payable, other than in the case of default, only after:
>
> > (i) The consumer dies;
> >
> > (ii) The dwelling is transferred; or

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED - 5
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-40

(iii) The consumer ceases to occupy the dwelling as a dwelling; and

(c) The broker or lender is licensed under Washington state law or exempt from licensing under federal law.

Wash. Rev. Code § 31.04.505; *see also* Complaint ¶ 4.18.

Unison's HomeOwner Agreement is a non-recourse obligation because Unison's security under the Agreement is the consumer's home, and Unison cannot recover payment from other assets. Complaint ¶ 4.19. Under Unison's HomeOwner Agreement, Unison can exercise its option such that payment becomes due only if the homeowner dies, sells their home, defaults, or at the end of the 30-year term. *Id.* ¶ 4.22; Haugen Decl., Ex. 1-1 at § 6.1 & Ex. 2-1 at § 2.[2] Unison's Homeowner Agreement requires the homeowner to live in the home as their primary residence throughout the term of the agreement. Complaint ¶ 4.22; Haugen Decl., Ex. 1-2 at § 3.2 & Ex. 2-2 at § 2.1(b). These are the essential elements of a reverse mortgage loan under Washington law.

The form HomeOwner Agreement bears many other indicators of mortgage lending. Just as lenders often do during a refinancing or reverse mortgage approval process, Unison requires homeowners to pay off other debts from the proceeds of its Initial Payment to them. *See* Haugen Decl., Ex. 4, at 6 (showing "schedule of debts to be paid at closing" in Olsons' offer package). Homeowners are also required to pay Unison's "transaction fees," typically amounting to $2,000 to $3,000, out of Unison's Initial Payment. Complaint ¶¶ 4.41, 4.53; *see also* Haugen Decl., Ex. 3, at 1 & Ex. 4, at 1 (listing Unison transaction fee). These fees are akin to mortgage origination fees. Unison's HomeOwner Agreement also contains a requirement that the homeowner will maintain insurance on the property, Haugen Decl., Ex. 1-2 at § 4.D.2.6 & Ex. 2-2 at § 7.1(c)(ix); a requirement that the homeowner warrant that there has been no

---

[2] It appears that Unison updated its form agreements in the summer of 2019, between the time the Olsons entered into their HomeOwner Agreement with Unison in March 2019 and when Ms. Colin entered into her in November 2019. *See, e.g.,* Haugen Decl., Ex. 1-1 (footer indicates form for Option Agreement was revised on 7/09/2019 and 8/30/2019); Ex. 1-2 (revised on 6/26/2019). Any differences between the Olsons' HomeOwner Agreement and Ms. Colin's HomeOwner Agreement are primarily the result of this form updating, but the key terms of the agreements remain substantially the same.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED - 6
Case No. 2:22-cv-01859-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   "material change in your financial condition since your application" to Unison, Haugen Decl., Ex.

2   1-2 at § 2.10 & 2-2 at § 2.5; and a term allowing Unison to make "protective advances" to

3   preserve the value of the property securing the homeowners' obligations to Unison, Haugen

4   Decl., Ex. 1-2 at § 13 & 2-2 at § 8.11.

5   **E.     Unison's marketing and acceptance documents contain misleading and deceptive

6           information.**

7           Unison's solicitation of Plaintiffs to enter into a HomeOwner Agreement with them

8   began with a standard Unison mailer advertising Unison's product. *See* Complaint ¶¶ 4.38,

9   4.48; *see also* Boyd Olson Decl., Ex. 1. The mailer's first portion mimics the appearance of a

10  check, in Mr. Olson's case for the sum of $79,850. *See id.* The check is stamped "You're

11  Preapproved." *See id.* The mailer further explains that Unison's product includes "no monthly

12  payments and no interest" and that "[u]nlike a home equity loan or home equity lines of credit,

13  you'll pay no interest with Unison." *See id.*; *see also* Complaint ¶¶ 4.38, 4.48.

14          Similarly, in Unison's offer documents, Unison represents that the "Unison Investment

15  Payment is not a loan that you have to pay back, nor do you ever pay interest on this amount."

16  Haugen Decl., Ex. 3, at 9. But in the very same document, Unison explains that it will record a

17  deed of trust on the encumbered property and that it will have a right to initiate foreclosure

18  proceedings upon an event of default. *See id.* at 9-10.

19                          **III.     ARGUMENT AND AUTHORITY**

20          The court should dismiss under Rule 12(b)(6) only if the complaint fails "to state a claim

21  upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a

22  complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

23  is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

24  omitted). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

25  theory or insufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police

26  Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The court accepts all facts alleged in the complaint as

27  true and draws all inferences in the light most favorable to the non-moving party. *Baker v.*

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 7
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-42**

*Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The court may consider documents not attached to the complaint in ruling on a Rule 12 motion only when the plaintiff's claim depends on the contents of the document and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**A.      Unison's predatory financial product, whether it is an "option" or not, is unfair and its marketing practices are deceptive.**

Unison's first argument, that the entire complaint must be dismissed because its product is an option contract (Motion at 12-15), is not tied to any of the elements of Plaintiffs' Consumer Protection Act claims. To prevail on their CPA claims, Plaintiffs must show (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to her business or property; and (5) causation. *Bain*, 175 Wash.2d at 115, 285 P.3d at 50 (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986)). As Unison's motion makes no direct challenge to elements two through five anywhere in its motion, Plaintiffs understand its argument to be directed only at the first element: that there is nothing unfair or deceptive about Unison's conduct because option contracts to purchase real estate are permissible under Washington law.

The CPA does not define the terms "unfair" or "deceptive," so the Washington Supreme Court has "allowed the definitions to evolve through a gradual process of judicial inclusion and exclusion." *Klem*, 176 Was.2d at 785, 295 P.3d 1179 at 1186. A CPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Id.* at 787, 295 P.3d at 1187. An act or practice "can be unfair without being deceptive." *Id.*

An act or practice is unfair under the CPA if it is "unethical, oppressive, or unscrupulous, among other things." *Id.* at 786, 295 P.3d at 1186 (quoting *Magney v. Lincoln Mut. Sav. Bank*, 34 Wash. App. 45, 57, 659 P.2d 537 (1983)) (internal quotation marks omitted); *see also Shilling*

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 8
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-43**

1   *v. JPMorgan Chase & Co.*, 2017 WL 1479369, at *11 (W.D. Wash. Apr. 25, 2017) (quoting *Klem*

2   and applying the cited rules to deny second mortgage lender's motion to dismiss homeowner's

3   claims). "Grossly unfair or unconscionable contracts also violate the CPA." *State v. Kaiser*, 161

4   Wash. App. 705, 722, 254 P.3d 850, 859 (2011) (citing *State v. Ralph Williams' NW Chrysler*

5   *Plymouth, Inc.*, 87 Wash.2d 298, 305–309, 553 P.2d 423 (1976)).

6           Plaintiffs' theory is that Unison's financial product, which functions just like a reverse

7   mortgage but fails to comply with Washington's regulations for those risky financial products,

8   as well as Unison's marketing of the loans, is unfair or deceptive. Unison makes the product

9   look like a mortgage loan, including by charging transaction fees that are just origination fees by

10  another name, referring to the Agreement "closing" just like a mortgage or refinance, assessing

11  an applicant's creditworthiness before approval (First Olson Decl., ECF No. 24, ¶ 2; Colin Decl.,

12  ECF No. 25, ¶ 2; Haugen Decl., ECF No. 19, Ex. 1-2 at § 2.10 (creditworthiness material)), and

13  securing homeowners' obligations under the HomeOwner Agreement with a recorded deed of

14  trust.

15          Plaintiffs also make an unfair claim based on the theory that Unison's HomeOwner

16  Agreement product is simply grossly unfair or unconscionable. For example, in exchange for

17  Unison's Initial Payment of $64,750 to the Olsons in March 2019, Unison now has the potential

18  of reaping a repayment of over $186,000 less than four year later,[3] nearly triple Unison's

19  original investment. Unison's product thus operates to deprive homeowners of nearly all of the

20  equity they worked to build in their homes. The Olsons have made mortgage payments for 36

21  years on the Olson Property, and yet they now cannot reap any benefit from it due to Unison's

22  HomeOwner Agreement. That shocks the conscience, is unethical, oppressive, or unscrupulous,

23  and is therefore unfair under the CPA. *Klem*, 176 Was.2d at 786, 295 P.3d at 1186.

24

25

26  [3] On February 15, 2023, Redfin estimated the value of the Olson Property to be $543,600. If the Olsons sold their home for that amount, Unison would exercise its option to purchase a 70% interest in their property. Seventy

27  percent of that hypothetical sale price amounts to $380,520 (0.7 x 543,000). Subtracting Unison's purchase price balance of $194,250 would leave Unison recovering payment of $186,270 from such sale.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 9
Case No. 2:22-cv-01859-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   Unison's framing of its predatory product as an option contract does not remove it from

2   the purview of the CPA. Nor has Unison established that the HomeOwner Agreement is an

3   option contract to purchase property like those in *Whitworth v. Entai Lumber Co.*, 36 Wash.2d

4   767, 220 P.2d 328 (1950) and *Turner v. Gunderson*, 60 Wash. App. 696, 807 P.2d 370 (1991). In

5   both those cases, the option created under the contract was to buy the property outright for a

6   set price. *Whitworth*, 36 Wash.2d at 768; *Turner*, 60 Wash. App. at 698. Both cases involved

7   commercial property, not a consumer's home. *Whitworth*, 36 Wash.2d at 768 (purchase of a

8   mill); *Turner*, 60 Wash. App. at 698 (purchase of "commercial property" in Spokane). In both

9   cases, the option was for a limited term—one month in *Whitworth*, 36 Wash.3d at 768, and ten

10  months in *Turner*, 60 Wash. App. at 698. In neither case is there any discussion of "transaction

11  fees" akin to closing costs associated with purchase of the option, nor was the option contract

12  secured by a recorded deed of trust.

13  Similarly, Washington Practice's form option contract to purchase real property is for an

14  outright purchase of the property at a set price with a limited term (the example used is six

15  months), provides for no transaction fees, and does not contemplate recording a deed of trust

16  to secure the option—presumably because it is obvious that one cannot enforce an <u>option to

17  purchase</u> property by <u>selling</u> the subject property at a non-judicial foreclosure sale. *Compare*

18  Wash. Practice, Contract Law & Practice § 19:42 (short option contract form) *with* Haugen

19  Decl., Exs. 1-1–1-5, 2-1–2-5 (Unison's HomeOwner Agreements with Ms. Colin and the Olsons)

20  (five documents that are together more than 50 pages long).

21  Unison's "option" contract, in contrast, was to purchase a percentage "interest" in

22  Plaintiffs' homes—not to purchase the property outright at any time. The option lasts for a

23  term of up to thirty years, required the consumer to pay "transaction fees" to obtain the

24  consideration for the "option," and was secured by a deed of trust. In short, nothing in

25  *Whitworth*, *Turner*, or the Washington Practice form authorizes Unison's conduct. So even if

26  "the Option is an option" (motion at 15), and is not recharacterized as a loan, the terms

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 10
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-45

1   included in Unison's HomeOwner Agreement are unethical, oppressive, unscrupulous, grossly

2   unfair, or unconscionable—and therefore unfair under the CPA.

3        Nothing in *Goldwater Bank, N.A. v. Elizarov*, No. 21-00616 (C.D. Cal. Dec. 12, 2022),

4   changes that conclusion. The homeowner in that case was a licensed real estate broker who

5   used "$785,741.36" in cash proceeds from the sale of his property to buy a second property

6   without paying his mortgage lender. Dkt. No. 22, Ex. 1 at 3, 7. Plaintiffs here are not

7   sophisticated investors or real estate industry professionals who could be expected to

8   understand the ins and outs of mortgage lending. And whether Unison's HomeOwner

9   Agreement is characterized a "loan" under the law of California with a sophisticated investor as

10  the other party has no bearing on whether Unison's financial product is unfair or deceptive

11  under Washington law. Thus, the *Goldwater Bank* court's statement in a footnote that Unison's

12  option agreement was not a loan (*id.* at 3 n.14) is not directly applicable to Plaintiffs' claims

13  here.

14       The court in *Foster v. EquityKey Real Estate Invs., L.P.*, 2017 WL 1862527 (C.D. Cal. May

15  9, 2017) ruled that a financial product that does appear to be similar to Unison's was not a loan

16  under TILA or California law. But *Foster* construes different contractual terms (which are not

17  included in the order) under different laws (TILA and California state law) than those at issue

18  here.

19       Here, the question is whether Plaintiffs have alleged facts sufficient to support their

20  claims that Unison's conduct was unfair or deceptive because its HomeOwner Agreement

21  product is functionally a reverse mortgage loan that failed to comply with Washington law

22  governing those risky products, or because the outcome of the transaction is so oppressive and

23  unconscionable that it is unfair. They can prevail on these theories even if the Court ultimately

24  agrees that Unison's HomeOwner Agreement was not a loan. Indeed, the CPA broadly prohibits

25  unfair or deceptive acts or practices because "the legislature intended to provide sufficient

26  flexibility to reach unfair or deceptive conduct that inventively evades regulation." *Panag v.*

27  *Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 49, 204 P.3d 885, 895 (2009). To the extent the

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 11
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

HomeOwner Agreement not a loan, that description fits Unison's HomeOwner Agreement product to a tee.

**B.    Unison's HomeOwner Agreement is a reverse mortgage that fails to comply with the Consumer Loan Act.**

Unison's product meets nearly all the criteria for a "reverse mortgage loan" under Washington's Consumer Loan Act, RCW § 31.04.505: the HomeOwner Agreement creates a nonrecourse obligation because the HomeOwner Agreement does not allow Unison to recover from Plaintiffs' assets other than from the sale of their properties (Complaint ¶ 4.19); Plaintiffs' obligations to Unison were secured with deeds of trust (Complaint ¶¶ 4.20, 4.42, 4.54); and Unison may only "exercise its option," and claim the "shared appreciation or equity" upon Plaintiffs dying, selling their homes, defaulting on their obligations (including by moving out of their homes), or the end of a thirty-year term (Complaint ¶ 4.22). Because Unison's HomeOwner Agreements have the same characteristics as reverse mortgage loan, they should be treated as such. Violations of the Consumer Loan Act with respect to practices governed by it are per se violations of the CPA, Wash. Rev. Code § 31.04.208, and thus Plaintiffs' First Claim for Relief is adequately pled.

1.      Washington's Deeds of Trust Act supports Plaintiffs' equitable mortgage theory.

Plaintiffs' legal theory is supported by Washington rules governing deeds of trust. A deed of trust that gives a trustee the power to sell a consumer's home in a non-judicial foreclosure sale at the direction of the beneficiary is a mortgage. *See* 18 Wash. Prac., Real Estate § 20.2 ("[A] deed of trust is a three-party, power of sale mortgage."). It is "well established in Washington and elsewhere, that a deed that is given as security for an obligation is a mortgage." *Id.* The Washington Supreme Court has expressly held that a statutory deed of trust is "indeed a species of mortgage." *Rustad Heating & Plumbing Co. v. Waldt*, 91 Wash.2d 372, 376, 588 P.2d 1153, 1155 (1979). The Washington Supreme Court has also held that "a nonstatutory trust deed given as security is a mortgage." *Id.* (citing *Morrill v. Title Guar. & Surety Co.*, 94 Wash. 258, 162 P. 360 (1917)). The deeds of trust Unison recorded on the Olsons'

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED - 12
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-47**

1   home and Ms. Colin's condo were thus mortgages. *See Kendrick v. Davis*, 75 Wash.2d 456, 460,

2   452 P.2d 222, 225–26 (1969) ("An instrument may in form be a deed or an assignment, but, if

3   the intent is to use the property as security, it will be a mortgage.").

4          Unison's recorded deeds of trust give it the power to "foreclose this Unison

5   HomeOwner Security Interest as a mortgage" through a trustee's sale as permitted under

6   "applicable law." Haugen Decl., Ex. 1-3, at 5 & Ex. 2-3, at 7. The law authorizing a trustee to

7   foreclose a deed of trust as a mortgage by sale on property located in the state of Washington

8   is Washington's Deeds of Trust Act, Wash. Rev. Code § 61.020 *et seq.* There is no other

9   "applicable law" to which Unison's Deeds of Trust can refer. 18 Wash. Prac., Real Estate § 20.1.

10  The Deed of Trust Act confirms that Unison's HomeOwner Agreement is a mortgage. Under the

11  statute, "Borrower" means a person "that is liable for all or part of the obligations secured by

12  the deed of trust," Wash. Rev. Code § 61.24.005(3). The Act provides that: "Except as provided

13  in this chapter, a deed of trust is subject to all laws relating to mortgages on real property." *Id.*

14  § 61.24.020. It provides that county auditors "shall record the deed as a mortgage." *Id.* Thus,

15  despite Unison's attempts to structure its agreements to avoid the mortgage rules, Unison's

16  HomeOwner Agreements with Plaintiffs are mortgages and are most like a reverse mortgage.

17         2.      Washington cases support Plaintiffs' equitable reverse mortgage theory.

18         Unison repeats throughout its motion that its option contract not a loan. But the

19  Washington Supreme Court has rejected financial institutions' arguments that parties can

20  contract around statutory requirements, particularly Deeds of Trust Act requirements. *Bain*,

21  175 Wash.2d at 104–108, 285 P.3d at 44–46. The court specifically rejected MERS' argument

22  that "borrowers should be held to their contracts," *id.* at 104, 285 P.3d at 44, because there is

23  no indication that "the legislature intended to allow the parties to vary [statutory nonjudicial

24  foreclosure procedures] by contract," *id.* at 1080, 285P.3d at 46. Similar analysis applies here:

25  there is no indication that the Washington legislature intended to allow financial institutions to

26  offer products that look just like reverse mortgages, secure those obligations with mortgages

27  under the Deeds of Trust Act, but avoid the requirements in the Consumer Loan Act designed to

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 13
Case No. 2:22-cv-01859-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-48**

1  protect Washington homeowners. Rather, the CPA was intended to reach such unfair or

2  deceptive conduct that "inventively evades regulation." *Panag*, 166 Wash.2d at 49, 204 P.3d at

3  895.

4         The Washington Supreme Court has not hesitated to recharacterize agreements

5  between the parties to protect property owners from lenders' predatory conduct. In *Phillips v.*

6  *Blaser*, 13 Wash.2d 439, 445, 125 P.2d 291 (1941), the court recharacterized a sale with an

7  option to repurchase as an equitable mortgage because "[t]o hold otherwise would permit the

8  extraction from [the property owner] of usurious interest or defeat his equity of redemption

9  and force him to relinquish his rights in the real property without consideration, which would

10 be unconscionable."

11        The circumstances here are similar to those in *Phillips*. First, Plaintiffs were all facing

12 financial difficulties when they entered into their HomeOwner Agreements with Unison.

13 Complaint ¶¶ 4.36-4.37, 4.47. While Plaintiffs do not know how their names ended up on

14 Unison's marketing mailing list, discovery may reveal that Unison had information about the

15 financial difficulties they faced when it targeted them with marketing materials. Second, Unison

16 argues that the defendant in *Phillips* paid the property owner virtually no consideration while

17 Unison made a large payment constituting valuable consideration to Plaintiffs. The defendant in

18 *Phillips* paid the property owner approximately 6.6% of the value of the property ($299 is 6.64%

19 of $4,500). Unison's $64,750 Initial Payment to the Olsons was approximately 17.5% of the

20 $370,000 appraised value of their home in 2019. But the Olsons only received $48,740.03 of the

21 $64,750. That is because Unison's Initial Payment to the Olsons was reduced by Unison's

22 transaction fees and the other debts Unison required them to pay at "closing." *See* Haugen

23 Decl., Ex. 4, at 2, 6 (listing transaction fee of $2,525 and "Debts To Be Paid At Closing" of

24 $13,484.97). The Olsons' proceeds from the transaction of $48,740.03 were just over 13% of

25 the appraised value of their home. And Ms. Colin's $60,000 Initial Payment, reduced to $57,660

26 after transaction fees, was just over 10% of the $565,000 appraised value of her home. The

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  facts here are therefore similar to those that led the court to recharacterize an unfair property

2  transaction as an equitable mortgage in *Phillips*.

3       The Washington Supreme Court's analysis in *Hoover v. Bouffleur*, 74 Wash. at 385–87,

4  133 P. at 603–04, is also persuasive here. In *Hoover*, a property owner behind on mortgage

5  payments gave the defendant a deed to property worth more than $4,000 in exchange for a

6  $228.75 payment and an option to repurchase within 90 days. *Id.* The court rejected the

7  defendant's argument that the transaction was not a loan because that was not the label the

8  parties applied to the transaction. *Id.* at 385, 133 P. at 603 (defendant "was careful to refrain

9  from the use of the words 'loan' and 'mortgage'"). The court considered the evidence

10 presented and concluded it "fails to satisfy us that the transaction was not, after all,

11 substantially one of lending and borrowing." *Id.* at 386, 133 P. at 603. The relevant principle is

12 that a party cannot "evade the law designed to prevent the taking of usury" simply by

13 structuring a transaction as something other than a loan. *Id.* at 387, 133 P. at 603.

14      While *Phillips* and *Hoover* are old cases, Washington appellate courts continue to apply

15 them to reform unfair transactions, just the court should do here. *See Hernandez v. Carpenter*,

16 147 Wash. App. 1018, at *1, 5 (2008) (unpublished) (concluding transaction between parties

17 "constituted an equitable mortgage" under *Phillips* and *Hoover*); *Levy v. Butler*, 93 Wash. App.

18 1001, at *2 (1998) (unpublished) (same). Plaintiffs cite these unpublished decisions merely to

19 show that *Phillips* and *Hoover* remain vital despite their age.

20      Unison further argues that a consumer cannot obtain equitable relief unless there is no

21 adequate remedy at law. But the CPA expressly provides that a consumer may obtain actual

22 damages, treble damages, <u>and</u> injunctive relief. Wash. Rev. Code § 19.86.090. And Unison

23 argues that Plaintiffs are not entitled to any relief at all—it cannot seek dismissal of her

24 damages claims and at the same time maintain that they preclude her from obtaining equitable

25 relief. Finally, Unison's argument that this is merely a case of "optioner's remorse" is

26 unpersuasive. "'Buyer beware' is not the law in the state of Washington." *Young v. Toyota*

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 15
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-50**

1  *Motor Sales, U.S.A.*, 196 Wash.2d 310, 313, 472 P.3d 990, 992 (2020) (holding that materiality is

2  not necessarily required to establish a CPA violation).

3  **C.  Plaintiffs' Second Claim adequately pleads unfair conduct in violation of the CPA.**

4  After spending most of its brief attempting to explain why its product is "not a loan,"

5  Unison turns to Rule (9)(b) to argue that Plaintiffs' CPA claims must be dismissed for failure to

6  plead fraud with particularity. Unison is wrong.

7  Rule 9(b) requires that a claim of fraud "state with particularity the circumstances

8  constituting fraud." Fed. R. Civ. P. 9(b). When the rule applies, it requires the plaintiff to plead

9  the "who, what, when, where, and how" of the misconduct alleged. *Kearns v. Ford Motor Co.*,

10  567 F.3d 1120, 1126 (9th Cir. 2009). But the rule does not necessarily apply to statutory

11  consumer claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). The

12  heightened pleading standard applies only when the plaintiff alleges a "unified course of

13  fraudulent conduct" or the claim is grounded in fraud. *Id.* at 1103-05.

14  Courts in this district have applied those rules and held that "not all claims brought

15  under the Washington CPA must be pled with the specificity prescribed by Rule 9(b)." *Street v.*

16  *Amazon.com Servs., LLC*, 2022 WL 834018, at *3 (W.D. Wash. Mar. 21, 2022). This is because

17  there is "no requirement" under the CPA that the defendant's unfair or deceptive conduct was

18  "knowing or intentional as would be required with fraud." *Grigsby v. Valve Corp.*, 2013 WL

19  12310666, at *3 (W.D. Wash. Mar. 18, 2013); *see also Kreidler v. Pixler*, 2006 WL 3539005, at

20  *11 (W.D. Wash. Dec. 7, 2006) ("[A] comparison of the elements required for CPA claim and for

21  a fraud claim show that the CPA claim does not sound in fraud."); *Nemykina v. Old Navy, LLC*,

22  461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020) (plaintiff who "repeatedly invokes claims of

23  fraud" must meet Rule 9 pleading requirements but CPA claim alleging that defendant's

24  conduct "had a *capacity* to deceive" would not be held to that standard) (emphasis in original).

25  Plaintiffs' Second Claim is that Unison's financial product is unfair even if there is no per

26  se violation of the Consumer Protection Act. Plaintiffs allege that Unison's conduct, which is

27  selling a financial product that is the functional equivalent of a reverse mortgage but

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 16
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    structuring the transaction to avoid state consumer protection regulations, is unfair. Complaint

2    ¶¶ 4.15-4.28. Unison acted unfairly by marketing its predatory financial product to Plaintiffs

3    during periods of financial difficulty for them (*id.* ¶¶ 4.36, 4.38, 4.47-4.48), securing Plaintiffs'

4    obligations with Deeds of Trust that claim on their face can be foreclosed "as a mortgage" (*id.* ¶

5    4.42, 4.54; Haugen Decl., Ex. 1-3, at 5 & Ex. 2-3, at 7), charging them origination fees like on a

6    loan transaction (Complaint ¶ 4.41, 4.53), and ultimately eating up nearly all of their equity in

7    their homes (*id.* ¶¶ 4.43, 4.57). *See also id.* ¶ 7.2 ("The conduct described … is unfair"). Unison's

8    conduct was unethical, oppressive, or unscrupulous. *Id.* ¶ 7.3. None of these allegations sound

9    in fraud, so they are not subject to the requirements of Rule 9. And Unison makes no other

10   argument about why Plaintiffs' allegations are insufficient to allege unfair conduct under the

11   CPA (see Mot. at 21-22).

12        Neither *Vechirko v. Recontrust Co.*, 2011 WL 3501724 (W.D. Wash. Aug. 10, 2011), nor

13   the cases Unison cites to support its argument, establish any rule that CPA claims are always

14   subject to Rule 9(b). Both cases involved pro se plaintiffs and the short orders contain no

15   discussion of the relevant allegations. In *Dvornekovic*, the plaintiff was actually making a fraud

16   claim. 2013 WL 6571935, at *2. And *Verchirko*, 2011 WL 3501724, at *2, merely says that "to

17   the extent Plaintiffs allege a claim for fraud," they failed to do so with particularly. Plaintiffs'

18   Second Claim for Relief based on unfair conduct is not subject to Rule 9(b).

19   **D.    Plaintiffs' Third Claim adequately pleads deceptive conduct in violation of the CPA.**

20        Similarly, Plaintiffs' deceptive conduct claim does not sound in fraud because it does not

21   depend on any allegation that Unison's communications were intentionally deceptive. *See*

22   *Street*, 2022 WL 834018, at *3 (plaintiffs not claiming defendant had an intent to deceive don't

23   have to meet Rule 9(b)(requirements). Rather, Plaintiffs allege that marketing a product that

24   functions like a reverse mortgage but calling it an "option" in order to avoid lending regulations

25   has the capacity to deceive a reasonable consumer.

26        An act that has the *capacity* to deceive a substantial portion of the public is deceptive.

27   *Hangman Ridge*, 105 Wash.2d at 785, 719 P.2d at 535. "[N]either intent to deceive nor actual

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 17
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-52**

1  deception is required." *Kaiser*, 161 Wash. App. at 719, 254 P.3d at 858. "[A] communication

2  may contain accurate information yet be deceptive." *Panag*, 166 Wash.2d at 50, 204 P.3d at

3  896. "Deception exists if there is a representation, omission or practice that is likely to mislead

4  a reasonable consumer." *Id.* (internal quotation marks omitted). "A communication may be

5  deceptive by virtue of the net impression it coveys, even though it contains truthful

6  information." *State v. CLA Estate Servs.*, 23 Wash. App. 2d 279, 292, 515 P.3d 1012, 1022 (2022)

7  (quoting *Panag*, 166 Wash.2d at 50, 204 P.3d at 896).

8        Unison's documents, including its marketing materials and the documents it directed

9  Plaintiffs to sign to accept its offer before it provided them with the actual HomeOwner

10  Agreement, conveyed the net impression that Unison's product was something it was not.

11  Unison's practice of calling what is functionally a reverse mortgage an option contract has the

12  capacity to deceive a substantial portion of the public.

13        This is particularly so because Unison's application and financing process has all the

14  trappings of a loan. Unison required Plaintiffs to provide financial and credit information to

15  obtain funding. Olson Decl., ECF No. 24 ¶ 2; Colin Decl., ECF No. 24 ¶ 2. The property owner's

16  credit history would have no relevance to a true "option" contract—if anything it would be the

17  buyer's (i.e. Unison's) credit and ability to pay the option price that might matter under a true

18  option contract to purchase property. Plaintiffs had to sign voluminous documents before a

19  notary in a process that Unison referred to as a "closing." The notarized documents include

20  deeds of trust giving Unison the power to sell the underlying property in a nonjudicial

21  foreclosure sale. Complaint ¶¶ 4.42, 4.54. Plaintiffs had to pay Unison's "transaction fees,"

22  which are nothing but loan origination fees by another name. *Id.* ¶¶ 4.41, 4.53. A reasonable

23  consumer's net impression from this process is that they are obtaining a legal and regulated

24  mortgage product. And disclaimers like Unison's statement that the homeowner should confer

25  with others before signing its HomeOwner Agreement are not a cure-all for such misleading

26  practices. *See CLA Estate Servs.*, 23 Wash. App. 2d at 291–293, 515 P.3d at 1022 (net impression

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 18
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-53**

1    conveyed by defendants' materials that revocable trusts are preferable to wills was misleading

2    statement not cured by disclaimers).

3         Unison's mailer echoes this deception. The mailer's upper portion mimics the

4    appearance of a check, in Mr. Olson's case for the sum of $79,850 made out to him. Boyd Olson

5    Decl., Ex. 1; *see also* Complaint ¶¶ 4.38, 4.48. The check is stamped "You're Preapproved."

6    Boyd Olson Decl., Ex. 1. The mailer further explains that Unison's product includes "no monthly

7    payments and no interest" and that "[u]nlike a home equity loan or home equity lines of credit,

8    you'll pay no interest with Unison." *Id.* Similarly, in Unison's offer documents, Unison

9    represents that the "Unison Investment Payment is not a loan that you have to pay back, nor do

10   you ever pay interest on this amount." Haugen Decl., Ex. 3, at 9. These descriptions of Unison's

11   product are misleading and create the impression that homeowners are receiving a product

12   that is dissimilar to a mortgage loan, when really the product is functionally a reverse mortgage.

13   *See* Complaint ¶ 8.3.

14        In short, Plaintiffs have more than adequately alleged the myriad ways in which Unison's

15   financial product and representations to them were deceptive, and Unison's motion to dismiss

16   the Third Claim for Relief should be denied.

17        Finally, to the extent necessary, Plaintiffs request leave to amend their complaint to add

18   further, specific allegations of deceptive conduct. *Benanav v. Healthy Paws Pet Ins.*, 2021 WL

19   4319447, at *11 (W.D. Wash. Sept. 23, 2021) ("Permission to file an amended complaint is

20   typically granted where claims are dismissed for failure to state a claim."). Although Plaintiffs

21   believe that their deceptive claim need not comply with Rule 9(b) because it does not sound in

22   fraud, they can plead more facts supporting their allegations of deceptive conduct with

23   particularity by identifying the documents the statements were made in, the date(s) they

24   received them, and the people at Unison who sent them, just as they have done in other parts

25   of the complaint, for example paragraphs 4.38 and 4.48. Indeed, Mr. Olson's declaration

26   demonstrates that Plaintiffs can plead the specifics of the form mailers they received; should

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 19
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-54**

1    the Court deem these facts necessary to state a claim, Plaintiffs request leave to amend to add

2    such facts to the complaint.

3    **E.    Plaintiffs do not oppose dismissal of their Fourth Claim.**

4           Plaintiffs' Fourth Claim for Relief is for violations of the CPA (based on all the theories

5    advanced above) and the remedy they seek for those violations is injunctive relief that will

6    benefit other Washington consumers under *Hockley v. Hargitt*, 82 Wash.2d 337, 350–51, 510

7    P.2d 1123, 1132–33 (1973). Plaintiffs agree that injunctive relief is a remedy, not a claim. While

8    Plaintiffs' first three claims also request injunctive relief for CPA violations, they separately pled

9    their fourth claim because of the potential for a plaintiff to have standing to pursue injunctive

10   relief claims in state court even when Article III jurisdiction over such claims is lacking. However,

11   as Plaintiffs believe they have Article III standing to pursue injunctive relief in this case and

12   Unison has not challenged such standing, it makes no difference whether the Fourth Claim is

13   dismissed or not. Thus, Plaintiffs do not oppose dismissal of this claim.

14   **F.    Plaintiffs' Fifth Claim became moot only after Unison waived the ability to enforce its
          impermissible fee-shifting provision.**

15

16          Unison's HomeOwner Agreement contains a prevailing party fee-shifting provision.

17   Complaint ¶¶ 10.2-10.3. After Plaintiffs explained their position that the fee-shifting provision

18   was unenforceable in this matter, Unison agreed in writing to waive its ability to enforce the

19   impermissible fee-shifting provision against Plaintiffs in this case. *See* ECF No. 18 (email from

20   Unison's counsel dated January 26, 2023). Plaintiffs therefore agree that their claim for a

21   declaration that the fee-shifting provision is unenforceable became moot after they filed this

22   action as a result of Unison's waiver of the illegal terms and therefore do not oppose dismissal

23   of the Fifth Claim without prejudice. The term itself is further evidence that Unison's

24   HomeOwner Agreement is unconscionable, however, and Unison's waiver of the right to

25   enforce it does not cure the overall unfairness of the agreement. *See Gandee v. LDL Freedom

26   Enters., Inc.*, 176 Wn.2d 598, 606, 293 P.3d 1197 (2013).

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 20
Case No. 2:22-cv-01859-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-55**

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Unison's motion to dismiss their complaint. In the alternative, Plaintiffs request leave to amend to allege further specific facts regarding Unison's unfair or deceptive acts or practices.

## V.    LCR 7(E)(3) CERTIFICATION

I certify that this memorandum contains 7,491 words in compliance with the Local Civil Rules.

RESPECTFULLY SUBMITTED AND DATED this 21st day of February, 2023.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Blythe H. Chandler, WSBA #43387
Email: bchandler@terrellmarshall.com
Elizabeth A. Adams, WSBA #49175
Email: eadams@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Umar I. Gebril, WSBA #58227
Email: umar@cascade-law.com
Joseph W. Moore, WSBA #44061
Email: joseph@cascade-law.com
CASCADE LAW PLLC
2707 Colby Avenue, Suite 1420
Everett, Washington 98201
Telephone: (425) 998-8999

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO
COMPEL COLIN TO ARBITRATION IS DENIED - 21
Case No. 2:22-cv-01859-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-56

1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                  AT SEATTLE

9   CHARLES BOYD OLSON, JANINE OLSON,          Case No. 2:22-cv-01859-RSM
    and MAGGIE COLIN, individually and on
10  behalf of all others similarly situated,    **DECLARATION OF CHARLES BOYD
                                                 OLSON**
11                              Plaintiffs,

12
               v.
13
    UNISON AGREEMENT CORPORATION, a
14  foreign corporation,

15                              Defendant.

16        I, Charles Boyd Olson, declare as follows:

17        1.      I am over the age of eighteen and competent to testify. I am the Plaintiff in this

18  case. This declaration is based on my personal knowledge.

19        2.      Prior to approving my funding, Unison checked my credit report, required me to

20
    provide verification of my income and my bank statements, and appraised and inspected my
21
    home.
22
          3.      Attached are true and correct copies of the following:
23
24             a.   **Exhibit 1:** Unison's Schedule of Debts To Be Paid At Closing, provided to me
                    by Unison as part of my closing package;
25

DECLARATION OF CHARLES BOYD OLSON
Case No. 2:22-cv-01859-RSM
Page 1 of 2

CASCADE LAW PLLC
2707 Colby Avenue, Suite 1420
Everett, WA 98201
P: (425) 998-8999 / info@cascade.law

DocuSign Envelope ID: 178CB9A6-805A-47AA-8F21-599E31A4E5FA

b.  **Exhibit 2:** Unison's Deed of Trust and Security Agreement, provided to me by Unison as part of my closing package.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED at Everett, Washington on ___2/13/2023_____.

DocuSigned by:

*Charles Boyd Olson*

Charles Boyd Olson
Plaintiff

DECLARATION OF CHARLES BOYD OLSON
Case No. 2:22-cv-01859-RSM
Page 2 of 2

**CASCADE LAW PLLC**
2707 Colby Avenue, Suite 1420
Everett, WA 98201
P: (425) 998-8999 / info@cascade.law

ER-58

DocuSign Envelope ID: 178CB9A6-805A-47AA-8F21-599E31A4E5FA

# Exhibit 1

# UNISON

### Schedule of Debts To Be Paid At Closing
### From Unison HomeOwner Agreement Proceeds

Unison HomeOwner Agreement ID Number: FRX-142187

Total Amount To Be Paid At Closing: $13,484.97

The Closing Services Provider will be instructed to pay off the accounts indicated with a "Y" in the Pay Off column.

The Amount column reflects information from your credit report. If you have provided updated account statements, the balances from those statements will be paid and reflected in the Closing Statement. If you have not provided updated account statements, please do so prior to scheduling your closing. **No oral or handwritten information can be accepted.**

| CREDITOR | ACCOUNT NUMBER | AMOUNT | PAY OFF |
|---|---|---|---|
| WELLS FARGO HM MORTGAG | ▓▓▓▓▓ | $ | |
| SALAL CREDIT UNION | ▓▓▓▓▓ | $13,484.97 | Y |
| AMERIHOME MTG CO, LLC | ▓▓▓▓▓ | $ | |
| US BANK | ▓▓▓▓▓ | $ | |
| CHASE CARD | ▓▓▓▓▓ | $ | |
| SYNCB/LOWES | ▓▓▓▓▓ | $ | |
| CAPITALONE | ▓▓▓▓▓ | $ | |
| ONEMAIN | ▓▓▓▓▓ | $ | |
| SYNCB/CHEVRON | ▓▓▓▓▓ | $ | |
| KINECTA FED CU | ▓▓▓▓▓ | $ | |
| LES SCHWAB TIRE CENTER | ▓▓▓▓▓ | $ | |
| SYNCB/FMJ | ▓▓▓▓▓ | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

Exhibit 2

**Prepared by, recording requested by,
and when recorded mail to:**

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeOwner Agreement ID Number:
FRX-142187

**UNISON HOMEOWNER DEED OF TRUST AND SECURITY AGREEMENT**

**NOTICE: THIS DEED OF TRUST CONTAINS A SUBORDINATION CLAUSE WHICH MAY RESULT IN BENEFICIARY'S SECURITY OR OTHER INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

**Grantor(s):**
1.   Charles Boyd Olson  and Janine E Olson
     ☐     Additional names on page 2 of document
**Grantee(s):**
     Unison Agreement Corp., a Delaware corporation
     ☐     Additional names on page ___ of document

**Abbreviated Legal Description** (lot, block and plat name, or section-township-range):
     Lot , Block ,
     ☑     Additional legal description is on page 14 of document

**Assessor's Property Tax Parcel Account Number(s):** 6669010010

**Reference Numbers of Documents Assigned or Released (if applicable):**
     ☐     Additional reference numbers on page ___ of document

Page 1 of 14

Owner's Initials: _____/_____/_____/_____

© 2017. Unison                    Form 401 HO-WA (rev. 7/27/2017)

ER-62

This **SUBORDINATED HOMEOWNER DEED OF TRUST AND SECURITY AGREEMENT,** together with riders hereto ("**Unison HomeOwner Security Instrument**"), is made as of 03/26/2019 ("Effective Date"), among CHARLES BOYD OLSON AND JANINE E OLSON, HUSBAND AND WIFE AS JOINT TENANTS (individually or collectively "Grantor"), and American Title Inc ("Trustee"), whose address is 11010 Burdette St PO BOX 641010, Omaha, NE 68164-1010 and Unison Agreement Corp., a Delaware corporation, and its successors and assignees ("**Beneficiary**"), whose address is 650 California Street, Suite 1800 San Francisco, CA 94108. Capitalized terms used in this Unison HomeOwner Security Instrument shall have the meanings specified in this Unison HomeOwner Security Instrument, or if not defined herein, in that certain Unison HomeOwner Covenant Agreement ("**Unison HomeOwner Covenant Agreement**"), Unison HomeOwner Option Agreement ("**Unison HomeOwner Option Agreement**") and that certain Memorandum Of Unison HomeOwner Agreement ("**Unison HomeOwner Recorded Memorandum**"), which documents, together with this Unison HomeOwner Security Instrument, are collectively termed the "**Unison HomeOwner Agreement**" executed by Grantor and Beneficiary concurrently herewith.

    **1.**    **Grant In Trust.**

    GRANTOR HEREBY IRREVOCABLY bargains, sells and conveys to Trustee, and its successors and assignees, in trust, with power of sale, all of that property ("**Real Property**") described in **SCHEDULE A** attached hereto and made a part hereof.

    Together with all improvements, replacements and additions now or hereafter erected on the Real Property and all easements, appurtenances and fixtures now or hereafter a part of the Real Property. (The fixtures, improvements and the Real Property are collectively referred to as the "**Property**.")

Together with all rents, issues, profits and proceeds, including without limitation insurance and condemnation proceeds, from the Real Property, subject, however, to the right, power and authority given to and conferred upon Beneficiary below to collect and apply such rents, issues and profits.

Grantor warrants that he/she/they is/are lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Grantor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    **2.**    **Secured Obligations.** Grantor makes the grant, transfer and assignment set forth in the "Grant In Trust" Section above for the purpose of securing:

        **a.**    Grantor's performance, and Beneficiary's rights, under the Unison HomeOwner Agreement;

Owner's Initials: _____/_____/_____/_____

© 2017, Unison

Form 401 HO-WA (rev. 7/27/2017)

**b.** the performance and payment of the obligations of Grantor under the Unison HomeOwner Agreement, including:

**(i)** payment of all **Protective Advances**, including any unpaid interest and other fees and charges associated with such Protective Advances, owed to Beneficiary under the Unison HomeOwner Agreement;

**(ii)** payment of all **Asset Administration Fees** incurred by or owed to Beneficiary under the Unison HomeOwner Agreement;

**(iii)** payment of all insurance proceeds owed to Beneficiary pursuant to **Sections 8.16(e) and (f)** of the Unison HomeOwner Covenant Agreement;

**(iv)** payment of all condemnation proceeds owed to Beneficiary pursuant to **Section 8.17** of the Unison HomeOwner Covenant Agreement;

**(v)** performance of those obligations to Beneficiary specified in the Unison HomeOwner Agreement pursuant to **Articles Three, Four, Five, Eight and Nine** of the Unison HomeOwner Covenant Agreement, including, without limitation, payment of the Investor Interest under the Unison HomeOwner Agreement; and

**(vi)** performance of the obligations of Grantor under the Unison HomeOwner Covenant Agreement regarding Beneficiary's right as a co-owner to sell the Property following exercise of the **Option** and during **Orderly Sale**.

**c.** the performance of the obligations of Grantor contained in this Unison HomeOwner Security Instrument or incorporated by reference;

**d.** any expenditures made by Beneficiary pursuant to, or under, this Unison HomeOwner Security Instrument; and

**e.** payment of all fees and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel (collectively "**Attorneys' Fees**")) incurred by Beneficiary in the enforcement and collection of the obligations listed above and the protection of Beneficiary's rights related thereto, whether such fees are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Attorneys' Fees shall include, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this Unison HomeOwner Security Instrument, to the interpretation or enforcement of the parties' rights under this Unison HomeOwner Security Instrument, or to the Property.

The foregoing obligations are referred to collectively as the "**Obligations**."

Owner's Initials: _____/_____/_____/_____

© 2017, Unison            Form 401 HO-WA (rev. 7/27/2017)

**f.** Grantor shall not be obligated to repay any part of the **Unison Investment Payment** (as such term is defined in Schedule A to the Unison HomeOwner Covenant Agreement); and therefore, such item shall not be included within the Obligations. The foregoing shall <u>not</u>, however, in any way limit any payment calculated and agreed by Grantor to be paid pursuant to the Unison HomeOwner Agreement, according to the calculation of **Investor Proceeds** and **Investor Interest** (as defined in the Unison HomeOwner Agreement), including, without limitation, any such calculation in connection with a **Special Termination** as defined in **Section 6.2** of the Unison HomeOwner Covenant Agreement.

**3.**    **Uniform Commercial Code Security Agreement And Fixture Filing.** This Unison HomeOwner Security Instrument also is intended to be and shall constitute a security agreement under the Washington Uniform Commercial Code for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the California Uniform Commercial Code. Grantor hereby grants to Beneficiary a security interest in those items to secure the performance and payment of the Obligations.

**a.**    Grantor agrees that Beneficiary may file either this Unison HomeOwner Security Instrument, or a copy of it, or a UCC-1 Financing Statement in the real estate records or other appropriate index and/or with the Department of Licensing, State of Washington, as a financing statement for any of the items specified above as part of the Property.

**b.**    This Unison HomeOwner Security Instrument constitutes a financing statement filed as a fixture filing pursuant to Section RCW 62.9A-502 and 62A.9A-514 of the Washington Uniform Commercial Code, and any similar or successor provisions.

**c.**    Beneficiary may file such extensions, renewals, amendments and releases as are appropriate to reflect the status of its security interest.

**d.**    Grantor shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Beneficiary may reasonably require.

**e.**    On any default hereunder, Beneficiary shall have the remedies of a secured party under the Washington Uniform Commercial Code and may also invoke the remedies in **Section 7** below. In exercising any of these remedies, Beneficiary may proceed against the items of Real Property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Beneficiary's remedies under the Washington Uniform Commercial Code or the remedies in **Section 7** below.

**4.**    **Assignment Of Leases And Rents.** As additional security for the Obligations, Grantor hereby irrevocably, absolutely and unconditionally assigns to Beneficiary all of Grantor's right, title and interest in and to all existing and future leases, subleases and licenses

Page 4 of 14

relating to the use, occupancy or enjoyment of all or any part of the Property and all rents, income, revenues, profits, proceeds and earnings now or hereafter payable with respect to the ownership, use or occupancy of the Property (collectively the "**Rents**"):

      **a.**      Grantor hereby gives to, and confers upon, Beneficiary the right, power and authority, during the continuance of this Unison HomeOwner Security Instrument, to collect the Rents, reserving unto Grantor the right, prior to any default by Grantor in payment of the Obligations secured hereby or in performance of any agreement hereunder, to collect and retain such Rents, as they become due and payable.

      **b.**      Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations secured hereby, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Attorneys' Fees to the Obligations secured hereby, and in such order as Beneficiary may determine.

      **c.**      The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application of such rents, issues and profits pursuant to this Unison HomeOwner Security Instrument, shall not cure or waive any default or notice of default under this Unison HomeOwner Security Instrument or invalidate any act done pursuant to such notice.

      **d.**      Nothing in this section shall permit Grantor to lease or rent the Property in contravention of any provision of the Unison HomeOwner Agreement; nor shall anything in this section modify any provision in the Unison HomeOwner Agreement relating to the use, lease or occupancy of the Property.

      **5.**      <u>**Covenants Of Grantor Regarding The Property.**</u> Grantor hereby agrees as follows:

      **a.**      To appear in and defend any action or proceeding purporting to affect the security of this Unison HomeOwner Security Instrument or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Trustee and Beneficiary (including cost of evidence of title and Attorneys' Fees) incurred: **(i)** in any state, federal, appellate, or bankruptcy court, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Unison HomeOwner Security Instrument or to collect the Obligations or to protect Beneficiary's rights under this Unison HomeOwner Security Instrument; and/or **(ii)** in connection with the enforcement of any provisions of this Unison HomeOwner Security Instrument or in connection with foreclosure upon the collateral granted under this Unison HomeOwner Security Instrument (whether or not suit is filed).

Owner's Initials: _____/_____/_____/_____

© 2017, Unison                                              Form 401 HO-WA (rev. 7/27/2017)

   **b.** To pay: at least ten (10) days before delinquency all taxes and assessments affecting the Property; and all encumbrances, charges and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this Unison HomeOwner Security Instrument, and all costs, fees and expenses of this Unison HomeOwner Security Instrument.

     **(i)** If Grantor fails to make any payment or to do any act as provided in this Unison HomeOwner Security Instrument, Beneficiary or Trustee may (but shall not be obligated to) make the payment or do the act in the required manner and to the extent deemed necessary by Beneficiary or Trustee to protect the security for this Unison HomeOwner Security Instrument, which payments and related expenses (including Attorneys' Fees) shall also be secured by this Unison HomeOwner Security Instrument.

     **(ii)** Such performance by Beneficiary or Trustee shall not require notice to, or demand on, Grantor and shall not release Grantor from any obligation under this Unison HomeOwner Security Instrument.

     **(iii)** Beneficiary or Trustee shall have the following related rights and powers: **(A)** to enter upon the Property for the foregoing purposes, **(B)** to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee under this Unison HomeOwner Security Instrument, **(C)** to pay, purchase, contest or compromise any encumbrance, charge, or lien that in the judgment of Beneficiary or Trustee appears to be prior or superior to this Unison HomeOwner Security Instrument, and **(D)** to employ counsel, and to pay such counsel necessary expenses and costs, including Attorneys' Fees.

   **c.** To pay immediately upon demand all sums expended by Beneficiary or Trustee pursuant to this Unison HomeOwner Security Instrument; and to pay interest on any of the foregoing amounts demanded by Beneficiary or Trustee at the rate specified in the Unison HomeOwner Agreement from the date of such demand, not to exceed the maximum rate allowed by law at the time of such demand.

   **6.** **Power Of Attorney.** Grantor hereby irrevocably appoints Beneficiary as Grantor's attorney-in-fact (such agency being coupled with an interest), and as such attorney-in-fact Beneficiary may, after providing notice to Grantor pursuant to the Unison HomeOwner Agreement and the Unison HomeOwner Recorded Memorandum, without the obligation to do so, in Beneficiary's name, or in the name of Grantor, prepare, execute and file or record financing statements, continuation statements, applications for registration and like documents necessary to create, perfect or preserve any of Beneficiary's security interests and rights in or to any of the Property, and, upon a default under this Unison HomeOwner Security Instrument, take any other action required of Grantor; provided, however, that Beneficiary as such attorney-in-fact shall be accountable only for such funds as are actually received by Beneficiary.

Owner's Initials: _____/_____/_____/_____

© 2017, Unison              Form 401 HO-WA (rev. 7/27/2017)

**7.** <u>Default And Foreclosure And Power Of Sale.</u> Upon default by Grantor in the performance of or upon breach by Grantor of any of the rights and Obligations that are secured by this Unison HomeOwner Security Instrument as specified above, Beneficiary may declare all performance and sums secured by this Unison HomeOwner Security Instrument immediately due by delivery to Trustee and to Grantor of written declaration of default. Beneficiary shall give notice of default to Grantor prior to acceleration following Grantor's breach of any covenant or agreement in this Unison HomeOwner Security Instrument. The notice shall specify: **(a)** the default; **(b)** the action required to cure the default; **(c)** a date, not less than 30 days from the date the notice is given to Grantor, by which the default must be cured; and **(d)** that failure to cure the default on or before the date specified in the notice may result in acceleration of the performance secured by this Unison HomeOwner Security Instrument and sale of the Property. The notice shall further inform Grantor of the right to cure after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Grantor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Beneficiary at its option may require immediate performance in full of all obligations secured by this Unison HomeOwner Security Instrument without further demand commence an action to foreclose this Unison HomeOwner Security Interest as a mortgage, and may invoke the power of sale and any other remedies permitted by applicable law. Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided herein, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Beneficiary invokes the power of sale, Beneficiary shall execute or cause Trustee to execute a written notice of Beneficiary's election to cause the Property to be sold as prescribed by applicable law. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Beneficiary or Trustee shall mail copies of the notice as prescribed by applicable law to Grantor and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. Beneficiary also shall deposit with Trustee this Unison HomeOwner Security Instrument, the Unison HomeOwner Agreement, and all documents evidencing any expenditures and damages secured by this Unison HomeOwner Security Instrument.

After the time required by applicable law, Trustee, without demand on Grantor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.

Trustee shall deliver to the purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of their truthfulness. Any person, except Trustee, including Beneficiary as defined in this Unison HomeOwner Security Instrument, may purchase at such sale.

Owner's Initials: _____/_____/_____/_____

© 2017, Unison          Form 401 HO-WA (rev. 7/27/2017)

 

**a.** After deducting all costs, fees and expenses (including Attorneys' Fees) of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: to Beneficiary, all sums expended and performance due under the terms of this Unison HomeOwner Security Instrument, not then performed or repaid, with accrued interest, if any, at the amount allowed by law in effect on the Effective Date of this Unison HomeOwner Security Instrument; to Beneficiary, all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**b.** Notice provided to Grantor under this Unison HomeOwner Security Instrument shall be to the address specified in this Unison HomeOwner Security Instrument unless otherwise required by applicable law.

**c.** Exercise of Beneficiary's remedies under this Unison HomeOwner Security Agreement shall be in compliance with applicable law.

**8.** **Liquidated Damages.** Liquidated Damages means an amount equal to the sum of:

**a.** the **Investor Proceeds**, as calculated according to **Article 10 ("Calculations")** of the Unison HomeOwner Covenant Agreement;

**b.** in connection with Grantor's failure to make any monetary payment, the sum of all monetary obligations (including, without limitation, all **Unpaid Owner Obligations**) owed to Investor by Grantor under the Unison HomeOwner Agreement; and

**c.** any and all amounts, properly chargeable to Grantor as necessary to satisfy Grantor's obligations under the Unison HomeOwner Agreement with respect to Grantor's mortgage, tax and insurance obligations on the Property, including late fees, reinstatement fees and other penalties.

**9.** **Late Performance.** By accepting performance of any obligation after its due date, Beneficiary does not waive its right either to require prompt performance when due of all other obligations or to declare default for such failure to perform.

**10.** **Trustee's Powers.** At any time or from time to time, without liability therefor upon written request of Beneficiary and presentation of this Unison HomeOwner Security Instrument, and without affecting the personal liability of any person for the performance of the Unison HomeOwner Agreement secured hereby, Trustee may: **(a)** reconvey any part of the Property; **(b)** consent to the making of any map or plat of the Property; **(c)** join in granting any easement thereon; and **(d)** join in any extension agreement or any agreement subordinating the lien or charge of this Unison HomeOwner Security Instrument.

**11.** **Substitution of Trustee.** Beneficiary, or any successor in ownership of the Obligations, may from time to time, by instrument in writing, substitute a successor or

Page 8 of 14

Owner's Initials: _____/_____/_____/_____

© 2017, Unison          Form 401 HO-WA (rev. 7/27/2017)

successors to any Trustee named or acting under this Unison HomeOwner Security Instrument, which instrument, when executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from Trustee's predecessor, succeed to all its title, estate, rights, powers and duties. Such instrument must contain the name of the original Grantor, Trustee and Beneficiary under this Unison HomeOwner Security Instrument, the book and page where this Unison HomeOwner Security Instrument is recorded, and the name and address of the new Trustee(s).

**12.** **Trustee's Compensation.** Grantor shall pay Trustee's fees and reimburse Trustee for expenses in the administration of this Trust, including Attorneys' Fees. Grantor shall pay to Beneficiary reasonable compensation for services rendered concerning this Unison HomeOwner Security Instrument, including without limitation any statement of amounts owing under any obligations.

**13.** **Full Reconveyance.** Upon written request of Beneficiary stating that all obligations have been performed or paid, and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held under this Unison HomeOwner Security Instrument. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such recitals. The grantee in such reconveyance may be described as "**the person or persons legally entitled thereto.**"

**14.** **Subordination.** This Unison HomeOwner Security Instrument is subordinate to and junior to the Unison HomeOwner Recorded Memorandum which affects the Property and which is executed by Grantor as "**Owner**" as of the same date as this Unison HomeOwner Security Instrument. Upon any foreclosure of this Unison HomeOwner Security Instrument by the Beneficiary, despite such foreclosure, the Unison HomeOwner Recorded Memorandum will remain in full force and effect (until released pursuant to its terms) and binding upon any person who now or hereafter obtains an interest in the Property; and the Unison HomeOwner Agreement will remain in full force and effect and binding upon Grantor, and any other person who may agree to be bound by such documents.

**15.** **Successors.** This Unison HomeOwner Security Instrument applies to, inures to the benefit of, and binds all parties to this Unison HomeOwner Security Instrument, their heirs, legatees, devisees, administrators, executors, successors, and assignees. The term "**Beneficiary**" shall include any successor or assignee of Beneficiary's rights in the Unison HomeOwner Agreement and in this Unison HomeOwner Security Instrument, whether or not named as Beneficiary in this Unison HomeOwner Security Instrument. In this Unison HomeOwner Security Instrument, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

Owner's Initials: _____/_____/_____/_____

© 2017, Unison          Form 401 HO-WA (rev. 7/27/2017)

**16.** **Joint and Several Liability.** If more than one person signs this Unison HomeOwner Security Instrument as Grantor, the obligations of each signatory shall be joint and several.

**17.** **Multiple Owners.** If there are multiple Grantors of the Property:

**a.** this Unison HomeOwner Security Instrument must be signed by each such Grantor;

**b.** all rights and powers specified for Grantor in this Unison HomeOwner Security Instrument must be approved and exercised unanimously by all such multiple Grantors;

**c.** all such multiple Grantors shall be jointly and severally liable for all liabilities and obligations specified for Grantor under this Unison HomeOwner Security Instrument;

**d.** notice required to be given by, or to, Grantor will be deemed adequately given if given by, or to, any of Grantors using the contact information set forth in this Unison HomeOwner Security Instrument; and

**e.** Beneficiary may treat any notice received from any one Grantor as notice from all Grantors.

**18.** **Revocable Trust.** If any Grantor is/are the trustee(s) of a **Revocable Trust** (as defined in Schedule A to the Unison HomeOwner Covenant Agreement):

**a.** all trustees and all trustors of the Revocable Trust must sign this Unison HomeOwner Security Instrument in their capacities as individuals and as trustees and/or trustors of the Revocable Trust, and each trustee and trustor of the Revocable Trust who signs this Unison HomeOwner Security Instrument hereby represents and warrants that all trustees and trustors of the Revocable Trust have been disclosed to Beneficiary;

**b.** any trustee of the Revocable Trust who is also a trustor of the Revocable Trust need only sign this Unison HomeOwner Security Instrument once for it to be binding on such person both as trustee and as trustor of the Revocable Trust;

**c.** all rights and powers specified for, and all actions required of, Grantor in this Unison HomeOwner Security Instrument must be approved and exercised unanimously by all trustees of the Revocable Trust;

**d.** all trustees and all trustors of the Revocable Trust, in their capacities as individuals, shall be jointly and severally liable with Grantor for all liabilities and obligations specified for Grantor under this Unison HomeOwner Security Instrument;

Page 10 of 14

© 2017, Unison                                      Form 401 HO-WA (rev. 7/27/2017)

ER-71

**e.** all representations and warranties by Grantor in this Unison HomeOwner Security Instrument are made by all trustees of the Revocable Trust on behalf of the Revocable Trust and by all trustees and all trustors of the Revocable Trust in their capacities as individuals;

**f.** notice required to be given by, or to, any Grantor will be deemed adequately given if given by, or to, any of the trustees of the Revocable Trust using the contact information set forth in this Unison HomeOwner Security Instrument; and

**g.** Beneficiary may treat any notice received from any one trustee of the Revocable Trust as notice from all trustees of the Revocable Trust and from Grantor.

**19.** **Acceptance by Trustee.** Trustee accepts this Trust when this Unison HomeOwner Security Instrument, duly executed and acknowledged, is made a public record as provided by law.

**20.** **Incorporation by Reference. SCHEDULE A** to this Unison HomeOwner Security Instrument is hereby incorporated by this reference.

**21.** **Extent of Lien.** The lien granted under this Unison HomeOwner Security Instrument shall encumber Grantor's entire interest in the Property, notwithstanding the fact that the Unison HomeOwner Agreement relates to only a fractional interest in the Property.

**22.** **Use of Property.** The Property is not used principally for agricultural purposes.

**23.** **No Merger.** So long as any of the obligations under the Unison HomeOwner Agreement remains outstanding and undischarged, unless Beneficiary otherwise consents in writing, the fee estate of Grantor in the Property or any part thereof (including the estate of Beneficiary after exercising the Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Beneficiary or in any other Person.

**Do not lose or destroy this Unison HomeOwner Security Instrument or the Unison HomeOwner Agreement that it secures. All must be delivered to Trustee for cancellation before reconveyance will be made.**

[Signatures appear on the following page.]

Owner's Initials: _____/_____/_____/_____

© 2017, Unison Form 401 HO-WA (rev. 7/27/2017)

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFICIARY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEOWNER SECURITY INSTRUMENT, THE UNISON HOMEOWNER AGREEMENT AND TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFICIARY AS OF THE EFFECTIVE DATE.

The undersigned Grantor requests that a copy of any Notice of Default and any Notice of Sale under this Unison HomeOwner Security Instrument be mailed to Grantor at the address set forth below.

IN WITNESS WHEREOF, each undersigned Grantor has executed this Security Instrument as of the date set forth above.

Grantor Address:

By:_____

    Charles Boyd Olson

3718 S 256th Ct
Kent, WA 98032

Date signed: _____

By:_____

    Janine E Olson

Date signed: _____

By: _____

Date Signed: _____

By: _____

Date Signed: _____

© 2017, Unison

Form 401 HO-WA (rev. 1/31/2017)

**ACKNOWLEDGEMENT**

STATE OF WASHINGTON)
              ) SS.
COUNTY OF_____)

On this day personally appeared before me _____
_____ to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/hers/their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _____ day of _____, _____.


_____

NOTARY PUBLIC in and for the State of Washington,

residing at _____

My appointment expires _____

_____
Name

© 2017. Unison

Form 401 HO-WA (rev. 1/31/2017)

**ER-74**

**SCHEDULE A**

**LEGAL DESCRIPTION**

That certain real property situated in the City of Kent, County of King, State of Washington, described as follows:

LOT 1, PARKSIDE NO. 1, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 102 OF PLATS, PAGES 25 AND 26, RECORDS OF KING COUNTY, WASHINGTON.
SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON

APN: 6669010010

[end of legal description]

Page 14 of 14

Owner's Initials: _____/_____/_____/_____

© 2017, Unison                    Form 401 HO-WA (rev. 7/27/2017)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CHARLES BOYD OLSON, JANINE OLSON, and MAGGIE COLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNISON AGREEMENT CORPORATION,<br><br>Defendant. | NO.  2:22-cv-01859-RSM<br><br>DECLARATION OF THEODOR HAUGEN IN SUPPORT OF UNISON AGREEMENT CORPORATION'S MOTION TO DISMISS THE OLSONS' CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE MOTION TO COMPEL COLIN TO ARBITRATION IS DENIED |

I, Theodor Haugen, declare as follows:

1.      I am employed by Real Estate Equity Exchange, Inc., d/b/a Unison, ("Unison"), which is the parent company of Defendant Unison Agreement Corp. ("UAC").  I have personal knowledge of the facts set forth in this declaration, and I could and would testify competently thereto if called upon to do so.

2.      My title is Vice President, Customer Experience, and I am an authorized custodian of records, including HomeOwner Agreements that UAC enters into with customers.  I regularly access and review executed Offers and HomeOwner Agreements as part of my business responsibilities.

3.      Attached hereto as **Exhibit 1-1** is a true and correct copy of the HomeOwner Option Agreement between Maggie Ann Colin and UAC.  The Agreement bears Ms. Colin's signature dated November 16, 2019.

4.       Attached hereto as **Exhibit 1-2** is a true and correct copy of the HomeOwner Covenant Agreement between Maggie Ann Colin and UAC.  The Agreement bears Ms. Colin's signature dated November 16, 2019.

5.      Attached hereto as **Exhibit 1-3** is a true and correct copy of the HomeOwner Security Instrument between Maggie Ann Colin and UAC.  The Security Instrument bears Ms. Colin's signature dated November 16, 2019.

6.      Attached hereto as **Exhibit 1-4** is a true and correct copy of the HomeOwner Recorded Memorandum between Maggie Ann Colin and UAC.  The Recorded Memorandum bears Ms. Colin's signature dated November 16, 2019.

7.      Attached hereto as **Exhibit 1-5** is a true and correct copy of the Condominium Rider to the Security Instrument between Maggie Ann Colin and UAC.  The Rider bears Ms. Colin's signature dated November 16, 2019.

8.      Together, the five documents attached as Exhibits 1-1 through 1-5 constitute Maggie Ann Colin's HomeOwner Agreement with UAC.

9.      Attached hereto as **Exhibit 2-1** is a true and correct copy of the HomeOwner Option Agreement between Charles Boyd Olson and Janine E Olson and UAC.  The Agreement bears the Olsons' signatures dated March 27, 2019.

10.      Attached hereto as **Exhibit 2-2** is a true and correct copy of the HomeOwner Covenant Agreement between Charles Boyd Olson and Janine E Olson and UAC.  The Agreement bears the Olsons' signatures dated March 27, 2019.

11.      Attached hereto as **Exhibit 2-3** is a true and correct copy of the HomeOwner Security Instrument between Charles Boyd Olson and Janine E Olson and UAC.  The Security Instrument bears the Olsons' signatures dated March 27, 2019.

12.     Attached hereto as **Exhibit 2-4** is a true and correct copy of the HomeOwner Recorded Memorandum between Charles Boyd Olson and Janine E Olson and UAC.  The Recorded Memorandum bears the Olsons' signatures dated March 27, 2019.

13.     Attached hereto as **Exhibit 2-5** is a true and correct copy of the Deferred Maintenance Addendum to Unison HomeOwner Agreement between Charles Boyd Olson and Janine E Olson and UAC.  The Addendum bears the Olsons' signatures dated March 27, 2019.

14.     Together, the five documents attached as Exhibits 2-1 through 2-5 constitute Charles Boyd Olson and Janine E Olson's HomeOwner Agreement with UAC.

15.     Attached hereto as **Exhibit 3** is a true and correct copy of the November 4, 2019 Offer to Maggie Ann Colin to enter into a HomeOwner Agreement with UAC, bearing Ms. Colin's electronic signature and dated November 5, 2019.

16.     Attached hereto as **Exhibit 4** is a true and correct copy of the March 25, 2019 Offer to Charles Boyd Olson and Janine E Olson to enter into a Unison HomeOwner Agreement with UAC, bearing the Olsons' electronic signatures and dated March 26, 2019.

I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in  Redwood City , California on January   30  , 2022.

*Theodor Haugen*

Theodor Haugen

# EXHIBIT 2-1

Unison HomeOwner Agreement ID Number: FRX-142187

## UNISON HOMEOWNER OPTION AGREEMENT

This Unison HomeOwner Option Agreement ("**Unison HomeOwner Option Agreement**") is entered into as of 03/26/2019 ("**Effective Date**").

### 1. Grant Of Option; Option Price; Consideration.

**(a)** Charles Boyd Olson and Janine E Olson ("**Owner**") hereby grants to Unison Agreement Corp., a Delaware corporation, and its successors and assigns ("**Investor**"), an option ("**Option**") to purchase, in the future, an undivided 70.00% interest (the "**Investor Percentage**") in and to that certain residential real property known as 3718 S 256th Ct, Kent, WA 98032 and further described in the attached **Exhibit A** (the "**Property**") for the Unison Purchase Price of $259,000.00 ("**Unison Purchase Price**"). The Option is granted by Owner in partial consideration of Investor's providing Owner with an advance of funds in the amount of $64,750.00 (the "**Unison Investment Payment**").

**(b)** As consideration for granting the Option, and for Owner's obligations under the Unison HomeOwner Agreement ("**Unison HomeOwner Agreement**"), Owner shall receive: **(1)** the Unison Investment Payment; **(2)** the delayed right and express waiver of any and all rights of Investor to exercise the Option it has purchased in the Property, unless or until such time as Owner elects, in Owner's sole discretion, to sell the Property, or until the occurrence of another **Exercise Event,** as defined herein; and **(3)** Investor's performance of its obligations under, and such other rights and benefits as are provided to Owner under the Unison HomeOwner Agreement.

**(c)** The Unison Investment Payment is an advance payment of a portion of the Unison Purchase Price. Therefore, in the event Investor elects to exercise the Option, the remaining portion of the Unison Purchase Price (the "**Unison Purchase Price Balance**") will be $194,250.00.

**(d)** This Option is made subject to the terms and conditions of the following documents, each executed as of the Effective Date and incorporated herein by reference ("**Transaction Documents**"), which Transaction Documents together with this Unison HomeOwner Option Agreement comprise the Unison HomeOwner Agreement: **(1)** the Unison HomeOwner Covenant Agreement ("**Unison HomeOwner Covenant Agreement**"); **(2)** the Unison Deed of Trust/Mortgage and Security Instrument, together with any riders thereto ("**Unison HomeOwner Security Instrument**"); and **(3)** the Memorandum of Unison HomeOwner Agreement ("**Unison HomeOwner Recorded Memorandum**"). Capitalized terms not defined herein are defined in **Schedule A** to the Unison HomeOwner Covenant Agreement.

### 2. Term Of Option; Right To Exercise.

The term of the Option ("**Term**") is thirty (30) years. The Term commences on the Effective Date and expires on the date immediately preceding the thirtieth (30th) anniversary of the Effective Date ("**Expiration Date**"), subject to extension under limited circumstances set forth in the Unison HomeOwner Covenant Agreement. Investor will have the right in its **Permitted Discretion** to exercise this Option only upon the following events ("**Exercise Events**"): **(a)** as of the Expiration Date; **(b)** upon Owner's arms' length sale of the Property; **(c)** upon the death of the last surviving Owner ("**Last Surviving Owner**"); or **(d)** following a material and uncured event of Owner default ("**Event Of Default**"), or acceptance by Owner of

© 2019, Unison

Form 251 HO-All (rev. 3/4/2019)

**ER-80**

Investor's offer of Option exercise and Orderly Sale, as described in and subject to the terms of **Article Seven** of the Unison HomeOwner Covenant Agreement.

### 3. Manner Of Option Exercise.

Upon the occurrence of any Exercise Event, Investor (or Investor's agent, servicer, **Asset Administrator**, or other designee) may exercise the Option by transmission of a written statement either substantially in the form of **Exhibit B** hereto, or which otherwise evidences Investor's intent to purchase its undivided percentage interest in and to the Property and settle the Unison HomeOwner Agreement ("**Option Exercise Notice**"). Transmission of the Option Exercise Notice will constitute exercise of the Option when sent to any of the following **Persons**: **(a)** Owner, either at the address of the Property, or at the electronic mail address given for notices below; **(b)** any **Escrow Holder** engaged in processing a sale or transfer of the Property; **(c)** any real estate agent or broker engaged by Owner in processing a sale or transfer of the Property; **(d)** any heir(s), representative, or executor of the Last Surviving Owner ("**Owner's Estate**"); or **(e)** any other Person Owner has designated during the Term as authorized to receive notices under the Unison HomeOwner Agreement.

### 4. Property Valuation; Investor Purchase.

Owner agrees that the value of the Property as of the Effective Date is $370,000.00 ("**Original Agreed Value**"). Owner further agrees that the future value of the Property, when calculated at any time during the Term, is called the **Ending Agreed Value**, which will be determined as provided in the Unison HomeOwner Covenant Agreement and which shall be subject to certain adjustments if: **(a)** Owner sells the Property prior to the third (3rd) anniversary of the Effective Date; **(b)** Owner sells the Property in a **Sale By Owner, Intrafamily Sale**, or a sale to a **Third Party Buyer** that is not a **Natural Person** (as such terms are defined in the Unison HomeOwner Covenant Agreement); **(c)** the Ending Agreed Value is negatively affected as a result of either (i) Owner's failure to maintain the Property during the Term, or (ii) a condition or defect in, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term and which was not remedied or repaired by Owner; **(d)** Owner remodels, improves or modifies the Property and thereby affects the Ending Agreed Value (positively or negatively); or **(e)** Owner defaults under the Unison HomeOwner Agreement and fails to cure the Event of Default.

Upon Option exercise, Investor shall be entitled to purchase its undivided percentage interest in and to the Property in exchange for the Unison Purchase Price Balance. The value of Investor's undivided percentage interest in the Property will be calculated as the Ending Agreed Value of the Property (as adjusted, if applicable) multiplied by the Investor Percentage. Any and all **Unpaid Owner Obligations**, as such term is defined in the Unison HomeOwner Covenant Agreement, shall be subtracted from the Unison Purchase Price Balance in calculating the amount Investor shall pay for its undivided percentage interest. Investor's exercise of its Option and purchase of an undivided percentage interest in and to the Property shall be conducted pursuant to the procedures prescribed in the Unison HomeOwner Covenant Agreement. Pursuant to the procedures prescribed in the Unison HomeOwner Covenant Agreement, Owner may terminate Investor's right to purchase an undivided percentage interest in and to the Property pursuant to Investor's exercise of the Option by tendering to Investor an amount equal to the value of Investor's undivided percentage interest (if any), minus the Unison Purchase Price Balance (from which Unpaid Owner Obligations shall have been subtracted). Upon acceptance of such amounts from Owner, Investor shall effect

© 2019, **Unison**

a full release and reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents. In the event that Owner does not terminate Investor's right to purchase its undivided percentage interest in and to the Property, Investor and Owner, as co-owners of the Property, shall promptly market and sell the Property in order to liquidate their respective percentage interests thereto.

### 5. Investor Proceeds; Investor Interest.

The value of Investor's undivided percentage interest in and to the Property, minus the Unison Purchase Price Balance, is termed the **"Investor Proceeds."** The amount of Investor Proceeds, if any, plus the amount of Unpaid Owner Obligations, if any, is termed the **"Investor Interest."**

### 6. Nature Of Option And Of Unison Investment Payment.

**The Unison Investment Payment is not a loan. The Unison Investment Payment is not a principal amount which Investor is contractually or otherwise entitled to recover at Term or at Option exercise. The Investor Proceeds may be greater than, equal to, or less than the Unison Investment Payment, or zero, depending upon the change in value of the Property (the difference between the Original Agreed Value and the Ending Agreed Value) between the Effective Date and the Exercise Event. Owner will not be required to make any monthly interest or any other periodic payments to Investor calculated upon the amount of the Unison Investment Payment, nor will any periodic payment obligations be imposed upon or accrue on the amount of the Unison Investment Payment as indebtedness to Owner.**

### 7. Special Termination.

At any time following the third (3rd) anniversary of the Effective Date, Owner may request special termination of the Option ("**Special Termination**") prior to the occurrence of an Exercise Event or the Expiration Date, pursuant to **Section 6.2** of the Unison HomeOwner Covenant Agreement, by payment to Investor of an amount ("**Special Termination Price"**) equal to the greater of (a) the Unison Investment Payment plus any Unpaid Owner Obligations, or (b) the Investor Interest.

### 8. Maximum Authorized Debt.

The sum total of loans from third parties secured by liens on the Property that Owner may incur while the Unison HomeOwner Agreement is outstanding is $259,000.00. This amount is called the **Maximum Authorized Debt**. A sum total of loans from third parties secured by liens on the Property in excess of the Maximum Authorized Debt at any time during the Term is an Event of Default under the Unison HomeOwner Agreement.

### 9. Recorded Lien.

Owner's performance under the Unison HomeOwner Agreement will be secured as a recorded lien on the Property by recording of both the Unison HomeOwner Security Instrument and the Unison HomeOwner Recorded Memorandum in the county where the Property is located. If there is a material and uncured Event of Default under the terms of the Unison HomeOwner Agreement, Investor shall have the right, but is not obligated to, demand Owner's performance of the terms of the Unison HomeOwner Agreement; and upon Owner's continued failure to perform following such demand, Investor shall have the

© 2019, **Unison**  Form 251 HO-All (rev. 3/4/2019)

right to invoke any and all remedies under the Unison HomeOwner Agreement, including the right of Option exercise, and those remedies provided to Investor as a secured lien holder under the Unison HomeOwner Security Instrument and applicable law.

### 10. Summary of Financial Terms and Fees.

| | |
|---|---:|
| Effective Date: | 03/26/2019 |
| Term: | 30 Years |
| Expiration Date: | 03/25/2049 |
| | at 11:59 pm Pacific Time |
| Original Agreed Value: | $370,000.00 |
| Investor Percentage: | 70.00% |
| Unison Purchase Price: | $259,000.00 |
| Unison Investment Payment: | $64,750.00 |
| Unison Purchase Price Balance:* | $194,250.00 |
| Maximum Authorized Debt: | $259,000.00 |

* The Unison Purchase Price Balance may be subject to reduction under Sections 7.3(d) and 10.2 of the Unison HomeOwner Covenant Agreement.

The formulae to be applied in any calculation of the Investor Proceeds or Investor Interest hereunder are set forth in Article 10 of the Unison HomeOwner Covenant Agreement, which is incorporated herein by reference.

Address, Phone Number and Electronic
Mail Address for Notice to Owner:

3718 S 256th Ct
Kent, WA 98032
206-419-3433

Address for Notice to Investor:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800
Attn: Asset Administration

Page 4 of 7

© 2019, **Unison**

Form 251 HO-All (rev. 3/4/2019)

IN WITNESS WHEREOF, intending to be legally bound, the parties have executed this Unison HomeOwner Option Agreement as of the Effective Date.

**INVESTOR:**                                                    **OWNER:**

Unison Agreement Corp.

By: _____                    By: _____
                                                        Charles Boyd Olson
Name: Daniel Eisenberg

                                                        Date Signed: 03/27/2019
Title: Vice President

                                                        By: _____
Date: March 26, 2019                                Janine E Olson

                                                        Date Signed: 03/37/2019

                                                        By: _____

                                                        Date Signed: _____

                                                        By: _____

                                                        Date Signed: _____

Page 5 of 7

ER-84

## Exhibit A

## PROPERTY DESCRIPTION

That certain real property situated in the City of Kent, County of King, State of 98032, described as follows:

LOT 1, PARKSIDE NO. 1, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 102 OF PLATS, PAGES 25 AND 26, RECORDS OF KING COUNTY, WASHINGTON.

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON

APN: 6669010010

[End of legal description.]

© 2019, Unison                                    Form 251 HO-All (rev. 3/4/2019)

**Exhibit B**

**OPTION EXERCISE NOTICE**

Date:

To:     [Homeowner Name(s)]
        [Property Address]
        [City State ZIP]

      1. Notice is hereby given of Investor's election to exercise the Option granted to Investor by [Homeowner Name(s)] ("Owner") under the Unison HomeOwner Agreement between Investor and Owner dated as of [Effective Date] ("Unison HomeOwner Agreement"). Capitalized terms not defined herein are defined in the Unison HomeOwner Agreement.

      2. Under the terms of the Unison HomeOwner Agreement, the Ending Agreed Value of the Property (as adjusted if applicable), multiplied by the Investor Percentage, minus the Unison Purchase Price Balance, together with any Unpaid Owner Obligations, equals the sum of

      $ (        dollars and   cents).

      3. Upon acceptance of such amount from Owner, Investor shall effect a full release and reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents.

Dated: _____    By: **Exhibit – Do Not Sign**

                                      Name: **Exhibit – Do Not Sign**

                                        Title: **Exhibit – Do Not Sign**

© 2019, Unison                    Form 251 HO-All (rev. 3/4/2019)

# EXHIBIT 2-2

Unison HomeOwner Agreement ID Number: FRX-142187

## UNISON HOMEOWNER COVENANT AGREEMENT

### ARTICLE ONE
### INTRODUCTORY PROVISIONS

**1.1 Transaction Documents; Purpose of Unison HomeOwner Covenant Agreement.** Pursuant to that certain Unison HomeOwner Option Agreement (**"Unison HomeOwner Option Agreement"**) dated as of 03/26/2019 (**"Effective Date"**), CHARLES BOYD OLSON AND JANINE E OLSON, HUSBAND AND WIFE AS JOINT TENANTS (**"Owner"**) is granting to Unison Agreement Corp., a Delaware corporation, its successors and assigns (**"Investor"**), an option (**"Option"**) to purchase an undivided fractional interest (**"Investor Percentage"**) in that certain residential real property known as 3718 S 256th Ct, Kent, WA 98032 (the **"Property"**), in partial consideration of Investor's providing Owner an advance of funds (the **"Unison Investment Payment"**). Under the Unison HomeOwner Option Agreement, Owner is giving Investor the right, but not the obligation, to exercise its Option and purchase an undivided percentage interest in and to the Property upon the sale of the Property or on the occurrence of any other **Exercise Event** specified in the Unison HomeOwner Option Agreement. This Unison HomeOwner Covenant Agreement (**"Unison HomeOwner Covenant Agreement"**), dated as of the Effective Date, sets forth the representations, warranties, duties and covenants of Owner and Investor during the **Term** of the Option and whenever reasonable or necessary to protect the rights of the parties.

The Unison HomeOwner Agreement (**"Unison HomeOwner Agreement"**) consists of the following transaction documents together with any and all addenda, supplements, schedules, and exhibits thereto (**"Transaction Documents"**): (a) this Unison HomeOwner Covenant Agreement; (b) the Unison HomeOwner Option Agreement; (c) a memorandum giving notice of the Option and the Unison HomeOwner Agreement, recorded in the county where the Property is located (**"Unison HomeOwner Recorded Memorandum"**); and (d) a deed of trust (or mortgage) and security agreement, together with any riders thereto giving notice of the Option as a secured interest, recorded in the county where the Property is located (**"Unison HomeOwner Security Instrument"**).

**1.2 Definitions.** The Unison HomeOwner Agreement contains certain defined terms (**"Defined Terms"**). All Defined Terms either have their meaning described within the Transaction Documents, or are defined in alphabetical order in Schedule A to this Unison HomeOwner Covenant Agreement. The first use of any Defined Term in any Transaction Document is in **bold-face** type, and in some cases may also be placed within quotation marks and parentheses.

### ARTICLE TWO
### REPRESENTATIONS AND WARRANTIES

**2.1 Title, Occupancy, Capacity, Authority; Intent Of Agreement.**

    **(a) Fee Simple Title.** Owner is the owner of the Property and has marketable and insurable absolute title to the Property, free of any other claims, restrictions, leases, liens and other encumbrances or interests against the title, other than **Permitted Encumbrances** and **Permitted Senior Liens**.

    **(b) Principal Residence.** Owner will occupy the Property as Owner's **Principal Residence** throughout the Term, unless otherwise agreed by Investor, in writing, in its **Permitted Discretion**.

    **(c) Capacity.** Owner has full capacity to enter into the Unison HomeOwner Agreement and each of the Transaction Documents and, upon execution and delivery, the Unison HomeOwner Agreement shall constitute a legal, valid and binding agreement and obligation of Owner.

© 2019, Unison
Form 250 HO-All (rev. 3/4/2019)

**(d) Authority.** Owner is a **Natural Person** with the legal power, right and authority to grant the Option, to enter into the Unison HomeOwner Agreement and each of the Transaction Documents, and to consummate all transactions contemplated by the Unison HomeOwner Agreement. If the Property is to be held in a **Revocable Trust**, Owner has executed and delivered to Investor the revocable trust rider to the Unison HomeOwner Security Instrument ("**Revocable Trust Rider**") warranting the identical legal power, right and authority of the **Trustee(s)** and **Trustor(s)**.

**(e) Intent and Purpose of Agreement.** Owner acknowledges that the Unison HomeOwner Agreement is not offered by Investor, and should not be used by Owner, for use as a source of short-term (fewer than three year) funding. Owner acknowledges that the Unison HomeOwner Agreement is instead exclusively offered by Investor as a source of funding pursuant to which Owner will occupy the residence as principal residence (unless otherwise agreed to in writing by Investor, in its Permitted Discretion) for a period of three years or more from the Effective Date in order to permit Investor a reasonable time in which to recoup its transaction costs in originating its investment, and that the following provisions, in addition to this **Section 2.1(e)** of the Unison HomeOwner Covenant Agreement, are expressly designed, and intended by Owner and Investor, to effectuate this purpose and intent: Unison HomeOwner Covenant Agreement **Sections 2.2, 2.5, 3.5, 6.2, 7.1(b), 7.3(d), 9.4(c), 10.2, 10.4(b)** and **10.4(c)**. Owner further acknowledges that evidence of intent by Owner to use the Unison HomeOwner Agreement other than in accordance with this purpose and intent shall raise a presumption of bad faith on the part of Owner which shall constitute a breach of the Unison HomeOwner Agreement if not rebutted by clear and convincing evidence.

## 2.2 No Lawsuits, Claims, Foreclosures, Or Violations; Property Defects and Conditions.

**(a)** To the best of Owner's knowledge, after due and diligent inquiry, there is no litigation or arbitration pending or threatened against Owner or the Property that might adversely affect the value of the Property or the ability of Owner to perform Owner's obligations under the Unison HomeOwner Agreement;

**(b)** To the best of Owner's knowledge, after due and diligent inquiry, there is no foreclosure, notice of default, notice of sale, condemnation, environmental, zoning, or land-use regulation proceeding; or any material lawsuit, tax claim, special assessment, or other dispute, present or threatened, which could affect the use or value of the Property. Owner shall notify Investor immediately of any such proceedings of which Owner becomes aware.

**(c)** To the best of Owner's knowledge, after due and diligent inquiry, there are no operations or activities upon, or present or proposed use or occupancy of the Property or portion thereof, that are not or will not be fully compliant with all state, federal and local laws, zoning ordinances, and regulations.

**(d)** There are no material defects or conditions on or affecting the Property or title to the Property undisclosed to Investor which are now known to or could reasonably be discovered by Owner, which if later disclosed or discovered, could affect the future use or value of the Property. Owner acknowledges that evidence of misrepresentation or nondisclosure by Owner in contravention of this **Section 2.2(d)** shall raise a presumption of bad faith on the part of Owner which shall constitute a breach of the Unison HomeOwner Agreement if not rebutted by clear and convincing evidence.

**2.3 No Advice. Owner understands that granting Investor the Option and entering into the Unison HomeOwner Agreement can have significant tax, financial and estate planning consequences. Owner acknowledges that Investor has urged Owner to discuss the Unison HomeOwner Agreement with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of the risks and benefits of the Unison HomeOwner Agreement with respect to Owner's particular situation, and that of Owner's family and heirs, and Owner has had the opportunity to do so to Owner's full satisfaction. Owner has reviewed, and understands the risks and benefits of, the Unison HomeOwner Agreement.**

© 2019, Unison                                                Form 250 HO-All (rev. 3/4/2019)

In granting the Option and entering into the Unison HomeOwner Agreement, Owner is not relying on any information or representation by Investor, its agents, its affiliates, or any of their officers, employees or agents, regarding: (a) the value of the Property; (b) the advisability of Owner's entering into the Unison HomeOwner Agreement or any transaction contemplated thereunder; or (c) the tax implications and consequences of entering into the Unison HomeOwner Agreement or any transaction contemplated thereunder. Owner has made, and will make, Owner's own investigation and seek independent advice regarding such matters, as Investor has expressly urged.

**2.4 Spouse Or Other Resident Not On Title.** Owner has identified and obtained the signatures of all "Non-Owner Occupants" who occupy the Property on the **Notice and Acknowledgment Regarding Spouses, Partners and Co-Occupants Who Are Not Signatories To The Unison HomeOwner Agreement ("Non-Owner Occupant Disclosure")** in the form attached hereto as Exhibit B. Owner must make, and advise all Non-Owner Occupants to make, independent investigation regarding the legal and financial effect of the Unison HomeOwner Agreement upon the sale of the Property, the death of the last surviving Owner (**"Last Surviving Owner"**), the end of the Term, or following an **Event Of Default** hereunder. Investor makes no representations as to consequences of Owner's granting the Option or entering into the Unison HomeOwner Agreement on the rights of any Non-Owner Occupant. If any additional adult person not on record title commences to occupy the Property during the Term, Owner must promptly notify Investor and deliver Investor a complete and revised Non-Owner Occupant Disclosure.

**2.5 Documentation and Information Supplied by Owner; Financial Condition of Owner.** All financial and other documentation and other information Owner has provided to Investor in granting the Option, or in applying for or entering into the Unison HomeOwner Agreement is truthful, complete, not misleading, and fairly and accurately reflects the financial condition of Owner and the condition of the Property as of the date supplied, as of the date of Owner's execution of the Unison HomeOwner Agreement, and as of the Effective Date. There has been no material change in Owner's financial condition or the condition of the Property since Owner's application to Investor.

**2.6 Continuing Obligations.** Owner is making the representations and warranties herein to induce Investor to enter into the Unison HomeOwner Agreement. All representations and warranties given, and instruments delivered by Owner in connection with the Unison HomeOwner Agreement (including Owner's application for the Unison HomeOwner Agreement), are both true and correct at the time given, at the time of execution of the Unison HomeOwner Agreement by Owner and as of the Effective Date, and Owner must promptly notify Investor during the Term if any representation or warranty Owner has made under this **Article Two** or elsewhere ceases to be materially accurate or true. Investor's right to rely on the truth, accuracy and completeness of the representations, warranties and covenants set forth in this **Article Two** shall survive the Term.

**2.7 Conflict.** Owner's execution and delivery of the Unison HomeOwner Agreement and Transaction Documents, the incurrence of its obligations, the consummation of the transactions it contemplates, and Owner's compliance with its terms, will not conflict with, or result in a breach of, or constitute a default under, any note, mortgage, deed of trust, loan, agreement, lease, indenture, evidence of indebtedness, or other agreement or instrument to which Owner is a party or by which any portion of the Property may be bound.

© 2019, Unison                                                    Form 250 HO-All (rev. 3/4/2019)

## ARTICLE THREE
## OPTION EXERCISE ON SALE OF PROPERTY

**3.1 In General.**

(a) Investor may, in its Permitted Discretion, exercise the Option as of any sale, exchange, or other transfer of the Property or any portion thereof by Owner, other than an **Exempted Owner Assignment**. The manner of Option exercise shall be as prescribed in **Section 3** of the Unison HomeOwner Option Agreement.

(b) At any time during the Term, Owner may solicit offers for the Property sale to a third party ("**Third Party Buyer**") without the express approval of Investor, provided Owner complies with all terms and conditions of this **Article Three**. If a sale or transfer of the Property does not satisfy the terms and conditions of this **Article Three**, it shall not constitute a Permitted Sale ("**Permitted Sale**"), and Investor shall not be obligated to release Owner from any duty or liability under the Unison HomeOwner Agreement in connection with the sale or transfer. Any attempted sale or transfer of the Property or any portion thereof by Owner that does not comply with this **Article Three** is an Event Of Default by Owner and is deemed imminently to prejudice **Investor's Rights** hereunder.

**3.2 Requirements Of Permitted Sale.**

(a) **Notice.** Owner must notify Investor in writing of Owner's decision to market, sell or transfer the Property ("**Notice Of Intention To Sell**"), at least 45 days (or otherwise within a commercially reasonable time) prior to the closing of such sale or transfer. Owner must attach to such Notice Of Intention To Sell any and all documents executed by Owner in connection with the Property's marketing or sale (including but not limited to any and all inspection report(s), listing agreements, staging agreements, and preliminary escrow instructions).

(b) **Documentation; Appraisal; Inspections.**

(i) Owner must promptly provide to Investor copies of all the following as Owner receives them: (**A**) all offers to purchase the Property; and (**B**) all contracts and other documents related to the prospective sale (including but not limited to inspections, appraisals, escrow instructions, preliminary title reports and other transaction documents and instruments of whatever character relating to the proposed sale or transfer).

(ii) In the event that the Third Party Buyer does not obtain, at a minimum, a standard pest report and standard contractor's inspection report in connection with the Property, Owner must obtain such reports, at Owner's sole expense (or, alternatively, Investor may obtain such reports at Owner's expense), and deliver these to Investor no later than fourteen (14) days prior to the proposed closing of the sale. These reports shall be used by Investor to review the terms of the sale, and, along with other reports deemed necessary by Investor, in connection with Investor's determination of the **Deferred Maintenance Adjustment**, if any.

(iii) Investor may, in its Permitted Discretion, provide to Owner one or more proposed date(s) for **Appraisal** of the Property, to be performed at Owner's expense in accordance with and subject to the terms of **Section 8.5** below, to ascertain the market value and condition of the Property, including Investor's determination of the **Remodeling Adjustment** and/or Deferred Maintenance Adjustment, if any.

(c) **Escrow and Closing.**

(i) A Permitted Sale must be consummated through an appropriate real property **Escrow** using the services of an **Escrow Holder**. Owner and Investor shall do or cause to be done, any

Page 4 of 46

© 2019, Unison

Form 250 HO-All (rev. 3/4/2019)

and all acts and things as shall be reasonably necessary for Escrow to close the transactions contemplated in the Unison HomeOwner Agreement.

(ii) The closing of any Permitted Sale shall be scheduled so as to allow Investor: **(A)** to review relevant documents for the Remodeling Adjustment, if any, and Deferred Maintenance Adjustment, if any; and **(B)** to obtain Appraisal(s), in its Permitted Discretion.

**3.3 Option Settlement Or Exercise At Closing Of Permitted Sale.** As of the close of Escrow of a Permitted Sale, and provided Owner has complied with the terms of the Unison HomeOwner Agreement:

(a) Prior to the close of Escrow, Investor shall deliver to Owner or to Escrow Holder a calculation of the **Unison Purchase Price Balance** payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of any and all monetary amounts owed to Investor as unreimbursed **Protective Advances**, unpaid interest, fees and other charges associated with Protective Advances, or unpaid **Asset Administration Fees** hereunder ("**Unpaid Owner Obligations**"). Because Investor will have previously paid a portion of the **Unison Purchase Price** to Owner in the form of the Unison Investment Payment, the Unison Purchase Price shall be reduced by the Unison Investment Payment in calculating the Unison Purchase Price Balance.

(b) Upon close of, and through Escrow for the Permitted Sale, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the **Ending Agreed Value** of the Property (determined in accordance with **Section 10.3** below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations as set forth in **Section 3.3(a)** above; Owner however may elect to settle the Unison HomeOwner Agreement and terminate Investor's Option to purchase Investor's undivided percentage interest by tendering to Investor, through Escrow for the Permitted Sale, the amount calculated as follows: the Ending Agreed Value (determined in accordance with **Section 10.3** below), multiplied by the Investor Percentage, minus the Balance Payment together with any and all Unpaid Owner Obligations ("**Investor Interest**"). Upon Escrow's delivery and Investor's acceptance of the Investor Interest, in and through Escrow for the closing of the Permitted Sale, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

(c) In the event Owner does not terminate Investor's Option to purchase and settle the Unison HomeOwner Agreement pursuant to **Section 3.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property through Escrow simultaneously with closing of a Permitted Sale, as follows: Owner shall deed Investor its percentage interest in and to the Property through Escrow for the Permitted Sale; Investor and Owner, as co-owners of the Property, shall deed the Property to Third Party Buyer through Escrow for the Permitted Sale; and Escrow shall close the Permitted Sale, transfer title to Third Party Buyer, and liquidate Investor and Owner's respective percentage interests in and to the Property.

(d) **Priority of Investor Interest In Connection With Senior Liens.** On close of Escrow of a Permitted Sale, prior to the disbursement of any sums to Investor, Escrow Holder shall first disburse from proceeds in Escrow, all amounts necessary to satisfy in full any outstanding loans secured by " **Approved Existing Loans**" or "**Approved Subsequent Liens**" on the Property.

(e) **Closing Costs and Sales Commissions.** Owner shall pay all costs in connection with the Permitted Sale of the Property, or in connection with Investor's Option exercise that is followed by a sale of the Property in order to liquidate Investor's percentage interest, including, without limitation, recording fees and costs, reconveyance fees, Escrow fees, title insurance fees, federal, state, local and documentary transfer taxes ("**Closing Costs**") owed in connection with the Sale or Investor's Option exercise, not

Page 5 of 46

including any closing costs owed by Third Party Buyer. Closing Costs shall be paid from the amounts that are owed to Owner, and not from any amounts that are owed to Investor.

(f) **Owner's Obligation For Transaction Costs. In the event that there are amounts in Escrow equal to the Investor Interest, together with sufficient amounts to release and reconvey all Senior Liens or Approved Subsequent Liens on the Property (including those Senior Loans secured by Senior Liens for which the lien holder has agreed to accept less than the outstanding amounts due in satisfaction of Owner's obligation), but there are insufficient amounts to additionally satisfy those Closing Costs, Sales Commissions, taxes, fees, other loans or obligations of Owner, or any other out of pocket expenses required to be paid to third parties in order to deliver clear title to the Property to the Third Party Buyer, Owner shall be solely responsible for paying such other obligations, costs and expenses from Owner's other assets or separate funds.**

(g) If the date scheduled for close of Escrow of a Permitted Sale falls after the Expiration Date of the Unison HomeOwner Agreement, the Term and the Expiration Date shall automatically extend for a reasonable period of time necessary to permit settlement of the Investor Interest or, alternatively, Investor's purchase of its undivided percentage interest and subsequent sale of the Property by Investor and Owner as co-owners to a Third Party Buyer.

**3.4 Additional Restrictions On Permitted Sales.** In addition to the requirements set forth in **Sections 3.1 and 3.2** above, no sale or transfer of the Property shall constitute a Permitted Sale, nor shall Investor consent to any proposed sale of the Property, which does not meet the following restrictions and requirements:

(a) **Arm's Length.** Any sale or transfer of the Property must be at arm's length, made on commercially reasonable terms and entered into in good faith.

(b) **Responsibility For Liens.** In connection with any sale or transfer, Owner shall be solely responsible for conveying title free and clear of any liens, and for satisfying any and all loans and other obligations secured by liens on the Property.

(c) **Sufficient Cash To Owner.** Except as consented to by Investor in writing in its Permitted Discretion, no proposed sale of the Property shall be a Permitted Sale if the consideration for the sale price is not provided by the Third Party Buyer in good and lawful funds at close of Escrow, or if the sale or transfer employs financing by Owner, non-cash consideration, or wraparound financing by Third Party Buyer such that full cash consideration in the amount of the sale price is not conveyed to the Owner.

(d) **No Sales "Subject To" Or Defeasible Sales.** Except as consented to by Investor in writing in its Permitted Discretion, no sale or other transfer which purports to convey title to the Property by Owner to a Third Party Buyer "subject to" the lien created by the Unison HomeOwner Agreement, or "subject to" any other existing lien or payment obligation on the Property, nor any sale or transfer which purports to be defeasible by Owner and Third Party Buyer after close of Escrow upon the occurrence of some future contractually-specified event, shall be a Permitted Sale.

**3.5 Sale Price At Variance With Appraised Or Estimated Market Value; Special Provisions Relating to Sale By Owner, Intrafamily Transactions and Sales to Entities.**

(a) In the case of any proposed sale or transfer by Owner wherein Investor determines in its Permitted Discretion that the proposed sale price differs materially from the then-estimated market value of the Property or an **Appraised Value**, or in any **Sale By Owner Transaction** or **Intrafamily Transaction** proposed by Owner, Investor shall have the right, but not the obligation, to take any or all of the following actions, in its Permitted Discretion: **(i)** to make an offer in writing to purchase the Property from Owner for the same price or higher, and upon the same terms and conditions, as the proposed offer from the Third Party Buyer and, if such offer is rejected by Owner, to obtain a written affidavit under oath

Page 6 of 46

from Owner stating the reasons for the rejection; **(ii)** to require Owner, Third Party Buyer and, where applicable, their respective real estate brokers of record conducting the proposed sale transaction, to execute an affidavit under oath attesting that **(A)** the relationship between Owner and Third Party Buyer and the proposed transaction is at arm's length; and **(B)** that the proposed sale price of the Property has been determined either by reasonable exposure to the real estate market in the area where it is located or by other valuation methods acceptable to Investor in its Permitted Discretion, which affidavit shall be accompanied, at Investor's request, with supporting written documentation; **(iii)** to require that one or more Appraisals of the Property be conducted in order for valuation of the Property to be established, pursuant to **Sections 8.5 and 8.6** of this Unison HomeOwner Covenant Agreement;

**(b)** In any Sale By Owner or Intrafamily Transaction or a sale to any Third Party Buyer that is not a Natural Person (or Natural Persons taking title to the Property in the form of a Revocable Trust), or otherwise under circumstances of Owner's fraud, misrepresentation or bad faith hereunder, Investor shall have the right, in its Permitted Discretion to require that an Appraised Value, rather than the **Effective Sale Price**, be used to determine the Ending Agreed Value of the Property.

**3.6 No Investor Liability.** Investor shall not be liable to Owner for, and Owner hereby holds Investor harmless from, any and all liability or loss in connection with any delay or postponement of closing of a sale or transfer hereunder **(a)** resulting from any reasonable inquiry or dispute by Investor pertaining to the estimated market value or Appraised Value of the Property, the Remodeling Adjustment, the Deferred Maintenance Adjustment, or to the validity of any proposed sale or transfer as a Permitted Sale; **(b)** where Owner has failed to provide Investor with timely, accurate and complete documentation or materials as required hereunder or otherwise requested by Investor in connection with such sale or transfer; or **(c)** resulting from any action undertaken by Investor under the terms of **Section 3.5** above.

## ARTICLE FOUR
## OPTION EXERCISE AT TERM

**4.1 In General.** In its Permitted Discretion, Investor shall have the right to exercise the Option as of the Expiration Date of the Unison HomeOwner Agreement, as specified in **Section 2** of the Unison HomeOwner Option Agreement, subject to the terms and conditions of this **Article Four**.

**4.2 Opening Escrow At Term; Inspections; Appraisals.** Investor's exercise of the Option at Term, and its purchase of an undivided percentage interest in and to the Property, shall be conducted through Escrow. At least 90 days, but not more than 150 days, prior to the Expiration Date of the Unison HomeOwner Option Agreement, Investor shall open Escrow with an Escrow Holder selected by Investor. Investor and Owner shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal, at Owner's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.

**4.3 Escrow: Deliveries, Timing; Closing.** As of the close of Escrow, and provided Owner has complied with the terms of the Unison HomeOwner Agreement:

**(a)** Prior to the close of Escrow, Investor shall deliver to Owner or to Escrow Holder a calculation of the Unison Purchase Price Balance payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of Unpaid Owner Obligations, if any. Because Investor will have previously paid a portion of the Unison Purchase Price to Owner in the form of the Unison Investment Payment, the Unison Purchase Price shall be reduced by the Unison Investment Payment in calculating the Unison Purchase Price Balance.

**(b)** Upon close of, and through Escrow for the Option exercise, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the Ending Agreed Value of the Property (determined in accordance with **Section 10.3**

© 2019, **Unison**                                                                 Form 250 HO-All (rev. 3/4/2019)

below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations, as set forth in **Section 4.3(a)** above. Owner however may elect to settle the Unison HomeOwner Agreement and terminate Investor's Option to purchase its undivided percentage interest by tendering the amount calculated as the Investor Interest to Investor through Escrow. Upon Escrow's delivery and Investor's acceptance of the Investor Interest, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

(c) In the event Owner does not terminate Investor's Option to purchase and tender Investor the Investor Interest pursuant to **Section 4.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property, and Owner shall promptly deed Investor such interest in and to the Property, whereupon Investor and Owner, as co-owners of the Property, shall promptly market and sell the Property in order to liquidate their respective percentage interests therein and thereto; and the Term shall automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

(d) **Closing Costs and Sales Commissions.** Owner shall pay all Closing Costs and Sales Commissions owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by Third Party Buyer. Closing Costs and Sales Commissions shall be paid from the amounts that are owed to Owner, and not from any amounts that are owed to Investor.

**4.4 Owner's Right To Sell Property In Permitted Sale Prior To Option Exercise At Term.** Owner may sell or transfer the Property in a Permitted Sale prior to close of Escrow under this **Article Four**, provided any such sale or transfer complies with the requirements of **Article Three** above, and such sale or transfer closes no later than 11:59 p.m. Pacific Time on the date at least five (5) Business Days prior to the Expiration Date.

# ARTICLE FIVE
# OPTION EXERCISE AS OF DEATH OF OWNER

**5.1 In General.** Investor has the right in its Permitted Discretion to exercise the Option as of the death of the Last Surviving Owner, according to the procedures set forth in this **Article Five**.

**5.2 Opening Escrow Inspections; Appraisals**

(a) Each Owner must at all times during the Term have designated at least one living Natural Person out of Owner's administrators, devisees, executors, heirs, legatees or representatives (collectively and individually, **"Owner's Estate"**) which Person shall be charged with notifying Investor immediately in writing of the death of such Owner.

(b) Upon or following Investor's receipt of notice of the death of the Last Surviving Owner, in the event Investor elects to exercise the Option, Investor shall open Escrow with an Escrow Holder selected by Investor. The date selected for close of Escrow may be no earlier than 180 days following the date of death of the Last Surviving Owner; unless agreed to by Owner's Estate in writing; provided, further, that if Investor deems in its Permitted Discretion that Owner's Estate has commenced good faith efforts to sell the Property in a Permitted Sale within the 180 day period following the date of death, Investor may in its Permitted Discretion extend the date selected for close of Escrow for a maximum of two consecutive 90-day periods following the 180th day from death of the Last Surviving Owner to permit Owner's Estate to accomplish such Permitted Sale.

© 2019, Unison                                            Form 250 HO-All (rev. 3/4/2019)

(c) Investor and Owner's Estate shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal of the Property, at Owner's Estate's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.

**5.3 Escrow; Deliveries; Timing; Closing.** As of the close of Escrow, and provided Owner has complied with the terms of the Unison HomeOwner Agreement:

(a) Prior to the close of Escrow, Investor shall deliver to Owner's Estate or to Escrow Holder a calculation of the Unison Purchase Price Balance payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of Unpaid Owner Obligations, if any. Because Investor will have previously paid a portion of the Unison Purchase Price to Owner in the form of the Unison Investment Payment, the Unison Purchase Price shall be reduced by the Unison Investment Payment in calculating the Unison Purchase Price Balance.

(b) Upon close of, and through Escrow for the Option exercise, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the Ending Agreed Value of the Property (determined in accordance with **Section 10.3** below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations, as set forth in **Section 5.3(a)** above. Owner's Estate however may elect to settle the Unison HomeOwner Agreement and terminate Investor's Option to purchase its undivided percentage interest by tendering the amount calculated as the Investor Interest to Investor through Escrow. Upon Escrow's delivery and Investor's acceptance of the Investor Interest, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

(c) In the event Owner's Estate does not terminate Investor's Option to purchase and tender Investor the Investor Interest pursuant to **Section 5.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property, and Owner's Estate shall promptly deed Investor such interest in and to the Property, whereupon Investor and Owner's Estate, as co-owners of the Property, shall promptly market and sell the Property in order to liquidate their respective percentage interests therein and thereto; and the Term shall automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

(d) **Closing Costs and Sales Commissions**. Owner's Estate shall pay all Closing Costs and Sales Commissions owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by Third Party Buyer. Closing Costs and Sales Commissions shall be paid from the amounts that are owed to Owner's Estate, and not from any amounts that are owed to Investor.

**5.4** Reserved.

**5.5 Administration of Estate; Investor Rights.** Owner's Estate shall administer and protect the Property so as to preserve Investor's Rights to the extent permitted by law following the death of Owner; and Investor's rights in and to the Property under the Unison HomeOwner Agreement shall have priority over expenditures by Owner's Estate which are not reasonably necessary to administer and protect the Property.

**5.6 Owner's Estate's Right to Sell the Property Prior to Close of Escrow.** Owner's Estate may sell the Property in a Permitted Sale within the period prescribed in **Section 5.2(b)**.

© 2019, Unison

**5.7** All time periods specified in this **Article Five** shall run from the actual date of the death of the Last Surviving Owner. Failure of Owner's Estate or any other Person to notify Investor of the death of the Last Surviving Owner shall not toll or suspend the running of any time period specified herein.

**ARTICLE SIX**
**NON-EXERCISE TERMINATIONS OF OPTION**

**6.1** Subject to Investor's Rights hereunder and to those representations and warranties, and duties and covenants of Owner which by their nature survive the Expiration Date; and to the Investor remedies set forth in **Article Seven** below, the Option shall terminate if:

    **(a)** Investor in its Permitted Discretion elects not to exercise the Option, and voluntarily allows it to lapse as of any Exercise Event, the Term, or the Expiration Date;

    **(b)** Investor in its Permitted Discretion voluntarily terminates the Unison HomeOwner Agreement in writing;

    **(c)** Investor acquires title to 100% of the Property;

    **(d)** the Property is destroyed and the insurance proceeds are paid to Investor in the full amount specified in **Section 8.16** of this Unison HomeOwner Covenant Agreement; or

    **(e)** the Property is condemned, in whole and not in part, and the condemnation proceeds are paid to Investor in the full amount specified in **Section 8.17** of this Unison HomeOwner Covenant Agreement.

**6.2 Special Termination By Owner.** Owner acknowledges and agrees that under the terms of the Unison HomeOwner Agreement, Investor and Owner have covenanted and agreed that the Option may not be exercised until the occurrence of the earlier of an Exercise Event as defined in the Unison HomeOwner Option Agreement, or the Expiration of the Term. Notwithstanding the foregoing, Investor acknowledges and agrees that commencing on the third (3rd) anniversary of the Effective Date, Owner shall have the right to request a special termination of the Option in advance of an Exercise Event or Expiration of Term (**"Special Termination"**) by payment to Investor of the greater of: the Unison Investment Payment plus any Unpaid Owner Obligations; or the Investor Interest calculated at the time of Special Termination (**"Special Termination Price"**). The Investor Proceeds in any Special Termination shall be calculated using an Ending Agreed Value equal to the greater of the Appraised Value of the Property at the time of Special Termination, or the **Solicited Sale Value.** Investor's consent to a Special Termination shall not be unreasonably withheld.

    **(a) Notice; Proof Of Funds.** At least 45 days prior to the proposed Special Termination, Owner shall deliver notice to Investor that Owner is offering a Special Termination and open Escrow with an Escrow Holder selected by Investor. With such notice, Owner shall provide to Investor true and correct copies of: **(i)** all offers for the purchase of the Property, or any expressions of interest therein; and **(ii)** all listings for the sale of the Property, if any. Investor shall have the right in its Permitted Discretion to require proof from Owner of adequate funds to pay the Special Termination Price.

    **(b)** Investor and Owner shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal of the Property for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.

    **(c) Investor's Deliveries.** Prior to close of Escrow, provided Owner has complied with the terms of the Unison HomeOwner Agreement, Investor shall deliver to Escrow:

Page 10 of 46

© 2019, **Unison**    

**ER-97**

(**i**) such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release and/or reconveyance of the Unison HomeOwner Recorded Memorandum, Unison HomeOwner Security Instrument and the Unison HomeOwner Agreement; and

(**ii**) a statement calculating the Special Termination Price payable to Investor by Owner in consideration for such full release and reconveyance.

(**d**) **Owner's Deliveries.** On or prior to the close of Escrow, Owner shall deliver the Special Termination Price into Escrow as demanded by Investor together with any and all Closing Costs, recording expenses or other expenses in connection with Escrow or such Special Termination.

(**e**) **Closing.** At close of and through Escrow, Investor shall be paid the Special Termination Price. Upon, and only upon, Investor's accepting the Special Termination Price, Investor shall instruct Escrow to release and reconvey the Unison HomeOwner Recorded Memorandum, the Unison HomeOwner Security Instrument, and to record any and all other documents as Escrow reasonably requires to reflect the release and/or reconveyance of the Unison HomeOwner Agreement in the county where the Property is located.

(**f**) Investor shall retain the right, in Investor's Permitted Discretion, to reject any purported tender by Owner of the Special Termination Price where (**i**) Investor has not had adequate opportunity to review inspections, appraisals, or other documents, or (**ii**) Investor deems Owner's tender insufficient, inadequate, or untimely.

(**g**) **Non-Disclosure Or Sale At Or After Special Termination.** If Owner fails to disclose an offer to purchase the Property made within ninety (90) days prior to, or Investor becomes aware of a Solicited Sale Value within ninety (90) days following a Special Termination, Owner shall remain liable to Investor for the amount, if any, by which the Investor Interest computed according to the Solicited Sale Value exceeds the Special Termination Price actually paid to Investor.

**ARTICLE SEVEN**
**DEFAULT**

**7.1 Events Of Default.** The occurrence of any of the following shall constitute an event of default by Owner ("**Event Of Default**") hereunder:

(**a**) **Failure To Perform.** Owner (**i**) breaches or fails to perform any obligation or covenant under the Unison HomeOwner Agreement, including but not limited to (**A**) failure to honor Investor's Rights; or (**B**) failure to cooperate with, or interference with, Investor's Option exercise and purchase of an undivided percentage interest in and to the Property; or (**ii**) Owner otherwise takes any action to impede the exercise of the Option, or to reject Investor's rights under the Unison HomeOwner Agreement or any of the Transaction Documents as unenforceable.

(**b**) **Misrepresentation.** Owner makes (or has made) any oral or written representation or warranty to Investor that is false or misleading as of the time given, including, without limitation, any breach of the representations and warranties given by Owner in **Section 2.2** above; any misrepresentation or suppression of material fact in connection with the amount or kind of consideration given to Owner in any sale or transfer of the Property, in connection with the condition or value of the Property, or in connection with any financial and other documentation and other information Owner has provided to Investor in applying for or entering into the Unison HomeOwner Agreement; or Owner fails to correct a material representation that has become untrue and which may reasonably be expected to affect the Property, its value, or Investor's Rights.

© 2019, **Unison**                                    Form 250 HO-All (rev. 3/4/2019)

**(c) Other Events Of Default.** Any and all of the following: **(i)** any loans that are secured by liens on the Property, whether recorded or unrecorded, become delinquent (whether or not such loans or liens have been approved or subordinated to by Investor); **(ii)** any taxes on the Property become delinquent; **(iii)** Owner transfers or attempts to transfer the Property or any interest therein, except in accordance with the Unison HomeOwner Agreement; **(iv)** Owner ceases to occupy the Property as Owner's Principal Residence, or leases or rents the Property, or any portion of the Property, without Investor's express written consent in its Permitted Discretion; **(v)** the Property is used for any commercial purpose (other than a "home office" within the meaning of applicable U.S. tax regulations) or as anything other than a residential dwelling; **(vi)** Owner fails to maintain, preserve or repair the Property to the standards and in the manner specified in the Unison HomeOwner Agreement; **(vii)** any lien in violation of the terms of the Unison HomeOwner Agreement attaches to the Property; **(viii)** the total amount of indebtedness secured by the Property exceeds the **Maximum Authorized Debt**; **(ix)** Owner fails to maintain insurance on the Property as prescribed in the Unison HomeOwner Agreement; **(x)** Owner assigns, or attempts to assign or transfer the Option in violation of the Unison HomeOwner Agreement; **(xi)** any event of insolvency of any Owner, including but not limited to the commencement of any bankruptcy proceeding by or against any Owner or the appointment of a conservator of the affairs of any Owner or a receiver for the Property; **(xii)** following the death of the Last Surviving Owner, Owner's Estate does not comply with **Article Five** or any other provision of the Unison HomeOwner Agreement; or **(xiii)** any other action or event occurs which may reasonably be expected to have a material adverse effect on the Property, the value of the Property, or Investor's Rights.

## 7.2 Acceleration And Power Of Sale.

**(a) The occurrence of one or more of the Events Of Default in Section 7.1 above, if material and uncured, shall be deemed a failure of Owner's performance of Owner's obligations as secured by the Unison HomeOwner Security Instrument, and Investor shall be entitled to demand cure of such Event of Default, and both to exercise its Option and demand performance by Owner (or Owner's Estate) of any and all of its obligations under the Unison HomeOwner Agreement. The failure of Owner (or Owner's Estate) to cure such Event of Default and/or to render full performance of Owner's obligations under the Unison HomeOwner Agreement shall permit Investor to invoke any and all remedies permitted by the Unison HomeOwner Agreement, according to applicable law, including those remedies provided in Section 7 of the Unison HomeOwner Security Instrument. The procedures for Investor's exercise of its remedies under the Unison HomeOwner Security Instrument shall be as set forth in the Unison HomeOwner Security Instrument and as specified by applicable law.**

**(b) Liquidated Investor Bid Amount.** Owner and Investor agree and acknowledge that, because the damages that would arise from a failure of Owner's performance secured by the Unison HomeOwner Security Instrument under this **Article Seven** may be uncertain, depend on many factors, and be extremely difficult to ascertain, the amount of any investor bid (**"Investor Bid Amount"**) to be made in connection with a foreclosure sale of the Property by Investor or otherwise, shall be a liquidated amount equal to the Investor Interest calculated using an Ending Agreed Value for the Property as determined under **Section 10.4(f)** below.

**(c) Right Of Cure And Reinstatement**. Owner's rights to discontinue enforcement of the Unison HomeOwner Security Instrument by cure and reinstatement shall be as set forth in the Unison HomeOwner Security Instrument and as specified by applicable law.

## 7.3 Additional Remedies For Certain Events Of Default.

**(a) Termination.** Investor shall be entitled, but is not obligated to, demand immediate **Termination** of the Unison HomeOwner Agreement, the return of the Unison Investment Payment and any and all other payments tendered to Owner hereunder, and the immediate payment of the amount, if any, by which the Investor Interest calculated pursuant to **Section 10** below exceeds the Unison

© 2019, **Unison**

Form 250 HO-All (rev. 3/4/2019)

Investment Payment, together with any and all **Attorney's Fees** and costs incurred by Investor in connection with such termination, upon the discovery, occurrence, or during the continuation of any of the following: **(i)** fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(ii)** breach of the representations and warranties given in **Section 2.1(e)** or **Section 2.2(d)** above; or **(iii)** a transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeOwner Agreement.

**(b) <u>Damages For Breach</u>.** Owner shall be responsible to pay Investor any damages incurred by Investor arising or relating to Owner's Events Of Default hereunder.

**(c) <u>Specific Performance And Injunctive Relief</u>.** Owner and Investor agree that if Investor is not allowed to exercise its rights under the Unison HomeOwner Agreement, or if Owner fails to comply with its obligations thereunder, the damages to Investor may be irreparable and extremely difficult to estimate, making money damages or any remedy at law inadequate. Thus, in addition to any other rights and remedies available to it in law, equity or otherwise, Investor shall be entitled to specific performance of the covenants, agreements and rights contained in the Unison HomeOwner Agreement. Owner and Investor further agree and acknowledge that a violation or threatened violation of the Unison HomeOwner Agreement by Owner is likely to cause irreparable injury to the Investor and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the Investor shall thereafter be entitled to obtain immediate and other injunctive relief against the threatened breach of the Unison HomeOwner Agreement or the continuation of any such breach by Owner, without the posting of a bond or the necessity of proving actual damages.

**(d) <u>Reduced Unison Purchase Price Balance</u>.** Owner and Investor agree that in the event of **(i)** fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(ii)** any transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeOwner Agreement, or **(iii)** any other prolonged, material and uncured default by Owner under the terms of the Unison HomeOwner Agreement, the Investor Interest may, in Investor's Permitted Discretion, be calculated by applying a Unison Purchase Price Balance which has been reduced by an amount equal to ten percent (10%) of the Unison Investment Payment.

**(e) <u>Investor Right To Make Protective Advances</u>.** Investor shall have the right to make **Protective Advances** as provided in **Section 8.11**, in connection with any Event Of Default, whether or not Investor is also pursuing any other remedies under this **Article Seven**.

**(f) <u>Investor Rights To Enter Property</u>.** Investor shall have the right to enter the Property in connection with or following any Event Of Default hereunder to the extent reasonable or necessary in Investor's Permitted Discretion **(i)** to conduct inspection(s) and Appraisal(s) of the Property at Owner's or Owner's Estate's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and Remodeling Adjustment, if any; **(ii)** to prevent waste of the Property by Owner or Owner's Estate; and **(iii)** for any other purpose reasonable and necessary to prevent imminent or continuing harm to or diminution in value of the Property, in Investor's Permitted Discretion.

**<u>7.4 Option Exercise And Orderly Sale As Additional Remedy For Event Of Default</u>.** Investor and Owner agree that, upon an Event Of Default by Owner, in addition to the remedies provided in Paragraph 7 of the Unison HomeOwner Security Instrument and otherwise under this **Article Seven**, Investor and Owner, or Owner's Estate, may mutually elect a special remedy of Option exercise and Orderly Sale ("**Orderly Sale**"), as follows:

**(a) <u>Offer and Acceptance</u>.**

**(i)** Upon any Event Of Default by Owner (and provided that Owner has first reasonably exhausted any loss mitigation remedies offered to Owner by the holder of a Senior Lien), Investor may, but is not obligated to, in its Permitted Discretion, offer Owner the remedy of Option

© 2019, Unison

exercise and Orderly Sale. Investor shall tender such offer to Owner by opening an Escrow with an Escrow Holder selected by Investor, and promptly offering in writing to tender the Unison Purchase Price Balance into Escrow, in proposed exchange for Owner's granting and conveying to Investor through Escrow Investor's undivided fractional interest in and to the Property, together with a right of Investor to exclusively and unilaterally market and sell the Property in an orderly market sale, which offer shall advise Owner that Owner may have alternative means to cure an Event of Default related to delinquencies on a **Senior Loan** by application to the holder of the **Senior Lien**.

(ii) Within 10 days of Investor's delivery of such offer, Owner may, but is not obligated to, accept Investor's offer of Option exercise and Orderly Sale. Upon written notice of acceptance of such offer, Investor shall deliver the Unison Purchase Price Balance into escrow. Following such delivery, Owner shall deliver into Escrow: **(A)** a grant deed, executed by Owner and notarized, granting and delivering to Investor good and marketable fee simple title to an undivided fractional interest in the Property equivalent to the Investor Percentage, which deed Escrow Holder shall promptly cause to be recorded in the county where the Property is located; and **(B)** a notarized **Irrevocable Limited Power of Attorney** substantially in the form of Exhibit A hereto executed by Owner authorizing and empowering Investor (although only a co-owner of the Property) to exclusively market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein, upon Owner's delivery of the deed; and **(C)** instructions to Escrow concerning disbursement of the Unison Purchase Price Balance to remedy Events Of Default in accordance with **Section 7.4(b)** below, and in form and content acceptable to Investor .

**(b) <u>Disbursements to Cure Events Of Default.</u>** Promptly upon recordation of the deed and delivery of the Irrevocable Limited Power of Attorney, Investor will instruct Escrow Holder to disburse from the Unison Purchase Price Balance in Escrow as Protective Advances those amounts necessary to cure and remedy any and all Events Of Default, including delinquent payments, accrued interest, late fees, reinstatement fees and other penalties, together with any and all amounts which Investor deems necessary, in its Permitted Discretion, to repair, protect and maintain the Property. In the event amounts in Escrow are insufficient to cure and remedy any and all such Events Of Default, Investor may make additional Protective Advances; or Owner may advance amounts from Owner's separate assets or funds. Funds remaining in Escrow following such disbursements shall thereafter be retained by Escrow pending closing of the Orderly Sale.

**(c) <u>Marketing and Sale.</u>**

**(i)** Promptly following the cure of Owner's Event(s) Of Default, Investor may commence to market and sell the Property in an Orderly Sale. Owner will cooperate with Investor in conducting the Orderly Sale, provided that Investor, although only a co-owner of the Property, shall have the sole and exclusive right in its Permitted Discretion to market, advertise, list, determine the asking price of, and to solicit, accept, reject or negotiate any offers of sale of the Property, without the consent of Owner.

**(ii)** Investor will promptly provide copies of all written offers for sale of the Property to Owner, together with all contracts and other documents related to the prospective sale (including but not limited to listing and commission agreements, inspections, appraisals, escrow instructions, preliminary title reports and other documents and instruments of whatever character).

**(iii)** Owner shall obtain a standard pest report and standard contractor's inspection report in connection with the Property, at Owner's sole expense, (or, alternatively, Investor may obtain such reports at Owner's expense), and deliver these reports to Investor no later than twenty-one (21) days prior to the proposed closing of the sale. These reports shall be used by Investor to review the terms of the sale, and, along with other reports deemed necessary by Investor, for

Page 14 of 46

Investor's determination of the Deferred Maintenance Adjustment, if any, or Remodeling Adjustment, if any.

(iv) Investor may, in its Permitted Discretion, provide to Owner one or more proposed date(s) for an Appraisal of the Property, to be performed at Owner's expense in accordance with and subject to the terms of **Section 8.5** below to ascertain the market value and condition of the Property, including Investor's determination of the Remodeling Adjustment, if any, or Deferred Maintenance Adjustment, if any.

(d) **Occupancy, Use and Entry During Orderly Sale.** Owner shall have sole and exclusive use of occupancy of the Property during an Orderly Sale unless otherwise mutually agreed in writing by the parties, subject to any and all reasonable rights of Investor and Investor's agents, affiliates or other representatives to enter the Property in order for Investor to carry out its exclusive right to market and sell the property, including, without limitation, rights of entry as reasonable, necessary or required to clean, repair, paint, stage, photograph, inspect, hold publicly open, and show the Property to prospective buyers. Investor shall have the right, as co-owner of the Property, to encumber the Property by obtaining loans secured by liens on the Property, in order to raise those funds reasonably required to improve, repair and prepare the Property for sale at a competitive price in its market.

(e) **Closing.** Closing of the Orderly Sale will be scheduled so as to: (i) allow Owner to exercise the Owner **Right Of First Refusal;** and (ii) permit Investor to calculate the Remodeling Adjustment, if any, and Deferred Maintenance Adjustment, if any. Closing of the Orderly Sale shall be conducted identically to the closing of a **Third Party Sale** as set forth in **Sections 3.3(c), (d), (e),** and **(f)** above.

(f) **Owner Right Of First Refusal On Orderly Sale.** Owner and Owner's Estate shall have a limited Right Of First Refusal to purchase the Property on economic terms identical to those Investor has indicated it is willing to accept for the Orderly Sale of the Property, as follows:

(i) At such time as Investor receives a written bona fide offer for an Orderly Sale that Investor is willing to accept, Investor must refrain from accepting such offer and Owner will have until the close of business on the 3rd Business Day following Owner's actual receipt of the offer to execute and deliver a binding purchase contract with Investor to purchase the Property on economic terms (including terms with respect to financing) and within all specified time periods Investor has indicated it is willing to accept.

(ii) If the price of a bona fide written offer previously delivered to Investor is materially reduced after delivery to Investor, Investor shall promptly inform Owner in writing of such reduced price and Owner shall have until the close of the 3rd Business Day following Owner's actual receipt of such notice to execute and deliver a binding purchase contract with Investor to purchase the Property on economic terms, including the reduced price identical to the revised terms Investor has indicated it is willing to accept.

(iii) Owner's (or Owner's Estate's) failure to respond to Investor within the time set forth in this **Section 7.4(f)** shall constitute Owner's (or Owner's Estate's) waiver of the Owner Right Of First Refusal.

(iv) The closing of the sale to Owner or Owner's Estate shall occur not later than the date specified for the closing of the proposed Orderly Sale.

(v) Owner or Owner's Estate shall pay any and all Closing Costs and Sales Commissions incurred in connection with the sale to Owner or Owner's Estate and the proposed Orderly Sale.

© 2019, **Unison**                                                      Form 250 HO-All (rev. 3/4/2019)

**(vi)** If there are any outstanding loans secured by liens on the Property, Owner or Owner's Estate may choose to accept the Property subject to such liens rather than satisfying the loans and removing the liens through Escrow.

**(g)** The right to elect an Orderly Sale upon offer therefor by Investor shall extend to Owner's Estate following an Event Of Default or the death of Last Surviving Owner.

**7.5 Repayment In Bankruptcy.** In the event Investor is required to and does remit or disgorge one or more dollars paid by Owner or Owner's Estate pursuant hereto as a preference claim in a bankruptcy proceeding involving Owner or Owner's Estate, then Investor shall be entitled to assert a claim against Owner or Owner's Estate for each such dollar remitted (and permitted costs herein) under the terms and conditions of the Unison HomeOwner Agreement, and such claim of Investor shall begin to accrue on the date such dollar is actually remitted and shall automatically survive the Term.

**7.6 Remedies Concurrent And Not Exclusive.** The remedies set forth in this **Article Seven** shall be concurrent, cumulative and not exclusive to the extent permitted by law. Every right, power and remedy granted to Investor in the Unison HomeOwner Agreement, including the Unison HomeOwner Security Instrument, shall be in addition to all those rights, powers and remedies granted to Investor at law or in equity or by statute, and each such right, power and remedy may be exercised from time to time and as often and in such order as may be deemed expedient by Investor to the extent permitted by law, and the exercise of any such right, power or remedy shall not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy. An election by Investor to pursue an Option exercise and Orderly Sale will not be deemed to constitute Investor's waiver or consent to any Event(s) Of Default (whether prospective or retrospective), nor a waiver of any of Investor's other rights and remedies under the Unison HomeOwner Agreement, including those rights under **Section 7** of the Unison HomeOwner Security Instrument, all of which are concurrent, and shall remain expressly reserved.

## ARTICLE EIGHT
## ADDITIONAL COVENANTS OF OWNER

**8.1 Purposes.** Pursuant to the Unison HomeOwner Agreement, Investor's Rights depend upon the value of the Property during the Term. To preserve and protect any and all of Investor's Rights hereunder, and to induce Investor to enter into the Unison HomeOwner Agreement, Owner agrees to each and all of the covenants set forth in **Sections 8.2 - 8.18** below.

## 8.2 Maintenance and Repair.

**(a)** Owner shall: **(i)** maintain the Property in good condition; **(ii)** prevent any waste, *deterioration* or decrease in value due to the Property's condition (ordinary wear and tear excepted); **(iii)** periodically perform such repairs and replacements as are customary and reasonable for similar properties in similar locations; and **(iv)** ensure that any operations or activities upon, or use or occupancy of, the Property or any portion of the Property will be in compliance with all state, federal and local laws and regulations, including, *without limitation, any applicable laws requiring flood, earthquake or other specific hazard* insurance.

**(b)** In no event shall Owner permit the Property to deteriorate such that its condition shall be worse than its condition as of the Effective Date and as further described in the inspection, appraisal and *other third party reports prepared in connection with the* origination of the Unison HomeOwner Agreement, ordinary wear and tear excepted.

**(c) No Credit or Offset.** Owner shall not be entitled to any credit, offset or compensation for ordinary maintenance, repairs or replacement that maintain the condition and value of the Property.

© 2019, **Unison**

**(d) Prompt Repair.** To the extent that any material damage to the Property occurs, including, without limitation, from fire, flood, earthquake, hurricane or other natural disaster, Owner shall promptly repair such damage subject only to the provisions of **Section 8.16** below, regarding the disposition and use of insurance proceeds. Investor shall not be obligated to contribute toward, or be responsible for any portion of, the cost of any such repair.

## 8.3 Property Modifications and Remodeling Adjustment.

**(a)** Owner shall have the right at Owner's sole expense to make modifications to the Property without prior written consent of Investor, provided that such modifications do not violate any provision of the Unison HomeOwner Agreement and are performed in compliance with all applicable state, federal and local statutes, regulations and ordinances, and all appropriate zoning, licensing and permitting requirements.

**(b)** Owner may request the benefit of certain qualified material modifications made to the Property during the Term through an adjustment **("Remodeling Adjustment")** which will applied by Investor to the determination of the Ending Agreed Value of the Property at the end of the Unison HomeOwner Agreement Term, provided the following terms and conditions are met, in Investor's Permitted Discretion:

**(i)** Owner must notify Investor of Owner's request for a Remodeling Adjustment in writing no less than 45 days prior to the closing of any Permitted Sale, Option exercise, Special Termination, Orderly Sale, or other event requiring determination of an Ending Agreed Value of the Property. As part of such notice, Owner shall specify the material modifications for which a Remodeling Adjustment is sought, and shall provide Investor with photographic and supporting evidence of the material modifications which meets the requirements set forth in **Section 8.3(b)(iii)** below. Owner shall cooperate with Investor to obtain the Appraisal of the Property in order to calculate the Remodeling Adjustment, if any.

**(ii)** The Appraiser must determine as part of the written Appraisal that Owner's specified material modifications have, as of the time Investor Proceeds are calculated, actually increased the Ending Agreed Value of the Property above a hypothetical Ending Agreed Value at which the Property would have appraised had it not been materially modified. The Appraiser shall be instructed as follows:

**(A)** to derive two values for the Property: the value of the Property as-is ("**Actual Value**"); and the hypothetical value of the Property if it had not been materially modified ("**Hypothetical Value**"), the difference between which shall equal the appraised value of the material modifications. In the event that the Appraisal is conducted in connection with a Permitted Sale by Owner, the Appraiser shall assume that the agreed sale price between Owner and Third Party Buyer in the Permitted Sale is the Actual Value of the Property;

**(B)** to determine the value of any material modification for which a Remodeling Adjustment is sought solely in terms of the value, if any, added to the Property, and without reference to the actual or inferred dollar cost of such modifications to Owner;

**(C)** to consider the age, depreciation and potential functional obsolescence of Owner's material modifications in determining their value, if any; and

**(D)** to ascertain the Hypothetical Value of the Property in the absence of Owner's material modifications based on a comparison between the current condition of the Property, and the photographic and supporting evidence of material modification

Page 17 of 46

supplied by Owner; provided, however, that the Appraiser shall have no obligation to ascertain any Hypothetical Value unless Owner's photographic and supporting evidence meets the requirements set forth in **Section 8.3(b)(iii)** below in Appraiser's discretion.

(iii) Owner shall maintain, and provide to Appraiser and Investor upon any request for a Remodeling Adjustment, photographic and other physical documentation of the Property before completion of the material modifications, which documentation shall be sufficient in scope, clarity, number and detail to permit the Appraiser to compare the Actual Value to the Hypothetical Value, in Appraiser's discretion. No Remodeling Adjustment shall be applied in the event Owner fails to maintain and provide documentation meeting the requirements of this **Section 8.3(b)(iii)**.

(iv) No Remodeling Adjustment shall be given to the extent a) Owner modifications are determined by appraisal to have become functionally obsolescent; or b) constitute a **Prohibited Use**, in Investor's Permitted Discretion.

Provided all of the conditions of this **Section 8.3(b)** are met, Investor shall apply a Remodeling Adjustment in its calculation of Investor Proceeds equal to the Actual Value minus the Hypothetical Value, the difference between which shall equal the value of the material modifications and constitute the amount of the Remodeling Adjustment.

(c) **Exclusion for Ordinary and Necessary Maintenance.** A material modification materially affects either the value or the useful life of the Property, while ordinary and necessary maintenance and repairs maintain the condition and value of the Property in its general condition. Costs of ordinary and necessary maintenance and repairs to keep the Property in an efficient operating condition, as more particularly outlined in U.S. Treasury Regulation 1.162-4 (as amended from time to time), are not eligible for any Remodeling Adjustment.

(d) **Prior To the Third (3rd) Anniversary Of Effective Date.** Notwithstanding anything to the contrary in this **Section 8.3**, no Remodeling Adjustment shall be applied by Investor to any determination of the Ending Agreed Value of the Property if Owner elects to sell the Property or the Unison HomeOwner Agreement is otherwise terminated at any time prior to the third (3rd) anniversary of the Effective Date.

(e) If the Appraisal valuation process set forth in **Section 8.3(b)(ii)** above determines that the Actual Value minus the Hypothetical Value yields a negative number, Investor may, in its Permitted Discretion, apply any such decrease in value as a **Negative Remodeling Adjustment** when calculating the Ending Agreed Value, at any time during the Term. In the absence of a request by Owner for a Remodeling Adjustment, if Investor believes the Appraisal valuation process set forth in **Section 8.3(b)(ii)** above would likely result in a Negative Remodeling Adjustment, Investor may, in its Permitted Discretion, obtain such Appraisal.

## 8.4 Deferred Maintenance Adjustment.

(a) If, as a result of a home inspection, Appraisal or otherwise, upon any event requiring determination of the Ending Agreed Value, Investor determines that either (i) Owner has breached Owner's duties of maintaining and repairing the Property as set forth in this Unison HomeOwner Covenant Agreement and elsewhere; or (ii) the Ending Agreed Value is negatively affected not as a result of market forces, but as the direct result of a condition or defect in, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term, Investor shall have the right in its Permitted Discretion to make (in consultation with appraisers, third party experts and inspectors unaffiliated with Investor) a commercially reasonable estimate of the dollar amount of

© 2019, Unison                                                                 Form 250 HO-All (rev. 3/4/2019)

such deferred maintenance and to apply such dollar amount as a "Deferred Maintenance Adjustment" when calculating the Ending Agreed Value.

(b) Investor may also, in its Permitted Discretion, apply a Deferred Maintenance Adjustment when determining the Ending Agreed Value of the Property where: (i) as of the Effective Date, Investor in its Permitted Discretion identified and expressly reserved for a Deferred Maintenance Adjustment significant material defects or conditions in or on the Property which, if not remedied promptly or within a reasonable time, posed clear and serious risks to the Property improvements or Property value, and Owner failed to correct such defects or conditions; or (ii) if Owner knew or had reason to know of such a defect or condition as of the Effective Date or during the Term of the Unison HomeOwner Agreement, but failed or neglected to disclose it to Investor.

**8.5 Appraisal.** The process of valuation of the Property by appraisal and any and all appraisals of the Property obtained by either party in connection with the Unison HomeOwner Agreement ("**Appraisal**") must conform to this **Section 8.5**. An Appraised Value shall be an independent third party valuation of the Property made pursuant to the terms and conditions of this **Section 8.5**.

(a) **Appraiser.** All Appraisals shall be conducted by an appraiser approved in advance by Investor and unaffiliated with either Investor or Owner, and who satisfies the requirements of Fannie Mae, Freddie Mac or FHA and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, and any applicable state laws, as of the date of the Appraisal, and in compliance with the Uniform Standards of Professional Appraisal Practice.

(b) **Appraisals.** All Appraisals must conform to Investor's then-current Appraisal requirements, and to the requirements of **Section 8.5(a)**. Either party may obtain one or more Appraisals of the Property at any time upon reasonable notice to the other party. Owner and Investor shall each fully and reasonably cooperate at their own expense in connection with any Appraisal ordered on the Property. Owner will cooperate with the appraiser by granting full access to the Property and by making available any and all relevant documentation and information in Owner's possession pertaining to, including but not limited to plat maps, surveys, plans, tax or assessor's records, and any other documentation concerning encroachments, dimensions, measurements, setbacks, uses of and modifications to the Property.

(c) **Appraisal Review.** If either party concludes that an Appraisal contains a material omission or material error of fact, such party may, within 10 days after receipt of the Appraisal, request a reconsideration of the Appraisal, as allowed by applicable law, at the party's own cost.

(d) **Remodeling Adjustment.** If Owner requests a Remodeling Adjustment, and the request is determined to be valid in accordance with the provisions of **Section 8.3**, or if Investor believes a Negative Remodeling Adjustment should apply, the appraiser will be instructed to determine the amount of a Remodeling Adjustment, if any, that should be applied to the Ending Agreed Value of the Property as follows: the appraiser will determine two fair market values for the Property: first, the Actual Value of the Property in its current condition; and second, the Hypothetical Value based upon either the hypothetical absence of specified material modifications or a Prohibited Use. The Actual Value minus the Hypothetical Value shall equal the Remodeling Adjustment. If the Hypothetical Value of the Property is more than the Actual Value, the adjustment will be deemed a Negative Remodeling Adjustment.

(e) **Payment of Appraisal Expenses.** As allowed by applicable law, Owner shall pay all expenses ("**Appraisal Expenses**") associated with the first Appraisal obtained in connection with: (i) initial valuation of the Property prior to execution of the Unison HomeOwner Agreement; (ii) any proposed sale, Permitted Sale or Orderly Sale; (iii) any Option exercise by Investor; (iv) any Special Termination; (v) any allocation of insurance or condemnation proceeds; (vi) any determination of an Investor Bid Amount; and (vii) any determination of a Remodeling Adjustment or Deferred Maintenance Adjustment. In the case of one or more additional Appraisals of the Property obtained in connection with any of the events described above, the Appraisal Expenses shall typically be paid by the party who

Page 19 of 46

© 2019, Unison

Form 250 HO-All (rev. 3/4/2019)

obtained or requested the Appraisal, or, if both parties agree that an additional Appraisal(s) should be obtained, by both parties divided equally. If Appraisal Expenses have not been paid by the party required to bear them, the other party may subtract them, or direct their payment out of Escrow, from the funds that would otherwise be due to the party liable therefor, as allowed by applicable law.

**8.6 Arbitration of Fair Market and Appraised Value, Remodeling Adjustment, Deferred Maintenance Adjustment. IF INVESTOR AND OWNER ARE UNABLE TO AGREE IN GOOD FAITH ON THE FAIR MARKET OR APPRAISED VALUE OF THE PROPERTY UNDER THE UNISON HOMEOWNER AGREEMENT, OR ON THE AMOUNT OF ANY REMODELING ADJUSTMENT OR DEFERRED MAINTENANCE ADJUSTMENT TO BE APPLIED UNDER THE UNISON HOMEOWNER AGREEMENT, THE ISSUE WILL BE DETERMINED BY BINDING ARBITRATION BEFORE A SINGLE NEUTRAL ARBITRATOR. THE ARBITRATION WILL BE ADMINISTERED BY THE JUDICIAL ARBITRATION AND MEDIATION SERVICE (OR "JAMS") OR ITS SUCCESSOR PURSUANT TO ITS STREAMLINED ARBITRATION RULES AND PROCEDURES (OR SUCCESSOR PROCEDURES). THE ARBITRATION FEES (INCLUDING THE FEES OF THE ARBITRATOR) SHALL BE SHARED EQUALLY BY INVESTOR AND OWNER. OWNER AND INVESTOR SHALL EACH PAY THEIR OWN ATTORNEYS' FEES INCURRED IN CONNECTION WITH SUCH ARBITRATION.**

### 8.7 Inspections and Disclosures of Condition.

(a) Owner agrees that Investor or its agents may upon reasonable notice, make reasonable inspections of both the interior and exterior of the Property both as a condition of entering into, and from time to time during the Term of, the Unison HomeOwner Agreement. Owner agrees to cooperate in setting the time and allowing entry for any such inspection. If Investor is not permitted to timely inspect the Property it shall be deemed that Owner has failed to maintain and repair the Property as required under the Unison HomeOwner Agreement, subject to Owner's right to cure within a reasonable time.

(b) Investor may in its Permitted Discretion require written homeowner disclosures from Owner from time to time during the Term of the Unison HomeOwner Agreement, regarding any conditions known to Owner which may affect the Property or its value.

(c) When, either at origination of the Unison HomeOwner Agreement or during its Term, Investor determines in its Permitted Discretion that any significant material defect or condition exists in or on the Property which, if not remedied promptly or within a reasonable time, poses clear and serious risks to the Property improvements or Property value, Investor may: (i) require that Owner promptly remedy such defect or condition at Owner's expense either as a condition precedent to executing the Unison HomeOwner Agreement or otherwise; (ii) note the defect or condition and require that it be remedied at Owner's expense upon Option exercise or other termination or expiration of the Unison HomeOwner Agreement; or (iii) note the defect or condition and require that the cost of remedy or repair be applied as a Deferred Maintenance Adjustment to the Ending Agreed Value whenever a determination thereof is made.

(d) Notwithstanding the contents of any disclosure or report pertaining to the Property which is provided to Investor under this **Section 8.7** or otherwise, or the existence of any defect or condition on the Property whether known or unknown by Investor, Investor shall have no liability to Owner or to any third party for, and Owner hereby holds Investor harmless from, any and all loss or liability resulting from or in connection with any defect or condition on or affecting the Property, whether known or unknown, and Investor's interest in and liability in regard to the Property shall at all times be construed as that of a passive investor in, and not as that of a record title owner or occupant of, the Property, except as may be expressly provided otherwise under the Unison HomeOwner Agreement.

### 8.8 Occupancy and Use of Property.

© 2019, **Unison**     Form 250 HO-All (rev. 3/4/2019)

(a) **Principal Residence.** Unless Investor consents otherwise in writing in its Permitted Discretion, at least one Owner shall occupy the Property as Owner's Principal Residence. Owner shall be deemed not to meet this requirement if no Owner is using the Property as living and sleeping quarters for 60 or more consecutive days, or for a total of 180 days out of any 365-day period, without notifying Investor of such absence, obtaining Investor's written consent, and making arrangements satisfactory to Investor in Investor's Permitted Discretion to care for the Property while Owner is gone. The circumstances described above shall define the meaning of "**Principal Residence.**" If Owner does not give such notice, obtain consent, or make such arrangements, an Event Of Default will be considered to have occurred on the last day of the 60-day period or on the last of the 180-day period, as applicable. If the Property is held in a Revocable Trust, the occupancy requirement will be satisfied if either any one Owner, or any one Trustor, who is an individual, occupies the Property as a Principal Residence.

(b) **Prohibited Use.** Owner must not (i) use the Property in any way other than as a residential property; (ii) rent all or any portion of the Property except with Investor's express written consent in its Permitted Discretion; or (iii) use or permit the use of the Property for any commercial use, with the exception of a "home office" in compliance with applicable U.S. tax regulations. Owner shall take all reasonable and practical action to prevent the conversion or zoning of the Property for commercial or mixed use ("**Prohibited Use(s)**").

(c) **Owner Right of Occupancy.** Owner shall enjoy sole right of occupancy of the Property under the Unison HomeOwner Agreement as an owner and not as a tenant or lessee, whether or not Investor has exercised the Option, subject to the limited Investor rights of entry, Investor rights of repair following Owner Event Of Default, and any and all of Investor rights in connection with an Orderly Sale under **Article Seven** hereof. Owner's right of occupancy shall be effective only so long as Owner (i) does not transfer or attempt to transfer the Property except as permitted under the Unison HomeOwner Agreement, and (ii) occupies the Property as provided in the Unison HomeOwner Agreement. Owner's right of sole occupancy is not transferable by Owner except as part of a Permitted Sale or Orderly Sale, or as otherwise approved by Investor in its Permitted Discretion.

**8.9 Debt Limits and Related Obligations.**

(a) **Limitation on Debt Associated with the Property.**

(i) **Maximum Authorized Debt.** Without Investor's express written approval in its Permitted Discretion, Owner may not at any time increase, or permit the increase of, the total principal balance of loans secured by liens on the Property (including the unused portion of any committed credit line) to exceed the Maximum Authorized Debt specified in the Unison HomeOwner Option Agreement. The Maximum Authorized Debt limitation applies both to **Permitted Senior Loans** (which pre-existed or originated simultaneously with execution of the Unison HomeOwner Agreement), and **Approved Subsequent Loans** (new loans secured by the Property approved by Investor in its Permitted Discretion during the Term of the Unison HomeOwner Agreement).

(ii) **Approved Subsequent Loans.**

(A) If during the Term of the Unison HomeOwner Agreement, the principal balance of all loans secured by liens on the Property is less than the Maximum Authorized Debt, and the Appraised Value of the Property is greater than or equal to the Original Agreed Value, Investor may give written consent to Owner to obtain additional Approved Subsequent Loans on the Property up to the Maximum Authorized Debt, which consent shall not be unreasonably withheld provided that Owner provides to Investor all loan documentation related to the proposed loan (including, but not limited to, any commitment letter, offer letter, term sheet, proposed note, proposed deed of trust or mortgage, preliminary title report, inspections, appraisals and other Property valuations)

© 2019, Unison

Form 250 HO-All (rev. 3/4/2019)

as such documentation becomes available, but no later than 3 Business Days prior to the proposed close of such loan.

**(B)** If the Appraised Value of the Property at the time of the proposed Subsequent Loan(s) is less than the Original Agreed Value, Investor may give written consent to Owner to obtain a proposed Subsequent Loan(s), but only if such proposed Subsequent Loan(s) are less than or equal to the then-current principal balance of all Permitted Senior Loans on the Property, plus actual and reasonable refinancing costs. Investor's consent shall not be unreasonably withheld provided Owner provides to Investor all loan documentation related to the proposed loan as described in **Section 8.9(a)(ii)(A)**.

**(C)** Investor shall have no obligation to respond to or approve any proposed lending transaction unless and until it has timely received all relevant documents and information.

**(D)** Immediately following the close of any Approved Subsequent Loan, Owner shall ensure that copies of all documents recorded as Approved Subsequent Liens against the Property are delivered to Investor.

**(iii)** **Prohibited Loans.** Owner may not encumber the Property with, and Investor shall not consent to, any lien on the property that could, in Investor's Permitted Discretion, materially impair Investor's Rights. Such loans shall include, without limitation, reverse mortgage loans, shared appreciation mortgage loans, mortgage loans with negative amortization or prepayment penalties, private or non-institutional loans, unrecorded loans secured by the Property, and certain loans with payment reset or other variable payment features.

© 2019, **Unison**

Form 250 HO–All (rev. 3/4/2019)

**(b) No Investor Liability For Owner Loans.**

(i) Investor shall not be liable for (including liability to repay) any loans created or obtained by Owner whether or not pre-existing, subsequent, consented to, approved of, or subordinated to by Investor.

(ii) Investor shall not be obligated to execute any documents in connection with any loans created, obtained or refinanced by Owner, except such documents reasonably required to confirm any subordination to which Investor consents hereunder.

(iii) **Investor makes no representations or warranties regarding the terms or availability of any loan that Owner has prior to or may seek during the Term of the Unison HomeOwner Agreement and Investor shall have no liability to Owner in connection therewith, including as a result of the unavailability or unfavorable terms of any such loan.**

**(c) Subordination.**

(i) Except for construction loans, which are addressed below, Investor will subordinate the priority of its rights under the Unison HomeOwner Agreement to the lien of any lender that extends to Owner an Approved Subsequent Loan, provided that: **(A)** the Approved Subsequent Loan satisfies all of the requirements of **Section 8.9(a)**; **(B)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and **(C)** Owner pays Investor the Asset Administration Fees associated with such subordination.

(ii) Investor may subordinate its lien on the Property to any lender in connection with any construction loan, or other financing of any improvements to the Property if: **(A)** the construction loan satisfies all of the requirements of **Section 8.9(a)**; **(B)** Investor in its Permitted Discretion determines that Investor's Interest is not jeopardized; **(C)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and **(D)** Owner pays the Asset Administration Fees associated with subordination imposed by Investor.

(iii) Investor may subordinate its lien on the Property to a lender in connection with any loan not meeting the requirements specified in **Section 8.9(a)(ii)** only if **(A)** Investor, in its Permitted Discretion, determines that Investor's Rights are not jeopardized; **(B)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and **(C)** Owner pays Investor the Asset Administration Fees associated with subordination.

(iv) Following any subordination by Investor, Owner shall remain obligated to keep current and satisfy all liens on the Property.

**(d) Free of Liens.** Owner shall at all times keep the Property free of any and all liens and title exceptions (including easements), except for: **(i)** Permitted Senior Liens; **(ii)** Approved Subsequent Liens; and **(iii)** Permitted Encumbrances.

**(e) Cure of Defaulted Loans.** To the extent that there is a default under any loan or other obligation secured by a lien on the Property; or notice of default or notice of sale or foreclosure upon, or enforcement of, a lien on the Property, Owner shall take immediate action (upon or without notice or demand from Investor) necessary to: **(i)** terminate such foreclosure or enforcement, **(ii)** satisfy the secured obligation, and/or **(iii)** remove or release such lien from the Property. Whether or not Owner takes such immediate action, Investor may take such action as it deems necessary in its Permitted Discretion to protect Investor's Rights hereunder including, without limitation, advance of funds as Protective

© 2019, Unison                                              Form 250 HO-All (rev. 3/4/2019)

Advances, pursuit of any and all remedies set forth in Article Seven, or an offer to Owner of Option exercise and Orderly Sale.

(f) **No Investor Loans.** Investor shall have no authority to obtain or increase any loans from third parties that are secured by liens against the Property except in connection with an Orderly Sale.

## 8.10 Taxes and Assessments.

(a) **Payments.** Owner shall promptly pay all taxes and assessments accruing on the Property, except for taxes or assessments that are in good faith dispute and that Owner is diligently challenging; provided that upon final discharge of any such challenge, Owner shall pay the disputed amount promptly. During the pendency of any such challenge, Owner shall, within 10 days following Investor's written demand therefor, provide Investor adequate proof of funds sufficient to satisfy such taxes and assessments in the event Owner's challenge is unsuccessful. Owner shall provide Investor with proof of payment of taxes or assessments upon request. Owner shall not apply for any deferral of taxes or assessments accruing on the Property or any deferral available to senior citizens, if applicable. If Owner fails to pay any taxes or assessments other than those in good faith dispute, Investor, in its Permitted Discretion, may pay such taxes or assessments at Owner's expense as Protective Advances.

(b) **Tax Benefits.** Owner shall be entitled to the full benefit of any and all tax advantages arising in relation to the Property, including, without limitation, all available deductions for taxes and mortgage interest paid by Owner. **Investor does not provide tax advice and makes no representations as to the tax advantages or disadvantages which may accrue to Owner in connection with the Property or the Unison HomeOwner Agreement.**

## 8.11 Protective Advances.

(a) If Owner fails to take action to protect the Property and Investor's Rights, Investor may take such action and pay such money as Investor deems appropriate in its Permitted Discretion, upon 10 days' written notice to Owner, to correct Owner's failure including, without limitation: the placement of insurance; the payment of Appraisals or for inspections of the Property; the payment of taxes, assessments, levies, liabilities, obligations and other charges of every nature on the Property; the making of necessary repairs; the cure of any defaulted loans; or the removal of a receiver appointed for the Property. All such amounts advanced by Investor (including, without limitation, Attorneys' Fees incurred in litigation or arbitration with parties other than Owner) shall be deemed "**Protective Advances.**" Prior notice from Investor is not required if the Unison HomeOwner Agreement expressly so provides, or when Investor, in its Permitted Discretion, determines that prompt action is necessary in order to protect the Property and Investor's Rights. Owner and Investor agree that Investor shall incur no liability for its election not to take any action authorized under this **Section 8.11(a)**.

(b) **Reimbursement.** Investor may, in its Permitted Discretion, demand prompt reimbursement for any and all Protective Advances. Owner shall reimburse Investor no later than 10 days after demand. Protective Advances shall bear interest at the rate of one and one-half percent (1½%) per month, subject to applicable law, from the date of demand until paid in full. These charges are intended to be a reasonable liquidated estimate of those sums which Investor could be obliged to advance and expend in the event appropriate corrective action(s) are not taken to protect the Property or Investor's Rights, which sums and costs are not readily ascertainable, and will be difficult to predict or calculate.

## 8.12 Asset Administration Fees. Unless prohibited by applicable law, Owner will pay all **Asset Administration Fees** necessary to defray costs and expenses to the **Asset Administrator** in accordance with the **Asset Administration Fee Schedule** (attached as Exhibit C hereto and as such schedule is amended and made available by Investor from time to time). Asset Administration Fees shall include, without limitation, fees for: (a) processing subordinations; (b) processing changes in title or ownership;

Page 24 of 46

**ER-111**

(c) processing reconveyance of the Option and the Unison HomeOwner Agreement or a Special Termination; (d) processing Protective Advances; (e) administering Owner Events Of Default; and (f) paying and reimbursing such reasonable, customary, bona fide fees and out-of-pocket costs as are actually charged to Investor by Investor's Asset Administrator or by other third parties relating to any of the foregoing (including, for example, title and escrow charges, recording fees and Attorney's Fees).

**8.13 Notices; Additional Information.**

(a) Owner, Owner's Estate, or Owner's representative shall immediately provide Investor with notice of any event that may have a material effect upon the Property, the value of the Property, or Investor's ability to exercise any of Investor's Rights hereunder, including, without limitation: (i) Owner's failure to meet any condition or covenant set forth in the Unison HomeOwner Agreement; (ii) the death or divorce of any Owner (or of any Trustee or Trustor, if the Property is held in a Revocable Trust); (iii) Owner's decision to market, sell, or transfer the Property or any interest in the Property; (iv) the discovery of any lien or adverse possessory interest in the Property not previously disclosed in writing to Investor, whether or not recorded or recordable; (v) the filing of any bankruptcy by or against Owner (or any Trustee or Trustor, if the Property is held in a Revocable Trust); (vi) any material damage or injury to the Property; (vii) Owner's receipt of any notice of condemnation; (viii) Owner's receipt of any solicited or unsolicited written offer to purchase the Property; (ix) a representation or warranty made under the Unison HomeOwner Agreement becomes inaccurate or untrue; (x) any new Non-Owner Occupant as yet unidentified to Investor commences to occupy the Property using the form attached hereto as Exhibit B; or (xi) the occurrence of any other event that might have a material adverse effect on the Property, the value of the Property, Owner's interest in the Property, or Investor's Rights under the Unison HomeOwner Agreement.

(b) **Additional Information.** Owner will provide to Investor such reports and information available to Owner concerning the Property and any modifications to the Property as Investor may reasonably request, and will promptly complete and return any Property questionnaire or similar form that Investor provides to Owner from time to time. If Owner fails to complete or return any such Property survey or certification within the time frame requested by Investor, Owner shall pay for any Property inspection, appraisal or other report that Investor obtains in order to collect the information that would have been provided therein. If Owner fails to pay any such amounts, Investor, in its Permitted Discretion, may make any and all such payments as Protective Advances.

**8.14 Reserved.**

**8.15 Right to Disclose Certain Information.** Subject to applicable laws, Investor may share certain personal and financial information with regard to the Unison HomeOwner Agreement with affiliates, subsidiaries, investors, assignees and Persons with which it intends to conduct business, including, without limitation, the address and general location of the Property, appraisal reports and other valuations of the Property, and the financial terms of the Unison HomeOwner Agreement.

**8.16 Insurance.**

(a) **General Coverage Requirements.** Owner shall maintain at Owner's expense: (i) insurance on the Property against fire and other hazards included in the special form (HO-3) policy (and similar successor forms) with only those exclusions customarily associated with special form policies, and exceptions to those exclusions for ensuing loss, as well as insurance against any other hazards, including flood hazards, for which Investor may from time to time reasonably require insurance and which insurance is common for similar properties in similar locations; and (ii) liability insurance on the Property against such risks and in such amounts as are reasonable for similar properties in similar locations. Such insurance may be obtained from any insurance company reasonably acceptable to Investor and shall be in amounts and include terms (including deductible levels) as Investor may from time to time reasonably require. Currently, Investor requires hazard insurance in an amount equal to the current replacement cost

© 2019, Unison

of the improvements on the Property, including law and ordinance coverage (which amounts shall be increased not less frequently than annually as the replacement cost of the improvements increases). Investor shall be named as an additional named insured or as otherwise directed by Investor under all hazard and liability insurance policies obtained by Owner, whether or not such policies are required by Investor.

(b) **Copies And Proceeds.** Copies of all insurance policies shall be furnished to Investor promptly upon issuance, and Owner shall provide Investor with proof of coverage upon request. All proceeds of such policies shall be subject to the provisions of this **Section 8.16**.

(c) **Failure To Maintain.** If Owner fails to maintain or obtain the insurance coverage required by this **Section 8.16**, Investor, at Owner's expense, may, but is not obligated to, obtain such coverage on the Property as Investor, in its Permitted Discretion, may deem necessary and appropriate to protect Investor's Rights. All such expenses paid by Investor shall be deemed to be Protective Advances. Owner acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Owner could have obtained and may not protect Owner or cover Owner's personal property to the same extent as any policy Owner might have had or could have obtained.

(d) **Owner To Cooperate.** Owner agrees to allow Investor to cooperate with Owner in the pursuit, settlement, and adjustment of any losses under any hazard and liability policies obtained by Owner, and expressly authorizes Investor to communicate directly with all such insurance companies for the purposes of ensuring the maintenance of policies, the coverage and the reimbursement of losses thereunder.

(e) **Property Destruction Or Damage.** Subject to Owner's obligations and the requirements in connection with any Senior Lien:

(i) **Repair and Restoration.** Insurance proceeds shall be applied as follows (whether the underlying insurance is required by Investor or not): if the Property is destroyed or damaged in any material manner, any and all insurance proceeds shall be applied to restore or repair the Property to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, subject to all applicable local ordinances; provided that Investor shall have the right to prior review of any restoration or repair plans and to determine, in good faith and in the exercise of its reasonable discretion: (A) whether the restoration or repair plans are economically feasible; and (B) if not, to disapprove such restoration or repair plans.

(ii) During any repair or restoration, to ensure that the work is performed to Investor's satisfaction, Investor shall have the right to hold any and all insurance proceeds and release such funds to the Person or Persons performing the repair and restoration work in one or more progress payments as the work is completed. Owner is responsible to assure that any repair or restoration work is properly completed and performed in an adequate and workman-like manner, and in no way impairs or threatens to impair the structural integrity, habitability or value of the Property. To the extent any governmental approvals or permits are required for such repair or restoration work, Owner is responsible and shall assure that such governmental approvals or permits are obtained. Unless applicable law requires interest to be paid on such insurance proceeds or a written agreement to that effect is made by the parties, Investor shall not be required to pay Owner any interest or earnings on such proceeds. If the Property is repaired, it must be restored to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, subject to all applicable local ordinances; and, in any event, no less favorable a condition than set forth in **Section 8.2** above, regardless of whether the insurance proceeds are sufficient to accomplish such repair. Investor shall have no responsibility or obligation to pay any amount in connection with the restoration or repair of the Property, even if the insurance proceeds are insufficient to complete the restoration or repair, in which case Owner shall be responsible for any shortfall.

© 2019, Unison

**(iii) Allocation Where Repair Not Feasible.** If any loss occurs in connection with the Property, and restoration or repair is not economically feasible, the value of the Property as it existed *immediately prior to the destruction or damage* shall be determined by Appraisal, or if valuing the Property by Appraisal is not possible due to the destruction or damage, by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor. Any and all insurance proceeds, whether or not the underlying insurance was required by Investor, will be allocated in the following order:

**(A)** to payment (or reimbursement) of reasonable costs and expenses (including, without limitation, Attorneys' Fees that have been approved by Investor in its Permitted Discretion) reasonably incurred by Owner and/or Investor in collecting and contesting with the insurers the payments under the relevant insurance policies;

**(B)** to payment of all Senior Loans, which payment may result in the discharge of the related Senior Liens;

**(C)** to Investor, in an amount equivalent to the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the loss; and

**(D)** to Owner, the balance of the proceeds.

**(f) Special Measure Of Damages Where Owner Has Failed To Insure.** Owner and Investor agree that, in the event Owner fails to maintain insurance in amounts required by Investor pursuant to this **Section 8.16**, and/or any insurance claim is denied due to Owner's action or inaction, there may be added economic burden and risk imposed on Investor, and resulting damages may be uncertain, depend on many factors, and be extremely difficult to ascertain. *In the event of loss to Investor resulting directly from Owner's failure to maintain insurance or obtain a claim,* Owner and Investor therefore agree that Investor shall be entitled to a special measure of liquidated damages (**"Special Damages For Failure To Insure"**) in the amount of the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the loss, but without credit of the Unison Purchase Price Balance to Owner.

## 8.17 Condemnation.

**(a) Total Condemnation Or Partial Condemnation When The Option Has Been Exercised.** If the Property is condemned, in whole, or in part when the Option has been exercised, all condemnation proceeds net of reasonable costs and expenses (including, without limitation, Attorneys' Fees approved by Investor) incurred by Owner and/or Investor in collecting and contesting the condemnation proceeds (**"Net Condemnation Proceeds"**) shall be allocated in the following order:

**(i)** to payment of all Senior Loans, which payment may result in the discharge of the related Senior Liens;

**(ii)** to Investor, an amount equivalent to the Investor Interest as it would have been calculated immediately prior to the condemnation; and

**(iii)** to Owner, the balance of the proceeds.

**(b) Partial Condemnation When The Option Has Not Been Exercised.** If the Property is condemned in part, and if the Option has not been exercised, the following provisions shall apply:

**(i)** The Net Condemnation Proceeds shall be used, first, to pay all Senior Loans, provided that such payment may result in the discharge of the related Senior Liens;

**(ii)** Any remaining Net Condemnation Proceeds shall be distributed as follows:

© 2019, *Unison*

**(A)** First, to Investor, an amount equal to the total of **(1)** any unreimbursed Protective Advances, including any associated unpaid interest and other fees and charges plus **(2)** any unpaid Asset Administration Fees;

**(B)** Second, to Owner, the balance of the proceeds; and

**(iii)** For all remaining calculations to be made under the Unison HomeOwner Agreement in connection with any Option exercise, including an Orderly Sale, the Unison Purchase Price Balance shall be reduced by the Net Condemnation Proceeds multiplied by the Investor Percentage ("**Investor Condemnation Credit**").

**(c)** <u>Reservation of Rights.</u> In the case of a partial condemnation, Investor shall retain its Investor Rights with respect to any Property that has not been condemned.

## 8.18 Environmental Matters.

**(a)** <u>Environmental Prohibitions.</u> Owner shall not, and shall not allow others to, perform any activities upon, or use or occupy the Property, or any portion of the Property, in any manner that violates any state, federal or local law or regulation, including, without limitation, those relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, leakage, dumping, discharge or disposal (accidental or intentional) of any toxic or hazardous substances, materials or wastes, including, but not limited to hydrocarbons, asbestos, or any other substance whose nature or quantity, use, manufacture, disposal, or effect, renders it subject to public regulation, investigation, remediation or removal as potentially injurious to the environment, animals or the public health or welfare ("**Hazardous Materials**").

**(b)** <u>Environmental Representations.</u> Owner represents and warrants to Investor, that Owner has no knowledge of or information concerning any violation or claim of violation of laws or regulations relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, leakage, dumping, discharge or disposal (whether accidental or intentional) of any Hazardous Materials in connection with the Property. Owner has no knowledge of any Hazardous Materials on, in, or in the vicinity of the Property.

**(c)** <u>Environmental Indemnity.</u> Owner will indemnify and hold Investor harmless from and against any and all claims, damages, liabilities, actions and expenses (including, without limitation, Attorneys' Fees) of every kind arising out of or relating to: **(i)** Owner's breach of this **Section 8.18** or **(ii)** the presence of any Hazardous Materials on, in, or in the vicinity of the Property.

## ARTICLE NINE
## MISCELLANEOUS PROVISIONS

**9.1 Indemnification By Owner.** Owner hereby agrees to indemnify and hold Investor harmless from, and against, any and all claims, damages, liabilities, actions and expenses (including, without limitation, Attorneys' Fees) of every kind arising out of or relating to: **(a)** a breach of any of Owner's covenants, representations or warranties under the Unison HomeOwner Agreement; **(b)** any act or omission by Owner or Owner's agents; or **(c)** the Property.

**9.2 Covenants To Run With Land.** The Unison HomeOwner Option Agreement, Unison HomeOwner Covenant Agreement, and the other provisions of the Unison HomeOwner Agreement are deemed to be covenants running with the land as reflected in the Unison HomeOwner Recorded Memorandum. The interpretation of the phrase "Covenants running with the land" shall be within the meaning of the applicable law of the state where the Property is located so as to give it the broadest possible application.

© 2019, Unison                                        Form 250 HO-All (rev. 3/4/2019)

**9.3 Relationship.** Investor shall not be deemed a partner, joint venturer, trustee, lender or fiduciary with, or of, Owner. Owner shall not be permitted to execute any document or enter into any agreement on behalf of Investor, nor shall Owner be permitted to make any representation on behalf of Investor or to represent Owner as the agent or representative or partner of Investor. The Option is intended to and shall be treated for all purposes (including, without limitation, tax purposes) as an option to purchase an undivided percentage interest in and to the Property, and not as a purchase (unless and until Option exercise), loan, or joint venture. Owner expressly waives any claims against any of the Investor's agents, assignees, affiliates, employees or funding sources not a signatory hereto.

**9.4 Multiple Owners and Revocable Trusts.**

    (a) **Multiple Owners.** If Owner is more than one Person: **(i)** the Transaction Documents must be signed by each such Owner; **(ii)** all such multiple Owners shall be jointly and severally liable for Owner's liabilities and obligations under the Transaction Documents; **(iii)** notice required to be given by, or to, an Owner shall be deemed adequately given if given by, or to, any of Owners using the contact information set forth in the Unison HomeOwner Option Agreement; and **(iv)** Investor may treat any notice received from any one Owner as notice from all Owners.

    (b) **Revocable Trusts.** If Owner is the Trustee of a Revocable Trust: **(i)** all Trustees and all Trustors must sign the Unison HomeOwner Agreement Transaction Documents both in their capacities as individuals and as Trustees and/or Trustors, provided that any Trustee who is also a Trustor need only sign the Unison HomeOwner Agreement Transaction Documents once for them to be binding on such Person both as Trustee and as Trustor; **(ii)** each Trustee and Trustor who signs the Unison HomeOwner Agreement Transaction Documents hereby represents and warrants that all Trustees and Trustors have been disclosed to Investor; **(iii)** all rights and powers specified for, and all actions required of, Owner in the Unison HomeOwner Agreement that are exercised by a Trustee shall be deemed approved and exercised by all Trustees unanimously; **(iv)** all Trustees and all Trustors, in their capacities as individuals, shall be jointly and severally liable with Owner for Owner's liabilities and obligations under the Unison HomeOwner Agreement; **(v)** all representations and warranties by Owner in the Unison HomeOwner Agreement are made by all Trustees on behalf of the Revocable Trust and by all Trustees and all Trustors in their capacities as individuals; **(vi)** notice required to be given by, or to, an Owner shall be deemed adequately given if given by, or to, any of the Trustees using the contact information set forth in the Unison HomeOwner Option Agreement; and **(vii)** Investor may treat any notice received from any one Trustee as notice from all Trustees and from Owner.

    (c) **Owners To Be Natural Persons.** Each Owner under the Unison HomeOwner Agreement must be a Natural Person. No entity, including, without limitation, corporations, limited liability companies, partnerships, or joint ventures, may be an Owner hereunder; provided, however, that an Owner or Owners who are Natural Persons may hold title to the Property in a Revocable Trust, provided that the requirements for Revocable Trusts set forth in **Section 9.4(b)** above are satisfied.

**9.5 Delegation of Duties.** Investor may execute any of its duties under the Unison HomeOwner Agreement by or through agents, Asset Administrators, employees or attorneys-in-fact; shall be entitled to advice of counsel concerning all matters pertaining to such duties; and any actions taken on advice of counsel shall be deemed taken in good faith. Investor shall not be responsible for the negligence or misconduct of any agent, Asset Administrator, employee, or attorney-in-fact that it selects as long as Investor's selection was made without gross negligence or willful misconduct.

**9.6 Successors and Assignees.** The Unison HomeOwner Agreement shall be binding on Owner's and Investor's successors and assignees, but may not be assigned contrary to the following express provisions:

    (a) **Assignment by Investor.** **(i)** Investor may assign, participate, hypothecate or sell, in whole or in part, Investor's right and title to, and interest in, the Unison HomeOwner Agreement at any

© 2019, **Unison**                                      Form 250 HO-All (rev. 3/4/2019)

time and to any Person without prior notice to, or consent of Owner. In connection with any assignment, Investor may in its Permitted Discretion disclose any and all documents and information in its possession relating to Owner and the Property, subject to its assignee's agreement to continue to observe Investor's policies regarding privacy and disclosure of personal and financial information and applicable privacy laws, or provide disclosure to Owner and an opportunity for Owner to opt in or out in compliance with applicable law. Upon such assignment, Investor's (or any future) assignee shall automatically be delegated all the duties, and assume all the rights and remedies of, Investor under the Unison HomeOwner Agreement, including the Unison HomeOwner Security Instrument. Investor and Owner shall execute and deliver in recordable form, if requested, such other documents as are appropriate to reflect the assignment of the Unison HomeOwner Agreement. Investor and Owner agree to cooperate with such assignee and execute such additional documents as may be necessary to insure assignee's interest in the Property. Investor shall notify Owner no later than 60 days after the effective date of any such assignment.

(ii) Owner acknowledges and consents to any assignment whereby the Asset Administrator's responsibilities, including, but not limited to, the right to enforce the Unison HomeOwner Agreement and the other Transaction Documents, are assigned and/or delegated to an entity other than Unison Agreement Corp.

**(b) Owner Assignments.** Absent Investor's prior written consent, which may be withheld in Investor's Permitted Discretion, Owner may not assign or otherwise transfer the Unison HomeOwner Agreement or the other Transaction Documents; except that Investor will generally not unreasonably withhold consent to an assignment: **(i)** between Owner and the Trustor of a Revocable Trust; or **(ii)** to Owner's spouse who acquires an undivided interest in the Property provided that in each case the assignee (including any Trustor, if applicable): **(A)** executes the Unison HomeOwner Agreement Transaction Documents, including a recordable addendum to both the Unison HomeOwner Recorded Memorandum and the Unison HomeOwner Security Instrument, **(B)** executes a written notice of assignment (**"Exempted Owner Assignment"**), and **(C)** successfully completes the then-current education process required of Unison HomeOwner Agreement applicants. In the event of an Exempted Owner Assignment to the Trustee(s) of a Revocable Trust, the original Owner (i.e., the Trustor), jointly and severally, shall continue to remain liable under the Unison HomeOwner Agreement.

**9.7 Survival.** The following provisions, without limitation, shall survive the Expiration Date or any other termination of the Unison HomeOwner Agreement: **(a)** the obligations relating to a Solicited Sale Value under **Section 6.2**; **(b)** the indemnification provisions of **Section 9.1**; **(c)** obligations to pay any and all Protective Advances and Asset Administration Fees; **(d)** obligations to remove any liens on the Property and pay any Sales Commissions, Closing Costs and or other expenses properly chargeable to Owner in connection with a Third Party Sale or an Orderly Sale to the extent not discharged through Escrow; **(e)** the obligation to pay any Appraisal Expenses; **(f)** any and all covenants, representations and warranties of Owner; and **(g)** any and all other provisions which are required by their terms to be enforceable following expiration or termination, including, without limitation, provisions prescribing monetary remedies, fees, costs and expenses owed by Owner in connection with any Owner Event Of Default hereunder.

**9.8 Attorneys' Fees.** If a lawsuit or arbitration proceeding (other than an arbitration under **Section 8.6** above), is commenced in connection or arising out of the Option or the Unison HomeOwner Agreement or in connection with the interpretation, enforcement or protection of Investor's Rights, the prevailing party, as determined by the court or arbitrator, shall be entitled to recover court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of Investor's in-house counsel that are directly attributable to the specific matters on which they prevailed (collectively "Attorneys' Fees"). Attorneys' Fees shall include, without limitation, Attorneys' Fees and costs incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to the Option or the Unison HomeOwner Agreement, to the interpretation

© 2019, **Unison**

Form 250 HO-All (rev. 3/4/2019)

**ER-117**

or enforcement of the parties' rights thereunder, or to the Property, and shall not for any purpose be treated as compensatory damages.

**9.9 Injunction.** Notwithstanding anything to the contrary in the Unison HomeOwner Agreement or otherwise, if Investor is stayed or enjoined from exercising the Option, commencing or initiating Option exercise or purchase procedures hereunder (whether as a result of Owner's bankruptcy or otherwise), or enforcing any other of Investor's Rights under the Unison HomeOwner Agreement, Investor's Rights shall not expire, and any deadline or notice period prescribed in the Unison HomeOwner Agreement which Investor is prevented or prohibited from observing by operation of law or by court order, shall automatically be stayed for the duration of such stay, injunction or legal prohibition.

**9.10 Choice of Law; Venue.** The Unison HomeOwner Agreement shall be determined under, governed by, and construed in accordance with Washington law, without regard to its conflict of law principles, unless the law of the jurisdiction where the property is located mandatorily governs, in which case the laws of such jurisdiction shall apply. The parties agree that all actions or proceedings arising in connection with the Unison HomeOwner Agreement shall be litigated or arbitrated only in the state and federal courts located in or having jurisdiction in the city or county where the Property is located. Owner waives any right to assert the doctrine of forum non conveniens or to object to such venue.

**9.11 Further Assurances.** The parties agree, from time to time, as and when requested by any other party to the Unison HomeOwner Agreement or its successors or assignees to execute and deliver, or cause to be executed and delivered, all such instruments; and take, or cause to be taken, all such further or other actions as may be reasonably necessary or desirable in order to implement the provisions and to effect the intent and purposes of the Unison HomeOwner Agreement. Such actions shall include, without limitation, all actions necessary by the parties to correct any error or inaccuracy in the Unison HomeOwner Agreement Transaction Documents or any other document related to the Unison HomeOwner Agreement, to ensure that such documents reflect the true and correct terms upon which the parties agreed to enter into the Unison HomeOwner Agreement, and/or to replace any missing or misplaced documentation, or to confirm and restate any authorities granted hereunder to the extent such authority is impacted by a change in any law, rule or regulation impacting its terms on the date hereof, to the fullest extent permissible under such changed, law, rule or regulation.

**9.12 Reliance by Investor.** Investor shall be entitled to rely, and shall be fully protected in relying, upon any writing, resolution, notice, consent, certificate, affidavit, letter, telegram, telefacsimile or other electronic method of transmission, telex or telephone message, statement or other document or conversation believed by it to be genuine and correct and to have been signed, sent, or made by the proper Person or Persons, and upon advice and statements of legal counsel, independent accountants and other experts selected by Investor, and counsel to Owner. Investor shall in all cases be fully indemnified by Owner under the Unison HomeOwner Agreement where Investor's action, or refusal to act, is in response to a request of or the consent of the Owner, and such request and any action taken or failure to act by Investor pursuant thereto shall be binding upon the Owner. The transmission or delivery of written materials to the Investor shall constitute a representation and warranty by Owner as to the accuracy and completeness of the information contained therein.

**9.13 Severability; Waivers.** Each provision of the Unison HomeOwner Agreement shall be severable from every other provision for the purpose of determining the legal enforceability of any provision. No waiver by Investor of any of its rights or remedies in connection with the Unison HomeOwner Agreement shall be effective unless such waiver is in writing and signed by Investor and Owner, and then any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No delay or waiver by Investor in exercising any right shall be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse. To the extent that enforcement of any provision, or exercise of any right, under the Unison HomeOwner Agreement is held to be invalid or stayed or enjoined by a court of competent jurisdiction, then such provision shall be considered separately and apart from the remaining provisions, and any and all other remaining provisions shall continue to be

Page 31 of 46

**ER-118**

fully enforceable under applicable law. To the extent that enforcement of any provision under the Unison HomeOwner Agreement, is deemed to violate a subsequently issued state or federal law, rule or regulation, then the parties agree that such provision shall be enforced exclusively with reference to principles of equity, and that any and all other remaining provisions shall continue to be fully enforceable in equity and under law. No waiver by Investor on any occasion shall affect or diminish Investor's rights thereafter to require strict performance by Owner of any provision of the Unison HomeOwner Agreement. Investor in its Permitted Discretion, may at any time, unilaterally waive the right to demand, in whole or in part, the future performance of Owner's obligations under the Unison HomeOwner Agreement, and reserves the right in its Permitted Discretion, at any time during the Term, to cancel the Option by notice in writing to Owner, or to rescind its election to exercise the Option, in which case any such prior election by Investor shall be deemed void *ab initio*.

**9.14 Notices.** Any notice, demand or request required under the Unison HomeOwner Agreement, unless telephone contact is specifically contemplated, shall be deemed given in writing by delivery to either the mailing address set forth in the Unison HomeOwner Option Agreement by overnight delivery by a nationally recognized overnight courier service, and may also be given to Owner by electronic mail transmission to the electronic mail address specified for Owner in the Unison HomeOwner Option Agreement. Any such notice, demand or request shall be deemed received on the Business Day either immediately following deposit with the overnight courier service, or the date of electronically stored record of e-mail transmission; provided, however, that the following notices shall not be deemed received by Investor from Owner until written confirmation of receipt made by Investor to Owner: notices of default and notices of sale in connection with secured liens on the Property; notices of delinquency in tax or insurance payments on the Property; notices of the death of an Owner; and notices of the commencement of legal or other action concerning the Property, or of bankruptcy proceedings by Owner. Each party shall have the right to change the place to which notice shall be sent or delivered or to specify one additional address to which copies of notices shall be sent, in either case by similar notice sent or delivered in the same manner to the other party.

**9.15 Entire Agreement; Amendment.** Schedule A, and Exhibits A, B, and C below, are incorporated herein by this reference. The Transaction Documents and the other written agreements made by and between Owner and Investor as of the Effective Date together constitute the entire agreement between the parties pertaining to the subject matter contained in them. Except as expressly agreed in writing, all prior agreements, understandings, representations, warranties, statements, and negotiations between the parties, if any, whether oral, electronic or written, relating to the Property, the Option, the Unison HomeOwner Agreement, the other Transaction Documents, and the transaction which is the subject matter thereof, including but not limited to any and all offer letters, terms sheets and earlier drafts and versions of other documents and agreements, are superseded and merged into the Unison HomeOwner Agreement. No supplement, modification or amendment of the Unison HomeOwner Agreement shall be binding unless in writing and executed by the party against whom enforcement is sought.

**9.16 Headings.** Article and Section headings are for reference only and shall not affect the interpretation or meaning of any provisions of the Unison HomeOwner Agreement.

**9.17 Third-Party Beneficiaries.** The Unison HomeOwner Agreement is entered into for the protection and benefit of Investor and Owner and their respective permitted successors, affiliates and assignees with regard to their respective present and contingent ownership interests in the Property. No other Person shall have any rights or causes of action under the Unison HomeOwner Agreement.

**9.18 Days of the Week; Time Periods.** Whenever the word "day(s)" is used in any of the Transaction Documents, it shall refer to calendar day(s) unless it is expressly identified as being "**Business Day(s)**". When any date referred to falls on a day of the week that is other than a Business Day, then such date shall, for all purposes (unless otherwise required by statute), be deemed to be the Business Day immediately following such date. Whenever an anniversary date of the Effective Date is applied, its

© 2019, Unison

applicable expiration shall be at 11:59 p.m., Pacific Time, on the day immediately preceding the anniversary date.

**9.19 Counterparts; Electronic Signatures.** The Unison HomeOwner Agreement Transaction Documents may be executed in counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same agreement. A signed copy of any of the Transaction Documents which is transmitted by a party to another party via facsimile or by electronic means shall be binding on the signatory to that copy.

**9.20 WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY LAW, INVESTOR AND OWNER HEREBY VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVE TRIAL BY JURY UNDER ALL CIRCUMSTANCES WHETHER IN ANY LITIGATION OR PROCEEDING IN A STATE OR FEDERAL COURT RELATED TO, OR ARISING OUT OF, THE TRANSACTION DOCUMENTS OR THE OBLIGATIONS OR TRANSACTIONS CONTEMPLATED BY THE UNISON HOMEOWNER AGREEMENT, INCLUDING, WITHOUT LIMITATION, ALL CLAIMS OR DISPUTES HOWEVER ARISING (INCLUDING TORT CLAIMS AND CLAIMS FOR BREACH OF DUTY) BETWEEN INVESTOR AND OWNER.**

### ARTICLE TEN
### CALCULATIONS

**10.1**

  **(a)** The "Investor Proceeds" under this Unison HomeOwner Agreement shall be defined and calculated as follows:

Ending Agreed Value <em>multiplied by</em> Investor Percentage

<em>minus</em> the Unison Purchase Price Balance.

  **(b)** The "Unpaid Owner Obligations" under this Unison HomeOwner Agreement shall be defined and calculated as the sum of any and all monetary amounts owed to Investor as unreimbursed Protective Advances, unpaid interest, fees and other charges associated with Protective Advances; and unpaid Asset Administration Fees.

  **(c)** The "Investor Interest" under this Unison HomeOwner Agreement shall be defined and calculated as the Investor Proceeds, if any, *plus* the Unpaid Owner Obligations, if any.

  **(d)** Following Investor's exercise of the Option, Owner may terminate Investor's Option to purchase an undivided percentage interest in and to the Property by tendering to Investor the amount (if any) of the Investor Interest as calculated herein.

**10.2** In any calculation of the Investor Proceeds or Investor Interest made in connection with **(a)** circumstances of fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(b)** any transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeOwner Agreement, or **(c)** other circumstances of prolonged, material and uncured default by Owner under the terms of the Unison HomeOwner Agreement, the Unison Purchase Price Balance may, in Investor's Permitted Discretion, be reduced by an amount equal to ten percent (10%) of the Unison Investment Payment.**10.3** The Ending Agreed Value of the Property under the Unison HomeOwner Agreement is calculated as:

<strong>Base Ending Agreed Value</strong> (as set forth in <strong>Section 10.4</strong> below)

Page 33 of 46

*minus any* Remodeling Adjustment*

*plus any* Deferred Maintenance Adjustment

*If there is a Negative Remodeling Adjustment, the absolute value of that number is added rather than subtracted.

**10.4 Base Ending Agreed Values.** The "Base Ending Agreed Values" applicable under the terms of the Unison HomeOwner Agreement are as follows:

**(a)** In any Option exercise on Permitted Sale of the Property following the third year anniversary of the Effective Date: the Effective Sale Price.

**(b)** In any Option exercise on Permitted Sale of the Property prior to the third year anniversary of the Effective Date: the greater of the Effective Sale Price or the Original Agreed Value.

**(c)** In any Option exercise on sale of the Property which is not a Permitted Sale, or is a Sale By Owner Transaction, an Intrafamily Transaction, a sale to a buyer that is not a Natural Person, or a sale with respect to which Investor has elected to apply its rights under **Section 3.5** above: either the Effective Sale Price, or an Appraised Value of the Property, in Investor's Permitted Discretion.

**(d)** In any Option exercise at Term: the Appraised Value of the Property.

**(e)** In any Option exercise upon death of the Last Surviving Owner wherein the Property is not sold to a Third Party Buyer in a Permitted Sale: the Appraised Value of the Property.

**(f)** Following any Owner Event Of Default which is not remedied by an Orderly Sale, or in any calculation of an Investor Bid Amount in connection with a foreclosure sale of the Property: the greatest of the **(i)** Original Agreed Value, or **(ii)** the highest Appraised Value of the Property calculated between the date of the first Owner Event Of Default through the date of recording of Investor's release and reconveyance of the Option and the Unison HomeOwner Agreement Transaction Documents.

**(g)** In any allocation of insurance proceeds: the Appraised Value of the Property as it existed immediately prior to the destruction or damage, or if valuing the Property by Appraisal is not possible due to the destruction or damage, the Property value immediately prior to the destruction or damage as determined by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor.

**(h)** In any total condemnation of the Property, or partial condemnation in which the Option has been exercised: the greater of: the Net Condemnation Proceeds under **Section 8.17**, or the Appraised Value of the Property as it existed immediately prior to the condemnation, or if valuing the Property by Appraisal is not possible due to the condemnation, the Property value immediately prior to the condemnation as determined by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor.

**(i)** In any Special Termination: the greater of the Appraised Value of the Property at the time of Special Termination, or the Solicited Sale Value.

**(j)** In any Orderly Sale, any one of the following, in Investor's Permitted Discretion: **(i)** the Effective Sale Price; **(ii)** the Original Agreed Value; **(iii)** the highest Appraised Value of the Property calculated between the date of the first Owner Event Of Default through the date of recording of Investor's release and reconveyance of the Option and the Unison HomeOwner Agreement Transaction Documents; or **(iv)** such other Base Ending Agreed Value as may be agreed by Owner and Investor in writing.

Page 34 of 46

© 2019, Unison                                                                      Form 250 HO-All (rev. 3/4/2019)

**ER-121**

[Signatures on following page.]

© 2019, Unison   Form 250 HO-All (rev. 3/4/2019)

**READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. EXERCISE OF THE UNISON HOMEOWNER OPTION OR OTHER ENFORCEMENT OF THE TERMS OF THE UNISON HOMEOWNER AGREEMENT MAY RESULT IN THE SALE OF YOUR PROPERTY. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH INVESTOR AND/OR INVESTOR'S AGENT(S), INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THE UNISON HOMEOWNER OPTION AGREEMENT, THIS UNISON HOMEOWNER COVENANT AGREEMENT, THE UNISON HOMEOWNER RECORDED MEMORANDUM, THE UNISON HOMEOWNER SECURITY INSTRUMENT, AND ANY OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND INVESTOR AS OF THIS EFFECTIVE DATE.**

IN WITNESS WHEREOF, intending to be legally bound, the parties have executed this Unison HomeOwner Covenant Agreement as of the Effective Date.

**INVESTOR:**

Unison Agreement Corp.

By: _[signature]_

Name: Daniel Eisenberg

Title: Vice President

Date: March 26, 2019

**OWNER:**

By: _Charles Boyd Olson_ _[signature]_

Charles Boyd Olson

Date Signed: _03/27/2019_

By: _Janine E Olson_ _[signature]_

Janine E Olson

Date Signed: _3/27/2019_

By: _____

Date Signed: _____

By: _____

Date Signed: _____

Page 36 of 46

© 2019, **Unison**

Form 250 HO-All (rev. 3/4/2019)

Case: 23-2835  02/27/2024  DktEntry: 13.1  Page 124 of 243
Case 2:22-cv-01859-RAJ  Document 14-4  Filed 01/30/23  Page 46 of 84

SCHEDULE A

### DEFINITIONS

As used in the Unison HomeOwner Agreement, the following terms shall have the meanings specified below:

**Actual Value.** Is defined in **Section 8.3(b)(ii)(A).**

**Appraisal.** The process of determining value of the property by Appraisal(s) as described in **Section 8.5,** and any appraisal of the *Property under Section 8.5.*

**Appraisal Expenses.** All fees and expenses owed to third parties (but excluding Attorneys' Fees) in connection with an appraisal or other valuation of the Property.

**Appraised Value.** The value of the Property determined in accordance with the procedures set forth in **Section 8.5.**

**Approved Subsequent Lien.** A lien upon the Property securing an Approved Subsequent Loan that is perfected after the Effective Date.

**Approved Subsequent Loan.** A loan or other obligation secured by the Property that is not prohibited under **Section 8.9(a)(iii)** of the Unison HomeOwner Covenant Agreement or otherwise approved in writing by Investor, as so secured, after the Effective Date.

**Asset Administration Fees.** Fees, costs and charges of the type further described in **Section 8.12,** which Asset Administration Fees are designed to compensate the Asset Administrator for the time, effort, costs and expenses incurred in responding to requests from Owner or Events Of Default by Owner under the Unison HomeOwner Agreement or in paying and reimbursing customary, reasonable, bona fide out of pocket costs charged to Asset Administrator by third parties performing such actions pursuant to the Unison HomeOwner Agreement.

**Asset Administration Fee Schedule.** A written schedule of regularly imposed fees for certain life events of the Unison HomeOwner Agreement, a copy of which is provided to Owner in connection with application for, and execution of, a Unison HomeOwner Agreement.

**Asset Administrator.** The entity responsible for monitoring Owner's compliance with, and discharging Investor's responsibilities under, the Unison HomeOwner Agreement. The Asset Administrator may be Unison Agreement Corp.

**Attorneys' Fees.** All court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of Investor's in-house counsel that are directly attributable to the specific matters on which a party prevailed. Attorneys' Fees shall include, without limitation, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to the Unison HomeOwner Agreement, Investor's Rights, or to the interpretation or enforcement of the parties' rights under the Unison HomeOwner Agreement, Investor's Rights or the Property.

**Base Ending Agreed Value.** The Ending Agreed Value of the Property before any Remodeling Adjustment or Deferred Maintenance Adjustment, as set forth in **Section 10.4.**

**Business Day.** Any day other than a Saturday, a Sunday, Good Friday, the day after Thanksgiving, or a day on which commercial banks in New York or California are required or authorized to be closed.

**Closing Costs.** All **(a)** ordinary and customary costs in connection with the Unison HomeOwner Agreement transaction or any subsequent sale or other transfer of the Property or any assignment or exercise of the Option related to such transfer, including, without limitation, recording fees and costs, reconveyance fees, Escrow fees, title insurance fees or fees incurred in obtaining the **Confirmation Of Title** elected by Investor, transfer taxes and documentary transfer taxes, and **(b)** federal, state or local taxes (excluding income taxes) arising, incurred or owed in connection with **(i)** Investor's exercise or sale of the Option, **(ii)** a sale of the Property or a Special Termination **(iii)** any related closing thereof; or **(iv)** any related Escrow. However, the term "Closing Costs" shall not include costs that are owed or incurred by a third party other than Investor in connection with the Property Purchase or a sale of the Property to a third party.

**Confirmation Of Title.** Confirmation of good and marketable title in and to the Property in fee simple and free of any liens or encumbrances of whatever character, subject only to the Permitted Encumbrances, to be provided, in Investor's Permitted Discretion, in the form either of a policy of title insurance issued to, or for the benefit of, Investor or Investor's assignee at the time that the Unison HomeOwner Agreement is entered into and insuring Investor's or Investor's assignee's rights under the

© 2019, Unison                                                    Form 250 HO-All (rev. 3/4/2019)

Unison HomeOwner Agreement or of a written title report, abstract of title or other title search documentation reflecting, to Investor's satisfaction, confirmation of good and marketable title to Investor's undivided fractional interest in the Property.

**Deferred Maintenance Adjustment.** An amount equal to Investor's commercially reasonable estimate of the dollar amount of any deferred maintenance or diminution in Property value caused by conditions or defects which either were known or should have been known by Owner as of the Effective Date, or which occurred or developed during the Term, as further described in **Section 8.4**, as determined by Investor in connection with any of the computations to be made under the Unison HomeOwner Agreement.

**Effective Date.** Is defined in the first sentence of the Unison HomeOwner Option Agreement and **Section 1.1** of the Unison HomeOwner Covenant Agreement.

**Effective Sale Price.** The monetary amount for which the Property is to be sold or transferred by Owner or Investor, as applicable, to an Third Party Buyer, as adjusted, as set forth below. The Effective Sale Price shall be the sum of all amounts set forth or that would otherwise be set forth in Section 400 of the HUD-1 Form (or any successor form) prepared by an Escrow Holder (which shall include the fair market value of any non-cash consideration received by, or for the benefit of, Owner and/or Investor in connection with the sale of the Property). Investor may elect to review the sales contract, and if Investor, through the exercise of its reasonable discretion, determines that the fair market value of any non-cash consideration is not properly reflected in the aforementioned Section 400, make a good faith reasonable determination of the value of any non-cash consideration to be received by Owner and/or Investor and include it in the calculation of Effective Sale Price. The calculation of the Effective Sale Price shall not include any deduction for any: **(a)** Closing Costs; **(b)** liens on the Property; **(c)** outstanding taxes; **(d)** Sales Commissions; **(e)** Appraisal Expenses; **(f)** loans secured by the Property; **(g)** credits made by Seller to closing costs; and/or **(h)** amounts payable to Investor hereunder.

**Ending Agreed Value.** Is defined in **Section 10.3**.

**Escrow.** A transaction settlement, typically consisting of an exchange and disbursement of consideration, costs, and proceeds, and documentation and recording of clear title to the Property, using the services of an Escrow Holder.

**Escrow Holder.** A title company reasonably acceptable to Investor or any neutral third party Escrow agent, settlement agent, title agent or attorney closing firm that closes or settles any transaction contemplated hereunder.

**Event Of Default.** Is defined in **Article Seven**.

**Exempted Owner Assignment.** Is defined in **Section 9.6(b)**.

**Exercise Event.** An event giving rise to the Investor's contractual right to exercise the Option under the Unison HomeOwner Agreement, including sale or transfer of the Property by Owner, death of the Last Surviving Owner; expiration of the Unison HomeOwner Agreement Term; material and uncured Event of Default; or acceptance by Owner of an offer of Option exercise and Orderly Sale.

**Expiration Date.** The day immediately preceding the thirtieth (30th) anniversary of the Effective Date, subject to automatic extension under **Sections 3.3, 4.3(b)** and **5.3(b)** of the Unison HomeOwner Covenant Agreement.

**Hazardous Materials.** Is defined in **Section 8.18**.

**Hypothetical Value.** Is defined in **Section 8.3(b)(ii)(A).**

**Intrafamily Transaction.** A purchase, sale or transfer of the Property proposed between Owner and any family member of Owner by blood or marital relation.

**Investor.** Is defined in **Section 1** of the Unison HomeOwner Option Agreement and **Section 1.1** of the Unison HomeOwner Covenant Agreement.

**Investor Bid Amount.** The liquidated amount of the Investor bid to be made in connection with any foreclosure sale of the Property.

**Investor Condemnation Credit.** Is defined in **Section 8.17(b)**.

**Investor Interest.** The Investor Proceeds (if any) plus Unpaid Owner Obligations (if any).

© 2019, Unison                                          Form 250 HO-All (rev. 3/4/2019)

**Investor Percentage.** The undivided percentage interest in and to the Property set forth in the Unison HomeOwner Option Agreement which Investor has the option to purchase and Owner has agreed to sell under the Unison HomeOwner Agreement.

**Investor Proceeds.** The Ending Agreed Value (as adjusted if applicable), multiplied by the Investor Percentage, minus the Unison Purchase Price Balance.

**Investor's Rights.** All interests and rights that Investor has or may have with regard to the Property (matured or unmatured, contingent or non-contingent, present or prospective) by virtue of the Option, under the Unison HomeOwner Agreement, or any other document executed by Owner in connection therewith, whether the Option has or has not been exercised.

**Irrevocable Limited Power Of Attorney.** A notarized Irrevocable Limited Power Of Attorney executed by Owner substantially in the form annexed hereto as Exhibit A, empowering Investor (although only a co-owner of the Property) exclusively to market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein, if and when Investor and Owner have elected to pursue an Orderly Sale.

**Last Surviving Owner.** The last surviving Person who appears as a signatory to the Unison HomeOwner Agreement (or any mutually executed written addendum thereto).

**Maximum Authorized Debt.** The maximum principal amount of total indebtedness secured by any lien on the Property that Owner is permitted to incur under the Unison HomeOwner Agreement, which amount is specified in **Section 8** of the Unison HomeOwner Option Agreement. In the case of an open-end line of credit, the unused portion of any committed line of credit shall be considered principal indebtedness for purposes of determining whether the total indebtedness exceeds the Maximum Authorized Debt.

**Natural Person.** An individual, as opposed to a corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision of any of the foregoing

**Negative Remodeling Adjustment.** Is defined in **Section 8.3(e)** and **Section 10.3**.

**Net Condemnation Proceeds.** Is defined in **Section 8.17(a)**.

**Non-Owner Occupant.** Any and all adult co-occupants of the Property when those co-occupant(s), whether spouses, domestic partners, family members, or others, are not on official record title to the Property and are not signatories to the Unison HomeOwner Agreement Transaction Documents.

**Non-Owner Occupant Disclosure.** The **"Notice and Acknowledgment Regarding Spouses, Partners and Co-Occupants Who Are Not Signatories to the Unison HomeOwner Agreement"** substantially in the form annexed hereto as Exhibit B.

**Notice Of Intention To Sell.** The written notice given by Owner to Investor under **Section 3.2(a)** of Owner's decision to market, sell or transfer the Property at least 45 days (or within a commercially reasonable time) prior to the closing of the sale.

**Option.** The right of Investor, pursuant to the Unison HomeOwner Agreement to acquire an undivided percentage interest in and to the Property in exchange for the Unison Investment Payment, the future payment of the Unison Purchase Price Balance, and such other consideration as is set forth in the Unison HomeOwner Agreement.

**Option Exercise Notice.** A notice given in the manner prescribed by **Section 3** of the Unison HomeOwner Option Agreement, constituting Option exercise by Investor.

**Orderly Sale.** Is defined in **Section 7.4**.

**Original Agreed Value.** The value of the Property determined by Investor and agreed to by Owner as of the Effective Date, as specified in **Sections 4** and **10** of the Unison HomeOwner Option Agreement.

**Owner.** All of the Persons, individually and collectively, who appear on the record title to the Property as holding fee simple title to one hundred percent (100%) of the Property as of the Effective Date. "Owner" shall be defined as including **"Owner's Estate"** following the death of the Last Surviving Owner whenever such definition is reasonable or necessary to effectuate the intent and purposes of the Unison HomeOwner Agreement, including, without limitation, as applicable in **Articles Two, Three, Six, Seven, Eight, Nine** and **Ten** of the Unison HomeOwner Covenant Agreement.

**Owner's Estate.** Collectively, the heirs, beneficiaries and/or assignees of Owner charged with control, maintenance and disposition of the Property following the death of the Last Surviving Owner.

© 2019, Unison

Form 250 HO-All (rev. 3/4/2019)

**Permitted Discretion.** Investor's sole and absolute discretion, exercised in good faith, for any reason.

**Permitted Encumbrances.** All licenses, easements, equitable servitudes, public bond obligations, and other conditions, covenants, restrictions and rights to which the Property is subject at the time the Unison HomeOwner Agreement becomes effective: (i) that are stated as exceptions on the Confirmation Of Title, or (ii) to which Investor has expressly agreed in writing that the Property will remain subject following any exercise of the Option by Investor. "Permitted Encumbrances" do not include any Senior Loans, Senior Liens, or any other liens that secure the payment of any loans or the performance of any obligations owed to any creditor.

**Permitted Sale.** A Third Party Sale by Owner which fully complies with **Article Three** or is otherwise expressly consented to in writing by Investor.

**Permitted Senior Lien.** A perfected lien upon the Property securing a Permitted Senior Loan that is senior to the lien of the Unison HomeOwner Security Instrument, obtained in connection with, or that was approved in writing by Investor upon Investor's execution of the Unison HomeOwner Agreement.

**Permitted Senior Loan.** An obligation secured by a Permitted Senior Lien, including, without limitation, any and all principal, interest, and expenses.

**Person.** An individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision of any of the foregoing.

**Principal Residence.** Is defined in **Section 8.8(a)**.

**Prohibited Use.** Is defined in **Section 8.8(b)**.

**Property.** The residential real property that is the subject of the Unison HomeOwner Agreement, the legal description of which is set forth as Exhibit A to the Unison HomeOwner Option Agreement. The Property shall include only the real property described in that Exhibit A and the improvements and fixtures appurtenant to that real property, and not any other personal property of Owner.

**Protective Advances.** Any advances made by Investor that are the primary responsibility of Owner under the Unison HomeOwner Agreement but are made by Investor for purposes of protecting the Investor Percentage and Investor's Rights, as more completely described in **Section 8.11**.

**Remodeling Adjustment.** The adjustment, defined in **Section 8.3**, and calculated pursuant to **Section 8.5**, that takes into account the increase or decrease in market value attributable to certain material modifications and/or Prohibited Uses of the Property by Owner during the Term of the Unison HomeOwner Agreement.

**Revocable Trust.** A revocable trust, revocable living trust, *inter vivos* trust, revocable family trust or similar trust established in accordance with the laws of any state.

**Revocable Trust Rider.** A rider to the Unison HomeOwner Security Instrument required to be executed by Owner in the event Owner elects to purchase the Property in the name of a revocable trust.

**Right Of First Refusal.** The right of Owner under **Section 7.4(f)** to purchase the Property on the same terms the Property is proposed to be sold to a third party in an Orderly Sale.

**Sale By Owner Transaction.** A proposed sale of the Property conducted either without a public listing of the Property on the open market or where the terms and conditions of the sale have been principally negotiated by Owner without agency representation.

**Sales Commissions.** All broker fees, sales commissions, finder fees and all other fees and costs owed to any broker, real estate agent or finder and incurred in connection with a sale or transfer of the Property or any interest in the Property.

**Senior Liens.** Liens on the Property that are perfected prior to or otherwise have priority over the lien created by the Unison HomeOwner Security Instrument and which are approved by Investor, as so secured.

**Senior Loans.** Loans or other obligations that are secured by Senior Liens.

**Solicited Sale Value.** If within ninety (90) days prior to or following the closing of a Special Termination under **Section 6.2** Owner or Investor receives, or has pending, a written offer for the purchase of the Property, the Solicited Sale Value shall equal

© 2019, Unison

Form 250 HO-All (rev. 3/4/2019)

the gross amount of such offer, with no deduction or adjustment for any costs that Owner may incur if a sale of the Property were to be completed pursuant to such offer.

**Special Damages For Failure To Insure.** Are defined in **Section 8.16(f)**.

**Special Termination.** Is defined in **Section 6.2**.

**Special Termination Price.** Is defined in **Section 6.2**.

**Term.** The term of the Unison HomeOwner Agreement, commencing on the Effective Date and expiring on the Expiration Date, and as may be automatically extended under **Sections 3.3, 4.3(b)** and **5.3(b)** of the Unison HomeOwner Covenant Agreement.

**Termination.** Any non-exercise termination of the Option prior to the expiration of the Term.

**Third Party Buyer.** The Person that purchases, or proposes to purchase, the Property in a Third Party Sale. This Person may be *Investor*.

**Third Party Sale.** A sale of all, or of an interest in, the Property under the Unison HomeOwner Agreement. Any Third Party Sale by Owner must also be a Permitted Sale.

**Transaction Documents.** The Unison HomeOwner Option Agreement, the Unison HomeOwner Covenant Agreement, the Unison HomeOwner Recorded Memorandum, the Unison HomeOwner Security Instrument and any and all mutually executed riders, amendments, exhibits or supplements thereto.

**Trustor(s).** The Person or Persons designated as the "trustor" or "settlor" of a Revocable Trust in its formation documents.

**Trustee(s).** The Person or Persons designated as the "trustee" of a Revocable Trust in its formation documents and any subsequent amendments, and any successor trustees under such Revocable Trust.

**Unison HomeOwner Agreement.** The Unison HomeOwner Option Agreement, Unison HomeOwner Covenant Agreement, Unison HomeOwner Recorded Memorandum, and Unison HomeOwner Security Instrument, and riders thereto, executed by and between Owner and Investor, together with all exhibits, schedules, attachments, and all amendments, supplements, and addenda now or hereafter executed by the parties.

**Unison HomeOwner Covenant Agreement**. This Unison HomeOwner Covenant Agreement executed by and between Owner and Investor.

**Unison Investment Payment.** The portion of the Unison Purchase Price paid to Owner for the Option in advance, at the commencement of the Unison HomeOwner Agreement Term.

**Unison HomeOwner Option Agreement**. The Unison HomeOwner Option Agreement executed by and between Owner and Investor by which Owner grants the Option to Investor.

**Unison Purchase Price.** The total amount Investor has agreed to pay or credit for Investor's purchase of an undivided percentage interest in and to the Property as set forth (or adjusted) under **Sections 1** and **10** of the Unison HomeOwner Option Agreement, as distinguished from the price which a future buyer may pay to purchase the Property.

**Unison Purchase Price Balance.** The Unison Purchase Price minus the Unison Investment Payment previously given to Owner, as set forth in **Sections 1** and **10** of the Unison HomeOwner Option Agreement, and subject to reduction under **Sections 7.3(d) and 10.2** of the Unison HomeOwner Covenant Agreement.

**Unison HomeOwner Recorded Memorandum.** The memorandum, entered into by Investor and Owner concurrently with the Unison HomeOwner Agreement, which shall be recorded in the public records evidencing: **(a)** the provisions of the Unison HomeOwner Agreement running with the land; and **(b)** the Option.

**Unison HomeOwner Security Instrument.** A deed of trust or mortgage, and security agreement, together with any riders thereto, given by Owner concurrently with this Unison HomeOwner Covenant Agreement, and the Unison HomeOwner Option Agreement, securing the Owner's performance under the Unison HomeOwner Agreement by a lien on Owner's entire interest in the Property, which shall be recorded in the public records and which forms a part of the Unison HomeOwner Agreement.

**Unpaid Owner Obligations.** Is defined in **Section 3.3**.

Page 41 of 46

<u>Exhibit A</u>

## IRREVOCABLE LIMITED POWER OF ATTORNEY

### TO BE EXECUTED AND GRANTED BY OWNER TO INVESTOR
### UPON MUTUAL AGREEMENT TO PURSUE ORDERLY SALE
### [MAY DIFFER FROM STATE TO STATE]

**Irrevocable Limited Power of Attorney Coupled with an Interest.** Pursuant to the terms of the Unison HomeOwner Agreement ("Unison HomeOwner Agreement") entered into by and between _____ as of _____ ("Effective Date"), and subsequent agreement to pursue the remedy of Orderly Sale under Section 7.4 of the Unison HomeOwner Covenant Agreement, Owner is executing this notarized Power of Attorney designating Investor and its successors and assignees as its true and lawful agents and attorneys-in-fact (with full power of substitution) in Owner's name and on Owner's behalf (in any and all capacities) for the sole and limited purpose of authorizing and empowering Investor exclusively (although only a co-owner of the Property) to market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein. Accordingly, Investor or its successor or assignee and the other parties designated above as attorneys-in-fact, shall have the exclusive power and authority to do all acts and to execute any and all documents, instruments and agreements as such agents and attorneys-in-fact deem necessary or advisable:

1. to solicit buyers for the entire Property and offers for a sale of the entire Property;

2. to advertise the entire Property for sale on reasonable and customary terms and conditions for a price that is reasonable in view of the then market conditions;

3. to sell the entire Property and transfer Owner's entire interest in, and title to, the Property on usual and customary terms and conditions, the proceeds of which shall be allocated to Owner and Investor as provided in the Unison HomeOwner Agreement; and

4. to encumber the Property by obtaining loans secured by liens on the Property, in order to raise those funds reasonably required to improve, repair and prepare the Property for sale at a competitive price in its market.

The undersigned hereby acknowledge that this power of attorney is coupled with an interest in the Property pursuant to the Unison HomeOwner Agreement and that, as a result, in addition to any consequences under law, this power is irrevocable and will survive the undersigned's death or incompetence. All acts that the attorneys-in-fact shall lawfully do, or cause to be done, under the authority of this Power of Attorney are hereby expressly approved, ratified and confirmed.

This Power of Attorney is a durable power of attorney and shall remain in force despite any Owner's subsequent incapacity or death.

In the event this Power of Attorney, or any portion thereof, is held to be invalid or stayed or enjoined by a court of competent jurisdiction, then such provision or portion thereof shall be considered separately and apart from every other provision of the Unison HomeOwner Agreement for the purpose of determining the legal enforceability of every such other provision, and Owner agrees to execute and deliver to Investor a replacement Power of Attorney acceptable to the Investor in its reasonable discretion.

Owner and Investor agree that if Investor is not allowed to exercise its rights under this Power of Attorney the damages to Investor would be irreparable and extremely difficult to estimate, making money damages or any remedy at law inadequate. Thus, in addition to any other rights and remedies available to it in law, equity or otherwise, Investor shall be entitled to specific performance of the provisions of this instrument.

From time to time in the future as long as the Unison HomeOwner Agreement has not, or is not, terminated, Owner shall, at Investor's request, which shall be at Investor's Permitted Discretion, execute such additional or replacement powers of attorney as Investor may deem necessary identifying such other Investor officers as Owner's attorneys-in-fact as Investor deems reasonably necessary for purposes enumerated herein.

THIS POWER OF ATTORNEY SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL SUCH TIME AS THE UNISON HOMEOWNER AGREEMENT TERMINATES OR IS TERMINATED. Owner hereby ratifies and affirms all that such attorney-in-fact, or any substitute or substitutes, may do by virtue of the power conveyed hereby.

**EXHIBIT ONLY – DO NOT SIGN** _____     DATE: _____
  Signature

_____
  Print Name

**EXHIBIT ONLY – DO NOT SIGN** _____     DATE: _____
  Signature

_____
  Print Name

© 2019, **Unison**    Form 250 HO-All (rev. 3/4/2019)

**ER-129**

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _Washington_ )

County of _King_ )

On _3-22-19_ , 20 ___, before me, _Vera V Sahharov Notary Public_

personally appeared _Charles Boyd Olson, Jacie E Olson_ (insert name and title of the officer)
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _WA_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Vera V Sahharov_ (Seal)

VERA V SAHHAROV
Notary Public
State of Washington
Commission # 106791
My Comm. Expires Feb 24, 2021

Page 43 of 46

© 2019, Unison

Form 250 HO-All (rev. 3/4/2019)

**Exhibit B**

## NOTICE AND ACKNOWLEDGMENT REGARDING SPOUSES, PARTNERS AND CO-OCCUPANTS

### WHO ARE NOT SIGNATORIES TO THE UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number:

This Notice and Acknowledgement Form ("**Form**") contains important disclosures about the rights and liabilities of spouses, domestic partners, family members and other co-occupants of a Property ("**Property**") subject to a **Unison HomeOwner Agreement** who are not signatories to the Unison HomeOwner Agreement (collectively referred to as "**Non-Owner Occupant(s)**"). Please READ IT CAREFULLY. This Form must be signed by all homeowners entering into and executing a Unison HomeOwner Agreement ("**Unison Signatory(ies)**") and by all Non-Owner Occupants. Any owner executing a Unison HomeOwner Agreement ("**Owner**") is responsible for ensuring that a complete and accurate version of this Form is returned to Unison Agreement Corp. ("**Unison**") with the signatures of all Non-Owner Occupants as a prerequisite to entering into the Unison HomeOwner Agreement.

The rights of a Non-Owner Occupant to occupy or retain possession of the Property following the death of the Last Surviving Owner who is a party to the Unison HomeOwner Agreement, Option exercise, or an Owner Event Of Default under the Unison HomeOwner Agreement, may be significantly affected by the operation of the Unison HomeOwner Agreement. This is because the Unison HomeOwner Agreement is an option agreement which gives Unison the right to exercise its option and purchase an undivided percentage interest ("**Investor Percentage**") in the Property upon certain triggering events. *Two such triggering events are the death of the Last Surviving Owner, or an Owner Event Of Default, regardless of whether Non-Owner Occupants are occupying the Property at that time.* A Non-Owner Occupant of a Property subject to a Unison HomeOwner Agreement will be required to settle Unison's option rights even if the Non-Owner Occupant inherits the Property as the heir, beneficiary or survivor of an Owner. Depending on the appreciation of the Property during the term of the Unison HomeOwner Agreement, the amount required to settle Unison's option rights may be substantial. In addition, following an Event of Default (including default by Non-Owner Occupants), Unison may be entitled to exercise its recorded security interest and/or compel the sale of the Property, resulting in a Non-Owner Occupant losing possession and/or ownership thereof.

Unison cannot know who occupies the Property as a principal residence if those persons are not named on title. Unison must and will rely on the Owner to supply this information accurately.

The responsibility for notifying Unison of any change in the status of Non-Owner Occupants is also a continuing obligation of all Owners throughout the Term of the Unison HomeOwner Agreement. All Owners are responsible for returning a complete and accurate amended Form to Unison with the signatures of all Non-Owner Occupants, both at inception of the Unison HomeOwner Agreement, and in the event that any new Non-Owner Occupant not signatory to the Unison HomeOwner Agreement commences to occupy the Property as his or her principal residence, or in the event a non-adult occupant of the Property attains the age of 18, at any time during the Term.

In the event that a Unison Signatory wishes to add another person onto the title to the Property after entering into the Unison HomeOwner Agreement, he or she must execute the complete set of Unison HomeOwner Agreement legal documents and meet all then-current Unison HomeOwner Agreement education requirements. Unless and until these requirements are met, the individual will remain and must be identified to Unison as a Non-Owner Occupant of the Property subject to the option and contractual rights of Unison as above described.

All Owners acknowledge that they have read and understand this Form, and that they have been advised by Unison to consult independent legal counsel and estate planning professionals to ascertain the legal effects of the Unison HomeOwner Agreement on future possession and occupancy of the Property.

© 2019, **Unison**　　　　　　　　　　　　　　　　　　　　　　　Form 250 HO-All (rev. 3/4/2019)

☐   I represent and warrant that there are <u>no</u> Non-Owner Occupants living in my Property.

Acknowledged and agreed:

| Owner: | Owner: |
|---|---|
| **<u>EXHIBIT ONLY – DO NOT SIGN</u>** | **<u>EXHIBIT ONLY – DO NOT SIGN</u>** |
| Date signed: _____ | Date signed: _____ |

☐   I represent and warrant that I have presented this form to and discussed its contents with all Non-Owner Occupants living in my Property. The names and signatures of all Non-Owner Occupants and their relation to me appear below.

Acknowledged and agreed:

| Owner: | Owner: |
|---|---|
| **<u>EXHIBIT ONLY – DO NOT SIGN</u>** | **<u>EXHIBIT ONLY – DO NOT SIGN</u>** |
| Date signed: _____ | Date signed: _____ |
| Non-Owner Occupant 1: | Non-Owner Occupant 2: |
| **<u>EXHIBIT ONLY – DO NOT SIGN</u>** | **<u>EXHIBIT ONLY – DO NOT SIGN</u>** |
| Print name: _____ | Print name: _____ |
| Relation to Owner: _____ | Relation to Owner: _____ |
| Non-Owner Occupant 3: | Non-Owner Occupant 4: |
| **<u>EXHIBIT ONLY – DO NOT SIGN</u>** | **<u>EXHIBIT ONLY – DO NOT SIGN</u>** |
| Print name: _____ | Print name: _____ |
| Relation to Owner: _____ | Relation to Owner: _____ |

© 2019, **Unison**

Form 250 HO-All (rev. 3/4/2019)

## Exhibit C

### Asset Administration Fee Schedule

Unison HomeOwner Agreement ID Number:

| | |
|---|---|
| **Changes to Title:** | **$300.00** |
| Addition of Unison HomeOwner Agreement Signatory | |
| Removal of Unison HomeOwner Agreement Signatory | |
| Other Changes to Title Including Change of Title to Trust | |
| **Advances made by Unison (per advance) due to non-payment of:** | **$250.00[1]** |
| Property insurance payment | |
| Property tax payment | |
| Deferred maintenance | |
| Mortgage and other unpaid obligations | |
| **Processing Subordination Requests:** | **$300.00** |
| **Recording and Reconveyance (per document):** | **$75.00** |
| Release of lien | |
| Quitclaim deed | |
| Other requested release documentation | |
| **Payoff Estimate (per request, when requested more than once per calendar year)** | **$75.00** |
| **Special Termination** | **$1250.00** |
| **Processing of Property Sale** | **$650.00** |
| **Administering Owner Events Of Default** | **$500 – $3500 (estimated)[2]** |

In addition to the administration fees itemized above, other actual, necessary, bona fide, reasonable, out-of-pocket fees and costs, customary to the area, which are paid by Investor to third parties (including persons and entities retained by Investor) may be charged to the homeowner from time to time during the term or at the termination of a Unison HomeOwner Agreement, including fees and costs related to title, legal, recording, and appraisal, whether incurred in connection with homeowner default or termination.

The above listed fees are estimates based on the current costs of the service provided. These fees are subject to change as the costs of providing any such services change. If a fee has changed at the time Owner requests any one of the above services, a disclosure of the then-current charge will be provided to Owner. Please note that additional fees for expediting requests may apply.

---

[1] Plus interest on amounts advanced, in accordance with the Unison HomeOwner Agreement.

[2] The range of administrative fees which may be charged by Investor in connection with Owner Defaults is an estimate only, given the difficulty of actually predicting the internal cost to Investor of processing such Defaults. As a result, the actual amount of such fees may vary depending on the duration, and difficulty of resolution, of any given Owner Default. In unusual cases, such fees may exceed the estimates given here. Under no circumstances, however, shall Investor charge any administrative fees in connection with Owner Default unless such fee is customary, reasonable, bona fide, imposed in good faith, and demonstrably appropriate in relation to the Event of Default.

© 2019, **Unison**   Form 250 HO-All (rev. 3/4/2019)

**ER-133**

# EXHIBIT 2-3

Instrument Number: 20190403000497 Document:DT Rec: S113.00 Page-1 of 14
Record Date:4/3/2019 11:48 AM
Electronically Recorded King County, WA

**Prepared by, recording requested by,
and when recorded mail to:**

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeOwner Agreement ID Number:
FRX-142187

Consideration : $64,750 00
**UNISON HOMEOWNER DEED OF TRUST AND SECURITY AGREEMENT**

**NOTICE: THIS DEED OF TRUST CONTAINS A SUBORDINATION CLAUSE WHICH
MAY RESULT IN BENEFICIARY'S SECURITY OR OTHER INTEREST IN THE
PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN
OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

**Grantor(s):**
1.       Charles Boyd Olson and Janine E Olson
     ☐      Additional names on page 2 of document
**Grantee(s):** American Title Inc, Trustee
     Unison Agreement Corp., a Delaware corporation
     ☐      Additional names on page ___ of document

**Abbreviated Legal Description** (lot, block and plat name, or section-township-range):
          Lot , Block , Lot1 Parkside No. 1
     ☑      Additional legal description is on page 14 of document

**Assessor's Property Tax Parcel Account Number(s):** 6669010010

**Reference Numbers of Documents Assigned or Released (if applicable):**
     ☐      Additional reference numbers on page ___ of document

Page 1 of 14

Owner s Initials _____ _____ / /

- 2017 Unison                                                    Form 401 HO-WA (rev 7/27/2017)

This **SUBORDINATED HOMEOWNER DEED OF TRUST AND SECURITY AGREEMENT,** together with riders hereto ("**Unison HomeOwner Security Instrument**"), is made as of 03/26/2019 ("Effective Date"), among CHARLES BOYD OLSON AND JANINE E OLSON, HUSBAND AND WIFE AS JOINT TENANTS (individually or collectively "Grantor"), and American Title Inc ("Trustee"), whose address is 11010 Burdette St PO BOX 641010, Omaha, NE 68164-1010 and Unison Agreement Corp, a Delaware corporation, and its successors and assignees ("**Beneficiary**"), whose address is 650 California Street, Suite 1800 San Francisco, CA 94108. Capitalized terms used in this Unison HomeOwner Security Instrument shall have the meanings specified in this Unison HomeOwner Security Instrument, or if not defined herein, in that certain Unison HomeOwner Covenant Agreement ("**Unison HomeOwner Covenant Agreement**"), Unison HomeOwner Option Agreement ("**Unison HomeOwner Option Agreement**") and that certain Memorandum Of Unison HomeOwner Agreement ("**Unison HomeOwner Recorded Memorandum**"), which documents, together with this Unison HomeOwner Security Instrument, are collectively termed the "**Unison HomeOwner Agreement**" executed by Grantor and Beneficiary concurrently herewith.

1.    **Grant In Trust.**

GRANTOR HEREBY IRREVOCABLY bargains, sells and conveys to Trustee, and its successors and assignees, in trust, with power of sale, all of that property ("**Real Property**") described in **SCHEDULE A** attached hereto and made a part hereof.

Together with all improvements, replacements and additions now or hereafter erected on the Real Property and all easements, appurtenances and fixtures now or hereafter a part of the Real Property. (The fixtures, improvements and the Real Property are collectively referred to as the "**Property.**")

Together with all rents, issues, profits and proceeds, including without limitation insurance and condemnation proceeds, from the Real Property, subject, however, to the right, power and authority given to and conferred upon Beneficiary below to collect and apply such rents, issues and profits.

Grantor warrants that he/she/they is/are lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Grantor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

2.    **Secured Obligations.** Grantor makes the grant, transfer and assignment set forth in the "Grant In Trust" Section above for the purpose of securing:

a.    Grantor's performance, and Beneficiary's rights, under the Unison HomeOwner Agreement;

Page 2 of 14

Owner's Initials: _____  _____  _____

Unison                                      Form 401 HO-WA (rev 7/27 2017)

Instrument Number: 20190403000497 Document:DT Rec: S113.00 Page-3 of 14
Record Date:4/3/2019 11:48 AM King County, WA

        **b.**   the performance and payment of the obligations of Grantor under the Unison HomeOwner Agreement, including:

        **(i)**   payment of all **Protective Advances**, including any unpaid interest and other fees and charges associated with such Protective Advances, owed to Beneficiary under the Unison HomeOwner Agreement;

        **(ii)**   payment of all **Asset Administration Fees** incurred by or owed to Beneficiary under the Unison HomeOwner Agreement;

        **(iii)**   payment of all insurance proceeds owed to Beneficiary pursuant to **Sections 8.16(e) and (f)** of the Unison HomeOwner Covenant Agreement;

        **(iv)**   payment of all condemnation proceeds owed to Beneficiary pursuant to **Section 8.17** of the Unison HomeOwner Covenant Agreement;

        **(v)**   performance of those obligations to Beneficiary specified in the Unison HomeOwner Agreement pursuant to **Articles Three, Four, Five, Eight and Nine** of the Unison HomeOwner Covenant Agreement, including, without limitation, payment of the Investor Interest under the Unison HomeOwner Agreement; and

        **(vi)**   performance of the obligations of Grantor under the Unison HomeOwner Covenant Agreement regarding Beneficiary's right as a co-owner to sell the Property following exercise of the **Option** and during **Orderly Sale**.

        **c.**   the performance of the obligations of Grantor contained in this Unison HomeOwner Security Instrument or incorporated by reference;

        **d.**   any expenditures made by Beneficiary pursuant to, or under, this Unison HomeOwner Security Instrument; and

        **e.**   payment of all fees and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel (collectively **"Attorneys' Fees"**)) incurred by Beneficiary in the enforcement and collection of the obligations listed above and the protection of Beneficiary's rights related thereto, whether such fees are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Attorneys' Fees shall include, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this Unison HomeOwner Security Instrument, to the interpretation or enforcement of the parties' rights under this Unison HomeOwner Security Instrument, or to the Property.

The foregoing obligations are referred to collectively as the "**Obligations**."

Owner's Initials: _____

©2017 Unison            Form 40 HO-WA (rev 7/27/2017)

Instrument Number: 20190403000497 Document:DT Rec: S113.00 Page-4 of 14
Record Date:4/3/2019 11:48 AM King County, WA

     **f.**    Grantor shall not be obligated to repay any part of the **Unison Investment Payment** (as such term is defined in Schedule A to the Unison HomeOwner Covenant Agreement); and therefore, such item shall not be included within the Obligations. The foregoing shall not, however, in any way limit any payment calculated and agreed by Grantor to be paid pursuant to the Unison HomeOwner Agreement, according to the calculation of **Investor Proceeds** and **Investor Interest** (as defined in the Unison HomeOwner Agreement), including, without limitation, any such calculation in connection with a **Special Termination** as defined in **Section 6.2** of the Unison HomeOwner Covenant Agreement.

    **3.**    **Uniform Commercial Code Security Agreement And Fixture Filing.** This Unison HomeOwner Security Instrument also is intended to be and shall constitute a security agreement under the Washington Uniform Commercial Code for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the California Uniform Commercial Code. Grantor hereby grants to Beneficiary a security interest in those items to secure the performance and payment of the Obligations.

    **a.**    Grantor agrees that Beneficiary may file either this Unison HomeOwner Security Instrument, or a copy of it, or a UCC-1 Financing Statement in the real estate records or other appropriate index and/or with the Department of Licensing, State of Washington, as a financing statement for any of the items specified above as part of the Property.

    **b.**    This Unison HomeOwner Security Instrument constitutes a financing statement filed as a fixture filing pursuant to Section RCW 62.9A-502 and 62A.9A-514 of the Washington Uniform Commercial Code, and any similar or successor provisions.

    **c.**    Beneficiary may file such extensions, renewals, amendments and releases as are appropriate to reflect the status of its security interest.

    **d.**    Grantor shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements. and shall pay all reasonable costs and expenses of any record searches for financing statements that Beneficiary may reasonably require.

    **e.**    On any default hereunder, Beneficiary shall have the remedies of a secured party under the Washington Uniform Commercial Code and may also invoke the remedies in **Section 7** below. In exercising any of these remedies, Beneficiary may proceed against the items of Real Property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Beneficiary's remedies under the Washington Uniform Commercial Code or the remedies in **Section 7** below.

    **4.**    **Assignment Of Leases And Rents.** As additional security for the Obligations. Grantor hereby irrevocably. absolutely and unconditionally assigns to Beneficiary all of Grantor's right, title and interest in and to all existing and future leases, subleases and licenses

Page 4 of 14

Owner's Initials _____

Instrument Number: 20190403000497 Document:DT Rec: S113.00 Page-5 of 14
Record Date:4/3/2019 11:48 AM King County, WA

relating to the use, occupancy or enjoyment of all or any part of the Property and all rents, income, revenues, profits, proceeds and earnings now or hereafter payable with respect to the ownership, use or occupancy of the Property (collectively the "**Rents**"):

a.      Grantor hereby gives to, and confers upon, Beneficiary the right, power and authority, during the continuance of this Unison HomeOwner Security Instrument, to collect the Rents, reserving unto Grantor the right, prior to any default by Grantor in payment of the Obligations secured hereby or in performance of any agreement hereunder, to collect and retain such Rents, as they become due and payable.

b.      Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations secured hereby, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Attorneys' Fees to the Obligations secured hereby, and in such order as Beneficiary may determine.

c.      The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application of such rents, issues and profits pursuant to this Unison HomeOwner Security Instrument, shall not cure or waive any default or notice of default under this Unison HomeOwner Security Instrument or invalidate any act done pursuant to such notice.

d.      Nothing in this section shall permit Grantor to lease or rent the Property in contravention of any provision of the Unison HomeOwner Agreement; nor shall anything in this section modify any provision in the Unison HomeOwner Agreement relating to the use, lease or occupancy of the Property.

5.      **Covenants Of Grantor Regarding The Property**. Grantor hereby agrees as follows:

a.      To appear in and defend any action or proceeding purporting to affect the security of this Unison HomeOwner Security Instrument or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Trustee and Beneficiary (including cost of evidence of title and Attorneys' Fees) incurred: (i) in any state, federal, appellate, or bankruptcy court, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Unison HomeOwner Security Instrument or to collect the Obligations or to protect Beneficiary's rights under this Unison HomeOwner Security Instrument; and/or (ii) in connection with the enforcement of any provisions of this Unison HomeOwner Security Instrument or in connection with foreclosure upon the collateral granted under this Unison HomeOwner Security Instrument (whether or not suit is filed).

Page 5 of 14

Owner's Initials: _____ / _____

   **b.**    To pay: at least ten (10) days before delinquency all taxes and assessments affecting the Property: and all encumbrances, charges and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this Unison HomeOwner Security Instrument, and all costs, fees and expenses of this Unison HomeOwner Security Instrument.

        **(i)**    If Grantor fails to make any payment or to do any act as provided in this Unison HomeOwner Security Instrument, Beneficiary or Trustee may (but shall not be obligated to) make the payment or do the act in the required manner and to the extent deemed necessary by Beneficiary or Trustee to protect the security for this Unison HomeOwner Security Instrument, which payments and related expenses (including Attorneys' Fees) shall also be secured by this Unison HomeOwner Security Instrument.

        **(ii)**    Such performance by Beneficiary or Trustee shall not require notice to, or demand on, Grantor and shall not release Grantor from any obligation under this Unison HomeOwner Security Instrument.

        **(iii)**    Beneficiary or Trustee shall have the following related rights and powers: (A) to enter upon the Property for the foregoing purposes, (B) to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee under this Unison HomeOwner Security Instrument, (C) to pay. purchase. contest or compromise any encumbrance, charge, or lien that in the judgment of Beneficiary or Trustee appears to be prior or superior to this Unison HomeOwner Security Instrument, and (D) to employ counsel, and to pay such counsel necessary expenses and costs. including Attorneys' Fees.

   **c.**    To pay immediately upon demand all sums expended by Beneficiary or Trustee pursuant to this Unison HomeOwner Security Instrument; and to pay interest on any of the foregoing amounts demanded by Beneficiary or Trustee at the rate specified in the Unison HomeOwner Agreement from the date of such demand, not to exceed the maximum rate allowed by law at the time of such demand.

   **6.**    **Power Of Attorney.** Grantor hereby irrevocably appoints Beneficiary as Grantor's attorney-in-fact (such agency being coupled with an interest), and as such attorney-in-fact Beneficiary may, after providing notice to Grantor pursuant to the Unison HomeOwner Agreement and the Unison HomeOwner Recorded Memorandum, without the obligation to do so, in Beneficiary's name, or in the name of Grantor, prepare, execute and file or record financing statements, continuation statements, applications for registration and like documents necessary to create. perfect or preserve any of Beneficiary's security interests and rights in or to any of the Property, and. upon a default under this Unison HomeOwner Security Instrument. take any other action required of Grantor; provided, however, that Beneficiary as such attorney-in-fact shall be accountable only for such funds as are actually received by Beneficiary.

Page 6 of 14

Owner's Initials _____

                                        Form 401 HO-WA (rev 7/27/2017)

Instrument Number: 20190403000497  Document:DT Rec: $113.00 Page-7 of 14
Record Date:4/3/2019 11:48 AM King County, WA

**7.**  **Default And Foreclosure And Power Of Sale.** Upon default by Grantor in the performance of or upon breach by Grantor of any of the rights and Obligations that are secured by this Unison HomeOwner Security Instrument as specified above, Beneficiary may declare all performance and sums secured by this Unison HomeOwner Security Instrument immediately due by delivery to Trustee and to Grantor of written declaration of default. Beneficiary shall give notice of default to Grantor prior to acceleration following Grantor's breach of any covenant or agreement in this Unison HomeOwner Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Grantor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the performance secured by this Unison HomeOwner Security Instrument and sale of the Property. The notice shall further inform Grantor of the right to cure after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Grantor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Beneficiary at its option may require immediate performance in full of all obligations secured by this Unison HomeOwner Security Instrument without further demand commence an action to foreclose this Unison HomeOwner Security Interest as a mortgage, and may invoke the power of sale and any other remedies permitted by applicable law. Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided herein, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Beneficiary invokes the power of sale, Beneficiary shall execute or cause Trustee to execute a written notice of Beneficiary's election to cause the Property to be sold as prescribed by applicable law. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Beneficiary or Trustee shall mail copies of the notice as prescribed by applicable law to Grantor and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. Beneficiary also shall deposit with Trustee this Unison HomeOwner Security Instrument, the Unison HomeOwner Agreement, and all documents evidencing any expenditures and damages secured by this Unison HomeOwner Security Instrument.

After the time required by applicable law, Trustee, without demand on Grantor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.

Trustee shall deliver to the purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of their truthfulness. Any person, except Trustee, including Beneficiary as defined in this Unison HomeOwner Security Instrument, may purchase at such sale.

Page 7 of 14

Owner's Initials: _____

© 2017, Unison

Form 401 HO-WA (rev. 7/27/2017)

Instrument Number: 20190403000497  Document:DT Rec: $113.00 Page-8 of 14
Record Date:4/3/2019 11:48 AM King County, WA

      a.      After deducting all costs, fees and expenses (including Attorneys' Fees) of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: to Beneficiary, all sums expended and performance due under the terms of this Unison HomeOwner Security Instrument, not then performed or repaid, with accrued interest, if any, at the amount allowed by law in effect on the Effective Date of this Unison HomeOwner Security Instrument; to Beneficiary, all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

      b.      Notice provided to Grantor under this Unison HomeOwner Security Instrument shall be to the address specified in this Unison HomeOwner Security Instrument unless otherwise required by applicable law.

      c.      Exercise of Beneficiary's remedies under this Unison HomeOwner Security Agreement shall be in compliance with applicable law.

      **8.**      **Liquidated Damages.** Liquidated Damages means an amount equal to the sum of:

      a.      the **Investor Proceeds**, as calculated according to **Article 10** ("**Calculations**") of the Unison HomeOwner Covenant Agreement;

      b.      in connection with Grantor's failure to make any monetary payment, the sum of all monetary obligations (including, without limitation, all **Unpaid Owner Obligations**) owed to Investor by Grantor under the Unison HomeOwner Agreement; and

      c.      any and all amounts, properly chargeable to Grantor as necessary to satisfy Grantor's obligations under the Unison HomeOwner Agreement with respect to Grantor's mortgage, tax and insurance obligations on the Property, including late fees, reinstatement fees and other penalties.

      **9.**      **Late Performance.** By accepting performance of any obligation after its due date, Beneficiary does not waive its right either to require prompt performance when due of all other obligations or to declare default for such failure to perform.

      **10.**      **Trustee's Powers.** At any time or from time to time, without liability therefor upon written request of Beneficiary and presentation of this Unison HomeOwner Security Instrument, and without affecting the personal liability of any person for the performance of the Unison HomeOwner Agreement secured hereby, Trustee may: **(a)** reconvey any part of the Property; **(b)** consent to the making of any map or plat of the Property; **(c)** join in granting any easement thereon; and **(d)** join in any extension agreement or any agreement subordinating the lien or charge of this Unison HomeOwner Security Instrument.

      **11.**      **Substitution of Trustee.** Beneficiary, or any successor in ownership of the Obligations, may from time to time, by instrument in writing, substitute a successor or

Owner's Initials:

© 2017 Unison Form 401 HO-WA (rev 7/27 2017)

successors to any Trustee named or acting under this Unison HomeOwner Security Instrument, which instrument, when executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from Trustee's predecessor, succeed to all its title, estate, rights, powers and duties. Such instrument must contain the name of the original Grantor, Trustee and Beneficiary under this Unison HomeOwner Security Instrument, the book and page where this Unison HomeOwner Security Instrument is recorded, and the name and address of the new Trustee(s).

    **12.**    **Trustee's Compensation.** Grantor shall pay Trustee's fees and reimburse Trustee for expenses in the administration of this Trust, including Attorneys' Fees. Grantor shall pay to Beneficiary reasonable compensation for services rendered concerning this Unison HomeOwner Security Instrument, including without limitation any statement of amounts owing under any obligations.

    **13.**    **Full Reconveyance.** Upon written request of Beneficiary stating that all obligations have been performed or paid, and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held under this Unison HomeOwner Security Instrument. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such recitals. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

    **14.**    **Subordination.** This Unison HomeOwner Security Instrument is subordinate to and junior to the Unison HomeOwner Recorded Memorandum which affects the Property and which is executed by Grantor as "Owner" as of the same date as this Unison HomeOwner Security Instrument. Upon any foreclosure of this Unison HomeOwner Security Instrument by the Beneficiary, despite such foreclosure, the Unison HomeOwner Recorded Memorandum will remain in full force and effect (until released pursuant to its terms) and binding upon any person who now or hereafter obtains an interest in the Property; and the Unison HomeOwner Agreement will remain in full force and effect and binding upon Grantor, and any other person who may agree to be bound by such documents.

    **15.**    **Successors.** This Unison HomeOwner Security Instrument applies to, inures to the benefit of, and binds all parties to this Unison HomeOwner Security Instrument, their heirs, legatees, devisees, administrators, executors, successors, and assignees. The term "**Beneficiary**" shall include any successor or assignee of Beneficiary's rights in the Unison HomeOwner Agreement and in this Unison HomeOwner Security Instrument, whether or not named as Beneficiary in this Unison HomeOwner Security Instrument. In this Unison HomeOwner Security Instrument, whenever the context so requires. the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

Page 9 of 14

Owner's Initials:

© 2017 Unison                                                    Form A01 HO-WA (rev. 7/27/2017)

Instrument Number: 20190403000835 Document:AGLA Rec: $105.00 Page-144 of 243
Record Date:4/3/2019 11:48 AM King County, WA

Case 2:22-cv-01859-RAJ Document 19-2 Filed 01/30/23 Page 66 of 84

**16.** **Joint and Several Liability.** If more than one person signs this Unison HomeOwner Security Instrument as Grantor, the obligations of each signatory shall be joint and several.

**17.** **Multiple Owners.** If there are multiple Grantors of the Property:

    **a.** this Unison HomeOwner Security Instrument must be signed by each such Grantor;

    **b.** all rights and powers specified for Grantor in this Unison HomeOwner Security Instrument must be approved and exercised unanimously by all such multiple Grantors;

    **c.** all such multiple Grantors shall be jointly and severally liable for all liabilities and obligations specified for Grantor under this Unison HomeOwner Security Instrument;

    **d.** notice required to be given by, or to, Grantor will be deemed adequately given if given by, or to, any of Grantors using the contact information set forth in this Unison HomeOwner Security Instrument; and

    **e.** Beneficiary may treat any notice received from any one Grantor as notice from all Grantors.

**18.** **Revocable Trust.** If any Grantor is/are the trustee(s) of a Revocable Trust (as defined in Schedule A to the Unison HomeOwner Covenant Agreement):

    **a.** all trustees and all trustors of the Revocable Trust must sign this Unison HomeOwner Security Instrument in their capacities as individuals and as trustees and/or trustors of the Revocable Trust, and each trustee and trustor of the Revocable Trust who signs this Unison HomeOwner Security Instrument hereby represents and warrants that all trustees and trustors of the Revocable Trust have been disclosed to Beneficiary;

    **b.** any trustee of the Revocable Trust who is also a trustor of the Revocable Trust need only sign this Unison HomeOwner Security Instrument once for it to be binding on such person both as trustee and as trustor of the Revocable Trust;

    **c.** all rights and powers specified for, and all actions required of, Grantor in this Unison HomeOwner Security Instrument must be approved and exercised unanimously by all trustees of the Revocable Trust;

    **d.** all trustees and all trustors of the Revocable Trust, in their capacities as individuals, shall be jointly and severally liable with Grantor for all liabilities and obligations specified for Grantor under this Unison HomeOwner Security Instrument;

Page 10 of 14

Owner's Initials: _____ _____ / / _____

Instrument Number: 20190403000497 Document:DT Rec: $113.00 Page-11 of 14
Record Date:4/3/2019 11:48 AM King County, WA

e.  all representations and warranties by Grantor in this Unison HomeOwner Security Instrument are made by all trustees of the Revocable Trust on behalf of the Revocable Trust and by all trustees and all trustors of the Revocable Trust in their capacities as individuals;

f.  notice required to be given by, or to, any Grantor will be deemed adequately given if given by, or to, any of the trustees of the Revocable Trust using the contact information set forth in this Unison HomeOwner Security Instrument; and

g.  Beneficiary may treat any notice received from any one trustee of the Revocable Trust as notice from all trustees of the Revocable Trust and from Grantor.

**19.  Acceptance by Trustee.** Trustee accepts this Trust when this Unison HomeOwner Security Instrument, duly executed and acknowledged, is made a public record as provided by law.

**20.  Incorporation by Reference. SCHEDULE A** to this Unison HomeOwner Security Instrument is hereby incorporated by this reference.

**21.  Extent of Lien.** The lien granted under this Unison HomeOwner Security Instrument shall encumber Grantor's entire interest in the Property, notwithstanding the fact that the Unison HomeOwner Agreement relates to only a fractional interest in the Property.

**22.  Use of Property.** The Property is not used principally for agricultural purposes.

**23.  No Merger.** So long as any of the obligations under the Unison HomeOwner Agreement remains outstanding and undischarged, unless Beneficiary otherwise consents in writing, the fee estate of Grantor in the Property or any part thereof (including the estate of Beneficiary after exercising the Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Beneficiary or in any other Person.

**Do not lose or destroy this Unison HomeOwner Security Instrument or the Unison HomeOwner Agreement that it secures. All must be delivered to Trustee for cancellation before reconveyance will be made.**

[Signatures appear on the following page.]

Page 11 of 14

Owner's Initials: _____

Form 401 HO-WA (rev. 7/27/2017)

**ER-145**

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFICIARY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEOWNER SECURITY INSTRUMENT, THE UNISON HOMEOWNER AGREEMENT AND TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFICIARY AS OF THE EFFECTIVE DATE.

The undersigned Grantor requests that a copy of any Notice of Default and any Notice of Sale under this Unison HomeOwner Security Instrument be mailed to Grantor at the address set forth below.

IN WITNESS WHEREOF, each undersigned Grantor has executed this Security Instrument as of the date set forth above.

Grantor Address:

3718 S 256th Ct
Kent, WA 98032

By: _____
Charles Boyd Olson

Date signed: _C 3|27|2C 19___

By: _____
Janine E Olson

Date signed: 03/27/2019___

By: _____

Date Signed: _____

By: _____

Date Signed: _____

ER-146

Instrument Number: 20190403000497 Document:DT Rec: $113.00 Page-13 of 14
Record Date:4/3/2019 11:48 AM King County, WA

## ACKNOWLEDGEMENT

STATE OF WASHINGTON)
     ) SS.
COUNTY OF _King_     )

On this day personally appeared before me _Charles Boyd Olson,_
_Jacline F Olson_ to me known to be the individual(s) described in and who
executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as
his/hers/their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _27_ day of _March_ , _2019_.

_Vera V Sahharov_

```
VERA V SAHHAROV
Notary Public
State of Washington
Commission # 106791
My Comm. Expires Feb 24, 2021
```

    NOTARY PUBLIC in and for the State of Washington,

residing at _Kent. King_

My appointment expires _2 - 24 - 2021_

_Vera V Sahharov_
Name

© 2017 Unison             Form 401 HO-WA (rev 1/31 2017)

**ER-147**

Instrument Number: 20190403000497 Document:DT Rec: $113.00 Page-14 of 14
Record Date:4/3/2019 11:48 AM King County, WA

## SCHEDULE A

### LEGAL DESCRIPTION

That certain real property situated in the City of Kent, County of King, State of Washington,
described as follows:

LOT 1, PARKSIDE NO. 1, ACCORDING TO THE PLAT THEREOF RECORDED IN
VOLUME 102 OF PLATS, PAGES 25 AND 26, RECORDS OF KING COUNTY,
WASHINGTON.
SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON

APN: 6669010010

[end of legal description]

Owner's Initials: _____

© 2017 Unison

Form 401 I-O-WA (rev. 7/27/2017)

**ER-148**

# EXHIBIT 2-4

Case 2:22-cv-00838-RAJ-DWC Document 1 Filed 01/30/23 Page 42 of 84

• Instrument Number: 20194103000496 Document:AG Rec: S107.00 Page-1 of 9
Record Date: 4/3/2019 11:48 AM
Electronically Recorded King County, WA

Prepared by, recording requested by,
and when recorded mail to:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeOwner Agreement ID Number:
FRX-142187

## MEMORANDUM OF UNISON HOMEOWNER AGREEMENT

Grantor(s):
1.      CHARLES BOYD OLSON AND JANINE E OLSON, HUSBAND AND WIFE AS JOINT TENANTS

    ☐    Additional names on page __ of document

Grantee(s):

    1.    Unison Agreement Corp., a Delaware corporation
    ☐    Additional names on page __ of document

Abbreviated Legal Description (lot, block and plat name, or section-township-range):
    Lot, Block, Lot 1, Parkside No. 1
    ☑    Additional legal description is on page 6 of document

Assessor's Property Tax Parcel Account Number(s): 6669010010

Reference Numbers of Documents Assigned or Released (if applicable):
    ☐    Additional reference numbers on page __ of document

© 2018, Unison

Page 1 of 7

Form 301 HO-WA (rev 3/14/2018)

19078679

## MEMORANDUM OF UNISON HOMEOWNER AGREEMENT

This **MEMORANDUM OF UNISON HOMEOWNER AGREEMENT** ("Unison **HomeOwner Recorded Memorandum**") is entered into as of 03/26/2019 ("**Effective Date**") by and between CHARLES BOYD OLSON AND JANINE E OLSON, HUSBAND AND WIFE AS JOINT TENANTS (individually or collectively "**Owner**") and Unison Agreement Corp., a Delaware corporation, and its successors and assignees ("**Benefited Party**"), whose address is 650 California Street, Suite 1800, San Francisco, CA 94108.

Owner hereby declares that Owner has entered into that certain Unison HomeOwner Agreement ("**Unison HomeOwner Agreement**") with Benefited Party, as of the Effective Date, pursuant to which Owner grants and conveys to Benefited Party the option to purchase an undivided percentage interest in that certain real property (the "**Property**") described in attached **SCHEDULE A** ("**Option**"), and pursuant to which Owner has made certain covenants and promises to, or for the benefit of, Benefited Party in connection with the Property, all as more particularly described, and on the terms and conditions stated in the Unison HomeOwner Agreement. The percentage interest shall equal the Investor Percentage, as specified in the Unison HomeOwner Option Agreement. The Option is irrevocable by Owner. The term of the Option shall commence on the Effective Date and shall expire at 11:59 p.m., Pacific Time, on the day immediately preceding the thirtieth (30th) anniversary of the Effective Date ("**Expiration Date**") (subject to certain extensions as set forth in the Unison HomeOwner Agreement). The terms of the Unison HomeOwner Agreement are hereby incorporated into this Unison HomeOwner Recorded Memorandum by this reference.

## MEMORANDUM OF COVENANTS RUNNING WITH THE LAND

This Unison HomeOwner Recorded Memorandum identifies the covenants and promises set forth in the Unison HomeOwner Agreement that run with the land and will be binding upon any party who acquires Owner's interest in the Property so long as the Unison HomeOwner Agreement has not expired or been terminated. The Unison HomeOwner Agreement covenants are deemed to be covenants running with the land within the meaning of the applicable law of the state of Washington so as to give it the broadest possible application, and include, without limitation:

a.  **Section 8.2** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to maintain and repair the Property and to ensure that use of the Property complies with all applicable state, federal and local laws and regulations.

b.  **Section 8.16** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to maintain insurance on the Property against certain hazards.

c.  **Section 8.10** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to pay all taxes and assessments accruing on the Property.

d.  **Section 8.8** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to occupy the Property as Owner's principal residence and prohibits use of the Property for commercial or other non-residential purposes.

e.  **Section 8.9** of the Unison HomeOwner Covenant Agreement which, among other things, restricts the ability of Owner to increase the amount of debt to third parties secured by liens on the Property beyond the Maximum Authorized Debt specified in

Page 2 of 7

the Unison HomeOwner Agreement, and requires Owner to keep the Property free of liens prohibited under the terms of the Unison HomeOwner Agreement or not otherwise approved by Benefited Party.

f.    **Article Three** of the Unison HomeOwner Covenant Agreement which, among other things, restricts the right of Owner to transfer the Property other than as expressly permitted under the terms of the Unison HomeOwner Agreement.

[This space intentionally left blank]

## RELEASE

This Unison HomeOwner Recorded Memorandum shall remain in full force and effect until released by a written termination or quitclaim deed executed and notarized by Benefited Party and recorded in the real property records for the county where the Property is located.

[Signatures appear on following page.]

**ER-152**

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFITED PARTY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEOWNER RECORDED MEMORANDUM, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFITED PARTY AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, the undersigned Benefited Party and Owner have each executed this Unison Recorded Memorandum as of the date set forth above.

**BENEFITED PARTY:**

Unison Agreement Corp., a Delaware corporation

By:

Name:       Ismael Casas, Jr.

Title:       Vice President

Date signed:       3/27/2019

**OWNER:**

| | |
|---|---|
| Charles Boyd Olson | Janine E Olson |
| Date signed: _____ | Date signed: _____ |
| _____ | _____ |
| Date signed: _____ | Date signed: _____ |

**Owner Address:**

3718 S 256th Ct

Kent, WA 98032

© 2018, Unison

Form 301 HO-WA (rev. 7/18/2018)

**ER-153**

## BENEFITED PARTY'S ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA)

             ) ss.

COUNTY OF SAN FRANCISCO)

On **MAR 2 7 2019**, 20____, before me _____**Penny Mae Juco**_____,

Notary Public, personally appeared ____Ismael Casas, Jr.____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (seal)

PENNY MAE JUCO
Notary Public - California
San Francisco County
Commission # 2213555
My Comm. Expires Sep 10, 2021

© 2018, Unison

Form 301 HO-WA (rev. 7/18/2018)

**ER-154**

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFITED PARTY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEOWNER RECORDED MEMORANDUM, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFITED PARTY AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, the undersigned Benefited Party and Owner have each executed this Unison Recorded Memorandum as of the date set forth above.

### BENEFITED PARTY:

Unison Agreement Corp., a Delaware corporation

By: _____

Name: Ismael Casas, Jr.

Title: Vice President

Date signed: _____

### OWNER:

_____     _____
Charles Boyd Olson                 Janine E Olson

Date signed: 03 27 2019       Date signed: 03/27/2019

_____     _____

Date signed: _____     Date signed: _____

### Owner Address:

3718 S 256th Ct

Kent, WA 98032

© 2018, Unison            Form 301 HO-WA (rev. 7/18/2018)

**ER-155**

## ~~BENEFITED PARTY'S~~ ACKNOWLEDGMENT
### Owners

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ~~CALIFORNIA~~) Washington
COUNTY OF ~~SAN FRANCISCO~~) King ) ss.

On 3-27-2019 , 20___, before me Vera V Sahharov ,
Notary Public, personally appeared Charles Boyd Olson, Tami M E Olson
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ Washington that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature
Vera V Sahharov (seal)

VERA V SAHHAROV
Notary Public
State of Washington
Commission # 106791
My Comm. Expires Feb 24, 2021

See attached

© 2018, Unison

Page 5 of 7

Form 301 HO-WA (rev 7/18/2018)

**ER-156**

## OWNERS' ACKNOWLEDGMENT

STATE OF WASHINGTON     )
                         ) ss.
COUNTY OF ___King___     )

On this day personally appeared before me _Vera V Sakharov, notary Public_
personally appeared _Charles Boyd Olzo, Jauline E. ~~Olzo~~ w.d Olssin_
to me known to me to be the individual(s) described in and who executed the within and
foregoing instrument, and acknowledged that ~~he/she/~~they signed the same as ~~his/hers/~~their and
voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _27_ day of _March_ , _2019_ .

_Vera V Sakharov_

NOTARY PUBLIC in and for the State of Washington,

Residing at ___Kent, king___

My appointment expires ___2-24-2021___

_Vera V Sakharov_

Name

VERA V SAHHAROV
Notary Public
State of Washington
Commission # 106791
My Comm. Expires Feb 24, 2021

© 2018, Unison

Form 301 HO-WA (rev 7/18/2018)

## SCHEDULE A

### LEGAL DESCRIPTION

That certain real property situated in the City of Kent, County of King, State of Washington, described as follows:

LOT 1, PARKSIDE NO. 1, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 102 OF PLATS, PAGES 25 AND 26, RECORDS OF KING COUNTY, WASHINGTON.

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON

APN: 6669010010

[end of legal description]

© 2018, Unison

Form 301 HO-WA (rev 7/18/2018)

ER-158

# EXHIBIT 2-5

# DEFERRED MAINTENANCE ADDENDUM
## TO UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number: FRX-142187

This Deferred Maintenance Addendum to the **Unison HomeOwner Agreement** ("Deferred Maintenance Addendum") restates those rights and obligations of the parties previously set forth in Section 8.4(b)(i) of the **Unison HomeOwner Covenant Agreement.**

Reference is made to that certain Unison HomeOwner Agreement by and between CHARLES BOYD OLSON AND JANINE E OLSON, HUSBAND AND WIFE AS JOINT TENANTS (collectively, "**Owner**") and **Unison Agreement Corp.**, its successors and assigns ("**Investor**"), in connection with the purchase of the property at 3718 S 256th Ct, Kent, WA 98032 ("**Property**"), consisting of (1) the **Unison HomeOwner Option Agreement**; (2) the **Unison HomeOwner Covenant Agreement**; (3) the **Unison HomeOwner Recorded Memorandum**, and (4) the **Unison HomeOwner Security Instrument**. All initially bolded terms in this Deferred Maintenance Addendum are defined in Schedule A to the Unison HomeOwner Covenant Agreement.

Section 8.4(b)(i) of the Unison HomeOwner Covenant Agreement provides for notation by Investor of certain repair items or conditions on the Property in connection with the **Owner Property Purchase,** which repair items or conditions may be expressly reserved by Investor for application of a **Deferred Maintenance Adjustment** at the time of calculation of the **Ending Agreed Value** of the **Property** and determination of the **Investor Proceeds**. The following items are noted by Investor under Section 8.4(b)(i):

Page 5 of 33 in the home inspection report by National Property Inspection dated 3/13/2019 specifically noted: Multiple damaged shingles.

Plumbing vent boots are torn and should be replaced.

Recommend further evaluation and repairs be made by a licensed roofing contractor.

Page 8 of 33 in the home inspection report by National Property Inspection dated 3/13/2019 specifically noted: Chimney crown is cracked. Recommend further evaluation and repairs be made by a licensed contractor

If the items, defects, or conditions listed above have not been fully corrected or repaired by Owner at the time of any calculation of the Ending Agreed Value of the Property and any determination of the Investor Proceeds, then Investor shall have the right under Section 8.4(a) of the Unison HomeOwner Covenant Agreement to make (in consultation with third party experts and inspectors unaffiliated with Investor), a commercially reasonable estimate of the dollar amount which is required, at that time, to repair such Deferred Maintenance, independently and without reference to any estimate of costs required for repair which may have been given to

**ER-160**

Owner and to apply the dollar amount so obtained by Investor as a Deferred Maintenance Adjustment in calculating the Ending Agreed Value of the Property and the Investor Proceeds.

Investor shall have no liability in connection with, or for Owner's failure to cure, the items, defects and conditions listed above.

This Addendum may be executed in counterparts.

**INVESTOR:**

Unison Agreement Corp.

By: _____
    Ismael Casas, Jr.

Title: _____
    Vice President

_____
Date Signed

**OWNER:**

By: _____
    Charles Boyd Olson

Date Signed: 03/27/2019

By: _____
    Janine E Olson

Date Signed: 03/27/2019

By: _____

Date Signed: _____

By: _____

Date Signed: _____

**ER-162**

# EXHIBIT 4

# UПISON

03/25/2019

Charles Boyd Olson and Janine E Olson
3718 S 256th Ct
Kent, WA 98032

Re: Your home at 3718 S 256th Ct, Kent, WA 98032 (your "Property")
Unison HomeOwner Agreement ID Number: FRX-142187

Dear Charles Boyd Olson and Janine E Olson,

We are pleased to extend to you this Offer to enter into a Unison HomeOwner Agreement! Here are some details of our offer:

The **Original Agreed Value** of your Property has been established as $370,000.00.

If you accept our Offer, you will grant Unison Agreement Corp. ("**Unison**") an Option to purchase a percentage interest in your home in the future. The percentage interest in your home will be 70.00% interest (the "**Investor Percentage**"). The price Unison will pay will total $259,000.00 (the "**Unison Purchase Price**"). Unison will pay you a portion of the Unison Purchase Price (the "**Unison Investment Payment**") upon closing of your Unison HomeOwner Agreement, less a transaction fee. Here is a calculation of the amount of the Unison Investment Payment to you:

| | |
|---|---|
| Unison Investment Payment | $64,750.00 |
| Less Unison Transaction Fee | $2,525.00 |
| Equals Gross Proceeds | $62,225.00 |

Unison will pay the balance of the Unison Purchase Price to you ("**Unison Purchase Price Balance**") when your Unison HomeOwner Agreement ends, which typically is when you sell your home.

If you would like to read a full copy of the legal agreements that comprise the Unison HomeOwner Agreement, please contact your program specialist and they will be provided to you. The agreements contain the details of our Agreement, including the Maximum Authorized Debt limit that you must maintain on the property throughout the term of our agreement, and how you can request to end your Unison HomeOwner Agreement before you sell your home or before the end of its term.

Before accepting this Offer, read the full Offer Package together with the enclosed **Important Information Notice** and the **Total Unison Cost Estimate**. Once you are ready to accept, please sign the attached Acknowledgement of Acceptance and return it to your Program Specialist.

This Unison HomeOwner Agreement Offer is available only until 04/04/2019 (the "**Acceptance Deadline**").

If you would like to discuss this Offer, please contact your Unison Program Specialist, Shawn Delgado, at or 866-228-2330.

Thank you again for choosing Unison. We look forward to serving you as a valued client.

Sincerely,

Ismael Casas, Jr.
Vice President
Unison Agreement Corp.,
a Delaware corporation

| | |
|---|---|
| **Applicant Initials:** _CBO_ | **Co-Applicant Initials:** _JEO_ |

DocuSign Envelope ID: CBE19FD4-3C65-495F-A838-3B1F74F9A68E Case 2:22-cv-01859-RAJ Document 19-4 Filed 01/30/23 Page 3 of 20

Case 23-2835, 02/27/2024, DktEntry: 13.1, Page 165 of 243

# UNISON

## Applicant and Co-Applicant Acknowledgment of Acceptance

By my signature below, I affirm that I have read and understand the Offer Package, which consists of the following items:

1. Offer Letter

2. Section 10 – Summary of Financial Terms and Fees

3. Conditions of Offer

4. Important Information Notice

5. Total Unison Cost Estimate (TUCE)

6. Notice To And Acknowledgment Regarding Spouses, Partners and Co-Occupants Who Are Not Signatories To The Unison HomeOwner Agreement

I accept the Offer in accordance with its terms.

Applicant: *Charles Boyd Olson*
01FCFCFC980E4C2...

Co-Applicant: *Janine E Olson*
01FCFCFC989E4C2...

Charles Boyd Olson

Date signed: 3/26/2019

Janine E Olson

Date signed: 3/26/2019

Co-Applicant:

Co-Applicant:

Date signed:_____

Date signed:_____

THE FOLLOWING TERMS AND CONDITIONS ARE PART OF THIS OFFER: Unison Agreement Corp.'s (**"Unison"**) obligations under this Offer Letter and its obligation to enter into and fund the Unison HomeOwner Agreement shall be subject to: (A) the terms and conditions of this Offer Letter and the other parts of the Offer Package of which this is a part; and (B) the conditions that, from the date of this Offer through the signing date, there shall have been (i) no material negative change in any Applicant's credit standing or financial position, (ii) no impairment in the condition or value of the Property, ; and (iii) no other material adverse change, that, if known to Unison, could have affected its decision to extend this Offer. Documents and other deliveries made in satisfaction of conditions shall be effective only upon timely and actual receipt by fax, mail, email or courier by Unison and must be acceptable to Unison and to its closing agents and service providers in their sole and absolute discretion.

Unison may, but shall not be obligated to, waive, modify or extend any condition and/or the deadlines for satisfaction thereof. A waiver or extension may require the payment of additional amounts, including the cost of a new appraisal. Unison shall be under no obligation to enter into a Unison HomeOwner Agreement if the date of the appraisal used to establish the Original Agreed Value is more than 60 days prior to the date of signing for any reason whatsoever.

When you accept this Offer: You agree that you are and shall be responsible to pay the Unison transaction fee; you represent that all documentation and other information you have provided to Unison is correct and complete in all respects; and you acknowledge that such documentation and information will be relied upon by Unison.



Applicant Initials: _____

Co-Applicant Initials: _____

© 2017, **Unison**

Page 2 of 3

Form 5049-39 HO-All (rev. 11/20//2017)

**ER-165**

DocuSign Envelope ID: CBE19F04-1C6B-4336-9FF3-6B3D8D23B06C

"Applicant" shall mean and refer to, in addition to the named Applicant, all "Co-Applicants". The words "you," "your," and "yours" mean and refer to the Applicant and any Co-Applicant, individually and together, jointly and severally. "Offer" means and refers to the documents, terms, covenants, and conditions of the Offer Package, as amended. For purposes of this Offer, the amount of a loan encumbering the Property if any shall be the maximum lien amount secured by the governing loan documents, including but not limited to undrawn amounts available under lines and possible negative amortization. Terms used but not defined in this Offer shall have the respective meanings ascribed to them by the Unison HomeOwner Agreement or the Offer Package. Modifications, additions, extensions, waivers and other agreements related to this Offer shall be enforceable only if made in writing and signed by the party against whom enforcement is sought. Time is of the essence in respect to this Offer.

### Section 10 - Summary of Financial Terms

| | |
|---|---|
| Effective Date: | To Be Determined |
| Term: | 30 years |
| Expiration Date: | To Be Determined at 11:59 pm Pacific Time |
| Original Agreed Value: | $370,000.00 |
| Investor Percentage: | 70.00% |
| Unison Purchase Price: | $259,000.00 |
| Unison Investment Payment: | $64,750.00 |
| Unison Purchase Price Balance: | $194,250.00 |
| Maximum Authorized Debt: | $259,000.00 |

Applicant Initials: _CBO_

Co-Applicant Initials: _JEO_



## CONDITIONS OF OFFER

March 25, 2019

Re: Your home at:
    3718 S 256th Ct, Kent, WA, 98032 (your "Property")
    Owner (s): Charles Boyd Olson and Janine E Olson
    Unison HomeOwner Agreement ID Number: FRX-142187

The conditions listed below must be satisfied either prior to signing the Unison HomeOwner Agreement legal documents OR prior to closing your Unison HomeOwner Agreement as specified below. Additionally, there cannot have been any material changes in your income, assets, liabilities, or credit history prior to closing. If the conditions are not satisfied, Unison Agreement Corp. ("**Unison**") will treat this Offer as expired and will not be obligated to close the transaction.

### Conditions Required Prior to Signing:

\* Notice To and Acknowledgment Regarding Spouses, Partners and Co-Occupants Who Are Not Signatories To The Unison HomeOwner Agreement, executed by all appropriate parties (see attached).

### Conditions Required Prior to Closing:

\* Owner(s) and all necessary parties to properly execute closing documents.
\* Copy of Driver License, U.S. Passport, or other form of unexpired legal documentation is required to confirm each owner's identity.
\* The property title report dated TBD has been reviewed. There shall have been NO changes to the title of your Property since this date. This includes changes in ownership and the existence or absence of secure loans and or other liens. These instructions will be provided to the closing agent: All taxes due must be paid in full.
\* **Owner(s) to sign copy of the Application at closing.**
Notice To and Acknowledgment Regarding Spouses, Partners and Co-Occupants -  Who Are Not Signatories to the HomeOwner Agreement, executed by all appropriate parties. Spouse who are not on the Agreement must sign and have notarized at closing.
Deferred Maintainence Addendum to be executed at closing -
\* Sala Credit Union to be paid at closing $13,484.97
Each of the undersigned homeowners acknowledges that they have read, understand and accept these conditions and the need for them to be satisfied.

| Owner: | DocuSigned by: | Co-Owner: | DocuSigned by: |
|---|---|---|---|
| | *Charles Boyd Olson* | | *Janine E Olson* |
| | ——01FCFCFC989E4C2—— | | ——01FCFCFC989E4C2—— |
| Charles Boyd Olson | | Janine E Olson | |
| Date signed: | 3/26/2019 | Date signed: | 3/26/2019 |
| | | | |
| Co-Owner: | | Co-Owner: | |
| | | | |
| Date signed: | | Date signed: | |

**ER-167**



**Schedule of Debts To Be Paid At Closing**
**From Unison HomeOwner Agreement Proceeds**

Unison HomeOwner Agreement ID Number: FRX-142187

Total Amount To Be Paid At Closing: $13,484.97

The Closing Services Provider will be instructed to pay off the accounts indicated with a "Y" in the Pay Off column.

The Amount column reflects information from your credit report. If you have provided updated account statements, the balances from those statements will be paid and reflected in the Closing Statement. If you have not provided updated account statements, please do so prior to scheduling your closing. **No oral or handwritten information can be accepted.**

| CREDITOR | ACCOUNT NUMBER | AMOUNT | PAY OFF |
|---|---|---|---|
| WELLS FARGO HM MORTGAG | 9360385851118 | $ | |
| SALAL CREDIT UNION | 1984160600 | $13,484.97 | Y |
| AMERIHOME MTG CO, LLC | 3000105725287 | $ | |
| US BANK | 511272466 | $ | |
| CHASE CARD | 438857****** | $ | |
| SYNCB/LOWES | 798267****** | $ | |
| CAPITALONE | 525478******2318 | $ | |
| ONEMAIN | 1194794043308116 | $ | |
| SYNCB/CHEVRON | 706159****** | $ | |
| KINECTA FED CU | 36928310001 | $ | |
| LES SCHWAB TIRE CENTER | 329046** | $ | |
| SYNCB/FMJ | 504662******9066 | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

ER-168

DocuSign Envelope ID: CBE19E94-7CB5-43CF-8B3E-2A156BB51C86

Case: 23-2835, 02/27/2024, DktEntry: 13.1, Page 169 of 243
Case 2:22-cv-01859-RAJ Document 19-4 Filed 01/30/23 Page 7 of 20

# UNISON

Unison HomeOwner Agreement ID Number: **FRX-142187**

## IMPORTANT INFORMATION NOTICE
## AND TOTAL UNISON COST ESTIMATE (TUCE)
### Please Read Carefully

**If you have not already discussed the Unison HomeOwner Agreement with your own advisors (legal, financial, estate planning, tax) and family members, we strongly urge you to do so before proceeding any further.** You may want to consider other financial alternatives available to you, as well as the risks associated with this transaction.

## THE UNISON HOMEOWNER AGREEMENT:

You will grant Unison Agreement Corp., a Delaware corporation, based in San Francisco, California (**"Unison"**), an option to purchase a specific percentage of your Property (the **"Investor Percentage"**) for a stated amount of money (the **"Unison Purchase Price"**). As partial consideration for that option, Unison will make a cash payment (the **"Unison Investment Payment"**) as an advance on the Unison Purchase Price Unison has agreed to pay you in the future for its Investor Percentage in the Property. The remaining portion of the Unison Purchase Price (the **"Unison Purchase Price Balance"**) will be credited if and when Unison exercises the option, which is typically at the time you sell the Property.

The value of your Property at the time you enter into the Unison HomeOwner Agreement (the **"Original Agreed Value"**) is determined by a neutral third party appraisal and agreed to by you. When you sell your Property or the Unison HomeOwner Agreement is otherwise terminated, a then-current value is determined for the Property (**"Ending Agreed Value"**). This Ending Agreed Value is typically determined either by the sale price of the Property or by an appraisal of the Property. It is subject to adjustments in certain circumstances, for homeowner remodeling and for deferred maintenance.

The term of your Unison HomeOwner Agreement (**"Term"**) is thirty (30) years. If you have not sold your Property or otherwise terminated the Unison HomeOwner Agreement by the end of the thirty (30) year Term, you will need to sell the Property or otherwise settle the Unison HomeOwner Agreement by paying Unison an amount equal to the value of its investment interest in the Property at that time. The financial terms discussed in this paragraph are found in **Section 10** of the Unison HomeOwner Option Agreement.

During the Term of the Unison HomeOwner Agreement, you agree to make all principal and interest payments in connection with any mortgage loans secured by the Property, and all property taxes and property insurance premiums as required by law and the Unison HomeOwner Agreement. In most cases, you will also be required to maintain the Property as your principal residence (although Unison may approve exceptions). You will be required, at your cost, to keep the Property in at least as good condition as when you signed the Unison HomeOwner Agreement, (ordinary wear and tear excepted), make necessary repairs, and to keep it free of liens not approved by Unison. With reasonable advance notice, and at its expense, Unison may inspect the Property to confirm its condition and value during the Term of the Unison HomeOwner Agreement.

DocuSign Envelope ID: CBE19F04-1C52-4E6C-B835-87A9600566BC

Case: 23-2835, 02/27/2024, DktEntry: 13.1, Page 170 of 243
Case 2:22-cv-01859-RAJ Document 19-4 Filed 01/30/23 Page 8 of 20

# UNISON

## THE DOCUMENTS:

The following documents, which together comprise the Unison HomeOwner Agreement, define your relationship with Unison by describing the legal rights and obligations of each party.

### The Unison HomeOwner Option Agreement

The Unison HomeOwner Option Agreement grants Unison the right to purchase the Investor Percentage in your Property under specific circumstances. As consideration for the option, Unison pays you a portion of the Unison Purchase Price in the form of the Unison Investment Payment at the beginning of the Unison HomeOwner Agreement transaction. The Unison Investment Payment is not a loan that you have to pay back, nor do you ever pay interest on this amount. However, if Unison exercises its option and purchases the Investor Percentage of your Property, this will result in a reduction in the sales proceeds you receive at sale. If Unison chooses not to exercise its option, you keep the portion of the Unison Purchase Price that Unison paid you as the Unison Investment Payment.

### The Unison HomeOwner Covenant Agreement

The Unison HomeOwner Covenant Agreement sets out your rights and responsibilities in connection with your Unison HomeOwner Agreement transaction. It requires, among other things, that you maintain the condition of the Property, make your mortgage payments and property tax payments on time, maintain property insurance and keep the Property free of liens not permitted under the Unison HomeOwner Agreement. The Unison HomeOwner Covenant Agreement also spells out how and under what circumstances Unison can take action to protect its interest in the Property; the steps by which your Unison HomeOwner Agreement ends at Property sale, Term, or the death of the last signatory; and how, beginning on the third (3rd) anniversary of the Unison HomeOwner Agreement, you can request a Special Termination (**"Special Termination"**) of your Unison HomeOwner Agreement in advance of these natural termination events. It also spells out the nature and amount of the fees that Unison can charge you during the Term of your Unison HomeOwner Agreement, and how Unison can advance certain amounts to protect its interest in your Property (**"Protective Advances"**) in the event that you default on certain material obligations. These amounts together will comprise homeowner obligations accrued during the Term, which, if unpaid, are deemed **"Unpaid Owner Obligations"**.

### The Memorandum Of Unison HomeOwner Agreement

The Memorandum Of Unison HomeOwner Agreement (**"Unison HomeOwner Recorded Memorandum"**) is a document that will be recorded in the public records of the county in which your Property is located. The Unison HomeOwner Recorded Memorandum serves two purposes:

1.   it notifies third parties that Unison has an option to purchase the Investor Percentage; and
2.   it notifies third parties that anyone who owns the Property will be subject to certain requirements as long as the Unison HomeOwner Agreement is in effect.

### The Unison HomeOwner Security Instrument

The Unison HomeOwner Security Instrument (which may be a **"Deed of Trust"** or **"Mortgage"**, depending on the state) is a document that also will be recorded in the public records of the county in which your Property is located. The Unison HomeOwner Security Instrument protects Unison in case you default under the Unison HomeOwner Agreement. It creates a lien on your title to the Property, and it gives Unison rights to foreclose on the Property as a consequence of certain defaults by you, as security for its interest, in accordance with state law. The lien created by the Unison HomeOwner Security Instrument is removed when the Property is sold in

DocuSign Envelope ID: CBE19E04-1C59-4852-8835-BFD46FBB8C2F

Case: 23-2835, 02/27/2024, DktEntry: 13.1, Page 171 of 243
Case 2:22-cv-01859-RAJ Document 19-4 Filed 01/30/23 Page 9 of 20

# UNISON

accordance with the Unison HomeOwner Agreement or if the option is otherwise validly terminated.

## OTHER IMPORTANT TERMS TO BE AWARE OF:

**1.** By signing a Unison HomeOwner Agreement, you are granting Unison the right to purchase a specific percentage of your Property under certain circumstances. Thus, when your Property is sold (assuming Unison exercises the option at that time), Unison will receive a portion of the *gross sale proceeds* (before real estate commissions and other selling costs) representing its percentage interest in your Property. You will be responsible for the payment of real estate commissions and all other selling costs to third parties. The Unison HomeOwner Program Guide, Unison HomeOwner Option Agreement, and Unison HomeOwner Covenant Agreement set forth in detail how Unison's portion of the sale proceeds is calculated.

**2.** The Unison HomeOwner Agreement is not designed for use as short-term financing. If you sell your Property or the Unison HomeOwner Agreement otherwise ends within the first three (3) years of the Term and the value of your Property has declined, Unison will not bear a share of the decline in Property value. Instead, under these circumstances, the Ending Agreed Value of your Property will be deemed equal to its Original Agreed Value at the beginning of the Unison HomeOwner Agreement, and you will pay Unison, at minimum, the value of its investment in the Property in settlement of the Unison HomeOwner Agreement (plus any Unpaid Owner Obligations**). If you are unsure about whether you will remain in your Property for at least three (3) years, you should consider alternatives to the Unison HomeOwner Agreement.**

**3.** Upon the third anniversary of your Unison HomeOwner Agreement and thereafter, you may request a Special Termination of your Unison HomeOwner Agreement at any time, by paying Unison a special termination price (**"Special Termination Price"**). In a Special Termination, the Ending Agreed Value of your home will be determined by appraisal. The Special Termination Price will be *the greater of*:

- The Unison Investment Payment and any Unpaid Owner Obligations which you may have accrued; or

- The Unison Investment Payment and any Unpaid Owner Obligations which you may have accrued, plus the return on investment Unison would have earned if you had sold your home for the Ending Agreed Value as determined by appraisal.

These calculations apply only when you end your Unison HomeOwner Agreement by Special Termination.

**4.** Since you are agreeing to sell Unison a specific percentage of your Property under certain circumstances, if the value of your Property increases, you will share that increase with Unison. The resulting return on its investment that Unison receives may substantially exceed the total amount of interest payments you would have paid if you had instead borrowed the amount of the Unison Investment Payment from a lender**.**

**5.** If you default on your obligations under your Unison HomeOwner Agreement, there are certain circumstances under which Unison will have a right to commence foreclosure proceedings. Typically, Unison has these rights when you materially default on obligations and place the Property in jeopardy, for example: **(a)** you cease making mortgage or property tax payments on the Property; **(b)** you permit a lien on the Property other than as agreed to by Unison; **(c)** you attempt to transfer the Property without satisfying Unison's interest; or **(d)** the Unison HomeOwner Agreement is at Term and you do not settle the Unison HomeOwner Agreement or you breach your obligations in connection with Unison's option exercise. **Article Seven** of the Unison HomeOwner Covenant Agreement explains in detail what constitutes a "default" under the Unison HomeOwner Agreement, and explains that default cannot result in a

DocuSign Envelope ID: CB5-19E04-1298-5E2a-9D3f83D54f0Epsb.2

# UNISON

foreclosure or a loss of your Property without Unison first having provided you multiple protections and opportunities to cure the default, both under the terms of the Unison HomeOwner Agreement, and as required by law. **Article Seven** of the Unison HomeOwner Covenant Agreement also describes an alternative remedy to foreclosure in the event of a material default which Unison, in its discretion, may elect to offer to you and, if so offered, you in your discretion may elect to accept (**"Option Exercise and Orderly Sale"**). If the alternative remedy of Option Exercise and Orderly Sale is offered by Unison and accepted by you, Unison will cure your default (such as the payment of mortgage or property tax obligations), exercise its option on your Property, and have an exclusive and unilateral right to conduct an orderly market sale of your Property. This remedy is designed to maximize the value of your Property, both your and Unison's equity interests in your Property, and to preserve your credit.

**6.** The Unison HomeOwner Agreement automatically reaches its Term when all signatories to the Unison HomeOwner Agreement have died. At this time, the Unison's right to exercise its option is triggered, and your heirs, beneficiaries or survivors may be required to settle the Unison HomeOwner Agreement. Depending on the value of the Property at that time, the amount required to settle the Unison HomeOwner Agreement may be substantial. Your heir, beneficiary, or survivor, or other property occupant may find they need to sell the Property in order to settle the Unison HomeOwner Agreement. Unison's foreclosure rights under the Unison HomeOwner Security Instrument may be triggered if your heirs or estate do not honor these obligations under the Unison HomeOwner Agreement, but again, that default cannot result in a foreclosure or a loss of the Property without Unison first having provided your heirs and estate multiple protections and opportunities to cure the default, both under the terms of the Unison HomeOwner Agreement, and as required by law. Likewise, Unison may in many if not most cases also offer your heirs and estate the alternative of Option Exercise and Orderly Sale.

If you wish to add a spouse, partner, or other person to the legal title to your Property at any time during the Term of your Unison HomeOwner Agreement, the new party on title must also become a signatory to the Unison HomeOwner Agreement and successfully complete the Unison HomeOwner Agreement education process. In the absence of the new party's formal and approved written addition as a signatory to the Unison HomeOwner Agreement, the new party on title will remain a "Non-Owner Occupant" of the Property (as defined in the Unison HomeOwner Agreement) and his or her rights in and to the Property may be affected at the original Unison HomeOwner Agreement signatory's death, as above described.

**7.** Unison HomeOwner Agreement terms are property-specific and date-specific. Unison establishes the terms of a Unison HomeOwner Agreement (i.e., the Unison Purchase Price and the Unison Investment Payment amounts) on a property-by-property basis, depending on a number of factors. Thus, the terms Unison offers for your Property today may differ from the terms Unison offers for other properties today or any property in the future.

**8.** Under the Unison HomeOwner Agreement you will agree to a debt ceiling on your Property, called the **Maximum Authorized Debt**. This will limit the amount of debt that can be secured by your Property. The exact dollar value of the debt limit is specified in **Section Ten** of the Unison HomeOwner Option Agreement and remains in effect for the life of the Unison HomeOwner Agreement unless it is expressly modified in writing by Unison. Unison will allow new loans you may obtain on your home up to the Maximum Authorized Debt, provided the value of your Property remains equal to or greater than the Original Agreed Value. If the value of your Property declines from the Original Agreed Value, Unison will typically allow any refinancing you may obtain up to the current principal balance of your existing mortgage loans plus actual, reasonable closing costs. Unison cannot guarantee whether mortgage lenders will agree to a new loan or a refinancing on a property with a Unison HomeOwner Agreement to the same

DocuSign Envelope ID: C8E19E04-17B9-4E38-9DB2-E35DB6B6EB85

# UNISON

extent or on the same terms as they would for a similar property without a Unison HomeOwner Agreement, or at all.

**9.** There may be estate and tax consequences of a Unison HomeOwner Agreement. By entering into your Unison HomeOwner Agreement, you are granting Unison an option to purchase a specific percentage of your Property, as specified in the Unison HomeOwner Agreement. As a result, you and your heirs will own less of your Property if and when Unison exercises its option. **You should consult with family members and your estate planning advisor or other advisors accordingly.** Unison believes that, under current tax law, a homeowner entering into a Unison HomeOwner Agreement should not have to pay taxes on the Unison Investment Payment at the time the Unison Investment Payment is invested in your Property by Unison. Instead, the homeowner is likely to be subject to taxes on the Unison Investment Payment when Unison exercises its option (usually when the Property is sold or at Term), or if Unison cancels its option. **However, Unison does not give tax advice, and makes no representations or warranties whatsoever concerning the tax treatment of the Unison HomeOwner Agreement**, whether generally, or as it applies to your unique situation. *You must contact your tax professional for any and all tax advice regarding the Unison HomeOwner Agreement.*

**10.** The Unison HomeOwner Agreement is not assumable, nor may you transfer it to any other party. Unison may, however, transfer or assign its rights and obligations under the Unison HomeOwner Agreement to other parties.

[Signatures appear on following page.]

DocuSign Envelope ID: C8E19E04-1C9B-4EAC-9435-5231D746BFEC

# UNISON

## ACKNOWLEDGMENT AND SIGNATURE

**By signing below, each Homeowner acknowledges as follows:**

I have received a copy of this **Important Information Notice**, including **Exhibit A** hereto and the **TUCE Disclosure** attached as **Exhibit B** hereto, have read and understand it, and have received answers to any questions I may have had about its content and about the Unison HomeOwner Agreement. I have received, read and understand the Unison HomeOwner Program Guide and have consulted the professional advisors and family members of my choosing.

*Owner:*  Charles Boyd Olson

Charles Boyd Olson

Date signed: 3/26/2019

*Co-Owner:* Janine E Olson

Janine E Olson

Date signed: 3/26/2019

*Co-Owner:*

Date signed: _____

*Co-Owner:*

Date signed: _____

[This space is intentionally left blank.]



## Exhibit A

## Offered Unison HomeOwner Agreement Terms

| | |
|---|---|
| **Unison HomeOwner Agreement ID Number** | FRX-142187 |
| **Homeowner Name** | Charles Boyd Olson and Janine E Olson |
| **Property Address** | 3718 S 256th Ct<br>Kent, WA 98032 |
| **Unison HomeOwner Agreement Offer Date** | 03/25/2019 |
| **Original Agreed Value** | $370,000.00 |
| **Investor Percentage** | 70.00% |
| **Unison Purchase Price** | $259,000.00 |
| **Unison Investment Payment** | $64,750.00 |
| **Unison Purchase Price Balance** | $194,250.00 |

[This space is intentionally left blank.]

Owner's Initials: CBO / JEO / /



### Examples of the Payment to Unison at the End of the Unison HomeOwner Agreement

| Scenario | Change In Value | Future Home Value | Times Investor Percentage | Equals | Less Unison Purchase Price Balance | **Equals Payment to Unison** | Unison Gain (Loss) On Investment* |
|---|---|---|---|---|---|---|---|
| 1 | Increase | $414,400.00 | 70.00% | $290,080.00 | $194,250.00 | **$95,830.00** | $31,080.00 |
| 2 | Larger Increase | $518,000.00 | 70.00% | $362,600.00 | $194,250.00 | **$168,350.00** | $103,600.00 |
| 3 | Decrease | $325,600.00 | 70.00% | $227,920.00 | $194,250.00 | **$33,670.00** | $-31,080.00) |
| 4 | Larger Decrease | $277,500.00 | 70.00% | $194,250.00 | $194,250.00 | **$0.00** | ($-64,750.00) |
| 5 | Unchanged | $370,000.00 | 70.00% | $259,000.00 | $194,250.00 | **$64,750.00** | $0.00 |

\* Unison cannot lose an amount greater than the Unison Investment Payment under the terms of the Unison HomeOwner Agreement

The examples assume the following:
- No Remodeling Adjustment or Deferred Maintenance Adjustment applies.
- If the value of the Property increases by an amount greater than shown in Scenario 2, Unison's gain on investment will be proportionately larger, which will increase the payment to Unison.

[This space is intentionally left blank.]



## Exhibit B

## Total Unison Cost Estimate (TUCE)

**Unison HomeOwner Agreement ID Number:** FRX-142187

| Estimated Annualized Percentage Cost Over The Term<br>For A $50,000 Unison Investment Payment | | | | | | |
|---|---|---|---|---|---|---|
| | | Term Assumption (years)* | | | | |
| | | 2 | 5 | 10 | 15 | 30 |
| Annual Home Price<br>Appreciation<br>Assumption | -4.0% | -19.6% | -29.9% | -100.0% | -100.0% | -100.0% |
| | -2.0% | -9.3% | -10.7% | -15.9% | -15.2% | -100.0% |
| | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | 2.0% | 8.7% | 8.0% | 7.1% | 5.4% | 4.6% |
| | 4.0% | 16.9% | 14.6% | 12.2% | 9.3% | 7.5% |
| | 6.0% | 24.7% | 20.3% | 16.4% | 12.5% | 10.9% |

**Important Considerations:**

The annualized cost of the Unison HomeOwner Agreement is determined when the agreement is terminated, which typically occurs when the Property is sold, and is dependent, in part, on how the value of your Property changes during the Term. The table above shows the estimated annualized cost of a Unison HomeOwner Agreement, expressed as a percentage. See Page 2 for a table that shows the estimated dollar cost.

Both tables assume various terms for the Unison HomeOwner Agreement (2, 5, 10, 15 and 30 years) and various percentages for annual home price appreciation. If your Property rises in value significantly, the cost of the Unison HomeOwner Agreement might be more than the cost you would have incurred by borrowing the amount of the Unison Investment Payment. If your home declines in value, the cost of the Unison HomeOwner Agreement is likely to be less than the cost you would have incurred by borrowing the amount of the Unison Investment Payment, and you would have benefited from the use of the Unison Investment Payment without making monthly payments. After the first three (3) years of the Term, the Unison Investment Payment received from Unison at the beginning of the Unison HomeOwner Agreement may offset part of any loss you may sustain due to a decline in value of your Property, and Unison may lose some or all of its investment (see the shaded cells in the tables).

With debt, the annualized cost will depend upon the type of loan that you take on. Interest rates for primary (first lien) residential home loan mortgages (3, 5, 7, 10, 15 and 30-year fixed rates) are in the range of 3% to 6%. Home equity loans are variable rate loans that are often tied to the Prime Lending rate. These loans also currently have low rates, but the rates can change quickly. Other types of loans, such as credit cards or other unsecured loans, can have interest rates of 20% per annum or more.

Owner's Initials: _CBØ_ / _JEØ_ / _____ / _____

# UNISON

Unlike a loan, the Unison HomeOwner Agreement has no interest and no monthly payments, so you always have a better monthly cash flow compared to borrowing.

The profit or loss that Unison earns on its investment in your home will typically be equal to a specified percentage (the Investor Percentage) of the change in value of your home during the Term. A large profit for Unison typically means you will likewise have made a large profit on your home. Your Investor Percentage is stated in your Offer Package.

| Estimated Total Cost Over The Term For A $50,000 Unison Investment Payment | | | | | | |
|---|---|---|---|---|---|---|
| | | Term Assumption (years) | | | | |
| | | 2 | 5 | 10 | 15 | 30 |
| Annual Home Price Appreciation Assumption | -4.0% | - $17,640 | - $41,541 | - $50,000 | - $50,000 | - $50,000 |
| | -2.0% | -$8,910 | - $21,618 | - $41,159 | - $50,000 | - $50,000 |
| | 0.0% | $0 | $0 | $0 | $0 | $0 |
| | 2.0% | $9,090 | $23,418 | $49,274 | $77,820 | $182,556 |
| | 4.0% | $18,360 | $48,747 | $108,055 | $180,212 | $504,764 |
| | 6.0% | $27,810 | $76,101 | $177,941 | $314,226 | $1,067,286 |

These cost estimates are based on a hypothetical example: an Original Agreed Value of $500,000, a $50,000 Unison Investment Payment, and a 45% Investor Percentage at the start of the Unison HomeOwner Agreement. All calculations assume sale of the Property rather than a Special Termination of the Unison HomeOwner Agreement. Calculations for the two-year term incorporate the fact that Unison does not share in the loss if the Property is sold for less than its Original Agreed Value during the first three (3) years of the Term.

Cost estimates do not include the following: administrative fees or costs that may be incurred by the homeowner during the life of the Unison HomeOwner Agreement; origination and transaction fees charged to the homeowner at the inception of the Unison HomeOwner Agreement; costs, charges, or fees associated with any Protective Advances that may be advanced during the life of the Unison HomeOwner Agreement; and/or adjustments which may apply at termination of the Unison HomeOwner Agreement for deferred maintenance or for remodeling.

Owner's Initials: CBO / JEO / /

# UNISON

## NOTICE AND ACKNOWLEDGMENT REGARDING
## SPOUSES, PARTNERS AND CO-OCCUPANTS
## WHO ARE NOT SIGNATORIES TO THE UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number: FRX-142187

This Notice and Acknowledgement Form ("**Form**") contains important disclosures about the rights and liabilities of spouses, domestic partners, family members and other co-occupants of a Property ("**Property**") subject to a **Unison HomeOwner Agreement** who are not signatories to the Unison HomeOwner Agreement (collectively referred to as "**Non-Owner Occupant(s)**"). Please READ IT CAREFULLY. This Form must be signed by all homeowners entering into and executing a Unison HomeOwner Agreement ("**Unison Signatory(ies)**"). Any owner executing a Unison HomeOwner Agreement ("**Owner**") is responsible for ensuring that a complete and accurate version of this Form is returned to Unison Agreement Corp. ("**Unison**") as a prerequisite to entering into the Unison HomeOwner Agreement.

The rights of a Non-Owner Occupant to occupy or retain possession of the Property following the death of the Last Surviving Owner who is a party to the Unison HomeOwner Agreement, Option exercise, or an Owner Event Of Default under the Unison HomeOwner Agreement, may be significantly affected by the operation of the Unison HomeOwner Agreement. This is because the Unison HomeOwner Agreement is an option agreement which gives Unison the right to exercise its option and purchase an undivided percentage interest ("**Investor Percentage**") in the Property upon certain triggering events. *Two such triggering events are the death of the Last Surviving Owner, or an Owner Event Of Default, regardless of whether Non-Owner Occupants are occupying the Property at that time.* A Non-Owner Occupant of a Property subject to a Unison HomeOwner Agreement will be required to settle Unison's option rights even if the Non-Owner Occupant inherits the Property as the heir, beneficiary or survivor of an Owner. Depending on the appreciation of the Property during the term of the Unison HomeOwner Agreement, the amount required to settle Unison's option rights may be substantial. In addition, following an Event of Default (including default by Non-Owner Occupants), Unison may be entitled to exercise its recorded security interest and/or compel the sale of the Property, resulting in a Non-Owner Occupant losing possession and/or ownership thereof.

Unison cannot know who occupies the Property as a principal residence if those persons are not named on title. Unison must and will rely on the Owner to supply this information accurately.

The responsibility for notifying Unison of any change in the status of Non-Owner Occupants is also a continuing obligation of all Owners throughout the Term of the Unison HomeOwner Agreement. All Owners are responsible for returning a complete and accurate amended Form to Unison with the signatures of all Non-Owner Occupants, both at inception of the Unison HomeOwner Agreement, and in the event that any new Non-Owner Occupant not signatory to the Unison HomeOwner Agreement commences to occupy the Property as his or her principal residence, or in the event a non-adult occupant of the Property attains the age of 18, at any time during the Term.

In the event that a Unison Signatory wishes to add another person onto the title to the Property after entering into the Unison HomeOwner Agreement, he or she must execute the complete set of Unison HomeOwner Agreement legal documents and meet all then-current Unison HomeOwner Agreement education requirements. Unless and until these requirements are met, the individual will remain and must be identified to Unison as a Non-Owner Occupant of the Property subject to the option and contractual rights of Unison as above described.

All Owners acknowledge that they have read and understand this Form, and that they have been advised by Unison to consult independent legal counsel and estate planning professionals to ascertain the legal effects of the Unison HomeOwner Agreement on future possession and occupancy of the Property.

DocuSign Envelope ID: CBE19E04-13BF-4E3F-B54B-2C932631686E

Case: 23-2835, 02/27/2024, DktEntry: 13.1, Page 180 of 243
Case 2:22-cv-01859-RAJ Document 19-4 Filed 01/30/23 Page 18 of 20

☐ I represent and warrant that there are no Non-Owner Occupants living in my Property.

Acknowledged and agreed:

| Owner: | Co-Owner: *Janine E Olson* |
|---|---|
| _____ | _____ |
| Charles Boyd Olson | Janine E Olson |
| Date signed: __3/26/2019__ | Date signed: __3/26/2019__ |

☒ I represent and warrant that I have presented this form to and discussed its contents with all Non-Owner Occupants living in my Property. The names of all Non-Owner Occupants and their relation to me appear below.

Acknowledged and agreed:

| Owner: *Charles Boyd Olson* | Owner: *Janine E Olson* |
|---|---|
| Charles Boyd Olson | Janine E Olson |
| Date signed: __3/26/2019__ | Date signed: __3/26/2019__ |

| Non-Owner Occupant 1: | Non-Owner Occupant 2: |
|---|---|
| Print name: __Kyle Jorgenson__ | Print name: __Damion Powels__ |
| Relation to Applicant: __Step son__ | Relation to Applicant: __Grandson__ |

| Non-Owner Occupant 3: | Non-Owner Occupant 4: |
|---|---|
| Print name: _____ | Print name: _____ |
| Relation to Applicant: _____ | Relation to Applicant: _____ |

ER-180

## DEFERRED MAINTENACE ADDENDUM
## TO UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number:  FRX-142187

This Deferred Maintenance Addendum to the **Unison HomeOwner Agreement** ("Deferred Maintenance Addendum") restates those rights and obligations of the parties previously set forth in Section 8.4(b)(i) of the **Unison HomeOwner Covenant Agreement.**

Reference is made to that certain Unison HomeOwner Agreement by and between CHARLES BOYD OLSON AND JANINE E OLSON, HUSBAND AND WIFE AS JOINT TENANTS (collectively, "**Owner**") and **Unison Agreement Corp.**, its successors and assigns ("**Investor**"), in connection with the purchase of the property at 3718 S 256th Ct, Kent, WA 98032 ("**Property**"), consisting of (1) the **Unison HomeOwner Option Agreement**; (2) the **Unison HomeOwner Covenant Agreement**; (3) the **Unison HomeOwner Recorded Memorandum**, and (4) the **Unison HomeOwner Security Instrument**. All initially bolded terms in this Deferred Maintenance Addendum are defined in Schedule A to the Unison HomeOwner Covenant Agreement.

Section 8.4(b)(i) of the Unison HomeOwner Covenant Agreement provides for notation by Investor of certain repair items or conditions on the property in connection with the **Owner Property Purchase,** which repair items or conditions may be expressly reserved by Investor for application of a **Deferred Maintenance Adjustment** at the time of calculation of the **Ending Agreed Value** of the **Property** and determination of the **Investor Proceeds**. The following items are noted by Investor under Section 8.4(b)(i):

Page 5 of 33 in the home inspection report by National Property Inspection dated 3/13/2019 specifically noted: Multiple damaged shingles.
Plumbing vent boots are torn and should be replaced.
Recommend further evaluation and repairs be made by a licensed roofing contractor.

Page 8 of 33 in the home inspection report by National Property Inspection dated 3/13/2019 specifically noted: Chimney crown is cracked. Recommend further evaluation and repairs be made by a licensed contractor

If the items, defects, or conditions listed above have not been fully corrected or repaired by Owner at the time of any calculation of the Ending Agreed Value of the Property and any determination of the Investor Proceeds, then Investor shall have the right under Section 8.4(a) of the Unison HomeOwner Covenant Agreement to make (in consultation with third party experts and inspectors unaffiliated with Investor), a commercially reasonable estimate of the dollar amount which is required, at that time, to repair such Deferred Maintenance, independently and without reference to any estimate of costs required for repair which may have been given to

© 2017, **Unison**

Form 253 HO-All (rev. 8/3/2017)

**ER-181**

Owner and to apply the dollar amount so obtained by Investor as a Deferred Maintenance Adjustment in calculating the Ending Agreed Value of the Property and the Investor Proceeds.

Investor shall have no liability in connection with, or for Owner's failure to cure, the items, defects and conditions listed above.

This Addendum may be executed in counterparts.

**INVESTOR:**

Unison Agreement Corp.

By: _____
    Ismael Casas, Jr.

Title: _____
    Vice President

_____
Date Signed

**OWNER:**

By: _____
    Charles Boyd Olson

Date Signed: _____

By: _____
    Janine E Olson

Date Signed: _____

By: _____

Date Signed: _____

By: _____

Date Signed: _____

ER-182

1
2
3
4
5
6
7
8
9
10
11

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CHARLES BOYD OLSON, JANINE
OLSON, and MAGGIE COLIN, individually
and on behalf of all others similarly situated,

Plaintiffs,

v.

UNISON AGREEMENT CORPORATION, a
foreign corporation,

Defendant.

NO. 2:22-cv-01859-RSM

DEFENDANT'S MOTION TO DISMISS
THE OLSONS' CLAIMS AND COLIN'S
CLAIMS IN THE EVENT THE MOTION
TO COMPEL COLIN TO ARBITRATION
IS DENIED

NOTE ON MOTION CALENDAR:
FEBRUARY 24, 2023

ORAL ARGUMENT REQUESTED

DEFENDANT'S MOTION TO DISMISS THE OLSONS'
CLAIMS AND COLIN'S CLAIMS IN THE EVENT THE
MOTION TO COMPEL COLIN TO ARBITRATION IS
DENIED

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-183

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 5

I.     The Factual Allegations of the Complaint. .......................................... 5

II.    The Option Agreement and HomeOwner Agreement. ....................... 7

ARGUMENT ........................................................................................................ 12

I.     Plaintiffs' First Through Fourth Claims for Relief Fail Because the Option Is an "Option" And Not "Credit." ............................... 12

II.    Plaintiffs' First Through Fourth Claims Fail Because They Rely Entirely Upon an Equitable Recharacterization Theory That Does Not Apply. ........................................... 15

III.   The First CPA Claim Depends Upon a Statute That By Its Terms Is Inapplicable. ......... 19

IV.    The Second and Third Claims Do Not State a Claim or Satisfy Rule 9(b). ..................... 21

V.     The Fourth Claim Should Also Be Dismissed Because Injunctive Relief is a Remedy, Not a Cause of Action. ..................................... 22

VI.    The Fifth Claim Is Defective and Moot. ............................................. 23

CONCLUSION ..................................................................................................... 24

DEFENDANT'S MOTION TO DISMISS - i

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-184

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................12, 19

*In re Avista Corp. Secs. Litig.*,
    415 F. Supp. 2d 1214 (E.D. Wash. 2005) ...............................................................................10

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) ..................................................................................................12

*Barnhart v. Sigmon Coal Co., Inc.*,
    534 U.S. 438 (2002) ................................................................................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................................12, 19

*Benanav v. Healthy Paws Pet Insurance*,
    LLC, No. 20-421, 2021 WL 4319447 (W.D. Wash. Sept. 23, 2021) .....................................22

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ................................................................................................................20

*Cox Commc'ns PCS, L.P. v. City of San Marcos*,
    204 F. Supp 2d 1272 (S.D. Cal. 2002) ...................................................................................23

*In re Custody of Smith*,
    137 Wn.2d 1 (1998) (en banc) ...............................................................................................19

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ..................................................................................................10

*Diversified Dev. Corp. v. Ripley*,
    82 Wn.2d 811 (1973) (en banc) .............................................................................................23

*Dvornekovic v. Looney*,
    No. 13-5812, 2013 WL 6571935 (W.D. Wash. Dec. 13, 2013) .............................................21

*In re Forfeiture of One 1970 Chevrolet Chevelle*,
    166 Wn.2d 834 (2009) (en banc) ...........................................................................................15

*Foster v. EquityKey Real Est. Invs.*,
    No. 17-00067, 2017 WL 1862527 (N.D. Cal. May 9, 2017) ............................................14, 15

DEFENDANT'S MOTION TO DISMISS - ii

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Frias v. Patenaude & Felix, A.P.C.*,
  No. 20-805, 2021 WL 1192421 (W.D. Wash. Mar. 30, 2021) .................................................23

*Goldwater Bank, N.A.* v. *Elizarov*,
  No. 21-616, 2022 WL 18231680 (C.D. Cal. Dec. 12, 2022) ...............................................14

*In re Grand Union Co.*,
  219 F.353 (2d Cir. 1914) ...........................................................................................................15

*Great Pac. Secs. v. Barclays Capital, Inc.*,
  743 Fed. App'x 780 (9th Cir. 2018) ........................................................................................22

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  105 Wn. 2d 778 (1986) ...............................................................................................................19

*Hernandez v. Carpenter*,
  147 Wn. App. 1018, No. 59952-6-I (2008) (unpublished) .........................................16, 17, 18

*Hoover v. Bouffleur*,
  74 Wash. 382 (1913) .......................................................................................................16, 18

*Kater v. Churchill Downs Inc.*,
  886 F.3d 784 (9th Cir. 2018) ....................................................................................................10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..........................................................................................12, 22

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ................................................................................................2, 7

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992).....................................................................................................................20

*Phillips v. Blaser*,
  13 Wn.2d 439 (1942) ...............................................................................................16, 17, 18, 19

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) .................................................................................................12

*Tunison v. Safeco Ins. Co. of Illinois*,
  No. 19-503, 2020 WL 6287126 (W.D. Wash. Oct. 27, 2020)..............................................23

*Turner v. Gunderson*,
  60 Wn. App. 696 (1991) ............................................................................................................13

*Vance v. Microsoft Corp.*,
  525 F. Supp. 3d 1287 (W.D. Wash. 2021)...............................................................................23

DEFENDANT'S MOTION TO DISMISS - iii

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Vechirko v. Recontrust Co.*,
No. 11-5453, 2011 WL 3501724 (W.D. Wash. Aug. 10, 2011)................................22

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ...............................................................................21

*Westcott v. Wells Fargo Bank, N.A.*,
862 F. Supp. 2d 1111 (W.D. Wash. 2012)...............................................................12

*Whitworth v. Entai Lumber Co.*,
36 Wn.2d 767 (1950) ...............................................................................................13

**Federal Rules**

Federal Rule of Civil Procedure 9(b) ...........................................................12, 22

**Other Authorities**

12 C.F.R. pt. 1026, Supp. I, pt. 1, Comment 2(a)(14)(1)(vii)......................................14

25 David K. DeWolf, et al., Washington Practice,
Contract Law & Practice § 2:16 (3d ed.) ...............................................................13

25 David K. DeWolf, et al., Washington Practice,
Contract Law & Practice § 19:42 (3d ed.) .............................................................13

Option 2(c), Merriam-Webster.com, https://www.merriam-
webster.com/dictionary/option.................................................................................12

RCW § 31.04.505(5)...................................................................................4, 14, 20

RCW § 19.86.090 ................................................................................................22, 23

RCW § 64.60.010(3)(c) .............................................................................................15

RCW § 64.60.010(3)(e) .............................................................................................15

WAC § 458-20-19404A(3)(j) ....................................................................................15

DEFENDANT'S MOTION TO DISMISS - iv

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Defendant Unison Agreement Corp. ("UAC") hereby moves to dismiss the Complaint with respect to Plaintiffs Charles Boyd Olson and Janine Olson (the "Olsons") for failure to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6) and to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). As to Plaintiff Maggie Colin ("Colin"), UAC previously moved to compel Colin to arbitrate this dispute. Should the Court deny the motion to compel Colin's dispute to arbitration, UAC also requests that the Court dismiss the Complaint as to Colin. The Olsons and Colin are collectively referred to as "Plaintiffs" herein.

## **INTRODUCTION**

This case is about an agreement that UAC makes with homeowners, which, as reflected in the Complaint, allows individuals to obtain an up-front payment of cash by "access[ing] the home equity [they] already own, without interest, debt, or monthly payments." *See* Dkt. No. 1-1 ("Compl.") ¶ 4.15 (quoting and incorporating by reference, www.unison.com). Specifically, a homeowner grants UAC an option to purchase an agreed-upon undivided percentage interest in their property in the future at an agreed price based on third-party appraisals. As explained below, at signing the homeowner receives the benefit of an immediate cash payment, to use however the homeowner would like and, in exchange, shares with UAC the risks and rewards of appreciation or depreciation of the property. If the market goes up, the parties effectively share in the gain. If the market declines, both parties effectively share in the loss, but the property owner retains the up-front cash payment from UAC. Because the outcome depends on the housing market and decisions of the homeowner (*e.g.*, when and whether to sell their home), the parties' respective gain or loss is not preordained. Regardless of the future value of the property, the homeowner takes on *no debt*.

DEFENDANT'S MOTION TO DISMISS - 1

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

**ER-188**

Plaintiffs each signed a "Homeowner Option Agreement" with UAC in 2019 (the "Olson Option," the "Colin Option," and collectively the "Options")[1] with economically similar option grants. Pursuant to the terms of the Options, Plaintiffs each received an initial payment from Unison at the grant of the Options (the Olsons received $64,750 and Colin received $60,000) and, in exchange, Plaintiffs granted to UAC options "to purchase, in the future, an undivided [70% for Olsons and 42.48% for Colin] interest" in their property by UAC paying an additional dollar amount ($194,250 for Olson and $180,012 for Colin). Compl. ¶¶ 4.40, 4.52; Ex. 1-1 §§ 2.1, 3.1; Ex. 2-1 §§ 1(a), 1(c). These figures were based upon the parties' agreed value of the property at the time of the Option grant ($370,000 for the Olson property and $565,000 for the Colin property) based on third-party appraisals. *See* Ex. 1-1 §§ 3.1, 5.1; Ex. 1-2 § 10; Ex. 2-1 § 4; Ex. 2-2 § 8.5. UAC can exercise the Option in each property only after the occurrence of one of four Exercise Events, the most likely of which is the sale of the property by Plaintiffs. Ex. 1-1 § 6.1; Ex. 2-1 § 2. No Exercise Events are alleged to have occurred and the Options remain pending.

As an option, the final economics of the transactions will be driven first by housing market forces beyond the parties' control and, second, by the timing of a likely future sale, which is controlled by the homeowner and not by UAC. Plaintiffs granted options at the start of a hot housing market. But the potential value of the Option at any moment in time is not preordained and may not last. Indeed, while the housing market in the Seattle area increased for several years, it fell dramatically in the months leading up to the filing of the Complaint. Nobody knows exactly how the housing market will look a few years from now.

---

[1] True and correct copies of the Colin Option and the Olson Option, both of which are incorporated into Plaintiff's Complaint by reference (*see, e.g.*, Compl. ¶¶ 4.40, 4.50–4.53; *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)), are attached to the concurrently-filed Declaration of Theodor Haugen as Exs. 1-1 and 2-1, respectively.

DEFENDANT'S MOTION TO DISMISS - 2

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Although it is impossible to predict the future, the past is illustrative of possibilities. For example, if the same Options at issue in this case had been granted on Plaintiffs' properties in March 2007, and if the value of the properties followed the S&P residential housing price index for the Seattle area, a sale in 2012 would have resulted in a 29% drop in price of the properties. In that case, the Options would have had no value and the deal (including the initial payments of $64,750 to the Olsons and $60,000 to Colin) would have been a total loss to UAC. In fact, an option granted in March 2007 would not have hit the break-even mark until January 2016, nine years after the option grant. As an agreement that can spend years in a loss position because of the vagaries of housing prices, the Option is wholly inconsistent with the structure, terms, and economics of a loan.

Nonetheless, Plaintiffs ask that this Court, in equity, recharacterize the Option as an "equitable reverse mortgage loan." This is a term Plaintiffs have conjured for litigation, as it has never been used in the annals of American law. The Complaint asserts three claims under the Washington Consumer Protection Act (the "CPA"), all resting on the false assumption that the Option is not an option but a reverse mortgage loan. Claim One asserts a *per se* CPA violation, alleging UAC did not follow the requirements for issuing a reverse mortgage loan under the Consumer Loan Act, and two additional CPA claims assert that the HomeOwner Agreement is not identified as a loan during its "marketing and selling," which is allegedly unfair (Claim Two) and deceptive (Claim Three). All three claims depend upon the circular and unsupported premise that the Option is not an option, but is instead an "equitable reverse mortgage loan." For numerous reasons, the Court should dismiss the Complaint for failure to state a claim under Rule 12(b)(6):

*First*, the Complaint fails in its entirety because, in accordance with both its express terms and its economic structure, the Option is plainly an option and not credit or a loan. The only directly

DEFENDANT'S MOTION TO DISMISS - 3

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

applicable case law—including a district court in this Circuit adjudicating a UAC Option—confirms UAC's Option is an option and not credit or a loan.

*Second*, the "equitable mortgage" concept on which the Complaint is based is inapposite. Courts have recharacterized a purported deed of sale as an equitable mortgage in the very limited circumstance of an abusive sale transaction structured as (1) a below-market "sale" of a distressed property for an amount needed to avert foreclosure or eviction, and (2) the seller's right to repurchase the property in the very near future at a price far higher than the original "sale" price. Courts have held that those transactions – where the parties may fully acknowledge the transaction was intended as a loan – should be treated as a loan and the deed of sale treated as a mortgage. Here, there is no below-market sale of a property (or any sale at all), no short-term option right granted to the seller to repurchase the property at a price far higher than the amount the seller sold the property, and no imminent foreclosure. The reasons to recharacterize a transaction as an equitable mortgage do not arise where a party grants an option to purchase an undivided interest in a non-distressed property years in the future. Stated differently, giving a homeowner a large cash payment for a long-term option to share in a portion of the long-term increase – or decrease – in the home's appraised value bears no resemblance to the abusive purchase of a distressed property for a pittance.

*Third*, the First Claim (*per se* violation of CPA) also fails because, as Plaintiffs acknowledge, the Option does not fall within the Consumer Loan Act's plain language definition of a reverse mortgage loan. While conceding that "nearly all" instead of "all" of the criteria of the definition of a reverse mortgage loan are met, Compl. ¶ 4.26, the Complaint does not disclose that an agreement can be a "reverse mortgage loan" only if it is "a nonrecourse consumer *credit* obligation," RCW 31.04.505(5) (emphasis added). But the Option is decidedly *not* a credit

DEFENDANT'S MOTION TO DISMISS - 4

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

obligation. Plaintiffs' attempt to overcome this fatal flaw in their statutory claim by invoking equity to alter the language of the statute violates basic principles of statutory interpretation.

*Fourth*, the Second Claim (unfair) and the Third Claim (deceptive) are based upon the "marketing and selling" of the HomeOwner Agreement, but both fail to state a claim because the only alleged statements Plaintiffs identify in the Complaint are entirely accurate. To the extent that the Complaint can be deemed to be referencing anything else, that material is not identified with the particularity required by Federal Rule of Civil Procedure 9(b).

*Fifth*, the Fourth Claim for injunctive relief under the CPA is not a self-standing claim but merely a duplicative remedy request that is redundant of the injunctive relief requested in the First through Third Claims. It must be dismissed.

*Finally*, the Fifth Claim, which concerns a potential future award of legal fees in the event of a Plaintiffs litigation loss, must be dismissed because there is no actual, imminent dispute on the issue. Indeed, UAC has confirmed it will not seek fee shifting in this litigation.

## BACKGROUND

### I.    The Factual Allegations of the Complaint.

Section IV of the Complaint is styled as containing "Factual Allegations" and consists of 58 numbered paragraphs. The first 28 of those paragraphs contain legal argument premised on the bald assertion that the HomeOwner Agreement "is an equitable reverse mortgage." Compl. ¶¶ 4.1-4.28.

When the Complaint turns to the Plaintiffs, it provides 15 paragraphs each about the Olsons and Colin. The Olsons are the owners of real property located at 3718 S 256th Ct, Kent, WA, 98032. *Id.* ¶¶ 4.29-4.43. The property has been refinanced several times, with the last refinancing in 2018 with Union Bank on unstated terms. *Id.* ¶¶ 4.35. The Olsons allege they have never been

DEFENDANT'S MOTION TO DISMISS - 5

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-192

more than a month behind on their mortgage loan payments. *Id.* ¶ 4.34. Colin owns a condominium at 900 Aurora Ave N, Apt 206, Seattle, WA 98109 that she bought in 2011 with a $178,100 mortgage loan from Sterling Savings Bank. *Id.* ¶ 4.45. Colin alleges she has never missed a mortgage loan payment. *Id.* ¶ 4.46. Colin asserts that she "still owes approximately $200,000 on her first mortgage" (*id.* ¶ 4.58), but does not explain how she could possibly owe $200,000 on a 12-year-old $178,100 mortgage loan as to which she has never missed a payment.

The Complaint alleges that, in 2019, both the Olsons and Colin received a flyer stating that UAC's HomeOwner Agreement would allow them to "access the equity locked in [their] home" and would include "no monthly payments and no interest." *Id.* ¶¶ 4.38, 4.48.[2] Both the Olsons and Colin applied. *Id.* ¶¶ 4.39, 4.49. Both subsequently entered into agreements with UAC: the Olsons in March 2019, and Colin in November 2019. *Id.* ¶¶ 4.40, 4.54. The Olsons received $64,750 for granting UAC an option to purchase a 70% interest in real property valued at $370,000 (*id.* ¶ 4.40) and Colin received $60,000 for granting UAC an option to purchase a 42.48% interest in a condominium valued at $565,000 (*id.* ¶¶ 4.51-52). The Olsons do not allege any belief that they had entered into a loan, but Colin baldly asserts that she subjectively believed the transaction was a loan and, contrary to the clear written terms of her written agreement, she would be able to pay down the amount in increments over time. *Id.* ¶ 4.55.

The Complaint does not allege that UAC has exercised the Options or that any Exercise Event has occurred. The Complaint also omits the fact that UAC will be required to make additional payments to Plaintiffs if the Options are exercised in the future. *See* Ex. 1-1 § 3.1; Ex. 2-1 § 1(c).

---

[2] The Complaint also states, without reference to time, place, speaker, or recipient, that UAC "claims its product 'is not a loan'" and represents itself as "purchasing an 'option' to acquire equity in the home." Compl. ¶ 1.1.

DEFENDANT'S MOTION TO DISMISS - 6

GORDON TILDEN THOMAS CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

## II.     The Option Agreement and HomeOwner Agreement.

The Complaint invokes the "HomeOwner Agreement," a term used in the transaction documents to refer collectively to the Option, the HomeOwner Covenant Agreement, the Homeowner Security Instrument, and the HomeOwner Recorded Memorandum. Ex. 1-1 § 1.2; Ex. 2-1 § 1(d) (placing "Unison" in front of the terms above). The Olson and Colin HomeOwner Agreements are on different forms, but they are substantially the same as to the economics of the transaction. The Covenant, Security Instrument, and Recorded Memorandum signed by Colin are attached to the Haugen Declaration as Exhibits 1-2, 1-3, and 1-4, and the Olsons' agreements as Exhibits 2-2, 2-3, and 2-4, respectively. They are properly considered on this motion. *See Marder*, 450 F.3d at 448.

The key documents for purposes of this motion are the Option for Colin and the Option and Covenant Agreement for the Olsons. The documents summarize the nature of the transaction in plain language.  For example, the cover page of the Colin Option provides:

> **Summary:** This option agreement first sets forth Unison's obligation to pay you a lump sum. The agreement then provides that in exchange for that payment, Unison receives an option. The option would allow Unison, at a future date, to purchase a percentage interest in your property by paying you an additional (and greater) amount of money.
>
> On that future date, the value of Unison's option will depend on what your property is worth. If your property's value rises between now and then, the option's value will increase as well, and vice versa.  As a result, the value of Unison's option could turn out to be greater than, equal to, or less than what Unison is paying you today, or even zero.

Ex. 1-1 at 1; *see also* Ex. 2-1 §§ 1, 6 (Olson Option explaining nature of option transaction, including that the initial payment "**is not a loan**" or "**a principal amount which Investor is contractually or otherwise entitled to recover**" and that UAC's proceeds from the transaction "**may be greater than, equal to, or less than**" its payment to the homeowner, "**depending upon**

DEFENDANT'S MOTION TO DISMISS - 7

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

1
2    **the change in value of the Property**") (emphasis in original). The documentation Plaintiffs signed
3
4    also admonished them to "READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT"
5
6    and "urged [them] to discuss the Unison HomeOwner Agreement with family members, heirs, and
7
8    with independent tax, legal and financial advisors to ensure an understanding of their risks and
9
10   benefits" *E.g.*, Ex 2-2 § 2.3 & p. 36; Ex. 1-2 § 2.7; Ex. 1-4 at 4.
11
12           The agreements then set forth: the initial payment to be made by UAC (Ex. 1-1 § 2; Ex. 2-
13
14   1§ 1(a)), the granting of the Option with the payment of two amounts, one at signing and one at
15
16   option exercise (Ex. 1-1 § 3; Ex. 2-1§ 1(a), 1(c)), the Term of the Option (Ex. 1-1 § 4; Ex. 2-1 §
17
18   2), the agreed value of the property at Option origination (Ex. 1-1 § 5; Ex. 2-1 § 4), the Exercise
19
20   Events under which the Option can be exercised[3] (Ex. 1-1 § 6; Ex. 2-1 § 2), a right for the
21
22   homeowner to buy out the Option upon an Exercise Event (Ex. 1-1 § 7; Ex. 2-1 § 10; Ex. 2-2 §
23
24   3.3, 10.1), the maximum amount of debt with other parties that can be placed on the property so
25
26   that the Option will remain exercisable (Ex. 1-1 § 9; Ex. 2-1 § 8), a statement that the Security
27
28   Instrument and Recorded Memorandum will be filed to secure the HomeOwner Agreement (Ex.
29
30   1-1 § 10; Ex. 2-1 § 9), the nature of the option and of the initial payment (Ex. 1-1 § 12; Ex. 2-1 §
31
32   6), and a description of the property (Ex. 1-1, Ex. A; Ex. 2-1, Ex. A).
33
34           As to the nature of the option, the Olson Option states:
35
36           **The Unison Investment Payment [(which is the initial payment)] is not a loan.**
37           **The Unison Investment Payment is not a principal amount which [UAC] is**
38           **contractually or otherwise entitled to recover at Term or at Option Exercise.**
39           **The Investor Proceeds [(i.e., the net amount obtained by UAC at option**
40           **exercise)] may be greater than, equal to, or less than the Unison Investment**
41           **Payment, or zero, depending upon the change in the value of the Property (the**
42
43   ───────────────
44   [3] The Exercise Events are (a) the Expiration Date; (b) arms' length sale of the Property; (c) death of the last surviving
45   owner; or (d) following a material and uncured event of owner default ("Event of Default"). Ex. 1-1 § 6.1; Ex. 2-1 §
     2. There is also a provision regarding the right of a homeowner to unilaterally terminate the Option after at least three
     years has passed, which is not technically an option exercise and is moot in this case as both options are passed the
     three-year mark. Ex. 1-1 § 8; Ex. 2-1 § 7.

DEFENDANT'S MOTION TO DISMISS - 8

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

**difference between the Original Agreed Value and the Ending Agreed Value) between the Effective Date and the Exercise Event. Owner will not be required to make any monthly interest or other periodic payments to [UAC] calculated upon the amount of the Unison Investment Payment, nor will any periodic payment obligations be imposed upon or accrue on the amount of the Unison Investment Payment as indebtedness to Owner.**

Ex. 2-1 § 6 (emphasis in original). The Colin Option states in its similar provision:

The Initial Payment is not a loan to you or indebtedness to Investor, nor is it a principal amount which Investor is entitled to recover at any time. Thus, you will not among other things make any monthly interest or any other periodic payments to Investor based upon the amount of the Initial Payment.

Ex. 1-1 § 12.1. The Covenant Agreement sets forth representations and warranties and covenants associated with the Option and addresses a number of potential events that are not alleged to have occurred here.[4]

      As explained in the Option, UAC makes an initial payment when the Option is signed and, in exchange, receives an option to purchase an undivided interest in the real property by making a payment of an additional sum certain. *See* Ex. 1-1 §§ 2.1, 3.1 (referring to second payment as a "Balance Payment"); Ex. 2-1 §§ 1(a), 1(c) (referring to second payment as the "Unison Purchase Price Balance"). UAC may not exercise the option, however, until a specified trigger "Exercise Event" occurs, none of which are within UAC's control. *See* Ex 1-1 § 6; Ex. 2-1 § 2. The most common exercise event is the owner's sale of the property, and when a sale of the property occurs,

---

[4] These include insurance for loss of the property, condemnation of the property, failure to pay taxes, failure to maintain the property, a non-arms-length sale, death of the homeowner, and other non-sale terminations and adjustments in value for remodeling benefits to be attributed to the homeowner or payments made for maintenance, taxes or insurance protectively made by Unison. *See* Ex. 1-2 §§ 4B–D, 5–9, 12–17; Ex. 2-2 §§ 4-7, 8.1–8.4, 8.10–8.11, 8.16–8.17, 9.4(a). The key representations are that the homeowner has clear title that could be conveyed at Option exercise, an acknowledgement that the Option is not a short-term financing offering, a representation that the homeowner expects to stay in the property for at least three years, and a representation that the homeowner intends to occupy the property as the principal residence. Ex. 1-2 §§ 2.1, 2.4, 3.2; Ex. 2-2 §§2.1(a), (b) & (e). The homeowner also agrees to maintain the property, pay property taxes, and maintain insurance. Ex. 1-2 §§ 8.1, 12.1, 14.1; Ex. 2-2 §§ 8.2, 8.10, 8.16. The Security Instrument and Recorded Memorandum are filed to place third parties on notice of the Option and to secure the homeowner's performance under the Covenant and Option. *See* Exs. 1-3, 1-4, 2-3, 2-4.

---

DEFENDANT'S MOTION TO DISMISS - 9

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

the homeowner may elect to settle the Option and terminate it with the proceeds of a sale disbursed as follows: (1) UAC receives the sale price multiplied by the percentage undivided interest it can purchase minus the second payment UAC must make in exercising the Option and (2) the homeowner receives the sale price multiplied by the homeowner's percentage in the property plus the second payment from UAC.[5] Ex 1-1 §§ 6, 7; Ex. 2-1 § 10; Ex. 2-2 §§ 3.3(b), 10.1(a).

Applying the terms of the Option to different periods shows how the option economics work. For illustration, assume the Olson Option was granted in March 2007 on property of the same value to the Olsons' and the home value followed the S&P/Case-Shiller WA-Seattle Home Price Index (SEXRNSA), which is made available by the St. Louis Federal Reserve Bank.[6] Starting in March 2007 (index measured at 186.44), housing prices in the Seattle area rose slightly and then fell dramatically. Possible outcomes for the March 2007 option under the Olsons' terms include:

- **<u>A Total Loss to UAC and Loss Mitigation for Plaintiffs</u>**. If the property had sold between January 2011 through May 2012 (a period of the index below 139.83), the price drop would have been over 25% and the option would not have been exercised. The Olsons would have kept the initial payment ($64,750) without UAC ever acquiring an interest in the property. The Olsons would have received the entire sale price of the property, with no money going to UAC at any point.[7]

---

[5] The mechanics of UAC's exercise of the Option involve allowing the homebuyer to choose to settle the Option, at the time of sale, through a cash payment from proceeds of the sale. Otherwise, UAC can consummate the purchase of the undivided percentage interest simultaneously with the property sale. Ex. 1-2 § 4.A.4; Ex. 2-2 § 3.3(c).

[6] *See* https://fred.stlouisfed.org/series/SEXRNSA (providing monthly data from January 1990 through October 2022). The SEXRNSA is subject to judicial notice and thus properly considered on this motion. *See Kater v. Churchill Downs Inc.*, 886 F.3d 784, 786, 788 n.3 (9th Cir. 2018); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); *In re Avista Corp. Secs. Litig.*, 415 F. Supp. 2d 1214, 1217-18 (E.D. Wash. 2005).

[7] For example, if the property were sold five years after option grant in March 2012, the price would have decreased 29.6% (index at 186.44 dropped to 131.22), the sale price would have been $260,413, and an undivided 70% interest would have been worth $182,289. Because the $194,250 second payment UAC would have had to make to exercise

DEFENDANT'S MOTION TO DISMISS - 10

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

- **<u>A Partial Loss for UAC and Loss Mitigation for Plaintiffs</u>**. If the property had sold during the period June 2012 through December 2015 (a period of the index between 139.89 and 186.26), there would have been a price drop, but UAC would have exercised the option. UAC would have received some sale proceeds, but they would have been less than the initial payment to the Olsons ($64,750).[8] The Olsons again would have received more than the entire sale price of the property.

- **<u>Break-Even and Benefit of Up-Front Payment to Plaintiffs</u>**. In January 2016, the price index was nearly the same as March 2007 (*i.e.*, 186.44 vs. 186.49). In this scenario, UAC and the Olsons would have effectively broken even, but with the Olsons having had the benefit of UAC's up-front initial payment since March 2007.

- **<u>Profitable for UAC and for Plaintiffs</u>**. Starting in February 2016, the price index was higher than in March 2007, with a 50% rise in price from the March 2007 option date first reached in September 2020, over 13 years after the option issued.[9]

---

the option would have been more than the $182,289 interest UAC could purchase, it would not have exercised the Option. Plaintiffs would have received the $64,750 initial payment and the entire sale price, meaning that because of the Option they received $325,163 in connection with a property they sold for only $260,413.

[8] For example, if the property were sold in March 2014, the price would have decreased 13.1% (index at 186.44 dropped to 162.05), the sale price would have been $321,597, and an undivided 70% interest would have been worth $225,118. Because the $194,250 second payment UAC would have had to make to exercise the option was less than the $225,118 interest UAC could purchase, it would have exercised the Option to mitigate its loss to -$33,882 ($225,118 - $194,250 second payment - $64,750 initial payment). Plaintiffs would have received 30 percent of the sale price which is $96,479 plus the second payment of $194,250, in addition to the $64,750 initial payment, for a total of $355,479 in connection with a property they sold for only $321,597.

[9] "Unison Gain [or] (Loss) On Investment" under hypothetical scenarios falling into each of these categories—increase in property value, "larger increase," decrease in property value, "larger decrease," and no change—was laid out in the Plaintiffs' Offers to enter into a Unison HomeOwner Agreement.  *See* Ex. 3 at 13; Ex. 4 at 13; *cf. Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1115 (W.D. Wash. 2012) (considering, on motion to dismiss, Initial Interest Note that undermined plaintiffs' allegations that defendant failed to disclose loan amount and interest rate).

DEFENDANT'S MOTION TO DISMISS - 11

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

## ARGUMENT

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint must offer "more than labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must contain *sufficient factual matter*, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (emphasis added; citation omitted). Rule 9(b) of the Federal Rules of Civil Procedure further requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), a plaintiff must articulate "the who, what, when, where, and how of the misconduct alleged" and that the Plaintiff relied on those statements. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

**I.     Plaintiffs' First Through Fourth Claims for Relief Fail Because the Option Is an "Option" And Not "Credit."**

The Complaint is premised upon the Option being a reverse mortgage loan. But the Option falls within the well-understood parameters of what constitutes an option, and is thus *not* a loan, requiring dismissal of the Complaint in its entirety.

The common definition of an "option" is "a contract conveying a right to buy or sell designated securities, commodities, or property interest at a specified price during a stipulated period." *Option 2(c)*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/option. The Washington Supreme Court has defined an option in similar

DEFENDANT'S MOTION TO DISMISS - 12

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

terms: "[a]n option to purchase property is a contract wherein the owner, in return for valuable consideration, agrees with another person that the latter shall have the privilege of buying the property within a specified time upon the terms and conditions expressed in the option." *Whitworth v. Entai Lumber Co.*, 36 Wn.2d 767, 770 (1950); *see also Turner v. Gunderson*, 60 Wn. App. 696, 700, (1991) (same). "The essential terms of an option contract for the sale of land include the parties, a description of the property, and a means for determining the purchase price." 25 David K. DeWolf, et al., Washington Practice, Contract Law & Practice § 2:16 (3d ed.); *see also* 25 David K. DeWolf, et al., Washington Practice, Contract Law & Practice § 19:42 (3d ed.) (providing a sample form for an option on real property consistent with the Option at issue here).

Here, the Option easily falls within the definition of an option and contains all of the essential terms. Plaintiffs agreed that UAC would have the privilege of buying a certain percentage undivided interest in described property at a sum certain (Ex. 1-1 § 3 & Ex A; Ex. 2-1 §§ 1(a), 1(c) & Ex. A), within a specified time (Ex.1-1 § 4; Ex. 2-1 § 2), under certain conditions *(*Ex. 1-1 § 6; Ex. 2-1 § 2), in exchange for consideration that the optionor retains even if the Option is not exercised (Ex. 1-1 §§ 2.1, 3.2; Ex. 2-1 § 1). There are no side deals or other agreements that change the economics of the transaction from those of a standard option. Applying these terms to the real estate market in the Seattle area over the last 15 years shows that the Option risks a loss, including a total loss. *Supra* pp. 10-11 (providing example of option economics using the S&P Seattle housing index). The Option is an option.

At risk of stating the obvious, options are not credit. That is true both under common usage of those terms and under the law. For example, federal lending law, the Truth in Lending Act ("TILA") and the accompanying federal regulation "Reg Z," requires certain disclosures when "consumer credit" is offered and the Official Commentary to the regulation expressly states that

DEFENDANT'S MOTION TO DISMISS - 13

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-200

the entering into of an "option" is excluded from the definition of "credit" under the rules. 12 C.F.R. Pt. 1026, Supp. I, Part 1, cmt. 2(a)(14)(1)(vii) ("Exclusions. The following situations are not considered credit for purposes of the regulation … vii. The execution of option contracts."). That same term "consumer credit" is used to define what is covered by the Washington Reverse Mortgage Loan Act provisions of the Consumer Loan Act. RCW § 31.04.505(5) ("'Reverse mortgage loan' means a nonrecourse **consumer credit** obligation in which ….") (emphasis added). An option to purchase real property is not credit and not a reverse mortgage loan.

Indeed, attempts to characterize both the UAC Option and similar agreements as "credit" or a loan have been rejected in this Circuit on motions to dismiss for failure to state a claim. *See Goldwater Bank, N.A. v. Elizarov*, No. 21-616, 2022 WL 18231680, at *1 n.14 (C.D. Cal. Dec. 12, 2022) (dismissing claim that Unison concealed the nature of the transaction as being a loan, noting that "[w]hile Elizarov refers to Unison's 'lending program,' the materials that Elizarov himself provides [which were the Option Agreement, Homebuyer Covenant Agreement, Homebuyer Security Instrument and Homebuyer Recorded Memorandum similar to Plaintiffs' here] make clear that the Option Agreement was not a loan"); *Foster v. EquityKey Real Est. Invs.*, No. 17-00067, 2017 WL 1862527, at *4 (N.D. Cal. May 9, 2017) (holding that an option to participate in the appreciation of property is "not a loan" for purposes of TILA).

The *Foster* case is instructive. As UAC did here, EquityKey paid the plaintiff $196,000 to purchase an option to participate in the property's appreciation, which was secured by a deed of trust securing performance obligations. 2017 WL 1862527, at *1-2. The plaintiff sued under TILA, arguing that EquityKey fraudulently concealed that the agreement was a loan. *Id*. at *2. The District Court disagreed, pointing to the fact that the plaintiff in that case owed no debt and "there [was] no guarantee that the payment received by [plaintiff] need ever be returned," considering

DEFENDANT'S MOTION TO DISMISS - 14

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

that EquityKey "[was] not obliged to exercise its option." *Id.* at *4-5. Because the *Foster* plaintiff "did not agree to 'repay absolutely,'" the option was "not a loan." *Id.* at *4 (quoting *In re Grand Union Co.*, 219 F.353, 356 (2d Cir. 1914)). That reasoning applies here.

There is also no confusion between options and credit in Washington law or any suggestion that they are one and the same. For example, the Washington Excise Tax Rules for Financial Institutions explicitly exclude options from the definition of loans. WAC § 458-20-19404A(3)(j) (a "'[l]oan' means any extension of credit . . . [and] does not include: Futures or forward contracts; options . . . and other similar items"). Further, the Private Transfer Fee Obligation Act excludes both options and loans from the definition of a "private transfer fee" attached to real property, but does so with separate exclusions, one for options, RCW § 64.60.010(3)(e), and another for loans, *id.* § 64.60.010(3)(c), showing the legislature recognizes the distinction. *See In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 842, (2009) (en banc) ("Where the legislature uses different terms we deem the legislature to have intended different meanings.").

In sum, the Option is an option, and options are legally distinct from "credit" and mortgage loans, which are debt. The only directly relevant case law—including a court in this Circuit adjudicating a UAC Option—finds UAC's Option to be an option and neither credit nor a loan.

## II. Plaintiffs' First Through Fourth Claims Fail Because They Rely Entirely Upon an Equitable Recharacterization Theory That Does Not Apply.

Stretching the bounds of Washington case law far beyond its actual holdings, Plaintiffs invoke the "equitable mortgage" concept to assert that the Option should be recharacterized as "an equitable reverse mortgage loan." All of Plaintiffs' substantive legal claims are dependent upon this equitable recharacterization. But the equitable mortgage concept does not apply here.

DEFENDANT'S MOTION TO DISMISS - 15

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

To begin, there is no case recognizing an "equitable **reverse** mortgage" under *any* circumstances. That concept does not exist in the law. Moreover, the equitable mortgage concept itself is wholly inapplicable.

At a Rule 26 conference and meet and confer in a related individual action filed by Plaintiffs' counsel against UAC, UAC's counsel asked Plaintiffs' counsel to disclose any authority relied upon in asserting an equitable mortgage theory. Plaintiffs' counsel responded by citing *Phillips v. Blaser*, 13 Wn.2d 439 (1942), *Hoover v. Bouffleur*, 74 Wash. 382 (1913), and *Hernandez v. Carpenter*, 147 Wn. App. 1018, No. 59952-6-I (2008) (unpublished). These cases apply equity in quiet title or eviction proceedings to deem a transaction a mortgage loan where the transaction was documented as a below-market sale at the amount needed by the landowner to avoid foreclosure or default with a short-term ability to re-purchase the property at a much higher price. As a corollary to that application of equity, the filed deed of sale was deemed an "equitable mortgage" instead of the conveyance of title that it appeared to be on its face.

In all of Plaintiffs' cases, an owner of real property explicitly sought a loan from another individual to alleviate the distress on the property. The individual from whom the loan was sought suggested an abusive structure whereby the property would be sold at an amount equal to just what was needed to cure the immediate distress on the property with a right for the initial owner to repurchase the property in one to three months at a much higher price. None of the sellers in Plaintiffs' cases had the funds to execute the repurchase, and the predictable net result of the transactions was that Phillips sold a property worth at least $4,000 for $299.60, Hoover sold a property worth over $4,000 for $250, and Hernandez sold a property worth $100,000-250,000 for $0. The *Phillips* court explained the equitable concerns:

DEFENDANT'S MOTION TO DISMISS - 16

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

> [A] mortgagor cannot through any device bargain away his right of redemption at the time of giving the mortgage; [] while a mortgagor may release his equity of redemption to the mortgagee by subsequent agreement, the courts look upon such agreements with distrust and if it appear that the mortgagee took advantage of the necessities of the mortgagor, or that the consideration for such release of the mortgagor's equity of redemption is grossly inadequate, the release will be disregarded and the original relationship of the parties held to continue.

13 Wn.2d at 445. In other words, as the court explained in the *Hernandez* case cited by counsel for Plaintiffs, three circumstances must be present to invoke the equitable mortgage concept to find a loan where there otherwise is none: "circumstances that involve (1) a sale with an option to repurchase, (2) a large disparity between the amount of indebtedness and the value of the property, and (3) a party motivated by severe financial pressure to seek funds." *Hernandez*, 147 Wash. App. 1018, at *5. Thus, courts acting in equity will recharacterize a supposed "sale" to be a loan in order to prevent the "lender" from receiving the entire value of the property for a pittance based on the "seller's" desperation and predictable inability to buy back the property in a few months.

By contrast, Plaintiffs here granted UAC 30-year options to purchase a certain percentage undivided interest in non-distressed real property with total compensation to Plaintiffs under the option equal to the then-current agreed appraised value of that percentage undivided interest (excluding time value of money). Whether the Option would have any economic value in the future at the time of one of the specified triggering Exercise Events—all of which are in the granting homeowner's control—was an open question at time of the Option grant. There was no short-term sale-repurchase dynamic (set at a price keyed to an amount needed to avoid foreclosure or otherwise) plainly designed to lead to the "seller's" loss of his property for virtually no consideration. The equitable concerns raised in Plaintiff's cases simply do not apply here.

To emphasize that point, below is a chart on the key points of the cases as compared to Plaintiffs' transactions.

DEFENDANT'S MOTION TO DISMISS - 17

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

|  | Blaser (1942) | Hoover (1913) | Hernandez (2008) | Plaintiffs Here |
|---|---|---|---|---|
| Value of the Property at sale | $4,000-$4,500 | $4,000+ | $100,000-250,000 | No sale at all at time of the deal |
| Distress on Property | Tax Foreclosure Sale Scheduled | 3 Installment loan payments overdue | Tax Foreclosure Sale Scheduled | None |
| Discussion of loan between the parties at time of transaction | Yes | Yes | Yes | No |
| Amount of Distress | $298.60 to avert foreclosure | $228.75 overdue on loan | $10,000 | $0 |
| Sale Price | $1 + side deal check for $298.60 | $250 | $10,000 (which was never paid) | No sale at time of transaction |
| Repurchase price | $598.50 | $325 | $21,850 | No repurchase |
| Time to exercise repurchase option | 3 months | 90 days | 30 days (had to pay rent of $200 per month) | No repurchase option[10] |

Plaintiff's allegations have nothing in common with the cases recognizing equitable mortgages.

Of course, the proper inquiry always remains what the parties intended. *See Phillips*, 13 Wn.2d at 447 (whether a deed should be construed as a mortgage depends upon the intention of the parties). Specifically, to overcome the transaction documents, the party seeking an equitable mortgage must make a showing by clear and convincing evidence that the parties actually intended to form a loan. *See id.* ("[W]here there is a deed absolute in form, either with or without a contemporaneous agreement for a resale of the property, there being nothing upon the face of the

---

[10] In the equitable mortgage cases, the properties were sold at the beginning of the transactions and the buyer granted an option for the seller to repurchase the property. Here, there is no initial purchase, and the options run from Plaintiffs to UAC, not the other way around as in the equitable mortgage situations.

DEFENDANT'S MOTION TO DISMISS - 18

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

collateral papers to show a contrary intent, the presumption of law, independent of evidence, is

that the transaction is what it appears to be, and that he who asserts that the writing should be given

a different construction, must show, by clear and convincing evidence, that a mortgage and not a

sale with the right to repurchase was intended.") (citation omitted).

Yet here there is no allegation the parties discussed a loan, no allegation UAC suggested

the agreement would function as a loan, the structure is not that of a loan, and the Option itself

explicitly states that the initial payment is not a loan or indebtedness, nor is it a principal amount

which UAC is entitled to recover at any time. Ex. 1-1 § 12.1; Ex. 2-1 § 6. Plaintiffs offer only a

bald legal conclusion, long after the events at issue, that there is an equitable mortgage, which is

the type of "labels and conclusion[]" and "legal conclusion couched as a factual allegation" that is

insufficient to state a claim. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

## III. The First CPA Claim Depends Upon a Statute That By Its Terms Is Inapplicable.

To state a CPA claim, Plaintiffs must allege (1) an unfair or deceptive act or practice; (2)

occurring in trade or commerce; (3) a public interest impact; (4) an injury to Plaintiffs in their

business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.

Co.*, 105 Wn. 2d 778, 780 (1986). The first two elements "may be established by a showing that . .

. a statute which has been declared by the Legislature to constitute an unfair or deceptive act in

trade or commerce has been violated." *Id.* at 786. The Complaint asserts three claims under the

CPA, the first of which alleges that Plaintiffs' HomeOwner Agreements violate the Consumer

Loan Act, and specifically provisions governing reverse mortgage loans, and such violations serve

as the predicate for a claim under the CPA. Compl. ¶¶ 6.1-8.9.

The Court must focus on the plain language of the Consumer Loan Act because courts must

"assume the Legislature meant exactly what it said and apply the statute as written." *In re Custody*

---

DEFENDANT'S MOTION TO DISMISS - 19

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*of Smith*, 137 Wn.2d 1, 8 (1998) (en banc) (citation omitted) (admonishing that courts should not "question the wisdom of a statute even [if] its results seem unduly harsh"); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

Critically, a reverse mortgage loan is statutorily defined as a "***credit*** obligation" with certain characteristics. RCW § 31.04.505(5) (emphasis added). As explained above, the Option cannot be reasonably considered to be "credit." To briefly recount: no loan was intended and, in fact, was expressly and accurately disclaimed; UAC has no right to any specified payment or return of the Initial Payment; and, indeed, UAC has no vested right to receive anything at the time of making the Initial Payment (and may never have a right to *any* future payment if property values decline significantly). Thus, the Consumer Loan Act does not apply.

Plaintiffs actually concede this point in the Complaint, alleging that UAC's "product meets *nearly all* of the criteria for a reverse mortgage." Compl. ¶ 4.26 (emphasis added). That concession should be the end of the claim, as the Supreme Court has directed federal courts to "interpret the language of [a] statute" "without application of any other canon or interpretative tool" and to "not alter the text in order to satisfy [] policy preferences." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62 (2002). Nonetheless, Plaintiffs ask this Court to use its equitable powers to modify the statute. Such an abuse of equity would have courts re-writing statutes and would destroy plain language principles of statutory interpretation.

Moreover, to invoke equity, the benefiting party must have no adequate remedy at law and must suffer irreparable injury without equitable relief. *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381 (1992). Indeed, the equitable mortgage cases cited by Plaintiffs involved the loss of a specific parcel of real property and were quiet title or eviction proceedings—a paradigmatic

DEFENDANT'S MOTION TO DISMISS - 20

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

irreparable injury situation. Using equity to trigger a damages claim under a statute—a request to provide treble damages no less—is far beyond the proper application of equitable principles.

What is at play here is optionor's remorse brought about by the happenstance that Plaintiffs decided to grant options immediately before a historic run-up in real estate values. The fact that the vagaries of the market govern the economics shows that the HomeOwner Agreement is nothing like a loan, and nothing like the transactions as to which equitable mortgages have been created. This Court should not reward Plaintiffs' effort to use equity as a sword ex-post when both parties entered their option transaction with the potential for risk and reward.

## IV.    The Second and Third Claims Do Not State a Claim or Satisfy Rule 9(b).

Plaintiffs' second claim is that the "marketing and selling" of the Option as an option was an unfair practice, and their third claim is that the "marketing and selling" of the Option is a deceptive practice that "purposely misrepresents the nature of the product." Compl. ¶¶ 7.1-8.9. But the only alleged statements Plaintiffs received from UAC are in a flyer stating that an agreement with UAC could allow Plaintiff to "access the equity locked in [their] home" and would include "no monthly payments and no interest." *Id.* ¶¶ 4.38, 4.48. It is undisputed that Plaintiffs received payments in connection with the equity in their properties, and they do not and cannot not allege they made monthly payments or that interest was charged or accrued. *See generally* Compl.; Exs. 1-1, 2-1. In short, Plaintiffs have not alleged that they received any misrepresentations.

To the extent Plaintiffs seek to challenge *other* alleged statements they did not receive or rely upon, the claims must be dismissed under Rule 9(b). Claims Two and Three rely on the same "marketing and selling" alleged to have misrepresented the nature of the agreement. Thus, both claims "sound in fraud" and are subject to the requirements of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *Dvornekovic v. Looney*, No. 13-5812, 2013

DEFENDANT'S MOTION TO DISMISS - 21

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

WL 6571935, at *2 (W.D. Wash. Dec. 13, 2013) (dismissing CPA claim re residential foreclosure for failing to meet Rule 9(b)); *Vechirko v. Recontrust Co*., No. 11-5453, 2011 WL 3501724, at *7 (W.D. Wash. Aug. 10, 2011) (dismissing CPA claim re real property sale under Rule 9(b)).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), Plaintiffs must articulate "the who, what, when, where, and how of the misconduct alleged," and that Plaintiffs relied on those statements. *Benanav v. Healthy Paws Pet Insurance*, LLC, No. 20-421, 2021 WL 4319447, at *10 (W.D. Wash. Sept. 23, 2021) (quoting *Kearns*, 567 F.3d at 1126). Thus, Plaintiffs must allege that they received and, in the case of written representations, read the alleged misrepresentations. *Great Pac. Secs. v. Barclays Capital, Inc.*, 743 Fed. App'x 780, 783 (9th Cir. 2018) (affirming dismissal where the complaint "fails even to allege that Great Pacific received the specific marketing materials and representations cited [in the complaint]").

The Complaint vaguely alleges that UAC "claims" its option "is not a loan" (Compl. ¶ 1.1, 1.2), but there is no allegation that this statement was in a communication sent to Plaintiffs. Plaintiffs do not provide "the who, what, when, where, and how" of the conduct alleged to be fraudulent, and these claims must be dismissed pursuant to Rule 9(b) as well. Moreover, as explained above, the Option is *not* a loan so the statement is entirely accurate in any event. Thus, even if Rule 9(b) were met, these claims would fail under Rule 12(b)(6).

**V. The Fourth Claim Should Also Be Dismissed Because Injunctive Relief is a Remedy, Not a Cause of Action.**

In the Fourth Claim for "Injunctive Relief," Plaintiffs demand that the Court "enjoin the use of Unison's HomeOwner product in Washington" pursuant to RCW § 19.86.090, which is the general relief provision of the CPA. Compl. ¶ 9.3; RCW § 19.86.090 ("Civil action for damages—

DEFENDANT'S MOTION TO DISMISS - 22

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Treble damages authorized—Action by governmental entities"). The cited CPA provision lists the potentially available relief *after a CPA claim is adjudicated meritorious*; it is not an independent basis to make a substantive claim. Indeed, the Complaint confirms this point, as all three CPA claims contain a demand for relief that is co-extensive with the Fourth Claim: "an order prohibiting Unison from selling its . . . HomeOwner Agreement to Washington consumers." Compl. ¶ 6.20 (First Claim), 7.8 (Second Claim), 8.8 (Third Claim). No citation is provided as a basis to request that relief, but the only possible basis is RCW § 19.86.090.

The Fourth Claim sets forth no independent basis for relief and should be dismissed for failure to state a claim. *See, e.g.*, *Frias v. Patenaude & Felix, A.P.C.*, No. 20-805, 2021 WL 1192421, at * 7 (W.D. Wash. Mar. 30, 2021) (dismissing "Count 7" seeking to "enjoin" defendant under the CPA because "an injunction is a remedy and not a cause of action"); *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F. Supp 2d 1272, 1283 (S.D. Cal. 2002) (dismissing Cause of Action for "*Injunctive Relief*" because "[i]njunctive relief, like damages is a *remedy requested by the parties, not a separate cause of action*"); *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1300 (W.D. Wash. 2021) (dismissing "standalone injunctive relief claim").

## VI.    The Fifth Claim Is Defective and Moot.

The final claim seeks a declaration regarding potential payment of attorneys' fees and costs to the prevailing party. But there has been no claim for the payment of fees or costs to the prevailing party, and thus no controversy regarding who is or is not the prevailing party, or whether that party is entitled to attorney's fees or costs. *See, e.g.*, *Diversified Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815 (1973) (en banc) ("until the projected claim . . . becomes something more discernible than an unpredictable contingency, the cause is not ripe for declaratory relief"); *Tunison v. Safeco Ins. Co.*

DEFENDANT'S MOTION TO DISMISS - 23

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*of Illinois*, No. 19-503, 2020 WL 6287126, at *8 (W.D. Wash. Oct. 27, 2020) (no "justiciable controversy" merely because "offsets or reimbursements could eventually become an issue").

Perhaps recognizing there is no actual controversy over the attorney's fees and costs provision, and thus no basis to pursue declaratory relief, Plaintiffs allege there is a controversy merely because they filed a Complaint. Compl. ¶ 10.5. But filing a Complaint does not create a controversy – the controversy must exist and be identified in the Complaint.

Not only is there no existing controversy over attorneys' fees and costs, but there will never be one. UAC communicated to Plaintiffs that UAC will not seek the payment of attorneys' fees or costs from Plaintiffs if UAC prevails in this lawsuit and that UAC waives any such claim. Rosenberger Decl., Ex. 1. Thus, Plaintiffs' fifth claim is properly dismissed because the Complaint fails to identify an actual existing controversy and the issue is, in any event, moot.

## **CONCLUSION**

For the foregoing reasons, UAC respectfully requests that the Court dismiss the Complaint as to the Olsons under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Should the Court deny UAC's pending motion to compel Colin's dispute to arbitration and conclude that those claims are properly adjudicated in this forum, the Court should likewise dismiss the Complaint as to Colin for failure to state a cognizable claim.

DEFENDANT'S MOTION TO DISMISS - 24

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

DATED this 30th day of January, 2023.

s/ *Michael Rosenberger*

Michael Rosenberger, WSBA #17730
Katherine S. Wan, WSBA #58647
GORDON TILDEN THOMAS & CORDELL LLP
600 University Street, Suite 2915
Seattle, Washington 98101
206.467.6477
mrosenberger@gordontilden.com
kwan@gordontilden.com

Brent Caslin, WSBA #36145
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
213.239.5100
bcaslin@jenner.com

Attorneys for Defendant
Unison Agreement Corp.

DEFENDANT'S MOTION TO DISMISS - 25

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

ER-212

# EXHIBIT A

FILED
2022 DEC 01 03:57 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-19873-7 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| CHARLES BOYD OLSON, JANINE OLSON, and MAGGIE COLIN, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>UNISON AGREEMENT CORPORATION,<br><br>            Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT** |

## I.      INTRODUCTION

1.1      Preying on lower and middle income households whose wealth is largely tied up in their homes, Defendant Unison Agreement Corporation purports to offer a financial product that permits homeowners to receive money without ever paying any interest. Unison claims its product is "not a loan." Instead, Unison represents itself as merely a "co-investor" purchasing an "option" to acquire equity in the home and obtain a return on its "investment" when the homeowner chooses to sell their home.

1.2      In reality, Unison's financial product, called the "HomeOwner Agreement," wipes out a substantial portion of the wealth that homeowners have painstakingly accumulated over time in their homes. Unison structures its HomeOwner Agreements so that it can profit at interest rates that would never be permitted under Washington's lending laws. Unison claims

CLASS ACTION COMPLAINT - 1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-214

1   that its product is not a loan, instead structuring the agreement as an "option" agreement.

2   Unison structures its agreement this way in an attempt to avoid the regulatory schemes

3   intended to protect consumers from unscrupulous lenders. But Unison's product is actually a

4   reverse mortgage without the name (and without following any of the rules that reverse

5   mortgage lenders are required to follow).

6       1.3    Unison's unfair and deceptive HomeOwner Agreement, specifically targeted to

7   consumers in lower to middle-income areas where large increases in property values have been

8   ongoing and are expected to continue, has induced hundreds of Washington homeowners to

9   borrow money from Unison.

10           **II.    JURISDICTION AND VENUE**

11       2.1    <u>Jurisdiction.</u> This Court has jurisdiction over the parties and claims in this action.

12   At all relevant times, Charles Boyd Olson, Janine Olson, and Maggie Colin ("the Homeowners")

13   resided in King County, Washington.

14       2.2    <u>Venue.</u> Venue is proper in King County under RCW 4.12.020 and 4.12.025

15   because Unison transacts business in King County and the events giving rise to liability took

16   place in King County.

17           **III.    PARTIES**

18       3.1    Homeowners Charles Boyd Olson and Janine Olson are natural persons residing

19   in Kent, Washington. In 2019, the Olsons entered into a HomeOwner Agreement with Unison.

20       3.2    Homeowner Maggie Colin is a natural person residing in Seattle, Washington. In

21   2019, Ms. Colin entered into a HomeOwner Agreement with Unison.

22       3.3    Defendant Unison Agreement Corporation ("Unison") is a foreign corporation

23   doing business in Washington under UBI number 603-369-488. Unison is incorporated in

24   Delaware and has its principal place of business in San Francisco, California.

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

CLASS ACTION COMPLAINT - 2

IV.     FACTUAL ALLEGATIONS

A.     **Home equity and reverse mortgage lending.**

4.1     Home equity is the single largest asset for many lower and middle income families. *See* Jenny Schuetz, *Rethinking homeownership incentives to improve household financial security and shrink the racial wealth gap*, Brookings Institute, December 9, 2020, available at https://www.brookings.edu/research/rethinking-homeownership-incentives-to-improve-household-financial-security-and-shrink-the-racial-wealth-gap/ ("For households in the three middle-income quintiles, home equity is the largest single financial asset, representing between 50% and 70% of net wealth.").

4.2     One of the biggest disadvantages of home equity as a wealth-building tool is that the wealth cannot be easily accessed.

4.3     A reverse mortgage loan is a financial product that permits a homeowner to access some of the wealth tied up in their home by borrowing against their home equity. Reverse mortgage loans can thus be beneficial to some people.

4.4     However, reverse mortgages have high potential to be predatory. *See* USA Today, *Dark side of reverse mortgage industry: Predatory lending hits seniors*, Jun 13, 2019, available at https://www.usatoday.com/story/opinion/2019/06/13/reverse-mortgages-predatory-lending-cloud-home-loans-editorials-debates/1446693001/. This has led Washington and many other states, as well as the federal government, to heavily regulate reverse mortgage lending to protect consumers.

4.5     To combat abuses in lending, Washington law requires that all lenders making loans covered by the Consumer Loan Act be licensed by the state. RCW 31.04.035(1).

4.6     Any proprietary reverse mortgage product must be preapproved by Washington's Department of Financial Institutions prior to it being sold in Washington. RCW 31.04.525(1); *see also* https://dfi.wa.gov/consumer-loan-companies/proprietary-reverse-mortgages.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    4.7    If a loan is made without proper licensing, any fees charged in connection with

2  the origination of the loan must be refunded. RCW 31.04.035(2)(a).

3    4.8    No licensee making loans under the Consumer Loan Act in Washington may lend

4  money at a rate exceeding 25% simple interest per annum. RCW 31.04.105(1).

5    4.9    Washington law also protects borrowers from unfair reverse mortgage lending

6  practices by prohibiting lenders from requiring the purchase of insurance or any other financial

7  product as a condition of obtaining a reverse mortgage loan. RCW 31.04.515(7); RCW

8  31.04.515(8)(b).

9    4.10   Washington law requires that before a lender accepts a final application for a

10 reverse mortgage loan, it must refer a prospective borrower to an independent housing

11 counseling agency. RCW 31.04.515(9).

12   4.11   A reverse mortgage lender must receive a certification that such counseling has

13 occurred before assessing any fees or finalizing the loan. RCW 31.04.515(10).

14   4.12   Reverse mortgage loans cannot be made to a Washington state resident unless

15 the resident is at least sixty years old on the date of the execution of the loan. RCW

16 31.04.515(11).

17   4.13   Lenders are prohibited by the Consumer Loan Act from making "any statement

18 or representation with regard to the rates, terms, or conditions for the lending of money that is

19 false, misleading, or deceptive." RCW 31.04.135.

20   4.14   Lenders are further prohibited from obtaining at the time of closing of a loan "a

21 release of future damages for usury or other damages or penalties provided by law." RCW

22 31.04.027(1)(k).

23 **B.    Unison's HomeOwner Agreement is an equitable reverse mortgage.**

24   4.15   Unison claims it offers "[a] smarter way to access the home equity you already

25 own, without interest, debt, or monthly payments." https://www.unison.com/.

26   4.16   Unison advertises to potential clients that its HomeOwner Agreement is "not a

27 loan."

CLASS ACTION COMPLAINT - 4

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-217**

4.17     Unison purposely structures its HomeOwner Agreements in an attempt to avoid the application of lending laws because such agreements would otherwise be unlawful under Washington's Consumer Loan Act.

4.18     Under Washington law, a "reverse mortgage loan" is "a nonrecourse consumer credit obligation in which: (a) A mortgage, deed of trust, or equivalent consensual security interest securing one or more advances is created in the borrower's dwelling; (b) Any principal, interest, or shared appreciation or equity is due and payable, other than in the case of default, only after: (i) The consumer dies; (ii) The dwelling is transferred; or (iii) The consumer ceases to occupy the dwelling as a dwelling; and (c) The broker or lender is licensed under Washington state law or exempt from licensing under federal law." RCW 31.04.505(5).

4.19     Unison's HomeOwner Agreements create nonrecourse obligations because Unison may not recover funds outside of the proceeds created from the sale of the property.

4.20     Unison's HomeOwner Agreements are secured by deeds of trust recorded in the county in which the relevant property is located.

4.21     A deed of trust is a species of mortgage, and under Washington law, a deed of trust is "subject to all laws relating to mortgages on real property." RCW 61.24.020.

4.22     Payment to Unison can become due and payable under the terms of the HomeOwner Agreement only after a borrower either dies, sells their home, ceases to occupy the home as their primary residence, or at the expiration of a 30-year term.

4.23     A reverse mortgage loan may provide for interest that is "contingent on the value of the property upon execution of the loan or at maturity, or on changes in value between closing and maturity." RCW 31.04.515(2).

4.24     Unison deliberately structures its HomeOwner Agreement in an attempt to avoid the application of the Consumer Loan Act by creating an "option to purchase" an interest in residential property at the occurrence of a triggering event.

4.25     Under Washington law, where a real estate transaction is structured as an option agreement, but has the purpose of creating a mortgage instead, courts have recognized the

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-218

1   arrangement as an "equitable mortgage." This equitable theory is meant to prevent parties

2   from contracting around lending laws designed to protect consumers from unscrupulous and

3   unfair lending practices.

4       4.26    Unison's HomeOwner Agreement product meets nearly all of the criteria for a

5   reverse mortgage loan and functions as a reverse mortgage.

6       4.27    Unison's HomeOwner Agreement thus creates an equitable reverse mortgage

7   loan and is subject to Washington law regulating such loans.

8       4.28    Unison is not licensed to make reverse mortgage loans in Washington.

9   **C.    Charles Boyd Olson and Janine Olson borrowed money from Unison.**

10      4.29    Homeowner Charles Boyd Olson is a 70-year-old senior buyer planner. He began

11  his career in the delivery business more than 40 years ago as a delivery driver and worked his

12  way up to managing other drivers. For the last 20 years, Mr. Olson has managed trucking and

13  delivery logistics for Cardinal Health.

14      4.30    In 1986, Mr. Olson purchased the property located at 3718 S 256th Ct, Kent, WA

15  98032 (the "Olson Property"). Mr. Olson took out a mortgage to purchase the Olson Property

16  from Valley Mortgage Corporation.

17      4.31    Homeowner Janine Olson is a 72-year-old mother of five grown children,

18  including a son with Down syndrome; a grandmother of eleven; and a great-grandmother of

19  five. Ms. Olson escaped a violent relationship with her ex-husband and the father of her five

20  children in 1987. She subsequently met Charles Boyd Olson, and they were married in 1990.

21  Ms. Olson and her children moved into the Olson Property, where the Olsons together raised

22  their five children.

23      4.32    In 1998, Mr. Olson conveyed the Olson Property to himself and Janine Olson as

24  joint tenants via a quitclaim deed.

25      4.33    Charles Boyd Olson and Janine Olson have resided together at the Olson

26  Property continuously since 1990. Ms. Olson's disabled son, who is now 40, continues to reside

27  at the Olson Property with them. The Olsons have also at times had custody of some of their

CLASS ACTION COMPLAINT - 6

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-219**

1   grandchildren, including custody of one grandson from 2017 to 2022, who resided at the Olson

2   Property during that time.

3       4.34    In the 36 years since Mr. Olson purchased the Olson Property, the Olsons have

4   never fallen more than a month behind on their mortgage payments.

5       4.35    The Olsons' mortgage has been assigned to various lenders over the years, and

6   the Olsons refinanced the Olson Property several times as well. The last such refinancing

7   occurred in January 2018. The Olsons' current mortgage is with Union Bank.

8       4.36    In 2019, the Olsons faced financial difficulty resulting from a number of life

9   circumstances, including Ms. Olson's being cut off from L&I payments (and the resulting credit

10   card debt the Olsons took on) and the costs of caring for their children and grandchildren.

11       4.37    Like many homeowners with moderate means, most of the Olsons' wealth was

12   tied up in their home. They feared they would not have enough money to pay their bills.

13       4.38    In early 2019, the Olsons received a flyer in the mail from Unison. The flyer

14   promised that the Olsons could "access the equity locked in [their] home" by entering into an

15   agreement with Unison that would include "no monthly payments and no interest."

16       4.39    After receiving the flyer, Mr. Olson called Unison and asked for information

17   about how the HomeOwner Agreement worked and what the application process looked like.

18   Because they needed money and did not think refinancing their home again was feasible at that

19   time, the Olsons decided to apply for a HomeOwner Agreement to obtain cash to cover their

20   credit card debt and daily living expenses.

21       4.40    On March 26, 2019, the Olsons signed the HomeOwner Agreement with Unison.

22   The HomeOwner Agreement provided that the Original Agreed Value of the Olson Property in

23   March 2019 was $370,000. Unison made an "investment payment" of $64,750 for an option to

24   purchase a 70% ownership interest in the Property.

25       4.41    Unison charged the Olsons $2,525.00 in "transaction fees."

26       4.42    On April 3, 2019, Unison recorded a deed of trust on the Olson Property in King

27   County securing the Olsons' performance of their obligations under the HomeOwner

CLASS ACTION COMPLAINT - 7

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Agreement. The deed of trust granted Unison the right to foreclose and sell the Olson Property in the event of default by the Olsons. On May 16, 2019, the deed of trust on the Olson Property was assigned by Unison to Odin New Horizon Real Estate Fund LP.

4.43 In 2021, the Olsons began to explore selling the Olson Property, which is located in an area with rising crime, and purchasing a home in a safer neighborhood. When the Olsons began calculating the costs of fixing up the Olson Property to sell, the amount owed on their first mortgage, and the amount Unison would be owed under the HomeOwner Agreement, however, the Olsons realized that they would receive almost nothing from the sale of the Olson Property and would be unable to afford a down payment on another home with the sale proceeds. As a result, the Olsons are stuck living in the Olson Property.

**D.      Maggie Colin borrowed money from Unison.**

4.44 Homeowner Maggie Colin is an 85-year-old retired dialysis nurse. She worked as a nurse for 51 years, during which time she always rented her home. When she retired at the age of 74, she was finally able to purchase a home for the first time in her life.

4.45 In December 2011, Ms. Colin purchased a condominium located at 900 Aurora Ave N Apt 206, Seattle, WA 98109 (the "Condominium"). Ms. Colin took out a $178,100 mortgage loan from Sterling Savings Bank to finance the purchase.

4.46 Ms. Colin has made all of her mortgage payments on time. She has never missed a payment.

4.47 In 2019, Ms. Colin faced financial difficulty after needing dental implants. She needed approximately $60,000 for this dental work and did not have sufficient cash on hand to pay the bills. Like many homeowners with moderate means, most of Ms. Colin's wealth was tied up in her home.

4.48 Around this time, Ms. Colin received a flyer in the mail from Unison. The flyer promised that Ms. Colin could "access the equity locked in [her] home" by entering into an agreement with Unison that would include "no monthly payments and no interest."

4.49 After receiving the flyer, Ms. Colin applied for a HomeOwner Agreement.

CLASS ACTION COMPLAINT - 8

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.50    On November 16, 2019, Ms. Colin signed the HomeOwner Agreement with Unison.

4.51    The HomeOwner Agreement provided that the Original Agreed Value of the Condominium in November 2019 was $565,000.

4.52    Unison made an "investment payment" of $60,000 for an option to purchase a 42.48% interest in the Condominium.

4.53    Unison charged Ms. Colin $2,340 in "transaction fees."

4.54    On November 21, 2019, Unison recorded a deed of trust on the Condominium in King County securing Ms. Colin's performance of her obligations under the HomeOwner Agreement. The deed of trust granted Unison the right to foreclose and sell the Condominium in the event of default by Ms. Colin.

4.55    Ms. Colin believed that the Unison HomeOwner Agreement was a loan and that she would be able to pay down the loan in increments over time.

4.56    After entering into the HomeOwner Agreement, Ms. Colin attempted to refinance the Condominium. She reached out to a bank about the possibility of refinancing. The bank told her that because the Condominium was subject to the HomeOwner Agreement, the bank was unwilling to offer her refinancing.

4.57    After Ms. Colin learned that the HomeOwner Agreement was preventing her from being able to refinance the Condominium, she asked Unison about the possibility of terminating her HomeOwner Agreement. Unison told Ms. Colin that under the terms of HomeOwner Agreement, she would owe Unison hundreds of thousands of dollars in order to terminate it.

4.58    Ms. Colin still owes approximately $200,000 on her first mortgage.

## V.    CLASS ACTION ALLEGATIONS

5.1    Pursuant to Civil Rule 23, the Homeowners bring this case on behalf of themselves and of a proposed Class defined as follows:

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

All persons who have entered into a HomeOwner Agreement with
Unison on a property located in Washington.

Excluded from the Class is any entity in which Unison has a controlling interest, officers or
directors of Unison, this Court and any employees assigned to work on this case, and all
employees of the law firms representing Plaintiffs and the Class.

5.2     Numerosity: Unison represents that there are over 9,000 "Unison HomeOwners"
in the United States spread across 29 states and the District of Columbia.

5.3     A non-exhaustive search of public records in several Washington counties has
identified at least 87 homes in Washington that have deeds of trust recorded in favor of Unison.

5.4     As a result, on information and belief, there are more than 100 members of the
proposed Class.

5.5     Commonality and Predominance: Unison's conduct is based on its standard
practices and form HomeOwner Agreements. As a result, the Homeowners' claims raise
common issues that predominate over individual issues. Adjudication of these common issues
in a single action has important and desirable advantages of judicial economy.

5.6     There exists questions of law and fact common to the Homeowners and the
proposed Class, including but not limited to:

    a.      Whether Unison's HomeOwner Agreement creates an equitable reverse
            mortgage loan;

    b.      Whether Unison is subject to the requirements of the Consumer Loan
            Act;

    c.      Whether Unison is licensed to make loans in Washington;

    d.      Whether Unison's HomeOwner Agreement has been approved by the
            Department of Financial Institutions;

    e.      Whether the transaction fees charged by Unison in connection with the
            HomeOwner Agreement were unlawful;

CLASS ACTION COMPLAINT - 10

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-223

f.   Whether the interest rate Unison collects on its HomeOwner Agreements is unlawful;

g.   Whether Unison requires consumers to obtain insurance or other financial products as a condition of entering into a HomeOwner Agreement;

h.   Whether requiring consumers to obtain insurance as a condition of entering into a HomeOwner Agreement is unlawful;

i.   Whether Unison's standard policy fails to refer applicants for HomeOwner Agreements to an independing housing counseling agency;

j.   Whether Unison's representation that its HomeOwner Agreement is "not a loan" is false, misleading, or deceptive;

k.   Whether Unison's indemnity clause in the HomeOwner Agreement is unenforceable;

l.   Whether Unison's fee-shifting clause in the HomeOwner Agreement is unenforceable;

m.   Whether Unison's conduct violates the Washington Consumer Protection Act;

n.   Whether Unison's conduct violates the Washington Consumer Loan Act; and

o.   The nature and extent of the injury to the Class and the measure of compensation for such injury.

5.7   <u>Typicality</u>: The Homeowners have claims that are typical of the claims of the Class. The Homeowners' claims, like the claims of the Class, arise out of the same common course of conduct, are subject to uniform policies, and are based on the same legal and remedial theories.

5.8   <u>Adequacy of Representation</u>: The Homeowners are appropriate representative parties for the Class and will fairly and adequately protect the interests of the Class. The

CLASS ACTION COMPLAINT - 11

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-224

1  Homeowners understand and are willing to undertake the responsibilities of acting in a

2  representative capacity on behalf of the proposed Class. The Homeowners have no interests

3  that directly conflict with the interests of the Class. The Homeowners have retained competent

4  and capable attorneys who are experienced trial lawyers with significant experience in complex

5  and class action litigation, including consumer class actions. The Homeowners and their counsel

6  are committed to prosecuting this action vigorously on behalf of the Class and have the

7  financial resources to do so.

8          5.9     Superiority: The Homeowners and members of the Class suffered harm and

9  damages as a result of Unison's unlawful and wrongful conduct. Absent a class action, however,

10  most Class members would find the cost of litigating their claims prohibitive. Class treatment is

11  superior to multiple individual suits or piecemeal litigation because it conserves judicial

12  resources, promotes consistency and efficiency of adjudication, provides a forum for small

13  claimants, and deters illegal activities. The Class members are readily identifiable from Unison's

14  records, and there will be no significant difficulty in the management of this case as a class

15  action.

16          5.10    Injunctive Relief: Unison's conduct is uniform as to all members of the Class.

17  Unison has acted or refused to act on grounds that apply generally to the Class, so that final

18  injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

19                          **VI.      FIRST CLAIM FOR RELIEF**

20          **Equitable Reverse Mortgage – Per Se Violations of the Consumer Protection Act**

21          6.1     The Homeowners and Unison are "persons" within the meaning of the

22  Washington Consumer Protection Act. RCW 19.86.010(1).

23          6.2     The Consumer Loan Act provides that "[a]ny violation of this chapter is not

24  reasonable in relation to the development and preservation of business and is an unfair and

25  deceptive act or practice and unfair method of competition in the conduct of trade of

26  commerce in violation of RCW 19.86.020."

27

CLASS ACTION COMPLAINT - 12

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-225

6.3     The Consumer Loan Act further provides that "the practices governed" by it "are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW."

6.4     Unison's HomeOwner Agreements with the Homeowners created equitable reverse mortgage loans. Therefore, Unison is subject to the provisions of the Consumer Loan Act applicable to reverse mortgage loans and lenders.

6.5     Unison is not licensed to provide consumer loans in Washington.

6.6     Unison's HomeOwner Agreement has not been approved by Washington's Department of Financial Institutions.

6.7     As a result, Unison violated the Consumer Loan Act by making loans to the Homeowners in Washington without licensing or approval.

6.8     Depending on changes in property values over the course of the Homeowner Agreement, Unison's loans to the Homeowners will likely exceed the 25% simple interest rate cap on licensed consumer loans. RCW 31.04.105(1). And because Unison was not licensed, it is not permitted to charge interest of more than 12%. RCW 19.52.020(1). As a result, Unison has violated the Consumer Loan Act by lending at interest rates above those permitted by law.

6.9     Unison's HomeOwner Agreement required the Homeowners to purchase and maintain homeowners' insurance as a condition of making the loan.

6.10    Unison violated the Consumer Loan Act, RCW 31.04.515(7) and RCW 31.04.515(8)(b), by requiring the Homeowners to purchase and maintain homeowner's insurance.

6.11    Unison failed to refer the Homeowners to an independent housing counseling agency prior to entering into HomeOwner Agreements. As a result, Unison violated the Consumer Loan Act. RCW 31.04.515(9); RCW 31.04.515(10).

6.12    Lenders are prohibited by the Consumer Loan Act from making "any statement or representation with regard to the rates, terms, or conditions for the lending of money that is false, misleading, or deceptive." RCW 31.04.135.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1       6.13    Unison violated this prohibition by advertising its product to the Homeowners as

2  an investment and not a loan.

3       6.14    Unison's HomeOwner Agreement purports to indemnify Unison from claims

4  relating to the property securing the loan. This provision violates the Consumer Loan Act to the

5  extent it is "a release of future damages for usury or other damages or penalties provided by

6  law." RCW 31.04.027(1)(k).

7       6.15    Therefore, Unison has violated the Consumer Loan Act in numerous ways. Each

8  such violation is an unfair and deceptive act or practice in trade or commerce and affects the

9  public interest.

10       6.16    Unison's unfair and deceptive acts or practices caused the Homeowners to lose

11  money charged as unlawful "transaction fees."

12       6.17    Unison's unfair and deceptive acts or practices have also injured the

13  Homeowners' property interests by substantially reducing their equity in their homes.

14       6.18    The Homeowners were also injured because their property rights were impaired

15  when they were not able to refinance due to the HomeOwner Agreement.

16       6.19    The Homeowners are therefore entitled to legal relief against Unison, including

17  recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further

18  relief as the Court may deem proper.

19       6.20    The Homeowners are also entitled to injunctive relief in the form of an order

20  prohibiting Unison from selling its unfair and deceptive HomeOwner Agreements to

21  Washington consumers.

22       6.21    The Homeowners are also entitled to reformation of the HomeOwner

23  Agreements to comply with Washington's lending laws and interest caps, and/or to rescission

24  of the HomeOwner Agreements.

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## VII.    SECOND CLAIM FOR RELIEF

### Violation of the Consumer Protection Act – Unfair Acts or Practices

7.1     The Homeowners and Unison are "persons" within the meaning of the Washington Consumer Protection Act.

7.2     Unison's conduct described in paragraphs 1.1-5.8 is unfair within the meaning of the Washington Consumer Protection Act.

7.3     Unison engaged in unfair acts or practices by marketing and selling its HomeOwner Agreement to the Homeowners and other Washington consumers in a manner that purposely attempts to avoid reverse mortgage lending laws. Unison's HomeOwner Agreements are immoral, unethical, oppressive, and/or unscrupulous.

7.4     Unison's marketing and sale of its HomeOwner Agreement occurred in trade or commerce within the meaning of the Washington Consumer Protection Act, and were and are capable of injuring a substantial portion of the public.

7.5     Unison's unfair acts or practices impact the public interest because they have injured the Homeowners, have injured at least hundreds of Washington consumers, and have the capacity to injure hundreds or thousands of other Washington residents. Moreover, Unison continues to market and sell its HomeOwner Agreement in Washington and, as a result, is likely to continue to injure the public.

7.6     As a direct and proximate result of Unison's unfair acts or practices, the Homeowners have suffered an injury in fact and lost money. Specifically, the Homeowners' injuries consist of the transaction fees they paid to Unison and the impairment to their property rights created by the HomeOwner Agreement and Unison's deeds of trust on their homes.

7.7     The Homeowners are therefore entitled to legal relief against Unison, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

7.8     The Homeowners are also entitled to injunctive relief in the form of an order prohibiting Unison from selling its unfair HomeOwner Agreements to Washington consumers.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   7.9     The Homeowners are also entitled to reformation of the HomeOwner

2   Agreements to comply with Washington's lending laws and interest caps, and/or to rescission

3   of the HomeOwner Agreements.

4               **VIII.     THIRD CLAIM FOR RELIEF**

5        **Violation of the Consumer Protection Act – Deceptive Acts or Practices**

6   8.1     The Homeowners and Unison are "persons" within the meaning of the

7   Washington Consumer Protection Act.

8   8.2     Unison's conduct described in paragraphs 1.1-5.8 is deceptive within the

9   meaning of the Washington Consumer Protection Act.

10   8.3     Unison engaged in deceptive acts or practices by marketing and selling its

11   HomeOwner Agreement to the Homeowners and other Washington consumers in a manner

12   that purposely misrepresents the nature of the product. Unison repeatedly represents that the

13   product is "not a loan," but its product is functionally a reverse mortgage loan. These acts or

14   practices are deceptive within the meaning of the CPA because they have the capacity to

15   deceive Washington consumers.

16   8.4     Unison's marketing and sale of its HomeOwner Agreement occurred in trade or

17   commerce within the meaning of the Washington Consumer Protection Act and were and are

18   capable of injuring a substantial portion of the public.

19   8.5     Unison's deceptive acts or practices impact the public interest because they have

20   injured the Homeowners, have injured at least hundreds of Washington consumers, and have

21   the capacity to injure hundreds or thousands of other Washington residents. Moreover, Unison

22   continues to market and sell its HomeOwner Agreement and, as a result, is likely to continue to

23   injure the public.

24   8.6     As a direct and proximate result of Unison's unfair acts or practices, the

25   Homeowners have suffered an injury in fact and lost money. Specifically, the Homeowners'

26   injuries consist of the transaction fees they paid to Unison and the impairment to their property

27   rights created by the HomeOwner Agreement and Unison's deeds of trust on their homes.

CLASS ACTION COMPLAINT - 16

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-229**

8.7     The Homeowners are therefore entitled to legal relief against Unison, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

8.8     The Homeowners are also entitled to injunctive relief in the form of an order prohibiting Unison from selling its deceptive HomeOwner Agreement to Washington consumers.

8.9     The Homeowners are also entitled to reformation of the HomeOwner Agreements to comply with Washington's lending laws and interest caps, and/or to rescission of the HomeOwner Agreements.

## IX.     FOURTH CLAIM FOR RELIEF

### Injunctive Relief on Behalf of Washington Consumers

9.1     Under the Washington Consumer Protection Act, "[a]ny person who is injured in his or her business or property" by a CPA violation "may bring a civil action in superior court to enjoin further violations." RCW 19.86.090.

9.2     For the reasons stated above, Unison has violated the Washington Consumer Protection Act, and the Homeowners have been injured in their property by those violations. As a result, the Homeowners have standing to seek an injunction to protect the public interest from future violations. *See Hockley v. Hargitt*, 82 Wn.2d 337, 350-51 (1973).

9.3     Therefore, the Homeowners seek an injunction prohibiting Unison from continuing its unfair and deceptive practices in Washington. Specifically, the Homeowners ask the Court to enjoin the use of Unison's HomeOwner Agreements in Washington.

## X.     FIFTH CLAIM FOR RELIEF

### Declaratory Relief – Fee Shifting Provision Unenforceable

10.1     Any person with an interest in a written contract "may have determined any questions of construction or validity arising under the … contract and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1     10.2    The HomeOwner Covenant Agreements between the Homeowners and Unison

2   contain attorneys' fees provisions. The Olsons' HomeOwner Covenant Agreement states, at

3   paragraph 9.8, "[i]f a lawsuit or arbitration proceeding … is commenced in connection or arising

4   out of the Option or the Unison HomeOwner Agreement or in connection with the

5   interpretation, enforcement or protection of Investor's Rights, the prevailing party, as

6   determined by the court or arbitrator, shall be entitled to recover court and other dispute

7   resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of

8   Investor's in-house counsel that are directly attributable to the specific matters on which they

9   prevailed."

10    10.3    Similarly, Ms. Colin's HomeOwner Covenant Agreement states, at paragraph

11  19.9, "[i]f a dispute arises out of the HomeOwner Agreement, then the prevailing party will be

12  entitled to reasonable attorney fees and costs."

13    10.4    The Homeowners seek a declaration that this fee-shifting provision is

14  unconscionable and unenforceable in this action because they bring claims under the

15  Washington Consumer Protection Act. The CPA provides for fee shifting only to a prevailing

16  plaintiff. The Washington Supreme Court has found that a mutual fee shifting term, such as the

17  one in the HomeOwner Covenant Agreement, is substantively unconscionable and therefore

18  unenforceable where the statute provides that only a prevailing plaintiff may recover fees.

19  *Gandee v. LDL Freedom Enters., Inc.*, 176 Wn.2d 598, 606 (2013).

20    10.5    Because the Homeowners are filing this Complaint, there is an existing dispute

21  about whether the Homeowners will be liable to pay Unison's attorneys' fees should Unison

22  prevail in this lawsuit.

23    10.6    The parties have genuinely opposing and substantial interests in this dispute, as

24  attorneys fees for litigation can cost tens of thousands, if not hundreds of thousands, of dollars.

25    10.7    A judicial determination of whether Unison will be permitted to seek to recover

26  their attorneys' fees if they prevail will provide the parties with certainty and finality regarding

27  their rights and the risks of continuing litigation.

CLASS ACTION COMPLAINT - 18

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**ER-231**

1                                 **XI.       PRAYER FOR RELIEF**

2       WHEREFORE, the Homeowners request relief as follows:

3       A.      Declaratory relief determining that the fee-shifting provision in the HomeOwner

4 Agreement is unenforceable in this action;

5       B.      Rescission of the HomeOwner Agreements;

6       C.      Reformation of the HomeOwner Agreements;

7       D.      Actual damages;

8       E.      Treble damages under the CPA;

9       F.      Injunctive relief prohibiting Unison from selling its HomeOwner Agreement to

10 Washington consumers;

11       G.      Attorneys' fees and costs of suit;

12       H.      Prejudgment interest; and

13       I.      Such other relief as the Court deems just and proper.

14       RESPECTFULLY SUBMITTED AND DATED this 1st day of December, 2022.

15                             TERRELL MARSHALL LAW GROUP PLLC

16

17                      By: /s/Beth E. Terrell, WSBA #26759
                           Beth E. Terrell, WSBA #26759

18                            Email: bterrell@terrellmarshall.com
                           Blythe H. Chandler, WSBA #43387

19                            Email: bchandler@terrellmarshall.com
                           Elizabeth A. Adams, WSBA #49175

20                            Email: eadams@terrellmarshall.com
                           936 North 34th Street, Suite 300

21                            Seattle, Washington 98103
                           Telephone: (206) 816-6603

22                            Facsimile: (206) 319-5450

23

24

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Umar I. Gebril, WSBA #58227
Email: umar@cascade-law.com
Joseph W. Moore, WSBA #44061
Email: joseph@cascade-law.com
CASCADE LAW PLLC
1604 Hewitt Avenue, Suite 515
Everett, Washington 98201
Telephone: (425) 300-5616

*Attorneys for Plaintiffs*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CHARLES BOYD OLSON, JANINE OLSON, and
MAGGIE COLIN,

                  Plaintiffs,

      v.

UNISON AGREEMENT CORPORATION, a
foreign corporation,

                  Defendant.

NO. 2:22-cv-01859-RAJ

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that Plaintiffs Charles Boyd Olson and Janine Olson appeal to the United States Court of Appeals for the Ninth Circuit from the amended judgment entered on October 12, 2023 (Dkt No. 45), attached hereto as <u>Exhibit A</u>.

RESPECTFULLY SUBMITTED AND DATED this 16th day of October, 2023.

TERRELL MARSHALL LAW GROUP PLLC

By: <u>/s/Beth E. Terrell, WSBA #26759</u>
    Beth E. Terrell, WSBA #26759
    Email: bterrell@terrellmarshall.com
    Blythe H. Chandler, WSBA #43387
    Email: bchandler@terrellmarshall.com
    Elizabeth A. Adams, WSBA #49175
    Email: eadams@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

NOTICE OF APPEAL - 1
Case No. 2:22-cv-01859-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-234

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Umar I. Gebril, WSBA #58227
Email: umar@cascade-law.com
Joseph W. Moore, WSBA #44061
Email: joseph@cascade-law.com
CASCADE LAW PLLC
2707 Colby Avenue, Suite 1420
Everett, Washington 98201
Telephone: (425) 998-8999

*Attorneys for Plaintiffs*

NOTICE OF APPEAL - 2
Case No. 2:22-cv-01859-RAJ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ER-235

# EXHIBIT A

# United States District Court
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

|  |  |
|---|---|
| CHARLES BOYD OLSON, et al., | **AMENDED JUDGMENT IN A CIVIL CASE** |
| Plaintiffs, | CASE NO: 2:22-cv-01859-RAJ |
| v. | |
| UNISON AGREEMENT CORPORATION, | |
| Defendant. | |

_____ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

__X__ **Decision by Court**. This action came to consideration before the Court. The issues have been considered and a decision has been rendered.

THE COURT HAS ORDERED THAT:

Judgment is entered in favor of Defendant Unison Agreement Corporation, against Plaintiffs Charles Boyd Olson and Janine Olson.

DATED this 12th day of October, 2023.

RAVI SUBRAMANIAN,
Clerk of the Court

By: _/s/ Victoria Ericksen_
Deputy Clerk

**Query    Reports    Utilities    Help    Log Out**

CLOSED,APPEAL,JURYDEMAND

# U.S. District Court
# United States District Court for the Western District of Washington (Seattle)
# CIVIL DOCKET FOR CASE #: 2:22-cv-01859-RAJ

Olson et al v. Unison Agreement Corporation          Date Filed: 12/30/2022
Assigned to: Judge Richard A. Jones             Date Terminated: 10/06/2023
Case in other court:  King County Superior Court, 22-00002-   Jury Demand: Plaintiff
                   19873-7 SEA            Nature of Suit: 190 Contract: Other
               9th Circuit Court of Appeals, 23-02835  Jurisdiction: Diversity
Cause: 28:1441 Petition For Removal--Other Contract

| Date Filed | # | Docket Text |
|---|---|---|
| 12/30/2022 | 1 | NOTICE OF REMOVAL from King County Superior Court, case number 22-2-19873-7 SEA; (Receipt # AWAWDC-7830858), filed by Unison Agreement Corporation. (Attachments: # 1 Complaint, # 2 Exhibit B, # 3 Exhibit C, # 4 Civil Cover Sheet) (Rosenberger, Michael) (Entered: 12/30/2022) |
| 12/30/2022 | 2 | DECLARATION of Theodor Haugen re 1 Notice of Removal, by Defendant Unison Agreement Corporation (Rosenberger, Michael) (Entered: 12/30/2022) |
| 12/30/2022 | 3 | NOTICE of Related Case(s) 2:22-cv-01789-RAJ, by Defendant Unison Agreement Corporation. (Rosenberger, Michael) (Entered: 12/30/2022) |
| 12/30/2022 | 4 | CORPORATE DISCLOSURE STATEMENT identifying Corporate Parent Real Estate Equity Exchange Inc for Unison Agreement Corporation. Filed pursuant to Fed.R.Civ.P 7.1. Filed by Unison Agreement Corporation (Rosenberger, Michael) (Entered: 12/30/2022) |
| 01/03/2023 | 5 | DEMAND for JURY TRIAL by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson (Gebril, Umar) (Entered: 01/03/2023) |
| 01/03/2023 | | Judge Ricardo S. Martinez added. (JWC) (Entered: 01/03/2023) |
| 01/03/2023 | 6 | LETTER from Clerk re receipt of case from King County Superior Court and advising of WAWD case number and judge assignment. **JURY DEMAND - properly submitted federal court jury demand on file** (JWC) (Entered: 01/03/2023) |
| 01/04/2023 | 7 | ORDER REGARDING INITIAL DISCLOSURES, JOINT STATUS REPORT AND EARLY SETTLEMENT by Judge Ricardo S. Martinez. Joint Status Report due by 2/15/2023, FRCP 26(f) Conference Deadline is 2/1/2023, Initial Disclosure Deadline is 2/8/2023. (LC) (Entered: 01/04/2023) |
| 01/26/2023 | 8 | MOTION to Compel *Arbitration of Plaintiff Colin's Dispute*, filed by Defendant Unison Agreement Corporation. (Attachments: # 1 Proposed Order) Noting Date 2/17/2023, (Rosenberger, Michael) (Entered: 01/26/2023) |
| 01/26/2023 | 9 | DECLARATION of Michael Rosenberger filed by Defendant Unison Agreement Corporation re 8 MOTION to Compel *Arbitration of Plaintiff Colin's Dispute* |

ER-238

| | | (Rosenberger, Michael) (Entered: 01/26/2023) |
|---|---|---|
| 01/26/2023 | [10](#) | DECLARATION of Theodor Haugen filed by Defendant Unison Agreement Corporation re [8](#) MOTION to Compel *Arbitration of Plaintiff Colin's Dispute* (Rosenberger, Michael) (Entered: 01/26/2023) |
| 01/27/2023 | [11](#) | APPLICATION OF ATTORNEY Jeremy M. Creelan FOR LEAVE TO APPEAR PRO HAC VICE for Defendant Unison Agreement Corporation (Fee Paid) Receipt No. AWAWDC-7865327 (Rosenberger, Michael) (Entered: 01/27/2023) |
| 01/27/2023 | [12](#) | APPLICATION OF ATTORNEY Kelly M. Morrison FOR LEAVE TO APPEAR PRO HAC VICE for Defendant Unison Agreement Corporation (Fee Paid) Receipt No. AWAWDC-7865331 (Rosenberger, Michael) (Entered: 01/27/2023) |
| 01/27/2023 | [13](#) | APPLICATION OF ATTORNEY Joseph L. Noga FOR LEAVE TO APPEAR PRO HAC VICE for Defendant Unison Agreement Corporation (Fee Paid) Receipt No. AWAWDC-7865334 (Rosenberger, Michael) (Entered: 01/27/2023) |
| 01/27/2023 | 14 | ORDER re [11](#) Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Jeremy M Creelan for Defendant Unison Agreement Corporation, by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).*(CDA) (Entered: 01/27/2023) |
| 01/27/2023 | 15 | ORDER re [12](#) Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Kelly M Morrison for Defendant Unison Agreement Corporation, by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).*(CDA) (Entered: 01/27/2023) |
| 01/27/2023 | 16 | ORDER re [13](#) Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Joseph L Noga for Defendant Unison Agreement Corporation, by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).*(CDA) (Entered: 01/27/2023) |
| 01/30/2023 | [17](#) | MOTION to Dismiss *the Olsons' Claims and Colin's Claims in the Event the Motion to Compel Colin to Arbitration Is Denied*, filed by Defendant Unison Agreement Corporation. Oral Argument Requested. (Attachments: # [1](#) Proposed Order) Noting Date 2/24/2023, (Rosenberger, Michael) (Entered: 01/30/2023) |
| 01/30/2023 | [18](#) | DECLARATION of Michael Rosenberger filed by Defendant Unison Agreement Corporation re [17](#) MOTION to Dismiss *the Olsons' Claims and Colin's Claims in the Event the Motion to Compel Colin to Arbitration Is Denied* (Rosenberger, Michael) (Entered: 01/30/2023) |
| 01/30/2023 | [19](#) | DECLARATION of Theodor Haugen filed by Defendant Unison Agreement Corporation re [17](#) MOTION to Dismiss *the Olsons' Claims and Colin's Claims in the Event the Motion to* |

| | | |
|---|---|---|
| | | *Compel Colin to Arbitration Is Denied* (Attachments: # 1 Exhibit 1-1 to 1-5, # 2 Exhibit 2-1 to 2-5, # 3 Exhibit 3, # 4 Exhibit 4)(Rosenberger, Michael) (Entered: 01/30/2023) |
| 02/02/2023 | 20 | MOTION to Stay *Discovery Pending Ruling on Defendant's Motion to Compel Arbitration and Motion to Dismiss*, filed by Defendant Unison Agreement Corporation. (Attachments: # 1 Proposed Order) Noting Date 2/17/2023, (Rosenberger, Michael) (Entered: 02/02/2023) |
| 02/02/2023 | 21 | DECLARATION of Michael Rosenberger filed by Defendant Unison Agreement Corporation re 20 MOTION to Stay *Discovery Pending Ruling on Defendant's Motion to Compel Arbitration and Motion to Dismiss* (Rosenberger, Michael) (Entered: 02/02/2023) |
| 02/02/2023 | 22 | DECLARATION of Theodor Haugen filed by Defendant Unison Agreement Corporation re 20 MOTION to Stay *Discovery Pending Ruling on Defendant's Motion to Compel Arbitration and Motion to Dismiss* (Rosenberger, Michael) (Entered: 02/02/2023) |
| 02/13/2023 | 23 | RESPONSE, by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson, to 20 MOTION to Stay *Discovery Pending Ruling on Defendant's Motion to Compel Arbitration and Motion to Dismiss*. (Attachments: # 1 Proposed Order Proposed Order Denying Defendants Motion to Stay Discovery)(Gebril, Umar) (Entered: 02/13/2023) |
| 02/13/2023 | 24 | DECLARATION of Charles Boyd Olson re 23 Response to Motion, by Plaintiff Charles Boyd Olson (Gebril, Umar) (Entered: 02/13/2023) |
| 02/13/2023 | 25 | DECLARATION of Maggie Colin re 23 Response to Motion, by Plaintiff Maggie Colin (Gebril, Umar) (Entered: 02/13/2023) |
| 02/13/2023 | 26 | RESPONSE, by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson, to 8 MOTION to Compel *Arbitration of Plaintiff Colin's Dispute*. Oral Argument Requested. (Attachments: # 1 Proposed Order)(Chandler, Blythe) (Entered: 02/13/2023) |
| 02/13/2023 | 27 | DECLARATION of Blythe H. Chandler filed by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson re 8 MOTION to Compel *Arbitration of Plaintiff Colin's Dispute* (Attachments: # 1 Exhibit 1)(Chandler, Blythe) (Entered: 02/13/2023) |
| 02/14/2023 | 28 | JOINT STATUS REPORT signed by all parties. Estimated Trial Days: 7. Filed by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson.(Chandler, Blythe) (Entered: 02/14/2023) |
| 02/17/2023 | 29 | REPLY, filed by Defendant Unison Agreement Corporation, TO RESPONSE to 20 MOTION to Stay *Discovery Pending Ruling on Defendant's Motion to Compel Arbitration and Motion to Dismiss* (Rosenberger, Michael) (Entered: 02/17/2023) |
| 02/17/2023 | 30 | REPLY, filed by Defendant Unison Agreement Corporation, TO RESPONSE to 8 MOTION to Compel *Arbitration of Plaintiff Colin's Dispute* (Rosenberger, Michael) (Entered: 02/17/2023) |
| 02/21/2023 | 31 | RESPONSE, by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson, to 17 MOTION to Dismiss *the Olsons' Claims and Colin's Claims in the Event the Motion to Compel Colin to Arbitration Is Denied*. Oral Argument Requested. (Attachments: # 1 Proposed Order)(Terrell, Beth) (Entered: 02/21/2023) |
| 02/21/2023 | 32 | DECLARATION of Charles Boyd Olson filed by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson re 17 MOTION to Dismiss *the Olsons' Claims and Colin's Claims in the Event the Motion to Compel Colin to Arbitration Is Denied* (Terrell, Beth) (Entered: 02/21/2023) |
| 02/24/2023 | 33 | REPLY, filed by Defendant Unison Agreement Corporation, TO RESPONSE to 17 MOTION to Dismiss *the Olsons' Claims and Colin's Claims in the Event the Motion to Compel Colin to Arbitration Is Denied* (Rosenberger, Michael) (Entered: 02/24/2023) |

| 02/24/2023 | 34 | DECLARATION of Kelly M. Morrison filed by Defendant Unison Agreement Corporation re 17 MOTION to Dismiss *the Olsons' Claims and Colin's Claims in the Event the Motion to Compel Colin to Arbitration Is Denied* (Rosenberger, Michael) (Entered: 02/24/2023) |
|---|---|---|
| 02/28/2023 | 35 | ORDER REASSIGNING CASE. Upon review of the file in this matter, the Court finds cause for re-assignment. This case shall now be re-assigned to the Honorable Richard A. Jones, United States District Judge. All future documents filed in this case must bear cause numbers ending in "RAJ" and must bear the new Judge's name in the upper right-hand corner of the document. Signed by Judge Ricardo S. Martinez. (SB) (Entered: 02/28/2023) |
| 02/28/2023 | 36 | STANDING ORDER for Civil Cases Assigned to Judge Richard A. Jones. (VE) (Entered: 02/28/2023) |
| 02/28/2023 | | NOTICE TO THE PARTIES: The Court acknowledges it has received and reviewed the parties' 28 Joint Status Report, but finds good cause to defer entry of a case schedule pending the Court's ruling on the pending motions. (VE) (Entered: 02/28/2023) |
| 04/05/2023 | 37 | NOTICE of Supplemental Authority re 31 Response to Motion, by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson (Chandler, Blythe) (Entered: 04/05/2023) |
| 06/27/2023 | 38 | ORDER granting Defendant's 8 Motion to Compel Arbitration. Unison, as the proponent of arbitration, must submit a brief report on the status of the arbitration beginning on 8/15/2023, and on the fifteenth day of every second month thereafter. Signed by Judge Richard A. Jones. (SS) (Entered: 06/27/2023) |
| 08/15/2023 | 39 | STATUS REPORT *re Arbitration* by Defendant Unison Agreement Corporation (Rosenberger, Michael) (Entered: 08/15/2023) |
| 08/30/2023 | 40 | ORDER granting Defendant's 17 Motion to Dismiss without prejudice. Plaintiffs have 21 days from this Order to file an Amended Complaint. Having granted Unison's motion to dismiss, the Court DENIES the motion to stay discovery as moot. Dkt. # 20 . Signed by Judge Richard A. Jones. (SB) (Entered: 08/30/2023) |
| 09/20/2023 | 41 | NOTICE *of Intent Not to Amend and Request for Entry of Judgment* ; filed by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson. (Chandler, Blythe) (Entered: 09/20/2023) |
| 10/06/2023 | 42 | JUDGMENT BY COURT in favor of Defendant Unison Agreement Corporation against Plaintiffs Charles Boyd Olson, Janine Olson, and Maggie Colin. (VE) (Entered: 10/06/2023) |
| 10/11/2023 | 43 | Unopposed MOTION to Modify Judgment , filed by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson. (Attachments: # 1 Proposed Order) Noting Date 10/11/2023, (Chandler, Blythe) (Entered: 10/11/2023) |
| 10/12/2023 | 44 | MINUTE ORDER (text only) granting 43 Unopposed MOTION to Modify Judgment filed by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson. Amended Judgment to be entered. Authorized by Judge Richard A. Jones. (VE) (Entered: 10/12/2023) |
| 10/12/2023 | 45 | AMENDED JUDGMENT in favor of Defendant Unison Agreement Corporation, against Plaintiffs Charles Boyd Olson and Janine Olson. (VE) (Entered: 10/12/2023) |
| 10/16/2023 | 46 | NOTICE OF APPEAL to Ninth Circuit (23-2835) re 45 Amended Judgment by Plaintiffs Charles Boyd Olson and Janine Olson. $505, receipt number AWAWDC-8202314 (cc: USCA) (Attachments: # 1 Exhibit A)(Terrell, Beth) Modified on 10/19/2023 to add CCA#. (RE) (Entered: 10/16/2023) |
| 10/16/2023 | 47 | STATUS REPORT *re Colin Arbitration* by Defendant Unison Agreement Corporation (Caslin, Brent) (Entered: 10/16/2023) |

| 10/17/2023 | [48](#) | TIME SCHEDULE ORDER/USCA CASE NUMBER (23-2835) as to [46](#) Notice of Appeal, filed by Charles Boyd Olson and Janine Olson. (RE) (Entered: 10/19/2023) |
| 10/26/2023 | [49](#) | NOTICE of Voluntary Dismissal as to party(s) Maggie Colin, filed by Plaintiffs Maggie Colin, Charles Boyd Olson, Janine Olson. (Chandler, Blythe) (Entered: 10/26/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/23/2024 06:57:28 | | | |
| **PACER Login:** | mattwessler | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-01859-RAJ |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2024, I electronically filed the foregoing excerpts of record with Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the CM/ECF system. All participants are registered for CM/ECF users and will be served by the CM/ECF system.

*/s/ Matthew W.H. Wessler*
MATTHEW W.H. WESSLER