**No. 23-2835**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Charles Boyd Olson, Janine Olson, and Maggie Colin,

*Plaintiff-Appellant,*

v.

Unison Agreement Corporation, a foreign corporation,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Washington

**WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS
AMICUS CURIAE BRIEF IN SUPPORT OF NEITHER PARTY AND
REVERSAL OF THE DISTRICT COURT**

Robert W. Ferguson
Attorney General of Washington
Julia Eisentrout
Assistant Attorney General
1125 Washington Street SE
PO Box 40100
Olympia, WA 998504-0100
(360) 664-9006
Julia.Eisentrout@atg.wa.gov

*Attorneys for Amicus Curiae*
Washington State Department of Financial
Institutions

i

# TABLE OF CONTENTS

**I.** INTEREST OF THE WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS AND SUMMARY OF ITS POSITION .......1

**II.** CONSENT TO FILING AND COMPLIANCE WITH FEDERAL RULES OF APPELLATE PROCEDURE 29(a)(4)(E).....................................................2

**III.** STATEMENT OF THE CASE ........................................................................2

**IV.** SUMMARY OF THE ARGUMENT..................................................................5

**V.** ARGUMENT ...............................................................................................6

     **A.** UNISON HOMEOWNER AGREEMENTS ARE MORTGAGES .....6

          **1.** The Agreement is subject to mortgage regulation under Washington law.........................................................................7

          **2.** In the alternative, the Agreements are equitable mortgages.....11

          **3.** The Agreement is not an option contract.................................15

     **B.** THE DISTRICT COURT ERRED IN ITS RELIANCE ON *FOSTER* AND THE ORDER OF DISMISSAL SHOULD BE REVERSED ...17

**VI.** CONCLUSION ........................................................................................20

ii

# TABLE OF AUTHORITIES

**Cases**

*Beadle v. Barta*,
123 P.2d 761, 763 (Wash. 1942) ................................................................12

*Deutsche Bank Nat. Tr. Co. v. Slotke*,
367 P.3d 600, 603 (Wash. Ct. App. 2016) ....................................................9

*Foster v. Equitykey Real Est. Invs. L.P.*,
2017 WL 1862527,
(N.D. Cal. May 9, 2017) ................................................................ 5, 6, 18, 19

*Hoover v. Bouffleur*,
133 P. 602, 603–04 (Wash. 1913) .................................................... 12, 13, 14

*Hopkins v. Barlin*,
196 P.2d 347, 350 (Wash. 1948) ............................................................ 16, 17

*Johnson v. Nat'l Bank of Commerce of Tacoma*,
118 P. 21, 22–23 (Wash. 1911) .............................................................. 12, 14

*Pardee v. Jolly*,
182 P.3d 967, 973 (Wash. 2008) ...............................................................16

*Phillips v. Blaser*,
125 P.2d 291 (Wash. 1942) ............................................................ 12, 14, 15

*Pittwood v. Spokane Sav. & Loan Soc.*,
141 Wash. 229, 233, 251 P. 283 (1926) .......................................................14

*Whitworth v. Enitai Lumber Co.*,
220 P.2d 328, 330 (Wash. 1950) ...............................................................15

**Statutes**

Wash. Admin. Code § 208-620-510(6) ...................................................8, 9

Wash. Rev. Code § 19.144.............................................................................1

Wash. Rev. Code § 31.04................................................................................1, 5

Wash. Rev. Code § 31.04.010 (24)...............................................................7

Wash. Rev. Code § 31.04.010(14)..................................................................7

Wash. Rev. Code § 31.04.015 (24).................................................................7

Wash. Rev. Code § 31.04.015(14)..................................................................7

Wash. Rev. Code § 31.04.105.........................................................................4

Wash. Rev. Code § 61.24.020.................................................................. passim

Wash. Rev. Code §19.144..............................................................................9

Wash. Rev. Code §19.144.005........................................................................9

Wash. Rev. Code §19.144.010(8)..................................................................10

Wash. Rev. Code §31.04.105(1)....................................................................10

Wash. Rev. Code §31.04.105(2)....................................................................10

**Rules**

Fed. R. App. P. 29(a)(2)................................................................................2

Fed. R. App. P. 29(a)(4)(E)...........................................................................2

## I.  INTEREST OF THE WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS AND SUMMARY OF ITS POSITION

The Washington State Department of Financial Institutions ("Department") protects consumers and regulates financial services within Washington State. Such regulation, authorized in part through the Consumer Loan Act, Wash. Rev. Code § 31.04 and the Mortgage Lending and Homeownership Act, Wash. Rev. Code § 19.144, extends to financial transactions that fall under the definition of "mortgage."

The Department has unique regulatory experience regarding financial products that do not explicitly include terms such as "loan" or "mortgage," but nevertheless, are subject to the Department's authority. The Department submits this brief as amicus curiae to address the issue of whether Unison's Homeowner Agreement ("Agreement") qualifies as a mortgage under Washington State statutory definitions and case law. The U.S. District Court for the Western District of Washington failed to conduct a complete analysis of the Agreement when it found that the Agreement was an option contract. The Department is concerned that such a determination is inconsistent with Washington law and would hinder its ability to protect consumers from lenders attempting to skirt Washington regulations. These types of agreements fractionalize ownership of the primary residence, and splinter the equity a homeowner builds over time, while avoiding the regulations imposed on mortgage lenders to protect borrowers.

This Court should reverse the District Court's dismissal of the action because Unison's Homeowner Agreement is a mortgage by definition and effect under Washington law.

## II. CONSENT TO FILING AND COMPLIANCE WITH FEDERAL RULES OF APPELLATE PROCEDURE 29(A)(4)(E)

Both parties have consented to the filing of the Department's amicus curiae brief. *See* Fed. R. App. P. 29(a)(2). No party's counsel authored the brief in whole or in part; no party's counsel contributed money that was intended to fund preparing or submitting the brief, nor did any other person, outside of the Department and/or counsel for the Department. *See* Fed. R. App. P. 29(a)(4)(E).

## III. STATEMENT OF THE CASE

Unison offers what it calls an option contract: in exchange for an advance of funds, the homeowner grants Unison the "option to purchase" a specified percentage of interest in the homeowner's primary residence. 1-ER-80-84. One such Agreement[1] provides in part:

The Unison Investment Payment is not a loan. The Unison Investment Payment is not a principal amount which Investor is contractually or otherwise entitled to recover at Term or at Option exercise. The Investor Proceeds may be greater than, equal to, or less than the Unison Investment Payment, or zero, depending upon the change in value of the Property (the difference between the Original Agreed Value

---

[1] Reference to the Agreement is meant to include any and all documents signed by the homeowners and Unison that discuss the terms of the contract between the two, as identified in the Excerpt of Record.

2

and the Ending Agree Value) between the Effective Date and the Exercise Event. Owner will not be required to make any monthly interest or any other periodic payments to Investor calculated upon the amount of the Unison Investment Payment, nor will any periodic payment obligations be imposed upon or accrue on the amount of the Unison Investment Payment as indebtedness to Owner.

1-ER-82.

The term of the Agreement is 30 years, similar to a standard residential mortgage term. 1-ER-80. Also similar to a mortgage, the homeowner pays Unison transaction fees as part of the Agreement in order to obtain the advance payment. 1-ER-164. In exchange, the homeowner agrees to grant Unison the "option to purchase" a percentage interest in the homeowner's primary residence at an agreed upon price, based on the value of the property at the time the homeowner and Unison enter the agreement. 1-ER-80, 83. Like a mortgage lender, Unison places a lien on the homeowner's primary residence to secure the option to purchase and performance by the homeowner under the Agreement. 1-ER-62. The Agreement also sets forth events of default and other conditions that trigger the requirement to liquidate the primary residence to pay Unison. 1-ER-80-81. These events include, but are not limited to: (1) the homeowner no longer occupying the property as his or her primary residence; (2) the homeowner becoming delinquent on any obligation on the property, such as other loans, or property taxes; and (3) the homeowner failing to maintain insurance on the property. 1-ER-99. Often,

3

mortgage borrowers are required to occupy the property as their primary residence, maintain insurance, and pay property taxes.

In addition, Unison prohibits homeowners from increasing the total principal balance of loans secured by liens on the homeowner's property. 1-ER-108-109. The Agreements make clear that Unison only exercises the option to purchase in order to then sell the home and liquidate its interest. *E.g.*, 1-ER-92, 95, 96, 176 (provisions providing for liquidation of Unison's recorded percentage property interest).

Functionally, Unison makes the investor payment to a homeowner, and secures the Agreement with a deed of trust, with the expectation that property values will increase, as they typically do over time. 1-ER-171. Instead of charging interest on the initial payment, Unison charges the homeowner a share in the increased value of the home. When the homeowner becomes obligated to pay Unison under the Agreement, and their property value has increased, Unison could receive a payment that far exceeds the initial payment provided to the homeowners, and far exceeds any interest and fees it could have charged under a traditional mortgage and the consumer protection statutes applicable to mortgages. *Id*. *See also* Wash. Rev. Code § 31.04.105 (limiting interest rates and origination fees). Without the application of the Consumer Loan Act, Unison avoids regulations that protect consumers such as interest and fee caps, and is able to

4

collect double, triple, and beyond the amount of the initial investor payment given to the homeowner, depending on market value appreciation.

The District Court dismissed plaintiffs' suit pursuant to Unison's Motion to Dismiss, citing *Foster v. Equitykey Real Est. Invs. L.P.*, 2017 WL 1862527, (N.D. Cal. May 9, 2017). The District Court found that the Agreements were "almost identical" to the co-investment options contract the *Foster* court held was not a loan. Order Granting Motion to Dismiss, p, 3. However, *Foster* focused on whether the agreement at issue there was subject to the Federal Truth in Lending Act if so, whether it had violated any of those provisions. *Foster v. Equitykey Real Est. Invs. L.P.*, 2017 WL 1862527. The District Court in *Foster* did not analyze whether the Agreements were subject to the Consumer Loan Act. *Id*. As analyzed under these statutes and the applicable case law, the Department submits that the Agreements are mortgages and subject to regulation as such.

## IV. SUMMARY OF THE ARGUMENT

The Agreement is a mortgage pursuant to Washington law. Under relevant provisions of the Washington Consumer Loan Act, Wash. Rev. Code § 31.04 the Agreement so closely resembles a mortgage that there should be no legal distinction between the two. Further, Unison records a lien on the homeowner's property with a deed of trust, and under Wash. Rev. Code § 61.24.020, "a deed of trust is subject to all laws relating to mortgages on real property." In addition, even

5

if the Court concludes that these agreements are not subject to the Consumer Loan Act, under Washington case law, the Agreement is so like a mortgage it qualifies as an equitable mortgage. Finally, the Agreement is not a true option contract to purchase real estate.

Because the Agreements are mortgage loans, and not option contracts for the purchase of real estate, the District Court erred in its application of *Foster v. Equitykey Real Est. Invs. L.P.*, 2017 WL 1862527, (N.D. CAL. MAY 9, 2017). The applicability of the Washington Consumer Loan Act and the Deeds of Trust Act was not before the *Foster* court. As such, the District Court's reliance on *Foster* in support of dismissal is misplaced.

## V.     ARGUMENT

### A.     UNISON HOMEOWNER AGREEMENTS ARE MORTGAGES

Under applicable Washington statutes, the Agreement meets the definition of a residential mortgage. Additionally, through Unison's use of a deed of trust to secure the Agreement, it is subject to laws relating to mortgages under Wash. Rev. Code § 61.24.020. In the alternative, assuming for the purposes of argument that the Agreement does not meet the statutory definition of a residential mortgage, Washington case law requires that agreements like these qualify as equitable mortgages. Finally, the Unison Homeowner Agreements are not option contracts to purchase real estate under applicable law.

6

**1.    The Agreement is subject to mortgage regulation under Washington law.**

The Agreement at issue in this case meets the definition of a residential mortgage under Washington law, and the use of the deed of trust to secure Unison's interest subjects the same to mortgage regulation. First, as set forth in the Consumer Loan Act, a "loan" is "a sum of money lent at interest or for a fee or other charge and includes both open-end and closed-end loan transactions." Wash. Rev. Code § 31.04.015(14). The Act further defines a "residential mortgage loan" as:

> *any loan primarily for personal, family, or household use that is secured by a mortgage, deed of trust,* or other consensual security interest on a dwelling, as defined in the truth in lending act, or residential real estate upon which is constructed or intended to be constructed a dwelling.

Wash. Rev. Code § 31.04.015 (24) (emphasis added).

Unison advances money to the homeowner for a fee or other charge, meeting the definition of a loan under the Consumer Loan Act. The homeowner pays a transaction cost up front, and if their home increases in value, will end up paying Unison much more than the initial investment payment. The initial investment payment is for the personal, household, or family use of the homeowner: to pay off debt, or to pay living expenses. 1-ER-220. The Agreement was secured by a deed of trust. 1-ER-135. This process meets the definition of residential mortgage loan under the Consumer Loan Act. *See* Wash. Rev. Code § 31.04.010(14), (24).

7

The Department has further clarified by rule that it regulates the type of home equity sharing agreement at issue here, where a lender shares in the appreciation of a borrower's home in exchange for a loan. Specifically, the Department has additional disclosure requirements for "shared appreciation mortgages" and mortgages with shared appreciation provisions. Wash. Admin. Code § 208-620-510(6). In general, the Department has described a "shared appreciation mortgage" as loan products that "generally do not require interest or monthly payments and are generally a silent second mortgage in exchange for a share of the home's future appreciation or value."[2] *See* Product Spotlight: Shared Appreciation Mortgages, https://dfi.wa.gov/newsletter/winterspring-2023-cs-newsletter/product-spotlight-shared-appreciation-mortgages . By rule, the Department requires entities that offer these shared appreciation mortgages to provide additional written disclosures to borrowers, with specific information

---

[2] Neither "home equity sharing agreement" nor "shared appreciation mortgage" are explicitly defined in the Consumer Loan Act. In 2024, Engrossed Substitute Senate Bill 5968 proposed an amendment to the Consumer Loan Act that would add "home equity sharing agreements" to the definition of residential mortgage loan.

The Department did not sponsor the bill, and the legislature has not passed ESSB 5968. as of the writing of this brief. In anticipation that Unison may rely on this proposed legislation, the Department notes that under Washington law, courts "are loathe to ascribe any meaning to the Legislature's failure to pass a bill into law." *State v. Cronin*, 923 P.2d 694, 697 (Wash. 1996).

about the nature of the agreement, as well as being required to provide other mortgage disclosures required by law. Wash. Admin. Code § 208-620-510(6).

As discussed, Unison records its security interest using a deed of trust. 1-ER-135-146. Per Wash. Rev. Code § 61.24.020, "a deed of trust is subject to all laws relating to mortgages on real property." Under Washington case law, a deed of trust is a "species of mortgage." *Deutsche Bank Nat. Tr. Co. v. Slotke*, 367 P.3d 600, 603 (Wash. Ct. App. 2016). Unison's use of a deed of trust to secure its rights under the Agreement thus subjects the Agreement to mortgage law, including all applicable provisions of the Consumer Loan Act.

Even the application process Unison employs invokes the process used to apply for a mortgage. Under the Mortgage Lending and Homeownership Act, Wash. Rev. Code §19.144, the Washington legislature noted the importance of encouraging responsible lending practices, and preserving access to mortgages with fair and equitable terms. Wash. Rev. Code §19.144.005. That Act also defines the "mortgage lending process" as:

> the process through which a person seeks or obtains a residential mortgage loan or residential mortgage loan modification including, but not limited to, solicitation, application, or origination; negotiation of terms; third-party provider services; underwriting; signing and closing; and funding of the loan. Documents involved in the mortgage lending process include, but shall not be limited to, uniform residential loan applications or other loan applications, appraisal reports, settlement statements, supporting personal documentation for loan applications such as W-2 forms, verifications of income and

9

employment, bank statements, tax returns, payroll stubs, and any required disclosures.

Wash. Rev. Code §19.144.010(8).

Under these statutory provisions, Unison takes an application for, and if approved, issues a mortgage. In order to obtain a homeowner agreement, Unison completes a credit check, requires verification of income and requires borrowers to attest there have been no changes to the homeowner's financial condition prior to entering the agreement, the same way a borrower would apply and provide such information in order to obtain a traditional mortgage. 1-ER- 57, 165. Unison also requires an appraisal and completes a loan closing with a title company, just as a lender would when issuing a mortgage loan. *See* 1-ER-57, 168. Unison's application process is virtually identical to the mortgage lending process defined in Wash. Rev. Code §19.144.010(8).

Public policy also weighs in favor of regulating the Agreements as mortgages. The Consumer Loan Act provides protections to homeowners seeking a mortgage that Unison avoids if left unregulated. For example, under Wash. Rev. Code §31.04.105(1), licensees under the Consumer Loan Act may not lend money at a rate that exceeds 25 percent per annum. Licensees are also limited in what they can charge in origination fees. Wash. Rev. Code §31.04.105(2). Accepting Unison's argument that their agreements are not subject to these statutes designed to protect homeowners would mean that Unison could effectively receive a return

10

far greater than 25 percent. The Agreement splinters a homeowner's interest in their most valuable asset, without providing any limit on the money Unison can make in exchange for providing an initial investor payment. The Olsons fell victim to this division of the interest in their home, unaware of how much of the equity and future income they owed to Unison under the Agreement.

In sum, the terms and function of the Agreement meets the definition of loan and residential mortgage in the Consumer Loan Act, Wash. Rev. Code § 31.04. The application process to obtain an Agreement is virtually the same as that to obtain a mortgage, as defined in the Mortgage Lending and Homeownership Act. Unison can foreclose on the homeowner's property because its rights are secured with a deed of trust, and as such, its agreement is subject to regulation as a mortgage under Wash. Rev. Code § 61.24.020. For these reasons, the Agreement is a residential mortgage loan under the applicable definitions in the Consumer Loan Act and the Mortgage Lending and Homeownership Act, and the deeds of trust used to record Unison's lien on the property are subject to mortgage laws under Washington's Deed of Trust Law.

### 2. In the alternative, the Agreements are equitable mortgages

Aside from meeting the statutory definition of residential mortgage loans, the Agreement also qualifies as an equitable mortgage pursuant to Washington case law, which likewise subjects it to regulation. When documents evidencing a

11

transaction label an agreement as something other than a mortgage, the Washington Supreme Court has nevertheless looked beyond the written terms of an agreement to determine its true nature, and looked to the intent of the parties at the time of the agreement, and the facts and circumstances surrounding the agreement, to determine whether the agreement is effectively a mortgage. *Hoover v. Bouffleur*, 133 P. 602, 603–04 (Wash. 1913); *see also Phillips v. Blaser*, 125 P.2d 291 (Wash. 1942). If a party can show clear and convincing evidence that "the transaction is other than what it appears to be," a court can determine that a written agreement created an equitable mortgage. *See generally Johnson v. Nat'l Bank of Commerce of Tacoma*, 118 P. 21, 22–23 (Wash. 1911). For example, where a deed is conveyed with the intent to create a debtor-creditor relationship, a court has found the deed to be a mortgage, even though the agreement does not use the term. *Beadle v. Barta*, 123 P.2d 761, 763 (Wash. 1942). Additionally, despite the intent of one party to evade the law applicable to mortgages, courts have found that an equitable mortgage existed when there was evidence of the intent of one party "to secure the loan of money," and the intent of the other party "to loan it and get proper security for repayment with interest." *Hoover*, 133 P. 602, 603.

In *Hoover*, the Washington Supreme Court found the Hoovers owned property worth $4,000, subject to a $3000 mortgage, and were behind on the payments by a total of $228.75. *Hoover*, 133 P. 602. The Hoovers sought a loan;

12

Mr. Bouffleur entered into an agreement with the Hoovers wherein he advanced them $250, but denied that he issued a loan. *Id*. As part of the agreement, the Hoovers conveyed their property to Mr. Bouffleur and executed a deed to that effect, subject to the balance of the unpaid mortgage. *Id*. at 603. Separately, the Hoovers and Mr. Bouffleur executed an option contract, where the Hoovers had 90 days to buy back the property for $325. *Hoover,* 133 P. 602, 603. The Washington Supreme Court held that "although [Mr. Bouffleur] was careful to refrain from the use of the words 'loan' and 'mortgage,'" the intent of the Hoovers was to "secure the loan of the money," and the intent of Mr. Bouffleur was "to loan it and get proper security for repayment with interest." *Id.*

Similar to the lender and borrower in *Hoover*, the Agreement here functions like a mortgage. Unison advances money to homeowners pursuant to the Agreement. 1-ER-83. The homeowner does not have to pay Unison back until a later date. 1-ER-80-81. Under the Agreements' Special Termination Provision, the homeowner can be required to pay back the initial investment payment in addition to other fees and obligations. 1-ER-97. When an "Exercise Event" occurs, if property values increase as they usually do, Unison is paid an amount that is more than the initial investor payment to the homeowners. 1-ER-176. When property values increase significantly in a short amount of time, the amount owed to Unison can far exceed the amount of the initial investor payment and any fees and interest

13

that could have been charged if the initial investor payment was a mortgage loan. 1-ER-171.

The broad legal principle involved in the cases regarding equitable mortgages establish that parties cannot evade mortgage regulation by attempting to disguise a mortgage loan as a different transaction. *See generally Phillips*, 125 P.2d 291, 295 ("It is certain that we never intended to mark a path around the statutes designed to protect the necessitous borrower from the exactions of those who are disposed to take an unlawful return for a loan or forbearance of money"); *Hoover*, 133 P. 602, 603 ("A court of equity looks to the intent of a contract rather than to its form…"). Although a transaction is generally what it appears to be, such as a conveyance of real property by a warranty deed, a party can show by clear and convincing evidence that the transaction was really an equitable mortgage. *See generally Hoover*, 133 P. 602, 603; *Johnson*, 118 Pac. 21. Such evidence can include the intent of the parties entering into the agreements, and all the other facts and circumstances surrounding the transaction. *Pittwood v. Spokane Sav. & Loan Soc.*, 141 Wash. 229, 233, 251 P. 283 (1926).

Nothing in *Phillips* or *Hoover* restricts application of these principles only to transactions involving the sale or conveyance of land by deed, with the option to repurchase. Unison's narrow characterization of the Washington law regarding equitable mortgages ignores the courts' intent to protect "necessitous borrowers"

14

from lenders looking to exploit them. *See Phillips*, 125 P.2d 291, 295. Under the Agreements, homeowners seek money for personal expenses. Unison secures the transaction with a deed of trust, insulates itself from losing more than the value of the initial payment, charges a fee for the advance of money to homeowners, and based on the trend of the increase in home values, expects to make a profit off this loan structure by sharing in the appreciation of the covered property. The substance of this transaction is a mortgage, not an option contract, structured to circumvent mortgage regulation. Stating that the initial payment is not a loan is not sufficient to make it so. The Agreement is an equitable mortgage pursuant to Washington case law.

### 3.     The Agreement is not an option contract

Unison argued below that its Agreement is an option contract by its terms. 1-ER-204. Unison is mistaken. The Agreement does not operate as an option contract, as illustrated by pertinent case law.

Under Washington law, an option contract to purchase property is defined as a contract where the property owner, for consideration, agrees that another person may have the opportunity to buy the property within a specified time upon performance of the terms and conditions in the contract. *Whitworth v. Enitai Lumber Co.,* 220 P.2d 328, 330 (Wash. 1950). If there is no consideration, then the offer may be withdrawn at any time; however, when there is consideration given in

15

exchange for the option to purchase, then the offer cannot be withdrawn during the time set forth in the agreement. *Id*. In a true option contract, if a party does not exercise the option during the specified time or as according to the contract, the rights to the option and any consideration paid are forfeited. *Pardee v. Jolly*, 182 P.3d 967, 973 (Wash. 2008). "The thing thus contracted for or sold by the option is not the property itself, but merely the right of election to purchase the property." *Hopkins v. Barlin*, 196 P.2d 347, 350 (Wash. 1948).

Although Unison calls the Agreements an option contract, it is not structured like a traditional option to purchase real estate as described under Washington law. For example, unlike an option contract, the Unison Agreement does not provide any terms under which all of Unison's rights are forfeited, and only allows for Unison to *elect* not to exercise the option. *See* 1-ER-80-83, 88-122. In fact, the terms of the Agreement set forth the requirement to liquidate the amount Unison is owed upon the occurrence of specific events, as opposed to solely granting Unison the right to elect to purchase the percentage ownership in the homeowner's property. 1-ER-92, 95, 96 (provisions requiring sale to liquidate Unison's recorded percentage property interest). Unlike an option contract, Unison waives "all rights to exercise the Option until the occurrence of an Exercise Event," such that Unison does not have discretion to exercise the option at all. 1-ER-80. The Agreement provides estimated payments owed Unison based upon the assumption of a sale

16

and liquidation of Unison's percentage interest, and not upon Unison's exercise of the option. 1-ER-176. Additionally, the Agreement creates a lien that encumbers the entire property, which is completely unlike an option contract to purchase real estate that does not create any right to the subject property at all. *Hopkins*, 196 P.2d 347, 350. True option contracts to purchase real estate do not create a property right, only a contractual one. *Id*.

Unison's Agreement is not an option contract pursuant to Washington law. Rather, the Agreement is instead a mortgage as defined under Washington statutes, or an equitable mortgage as set forth in Washington case law. Unison's assertions to the contrary are incorrect.

**B.** **THE DISTRICT COURT ERRED IN ITS RELIANCE ON *FOSTER* AND THE ORDER OF DISMISSAL SHOULD BE REVERSED**

The District Court erroneously relied upon the holding in *Foster* to find that the Agreement was not a loan. As noted above, the District Court held that the Agreement was "almost identical" to the co-investment option contract the *Foster* court held was not a loan. 1-ER-5. Specifically, the District Court noted that Unison was "not obliged to exercise its option (if, for example, home prices decrease)." *Id*. The District Court did not discuss application of the definitions in the Consumer Loan Act, nor application of the law governing deeds of trust, nor equitable mortgage law, and thus failed to recognize these factors that distinguish *Foster*.

17

In *Foster*, EquityKey paid Mr. Foster $196,000 "to purchase the option to participate, at a rate of 100%, in the appreciation of the property, if any, from its initial value of $1,200,000." *Foster*, 17-CV-00067-HRL, 2017 WL 1862527, at *2. EquityKey could exercise the option if there was a pending sale, transfer, conveyance, assignment, or other loss of ownership, if Mr. Foster breached the agreement, or at the end of the 50 year term. *Id*. If EquityKey exercised the option, Mr. Foster had to pay EquityKey 100% of the appreciated value in the property, as calculated under the agreement. *Id*. The agreement included an early termination charge, applicable if Mr. Foster or his heirs sold or transferred the property within the first 10 years, which was the greater of either 1) $196,000 plus 3% of the initial property value plus 12% annual interest, or 2) the total appreciation of the property at the time of the breach. *Foster*, 17-CV-00067-HRL, 2017 WL 1862527, at *2. Under the agreement, Mr. Foster "agreed to execute a Performance Deed of Trust." *Id*.

The *Foster* court did not consider or apply the Consumer Loan Act, Wash. Rev. Code § 31.04, or other Washington state regulations applicable to mortgages and the mortgage lending process, discussed herein. In addition, there is no discussion of Wash. Rev. Code § 61.24.020, which requires that "a deed of trust is subject to all laws relating to mortgages on real property." Instead, the *Foster* court applied the federal TILA and referenced provisions of California law to find that

18

TILA did not apply to the agreement at issue. 17-CV-00067-HRL, 2017 WL 1862527, at *4. The court discussed several definitions of loan, but none that were the same as the one under the Washington Consumer Loan Act. *Id*. Further, while the Foster court noted that TILA does not apply to option contracts or investment plans, by contrast, the Department by rule regulates shared appreciation mortgages such as the one at issue in this case. *Foster*, 17-CV-00067-HRL, 2017 WL 1862527, at *4; *see also* Wash. Admin. Code § 208-620-510(6). Without any analysis as to the application of relevant Washington law to Unison's Agreement, reliance on *Foster* is misplaced. *Id.*

Nor did the *Foster* court discuss Washington law regarding equitable mortgages. Although the court acknowledged that the analysis should go beyond the terms of the agreement and look to its substance to determine the "true character," accepting EquityKey's argument that it may never exercise the option cuts against this premise. It also ignores historic trends in property value, which shows that dips in value have been short compared to increases. *Foster* incorrectly determined there was "no way to know" if EquityKey would ever exercise its option, which belies the reason EquityKey advanced money to Mr. Foster in the first place. EquityKey sought to profit from the transaction, and exercising the options was the means to do that. Even if the Court finds that Foster is not

19

distinguishable, it should determine that the reasoning therein was not correct and decline to follow it.

Under Washington law the Agreement is a mortgage. The *Foster* court did not apply Washington law, and that decision is not determinative of whether the Agreement here is a mortgage. The District Court's reliance on Foster was misplaced. The Department respectfully requests this Court decline to follow the decision in *Foster*, and reverse the District Court's dismissal of this action.

## VI.    CONCLUSION

For the foregoing reasons, the Department urges the Court to reverse the judgment of the District Court.


Date:  March 4, 2024


Robert W. Ferguson,
Attorney General of Washington


*/s/ Julia Eisentrout*_____
Julia Eisentrout
Assistant Attorney General

*Attorneys for Washington State Department of Financial Institutions*

20

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number(s)** __23-2835_____

The undersigned attorney or self-represented party states the following:

[ X ]  I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** _____*/s/ Julia Eisentrout*_____ **Date** __03/04/2024_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** _____23-2835_____

I am the attorney or self-represented party.

**This brief contains 4730 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ X ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties;
   [ ] a party or parties are filing a single brief in response to multiple briefs; or
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____*/s/ Julia Eisentrout*_____ **Date** _03/04/2024_____

## CERTIFICATE OF SERVICE

I declare under penalty of perjury under the laws of the state of Washington that on March 4, 2024, I served a true and correct copy of this document through the CM/ECF system to all parties.

DATED this 4th day of March, 2024

/s/ *Shayla Staggers*_____
Shayla Staggers
Paralegal